United States Bankruptcy Court
Southern District of Texas

**ENTERED**

February 28, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**ORDER (A) APPROVING (I) BIDDING PROCEDURES FOR THE
SALE OF THE AQV DEBTORS' ASSETS, (II) PROCEDURES REGARDING
BID PROTECTIONS, (III) THE SCHEDULING OF CERTAIN DATES
WITH RESPECT THERETO, (IV) THE FORM AND MANNER OF
NOTICE THEREOF, (V) CONTRACT ASSUMPTION, ASSIGNMENT, AND
REJECTION PROCEDURES, AND (VI) CERTAIN PROCEDURES TO
OTHERWISE DISPOSE OF THE AQV ASSETS, AND (B) AUTHORIZING THE
DEBTORS TO ENTER INTO AGREEMENTS FOR THE SALE OF THE THEIR
ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, AND ENCUMBRANCES**

[Relates to Docket No. 21]

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession

(collectively, the "<u>Debtors</u>") for entry of an order (this "<u>Order</u>"), (a) approving (i) the Bidding

Procedures, substantially in the form attached hereto as <u>Exhibit 1</u>, (ii) procedures regarding the

Bid Protections, (iii) the scheduling of certain dates and deadlines in connection with the Bidding

Procedures, (iv) the Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u>,

(v) procedures for rejecting, assuming, and assigning certain executory contracts and unexpired

leases, and the Rejection Notice and Cure Notice attached hereto as <u>Exhibits 3</u> and <u>Exhibit 4</u>,

---

[1]  The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower.  The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]  Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion or the Bidding Procedures (as defined herein), as applicable.

respectively, and (b) authorizing the Debtors to enter into agreements for the sale of the AQV Assets free and clear of all liens, claims, and encumbrances, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and the Amended Standing Order; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that it may enter a final order consistent with Article III of the United States Constitution; and this Court having found that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408; and this Court having found that the relief requested in the Motion is in the best interests of the Debtors' estates, their creditors, and other parties in interest; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court, if any; and this Court having determined that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Debtors have articulated good and sufficient reasons for authorizing and approving the Bidding Procedures, which are fair, reasonable, and appropriate under the circumstances and in the best interests of the Debtors' estates.

2. The Debtors' proposed notice of the Motion and the Hearing was adequate and sufficient under the circumstances of these chapter 11 cases, and no other or further notice is required.

3.     All objections to the relief requested in the Motion that have not been withdrawn, waived, or settled prior to or at the Hearing are overruled with prejudice.

**I.     Bidding Procedures**

4.     The Bidding Procedures, which are incorporated by reference as though fully set forth herein, are hereby approved in their entirety, and shall be used in connection with the proposed sale of the AQV Assets.  The Debtors are authorized to solicit Bids and conduct an Auction, if necessary, on the terms set forth in the Bidding Procedures.  The Bidding Procedures shall govern the submission, receipt, and analysis of all Bids, and any party desiring to submit a Bid on the AQV Assets must do so strictly in accordance with the terms of the Bidding Procedures and this Order.  The Debtors are authorized to take all actions as are reasonably necessary or appropriate to implement the Bidding Procedures.

5.     Each bidder participating at an Auction (if any) shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Sale, as set forth in the Bidding Procedures, and such Auction (if any) shall be transcribed or recorded.

6.     Pursuant to the Bidding Procedures, the Debtors may (a) determine which Qualified Bid is the highest or otherwise best offer for certain AQV Assets, (b) at any time prior to entry of an Order of the Court approving the applicable Successful Bid, reject any Bid (other than any Stalking Horse Bid (if any)) that the Debtors determine is (i) inadequate or insufficient, (ii) not in conformity with the requirements of the Bankruptcy Code, Bankruptcy Rules, or the Bidding Procedures, or (iii) contrary to the best interests of the Debtors' estates, their creditors, and/or other parties in interest, and (c) prior to conclusion of an Auction (if any), impose such other terms and conditions upon Qualified Bidders as the Debtors determine to be in the best interests of the Debtors' estates in these chapter 11 cases.  For the avoidance of doubt, the Debtors are not required

to select a Successful Bidder for any given AQV Asset or AQV Assets and may elect not to sell such assets to any bidders.

7.      Other than any Bid Protections approved for a Stalking Horse Bidder in accordance with the procedures set forth in this Order, no person or entity shall be entitled to any Expense Reimbursements, Bid Protections, or other similar fees or payments, and by submitting a Bid, such person or entity is deemed to have waived their right to request or to file with this Court any request for any fees or payments of any nature in connection with such Bid, whether by virtue of section 503(b) of the Bankruptcy Code or otherwise.

8.      Notwithstanding anything to the contrary in the Bidding Procedures, any Consultation Party that intends to submit a Credit Bid shall provide written notice of such intent to the Debtors (email being sufficient) within five (5) days of entry of this Order, and such party shall forego all consent and consultation rights otherwise provided in the Bidding Procedures.  In addition, any Consultation Party that receives information from the Debtors in its capacity as a Consultation Party pursuant to the Bidding Procedures shall waive any right to Credit Bid thereunder.

9.      The Debtors reserve the right, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, to modify the Bidding Procedures, waive terms and conditions set forth in the Bidding Procedures with respect to all potential bidders, extend the deadlines set forth in the Bidding Procedures, or announce at the auction modified or additional procedures for conducting an Auction. Subject to the foregoing, the Debtors may provide reasonable accommodations to any potential bidder(s) with respect to such terms, conditions, and deadlines of the bidding and Auction process to promote further bids.

II.     **Approval of Procedures for Selection of Stalking Horse Bidders and Bid Protections**

10.     Pursuant to the Bidding Procedures, the Debtors are authorized, but not directed, to select one or more bidders to act as Stalking Horse Bidders and enter into Stalking Horse Agreements with each such Stalking Horse Bidder, which may provide for payment of the Bid Protections, subject to notice and entry of an order approving the selection of the Stalking Horse Bidder as set forth herein.

11.     In the event that the Debtors select one or more parties to serve as the Stalking Horse Bidder(s), upon such selection, the Debtors shall, by March 15, 2024, file with the Court a notice (a "Stalking Horse Designation Notice") (a) identifying the Stalking Horse Bidder, the material terms of the Stalking Horse Bid (including the Purchase Price and AQV Assets subject to such Stalking Horse Bid), and the amount and terms of any Bid Protections offered to the Stalking Horse Bidder, and (b) attaching a copy of the Stalking Horse Agreement and provide the Sale Notice Parties of and an opportunity to object to the designation of such Stalking Horse Bidder(s) and the Bid Protections set forth in the Stalking Horse Agreement, with any such objection required to be filed by the earlier of five (5) days of the filing of the Stalking Horse Designation Notice and March 20, 2024 (a "Stalking Horse Objection Deadline").

12.     Any party may file an objection by the Stalking Horse Objection Deadline, in which case the Debtors shall be entitled to set an expedited hearing on such objection, subject to the availability of the Court.  If no objections are filed by the Stalking Horse Objection Deadline, the Debtors may submit an order to the Court with a certificate of no objection approving the selection of such Stalking Horse Bidder(s) and the Bid Protections.

III.    **Important Dates and Deadlines**

13.     <u>Sale Hearing</u>.  The Sale Hearing shall commence on **April 4, 2024 at 9:30 a.m. (Central Time)** before the before the Honorable Marvin Isgur, United States Bankruptcy Judge,

at the United States Bankruptcy Court, Southern District of Texas, Courtroom 404, 4th Floor, 515 Rusk Street, Houston, Texas 77002.  The Debtors may adjourn the Sale Hearing without further notice other than by announcement in open Court or via notice filed on the docket for any reason, including, without limitation, to comply with the Assumption and Assignment Procedures to the extent the Debtors receive a Qualified Bid for the AQV Business as a going concern.

14.     In addition, the following dates and deadlines regarding the Auction and Sale processes are hereby established, subject to the right of the Debtors to modify the following dates and deadlines in accordance with the Bidding Procedures, *provided* that notice is given to interested parties in accordance with the terms of this Order (all times referenced below refer to prevailing Central Time):

| Event or Deadline | Date and Time |
| --- | --- |
| **Service of Sale Notice** | 3 business days after entry of Bidding Procedures Order, or as soon as reasonably practicable thereafter |
| **Publication of Sale Notice** | 5 business days after entry of Bidding Procedures Order, or as soon as reasonably practicable thereafter |
| **Deadline to Designate Stalking Horse Bidder(s)** | March 15, 2024, at 4:00 p.m. |
| **Rejection Objection Deadline[3]** | 21 days after the date of service of the Rejection Notices, which date will be set forth in the Rejection Notice |
| **Sale Objection Deadline** | March 20, 2024, at 4:00 p.m. |
| **Deadline to Object to Stalking Horse Bidder(s) and Bid Protections** | Earlier of (i) five days after filing of Stalking Horse Designation Notice and (ii) March 20, 2024, at 4:00 p.m. |
| **Hearing to Approve Stalking Horse Bidder(s) and Bid Protections (if necessary)** | March 21, 2024, at 3:30 p.m. |
| **Qualified Bid Deadline** | March 25, 2024, at 4:00 p.m. |
| **Auction (if necessary)** | March 27, 2024, at 9:00 a.m. |

---

[3]   The Debtors will serve Rejection Notices as soon as reasonably practicable after entry of the Bidding Procedures Order.

| | |
|---|---|
| **Identification of Successful Bidder and Backup Bidder, if any, and/or Notification to Otherwise Dispose of any Remaining AQV Assets, including the AQV Vessels** | If no Auction is held, March 27, 2024 <br><br> If an Auction is held, March 28, 2024 |
| **Deadline for Objections to Approval of any Successful Bid** (including Backup Bids), including objections based on the manner in which the Auction was conducted and the identity of the Successful Bidder, whether submitted prior to, on, or after the Bid Deadline | April 1, 2024, at 4:00 p.m. |
| **Deadline for Objections to AQV Asset Disposition Notice(s)** | 7 days after the date of service of the AQV Asset Disposition Notice(s), which date will be set forth in such notice |
| **Cure Objection Deadline (if any)** | 14 days after service of Cure Notices[4] |
| **Closing Date** | As soon as reasonably practicable following entry of a Sale Order |

15.     If the Debtors do not receive competing Qualified Bids for the AQV Assets by the Bid Deadline, the Debtors are authorized, at their discretion and in accordance with the Bidding Procedures, to cancel the Auction and file a Notice of Successful Bidder(s) with the Court naming the Successful Bidder(s).  The Debtors otherwise may, at any time, determine to cancel or adjourn the Auction prior to the commencement of the Auction or during the Auction prior to the conclusion of the Auction by notice filed on the docket and emailed to all Qualified Bidders.

16.     For the avoidance of doubt, the Debtors shall present the results of the Auction (if any), or otherwise present any Successful Bidders, to the Court for approval at the Sale Hearing.

17.     If one or more Qualified Bid(s) exist for acquiring specific sub-groups of the AQV Assets, then the Debtors may, in the exercise of their reasonable business judgment, first conduct a sub-Auction for each of the AQV Assets that has at least one Qualified Bid pursuant to the Bidding Procedures.

---

[4]     The Debtors will provide notice of proposed Cure Amounts as soon as reasonably practicable after the Debtors have determined that any going concern bid for the AQV Business is a Qualified Bid.

18.     The failure of any party to file an objection in accordance with the Bidding Procedures on or before the applicable objection deadline (i) shall forever bar the assertion, whether at any Sale Hearing or thereafter, of any objection to the Motion, entry of the Sale Order, the consummation and performance of the Sale(s) with Successful Bidder(s), and any Stalking Horse Agreement, and (ii) for purposes of section 363(f)(2) of the Bankruptcy Code, shall be deemed to be "consent" to entry of the Sale Order, consummation of the Sale(s), and all transactions related thereto free and clear of any interest in the AQV Assets subject to the Sale.

## IV.     Notice of Sale(s)

19.     The Sale Notice, in the form attached hereto as Exhibit 2, is hereby approved.  The Debtors are authorized to make non-substantive and/or immaterial changes to the Sale Notice, to the extent consistent with the Bidding Procedures, prior to the filing, service, and publication of the Sale Notice.

20.     Within three (3) business days, or as soon as reasonably practicable, after entry of this Order, the Debtors will serve the Sale Notice and Bidding Procedures on the Sale Notice Parties.  Within five (5) business days, or as soon as reasonably practicable, after entry of this Order, and subject to applicable submission deadlines, the Debtors will cause a form of the Sale Notice to be published, with any modifications necessary for ease of publication, on one occasion each in (i) *The New York Times* (national edition) and (i) *TradeWinds*, to provide notice to any other potential interested parties.  The Debtors shall also post copies of this Order and the Sale Notice on the website of the Debtors' claims and noticing agent, Omni Agent Solutions, Inc.

21.     No other or further notice of the Sale(s), the Auction, the Sale Hearing, or the Sale Objection Deadline shall be required.  Service and publication of the Sale Notice as set forth herein is deemed to satisfy the notice requirements under Bankruptcy Rules 2002, 6004, and 6006, as

well as Bankruptcy Local Rule 6004-1, and to otherwise comply in all respects with applicable

provisions of the Bankruptcy Code, Bankruptcy Rules, and Bankruptcy Local Rules.

## V.    Rejection Procedures

22.    The Rejection Procedures set forth in the Motion regarding rejection of the

Contracts associated with the AQV Business are approved.

a.    **Rejection Notice**.  As soon as reasonably practicable after entry of the Bidding Procedures Order, the Debtors shall file with the Court and serve via first-class mail, electronic mail, or overnight delivery, the Rejection Notice, attached as Exhibit 3 to the proposed Bidding Procedures Order, on certain Contract Counterparties related to any of the AQV Assets which are designated for rejection, and post the Rejection Notice to the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc.

b.    **Content of Rejection Notice**.  The Rejection Notice shall notify the applicable Contract Counterparties that the Contracts are to be rejected, and contain the following information:  (i) the list of applicable Contracts to be rejected (the "Rejected Contracts"); (ii) the Contract Counterparties; (iii) the names and addresses of the applicable Contract Counterparties, listed in alphabetical order; (iv) the proposed effective date of rejection for the Rejected Contracts (the "Rejection Date"), which, for non-residential real property leases, shall be the later of (A) the proposed effective date of the rejection for such lease as set forth in the Rejection Notice; (B) the date upon which the Debtors surrender the premises to the landlord and return the keys, key codes, or security codes, as applicable; and (C) such other date to which the Debtors and the applicable Contract Counterparty have agreed or as the Court may order; and (v) the deadlines and procedures for filing objections to the Rejection Notice (as set forth below).

c.    **Rejection Objection**.  Rejection Objections, if any, must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed with the Court prior to **4:00 p.m. (prevailing Central Time) on the date that is 21 days following the date of service of such Rejection Notice (the "Rejection Objection Deadline"), which date will be set forth in the Rejection Notice;** *provided* that the Debtors, in their discretion, may modify the Rejection Objection Deadline by filing a notice of such modification on the Court's docket.

d.    **Supplemental Rejection Notice**.  If the Debtors discover Contracts inadvertently omitted from the Rejection Notice or determine any Contracts included on the Rejection Notice should not be rejected, the Debtors reserve

the right to file one or more additional Rejection Notices to add or remove any such Contracts (the "Supplemental Rejection Notice").

e.    **Objection to the Supplemental Rejection Notice**.    Any Contract Counterparty listed on the Supplemental Rejection Notice may file an objection thereto (a "Supplemental Rejection Objection") only if such objection is to the rejection of one or more previously omitted Rejected Contract(s).  All Supplemental Rejection Objections must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed no later than 4:00 p.m. (prevailing Central Time) on the date that is 21 days following the date of service of such Supplemental Rejection Notice, which date will be set forth in the Supplemental Rejection Notice.

f.    **No Rejection Objections**.    If there are no Rejection Objections or Supplemental Rejection Objections, as applicable, or if a Contract Counterparty does not file and serve such an objection in a manner that is consistent with the requirements set forth above, each Rejected Contract listed in the applicable Rejection Notice shall be rejected as of the applicable Rejection Date set forth in the Rejection Notice or such other date to which the Debtors and the applicable Rejection Counterparty agree; *provided* that the Rejection Date for a rejection of a non-residential real property lease shall not occur until the later of (i) the proposed effective date of the rejection for such lease as set forth in the Rejection Notice; (ii) the date upon which the Debtors surrender the premises to the landlord and return the keys, key codes, or security codes, as applicable; and (iii) such other date to which the Debtors and the applicable Rejection Counterparty have agreed or as the Court may order.  If no objection is filed and served by the Rejection Objection Deadline, the Debtors shall seek authorization in the Sale Order (if any) to reject such Rejected Contracts effective as of the Rejection Date, or alternatively, by submitting a proposed order filed with the Court under a certificate of no objection.  If a Contract Counterparty does not file and serve such an objection in a manner that is consistent with the requirements set forth above, such party shall be forever barred from objecting to the rejection of such Contract.

g.    **Unresolved Timely Objection**.  If a Rejection Objection is timely filed and properly served as specified above and not withdrawn or resolved, after consultation with the applicable Contract Counterparty, the Debtors shall request that the Court either hear the objection at the Sale Hearing (if any), or schedule a hearing on such objection and provide at least ten (10) days' notice of such hearing to the applicable Contract Counterparty.  If such objection is overruled or withdrawn, then such Rejected Contract shall be rejected as of (i) the applicable Rejection Date set forth in the applicable Rejection Notice; (ii) such other date to which the Debtors and the applicable Rejection Counterparty have agreed; or (iii) such other date as is ordered by the Court.  In the case of a rejection of a non-residential real

property lease, such rejection shall not occur until the later of (i) the proposed effective date of the rejection for such lease as set forth in the Rejection Notice; (ii) the date upon which the Debtors surrender the premises to the landlord and return the keys, key codes, or security codes, as applicable; and (iii) such other date to which the Debtors and the applicable Rejection Counterparty have agreed or as the Court may order.

## VI.    Assumption and Assignment Procedures

23.    The Assumption and Assignment Procedures set forth in the Motion regarding the assumption and assignment of the Contracts proposed to be assumed by the AQV Debtors and assigned to a Successful Bidder solely to the extent the Successful Bid is for the AQV Business as a going concern are approved.

a.    **Cure Notice**.  As soon as reasonably practicable after the Debtors have determined they have received a Qualified AQV Going Concern Bid, the Debtors shall file with the Court and serve via first-class mail, electronic mail, or overnight delivery, the Cure Notice, attached as Exhibit 4 to the proposed Bidding Procedures Order, on certain non-Debtor Contract counterparties (collectively, the "Contract Counterparties," and each, a "Contract Counterparty") party to Contracts related to any of the AQV Assets which may be assumed or assumed and assigned, and post the Cure Notice to the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc.

b.    **Content of Cure Notice**.  The Cure Notice shall notify the applicable Contract Counterparties that the Contracts may be subject to assumption and assignment in connection with the Sale(s), and contain the following information:  (i) a list of the applicable Contracts that may be assumed and assigned in connection with the Sale(s) (the "Assigned Contracts," and each individually, an "Assigned Contract"); (ii) the names and addresses of the applicable Contract Counterparties, listed in alphabetical order; (iii) the Debtors' good faith estimate of the proposed amount necessary, if any, to cure all monetary defaults, if any, under each Assigned Contract (the "Cure Amount"); and (iv) the deadline by which any Contract Counterparty to an Assigned Contract must file an objection to the proposed assumption, assignment, Cure Amount, and/or adequate assurance and the procedures relating thereto (the "Cure Objection"); *provided* that service of a Cure Notice does not constitute an admission that such Assigned Contract is an executory contract or unexpired lease or that such Assigned Contract will be assumed at any point by the Debtors or assumed and assigned pursuant to any Successful Bid.

c.   **Cure Objection**.   Cure Objections, if any, must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed with the Court by **4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of the Cure Notice** (the "Cure Objection Deadline"), which date will be set forth in the Cure Notice; *provided* that the Debtors, in their discretion, may modify the Cure Objection Deadline by filing a notice of such modification on the Court's docket.

d.   **Effects of Filing a Cure Objection**.   A properly filed Cure Objection will reserve such objecting party's rights against the Debtors only with respect to the assumption and assignment of and/or Cure Amount under the Assigned Contract at issue, as set forth in the Cure Objection, but will not constitute an objection to the remaining relief requested in this Motion.

e.   **Dispute Resolution**.   Any Cure Objection to the proposed assumption and assignment of or Cure Amount under an Assigned Contract that remains unresolved after the Sale Hearing shall be heard at such later date as may be agreed upon by the parties or fixed by the Court.   To the extent that any Cure Objection cannot be resolved by the parties, such Contract shall be assumed and assigned only upon satisfactory resolution of the Cure Objection, to be determined in the Successful Bidder's reasonable discretion.   To the extent a Cure Objection remains unresolved, the Contract may be conditionally assumed and assigned, subject to the consent of the Successful Bidder, pending a resolution of the Cure Objection after notice and a hearing.   If a Cure Objection is not satisfactorily resolved, the Successful Bidder may determine that such Contract should be rejected and not assigned, in which case the Successful Bidder will not be responsible for any Cure Amount in respect of such Contract.   Notwithstanding the foregoing, if a Cure Objection relates solely to the Cure Amount (any such objection, a "Cure Dispute"), the applicable Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder *provided* that the Debtors shall pay the undisputed portion of the Cure Amount, and will deposit the remaining amount that the Contract Counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) in a segregated account pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

f.   **Supplemental Cure Notice**.   If the Debtors discover Contracts inadvertently omitted from the Cure Notice or the Successful Bidder identifies other Contracts that it desires to assume or assume and assign in connection with the Sale(s), the Debtors may, after consultation with the Successful Bidder, at any time before the closing of the Sale(s), supplement the Cure Notice with previously omitted Contracts or modify a previously

filed Cure Notice, including by modifying the previously stated Cure Amount associated with any Contracts (the "Supplemental Cure Notice").

g.   **Objection to the Supplemental Cure Notice**.  Any Contract Counterparty listed on the Supplemental Cure Notice may file an objection thereto (a "Supplemental Cure Objection") only if such objection is to either the proposed assumption and assignment of or Cure Amount under previously omitted Contracts.  All Supplemental Cure Objections must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed no later than **4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice**, which date will be set forth in the Supplemental Cure Notice.

h.   **Dispute Resolution of Supplemental Cure Objection**.  If a Contract Counterparty files a Supplemental Cure Objection in a manner that is consistent with the requirements set forth above, and the parties are unable to consensually resolve the dispute, the Debtors shall seek an expedited hearing before the Court to determine the Cure Amount, if any, and approve the assumption and assignment of the relevant Contracts.  If there is no such objection, then the Debtors shall obtain an order of this Court fixing the Cure Amount and approving the assumption of any Contract listed on a Supplemental Cure Notice.    Notwithstanding the foregoing, if a Supplemental Cure Objection relates solely to a Cure Dispute, the applicable Assigned Contract may be assumed by the Debtors and assigned to the Successful Bidder *provided* that the Debtors shall pay the undisputed portion of the Cure Amount, and will deposit the remaining amount that the Contract Counterparty asserts is required to be paid under Bankruptcy Code section 365(b)(1)(A) and (B) (or such lower amount as agreed to by the Contract Counterparty) in a segregated account pending the Court's adjudication of the Cure Dispute or the parties' consensual resolution of the Cure Dispute.

i.   **No Cure Objections**.  If there are no Cure Objections or Supplemental Cure Objections, or if a Contract Counterparty does not file and serve such an objection in a manner that is consistent with the requirements set forth above, and absent a subsequent order of the Court establishing an alternative Cure Amount, (i) the Cure Amount, if any, set forth in the Cure Notice (or Supplemental Cure Notice) shall be controlling, notwithstanding anything to the contrary in any Contract or any other document, and (ii) the Contract Counterparty will be deemed to have consented to the assumption or assumption and assignment of the Contract and the Cure Amount, if any, and will be forever barred from objecting to the assumption or assumption and assignment of such Contract and rights thereunder, including the Cure Amount, if any, and from asserting any other claims related to such Contract

against the Debtors or the Successful Bidder, or the property of the Debtors or the Successful Bidder.

j.   **Conditions Precedent to Assumption and Assignment**.  The Debtors' assumption and assignment of any Contract is subject to approval by the Court and is contingent upon consummation of the applicable Sale.  Absent entry of a Sale Order approving the assumption and assignment of the Contracts and consummation of the Sale, the Contracts shall be deemed neither assumed nor assigned, and shall in all respects be subject to subsequent assumption or rejection by the Debtors, in their discretion.

24.   Any objection to the ability of the Successful Bidder(s) to provide adequate assurance of future performance with respect to any Assigned Contract must be filed with the Court no later than the later of (a) the Sale Objection Deadline and (b) 4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of any applicable Cure Notice or Supplemental Cure Notice.

25.   The inclusion of an Assigned Contract in the Cure Notice (or Supplemental Cure Notice) will neither (a) obligate the Debtors to assume such Assigned Contract or obligate the Successful Bidder to take assignment of such Assigned Contract nor (b) constitute any admission or agreement of the Debtors that such Assigned Contract is an executory contract or unexpired lease.  Only those Assigned Contracts that are included on a schedule of assumed and assigned contracts attached to a Definitive Purchase Agreement with a Successful Bidder (including amendments or modifications to such schedules in accordance with such agreement) will be assumed and assigned to such Successful Bidder.

**VII.   AQV Asset Wind-Down Procedures**

26.   To the extent the Debtors do not receive any Qualified Bids for all of the AQV Assets and/or any Qualified AQV Going Concern Bids, the Debtors, in their sole discretion, shall be authorized, but not directed, to dispose of any remaining AQV Assets, including the AQV Vessels, in compliance with all applicable nonbankruptcy regulations and directives, including

those of the United States Environmental Protection Agency, the United States Maritime Administration, and the United States Coast Guard.

27.    In connection therewith, the Debtors shall file a notice of their intent to dispose of any remaining AQV Assets on (i) March 27, 2024 if no Auction is held or (ii) March 28, 2024 if an Auction is held.  Thereafter, with regard to a disposition of remaining AQV Assets in any individual transaction or series of related transactions to or from a single buyer or seller or group of related buyers or sellers with a sale price less than or equal to $250,000, the Debtors are authorized to consummate such transactions if the Debtors determine in their reasonable exercise of business judgment that such transactions are in the best interest of the estates, without further order of the Court or notice to any party, and such sale shall be free and clear of all liens, claims, and encumbrances, with any valid and properly perfected liens attaching only to the sale proceeds with the same validity, extent, and priority as immediately prior to such transaction the extent permitted under section 363 of the Bankruptcy Code.  Further, to the extent the Debtors propose to sell or otherwise dispose of any remaining AQV Assets in any individual transaction or series of related transactions to or from a single buyer or seller or group of related buyers or sellers with a sale price in excess of $250,000, the Debtors will file a subsequent notice of such transaction (the "AQV Asset Disposition Notice"), with a proposed form of order approving such disposition (the "AQV Asset Disposition Order") and provide the Sale Notice Parties with notice of and an opportunity to object within seven (7) days of the filing of such notice.  After such notice and absent objection, the Debtors may submit the AQV Asset Disposition Order under certificate of no objection for Court approval.  To the extent necessary, the Debtors shall be entitled to set an expedited hearing on any objection to an AQV Asset Disposition Notice promptly following the expiration of any such objection deadline, subject to the availability of the Court.

## VIII.   Miscellaneous

28.     Any Sale Transaction Fee[5] due to Guggenheim Securities as a result of the closing of any Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) from the proceeds of such Sale Transaction (including, without limitation, from the proceeds of any liquidation or other disposition of the Debtors' assets), as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds.  If any Sale Transaction is the result of a successful bid (including on account of any successful credit bid) without a cash component sufficient to pay the corresponding Sale Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim Securities shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) at the closing of such Sale Transaction from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders; *provided* that, if the Debtors do not have sufficient cash to pay the unpaid portion of such Sale Transaction Fee in full or any portion thereof, then the successful bidder (including on account of any successful credit bid) shall immediately set aside from its own funds and escrow (for the exclusive benefit of Guggenheim Securities) any such amount necessary to pay Guggenheim Securities such unpaid portion of the Sale Transaction Fee in full at the closing of such Sale Transaction.  For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Guggenheim Securities or the assertion or

---

[5]   Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain engagement letter between Guggenheim Securities and the Debtors, dated as of October 1, 2023, as amended by that certain amendment to the engagement letter between Guggenheim Securities and the Debtors, dated as of February 13, 2024, copies of which are being filed in connection with the Debtors' application to retain Guggenheim Securities, LLC.

allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim Securities.

29.     Nothing in this Order or the Bidding Procedures shall be deemed a waiver of any rights, remedies, or defenses that the Debtors have under applicable bankruptcy and nonbankruptcy law, under any indemnity agreements, or any rights, remedies, or defenses of the Debtors with respect thereto, including seeking relief from the Court with regard to the Auction, the Bidding Procedures, the Sale, and any related items (including, if necessary, to seek an extension of the Bid Deadline).

30.     In the event of any conflict between this Order and the Motion and/or the Bidding Procedures, this Order or the Bidding Procedures, as applicable, shall govern in all respects.

31.     The Debtors are hereby authorized to execute any additional or supplemental document(s) incident to the relief granted pursuant to this Order.

32.     The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

33.     All time periods set forth in this Order shall be calculated in accordance with Bankruptcy Rule 9006(a).

34.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, the stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and this Bidding Procedures Order shall be effective immediately and enforceable upon its entry.

35.     The Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Signed: February 28, 2024

_____
Marvin Isgur
United States Bankruptcy Judge

**<u>Exhibit 1</u>**

**Bidding Procedures**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) Case No. 24-90061 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**BIDDING PROCEDURES FOR THE SALE OF THE DEBTORS' AQV ASSETS
FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES**

On February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

On [●], 2024, the Court entered the *Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. [●]] (the "Bidding Procedures Order"),[2] by which the Court approved (a) the following procedures (the "Bidding Procedures") for the Debtors' pursuit of one or more sales or dispositions of the AQV Business or some, all, or substantially all of the assets related the Debtors' AQV Business (the "AQV Assets") under section 363 of the Bankruptcy Code free and clear of any liens, claims, and encumbrances (each, a "Sale") and (b) the scheduling of a hearing to approve the Debtors' Sale of

---

[1]   The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower.  The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]   All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the *Debtors' Emergency Motion for Entry of an Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. 21] (the "Motion"), as applicable.

the AQV Assets (the "Sale Hearing").  **All interested bidders should carefully read the Bidding Procedures Order and these Bidding Procedures in their entirety.**

> **Copies of the Bidding Procedures Order or other documents related thereto may be obtained, free of charge, on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.**
>
> **All due diligence requests must be directed to Guggenheim Securities, LLC, Attn: Matthew Scheidemann Matthew.Scheidemann@guggenheimpartners.com), John Welsh (John.Welsh@guggenheimpartners.com) and Rupak Rajaram (Rupak.Rajaram@guggenheimpartners.com).**

I.      **Overview**

    These Bidding Procedures set forth the process by which the Debtors are authorized to conduct a marketing process, and if necessary, one or more auctions (each, an "Auction"), at which qualified bidders will compete to make the highest or otherwise best offer, for the Sale of the AQV Assets.

    The Debtors reserve the right to modify these Bidding Procedures, including, without limitation, to extend the deadlines and modify the requirements set forth herein or impose additional terms and conditions at any time, including during an Auction, to the extent that they determine, in their reasonable business judgment, that doing so will best promote the goals of the Sale process.

II.     **Assets to be Auctioned**

    The Debtors will consider bids for the purchase of all, substantially all, or any portion of the AQV Assets, including the vessels set forth on **Exhibit A** attached hereto together with each vessels engines, boilers, machinery, boats, tackle, apparel, appurtenances, and furniture, as it now lies.  The Debtors may consider bids from multiple bidders (including multiple bids submitted by the same bidder), in any combination, for the AQV Assets.

III.    **Key Sales Process Dates**

    The Debtors shall assist interested parties in conducting their respective due diligence investigations and shall accept irrevocable bids until **March 25, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Bid Deadline").  The other key dates for the marketing process are as follows:

| Event or Deadline | Date and Time (prevailing Central Time) |
|---|---|
| **Service of Sale Notice** | 3 business days after entry of Bidding Procedures Order, or as soon as reasonably practicable thereafter |
| **Publication of Sale Notice** | 5 business days after entry of Bidding Procedures Order, or as soon as reasonably practicable thereafter |
| **Deadline to Designate Stalking Horse Bidder(s)** | March 15, 2024, at 4:00 p.m. |
| **Rejection Objection Deadline**[3] | 21 days after the date of service of the Rejection Notices, which date will be set forth in the Rejection Notice |
| **Sale Objection Deadline** | March 20, 2024, at 4:00 p.m. |
| **Deadline to Object to Stalking Horse Bidder(s) and Bid Protections** | Earlier of (i) five days after filing of Stalking Horse Designation Notice and (ii) March 20, 2024, at 4:00 p.m. |
| **Hearing to Approve Stalking Horse Bidder(s) and Bid Protections (if necessary)** | March 21, 2024, at 3:30 p.m. |
| **Qualified Bid Deadline** | March 25, 2024, at 4:00 p.m. |
| **Auction (if necessary)** | March 27, 2024, at 9:00 a.m. |
| **Identification of Successful Bidder and Backup Bidder, if any,**[4] **and/or Notification to Otherwise Dispose of any Remaining AQV Assets, including the AQV Vessels** | If no Auction is held, March 27, 2024<br><br>If an Auction is held, March 28, 2024 |
| **Deadline for Objections to Approval of any Successful Bid** (including Backup Bids), including objections based on the manner in which the Auction was conducted and the identity of the Successful Bidder, whether submitted prior to, on, or after the Bid Deadline | April 1, 2024, at 4:00 p.m. |
| **Sale Hearing**[5] | April 4, 2024, at 9:30 a.m. |
| **Deadline for Objections to AQV Asset Disposition Notice(s)** | 7 days after the date of service of the AQV Asset Disposition Notice(s), which date will be set forth in such notice |

---

[3]   The Debtors will serve Rejection Notices as soon as reasonably practicable after entry of the Bidding Procedures Order.

[4]   The Debtors also anticipate filing a proposed form of Sale Order at this time.

[5]   The Debtors reserve the right to adjourn the Sale Hearing to, among other things, comply with the Assumption and Assignment Procedures to the extent the Debtors receive a Qualified Bid for the AQV Business as a going concern.

| Cure Objection Deadline (if any) | 14 days after service of Cure Notices[6] |
| Closing Date | As soon as reasonably practicable following entry of a Sale Order |

## IV.   Public Announcement of Auction

Within three (3) business days after entry of the Bidding Procedures Order, the Debtors shall serve on the Sale Notice Parties a notice of the Auction and Sale (the "Sale Notice").  Within five (5) business days after entry of the Bidding Procedures Order, the Debtors shall publish the Sale Notice, with any modifications necessary for ease of publication, in *The New York Times* (national edition) and *TradeWinds* to provide notice to any other potential interested parties.

## V.   Bidding Process

### A.   Potential Bidder Requirements

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person or entity (other than any Stalking Horse Bidder) interested in purchasing all, substantially all, or some of the AQV Assets (a "Potential Bidder") must deliver or have previously delivered to the Debtors the following documents (collectively, the "Preliminary Bid  Documents"):

    a.    an executed confidentiality agreement (a "Confidentiality Agreement") in form and substance acceptable to the Debtors;

    b.    a non-binding written indication of interest specifying, among other things, with respect to any proposed Sale, the identity of the AQV Assets to be acquired, the amount and type of consideration to be offered, and any other material terms to be included in a bid by such party;

    c.    preliminary proof by the Potential Bidder of its financial capacity to close the proposed Sale(s) (which may include current audited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach) as well as an overview of any recent transactions), the adequacy of which must be reasonably acceptable to the Debtors;

    d.    identity of the Potential Bidder, including its legal name, jurisdiction and form of organization, and details regarding the ownership and capital structure of the Potential Bidder, as well as the identity of any controlling persons, significant direct or indirect equity or debt investors, and/or guarantors of such entity;

---

[6]    The Debtors will provide notice of proposed Cure Amounts as soon as reasonably practicable after the Debtors have determined that any going concern bid for the AQV Business is a Qualified Bid.

> e.  a list with the names and contact information for any financial, legal, and other advisors the Potential Bidder has engaged to assist in connection with the proposed Sale; and
>
> f.  a description of the nature and extent of any due diligence the Potential Bidder wishes to conduct.

The Debtors, in their discretion, may agree to waive the delivery of some or all of the required Preliminary Bid Documents. Each Potential Bidder shall comply with all reasonable requests for information and due diligence access by the Debtors or their advisors regarding the ability of such Potential Bidder, as applicable, to consummate a proposed Sale.

After a Potential Bidder has delivered Preliminary Bid Documents, the Debtors shall (a) determine and notify, as soon as reasonably practicable, each Potential Bidder as to whether such Potential Bidder has submitted acceptable Preliminary Bid Documents, (b) provide copies of any such notices to any Stalking Horse Bidder, as applicable, and (c) provide copies of such Preliminary Bid Documents to the following parties (each, a "<u>Consultation Party</u>" and collectively, the "<u>Consultation Parties</u>"): (i) each Consenting First Lien Lender (as defined in the Restructuring Support Agreement) and their respective advisors; (ii) the advisors to the Ad Hoc Group; and (iii) any official committee appointed in these chapter 11 cases; *provided* that, to the extent that any party in clause (i), (ii) or (iii) is a Potential Bidders in connection with any Sale, such party shall not be a Consultation Party.

Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors may submit bids to purchase the AQV Assets. The Debtors reserve the right to work with any Potential Bidder to cure any deficiencies in the Preliminary Bid Documents.

**B.  Due Diligence**

Only Potential Bidders that have submitted acceptable Preliminary Bid Documents to the reasonable satisfaction of the Debtors, including any Stalking Horse Bidder, shall be eligible to receive due diligence information, access to the Debtors' electronic data room, and access to additional non-public information regarding the Debtors. **All due diligence requests must be directed to Guggenheim Securities, LLC ("<u>Guggenheim Securities</u>") via email**. The Debtors will use commercially reasonable efforts to provide each Potential Bidder reasonable due diligence information, as requested by such Potential Bidder via email, as soon as reasonably practicable after such request, and the Debtors shall post substantially all written due diligence provided to any Potential Bidder to the Debtors' electronic data room. Potential Bidders will not, directly or indirectly, contact or initiate or engage in discussions in respect of matters relating to the Debtors or a potential transaction with any customer, supplier, or contractual counterparty of the Debtors without the prior written consent of the Debtors. Unless extended by the Debtors in their reasonable business judgment, each Potential Bidder's due diligence period will end on the Bid Deadline (as defined herein), after which the Debtors shall have no obligation to furnish any due diligence information.

In connection with the provision of due diligence information to Potential Bidders, the Debtors shall not furnish any confidential information relating to the Debtors or a potential transaction to any person except a Potential Bidder or such Potential Bidder's duly authorized representatives to the extent provided in an applicable Confidentiality Agreement.

The Debtors, with the assistance of their advisors, shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders; *provided* that the Debtors may decline to provide such information to Potential Bidders who, in the Debtors' reasonable business judgment have not established or who have raised doubt that such Potential Bidders intend in good faith to, or have the capacity to, consummate any Sale.  To the extent a Potential Bidder no longer intends in good faith to, or lacks the capacity to, consummate a Sale, such Potential Bidder shall promptly notify the Debtors via email.  The Debtors also reserve the right to withhold any diligence materials that the Debtors determine are sensitive or otherwise not appropriate for disclosure to a Potential Bidder, including a Potential Bidder the Debtors determine is a competitor or supplier of the Debtors (or an affiliate or representative of a competitor or supplier), or is otherwise an entity to which the disclosure of sensitive or competitive information, in the Debtors' reasonable business judgment, may risk unduly placing the Debtors at a competitive disadvantage or subject them to regulatory scrutiny.

C.    **Communications with Potential Bidders (including Qualified Bidders)**

Notwithstanding anything to the contrary in these Bidding Procedures, all substantive direct communications, including any diligence requests, with Potential Bidders and Qualified Bidders (as defined herein) shall be through Guggenheim Securities.

> **Guggenheim Securities, LLC, Attn: Matthew Scheidemann (Matthew.Scheidemann@guggenheimpartners.com), John Welsh (John.Welsh@guggenheimpartners.com) and Rupak Rajaram (Rupak.Rajaram@guggenheimpartners.com), shall coordinate all requests for additional information and due diligence access on behalf of the Debtors.**

D.    **Due Diligence From Potential Bidders (including Qualified Bidders)**

Each Potential Bidder (including any Qualified Bidder) shall comply with all reasonable requests for additional information and due diligence access requested by the Debtors or their advisors regarding the ability of such Potential Bidder (including any Qualified Bidder) to consummate its contemplated Sale.  Failure by a Potential Bidder (including any Qualified Bidder) to comply with such reasonable requests for additional information and due diligence access may be a basis for the Debtors to determine that such bidder is no longer a Qualified Bidder or that a bid made by such bidder is not a Qualified Bid.

E.    **No Communications Among Potential Bidders**

There must be no communications between and amongst Potential Bidders, or between Potential Bidders and the Consultation Parties, unless the Debtors have previously authorized such

communication in writing. Should any Potential Bidder attempt to communicate directly with a Consultation Party, such Consultation Party shall immediately direct the Potential Bidder to Paul, Weiss, Rifkind, Wharton & Garrison LLP ("Paul, Weiss"), the Debtors' counsel, and Guggenheim Securities, the Debtors' investment banker. The Debtors reserve the right, in their reasonable business judgment to disqualify any Potential Bidders that have communications between and amongst themselves without the prior consent of the Debtors. The Debtors further reserve their right, in their reasonable business judgment, to disqualify any Potential Bidders that have communications with a Consultation Party without the prior consent of the Debtors, and to strip any Consultation Party that violates this provision of its consultation rights hereunder.

## VI.   Stalking Horse Bidders and Bid Protections

No later than March 15, 2024, the Debtors may enter into an agreement (a "Stalking Horse Agreement"), subject to approval by the Court after notice and an opportunity to object, and higher or otherwise better offers at the Auction, with one or more stalking horse bidders (each, a "Stalking Horse Bidder") to establish a minimum bid at the Auction with respect to all or any portion of the Assets. In the event that one or more Stalking Horse Bidders are selected, the Debtors shall seek Court approval of each Stalking Horse Bidder pursuant to the Bidding Procedures Order. The Stalking Horse Agreement, subject to consultation with the Consultation Parties, may contain an expense reimbursement for the reasonable, documented out-of-pocket expenses of the Stalking Horse Bidder incurred in connection with the Stalking Horse Agreement in an aggregate amount not to exceed the greater of (i) two percent (2%) of the cash portion of the purchase price under the Stalking Horse Agreement, and (ii) $50,000; and (b) a break-up fee for the Stalking Horse Bidder in an amount not to exceed three percent (3%) of the cash portion of the purchase price under the Stalking Horse Agreement ((a) and (b) of this sentence, collectively, the "Bid Protections"), payable only from the proceeds of a Sale with a Qualified Bidder other than the Stalking Horse. The Bid Protections shall be an allowed administrative expense.

## VII.   Right to Credit Bid

Any Potential Bidder (as defined herein) who has a valid and perfected lien on any assets of the Debtors' estates (a "Secured Creditor") and the right under applicable non-bankruptcy law to credit bid claims secured by such lien shall be permitted to credit bid all or a portion of the value of such assets subject to such lien, up to the amount of such Secured Creditor's undisputed claims (a "Credit Bid"), to the extent permitted under section 363(k) of the Bankruptcy Code, as it relates to the AQV Assets; *provided*, *however*, that any Secured Creditor that intends to participate in an Auction (as defined herein) with a Credit Bid shall, as a condition to such participation, (i) notify the Debtors at least five (5) business days prior to the applicable Bid Deadline that it intends to submit a Credit Bid, and (ii) provide all documentation requested by the Debtors to establish the lien, claims, and encumbered assets that will be the subject of the Secured Creditor's potential Credit Bid; *provided, further*, that a credit bid shall not constitute a Qualified Bid if the bid does not include a cash component sufficient to pay in full, in cash, all claims for which there are valid, perfected, and unavoidable liens on any assets included in such bid that are senior in priority to those of the Secured Creditor seeking to credit bid.

## VIII. Bid Requirements

To be selected to acquire the AQV Assets or to be eligible to participate in the Auction, if applicable, a Potential Bidder (other than a Stalking Horse Bidder) must deliver to the parties set forth in Section IX below a written, irrevocable, and binding offer for purchase of the AQV Assets (the "Bid") that the Debtors determine, in their business judgment, satisfies each of the following conditions (collectively, the "Bid Requirements"):

a. **Identity**: Each Bid must fully disclose the identity of each entity and each entity's shareholders, partners, investors, and ultimate controlling entities that will be bidding for or purchasing the applicable AQV Assets or otherwise participating in connection with such Bid, and the complete terms of any such participation, along with sufficient evidence that the Potential Bidder is legally empowered to complete the transactions on the terms contemplated by the parties. Each Bid must also fully disclose whether any current or former officer, director, or equity holder of the Debtors, or any entity affiliated with any current or former officer, director, or equity holder of the Debtors, will be bidding or otherwise participating in connection with such Bid, including any employment or compensation arrangements being negotiated or agreed to between the Qualified Bidder and any employee of the Debtors. Under no circumstances shall any undisclosed insiders, principals, equity holders, or financial backers of the Debtors be associated with any Bid (including any overbid at the Auction). Each Bid must also include contact information for the specific person(s) who Guggenheim Securities and Paul, Weiss should contact regarding such Bid.

b. **Identity of Assets and Purchase Price**: Each Bid must clearly state which of the AQV Assets the Potential Bidder seeks to acquire and which liabilities of the applicable Debtor the Potential Bidder agrees to assume, if any. Each Bid must clearly set forth the purchase price to be paid, including identifying separately any cash and non-cash components, which non-cash components shall be limited only to Credit Bids and assumed liabilities (collectively, the "Purchase Price"). The Purchase Price should be a single point value in U.S. dollars for the total enterprise value of the AQV Assets the Potential Bidder seeks to acquire on a cash-free, debt-free basis; *provided* that the Potential Bidder, including any Stalking Horse Bidder, shall include an allocation of such Purchase Price among the AQV Assets the Potential Bidder seeks to acquire.

c. **Good Faith Deposit**: Each Bid, other than a Stalking Horse Bid, must be accompanied by a cash deposit equal to ten percent (10%) of the Purchase Price of such Bid, submitted by wire transfer of immediately available funds to an escrow or segregated account to be identified and established by the Debtors (the "Good Faith Deposit"). To the extent a Qualified Bid (other than a Stalking Horse Bid) is modified before, during, or after the Auction in any manner that increases the Purchase Price contemplated by such

Qualified Bid, the Debtors reserve the right to require that such Qualified Bidder increase its Good Faith Deposit so that it equals ten percent (10%) of the increased Purchase Price; *provided, however*, that the Debtors may, on a case-by-case basis, elect to waive the requirement that a Qualified Bidder deliver the initial Good Faith Deposit if such Qualified Bidder otherwise provides the Debtors with sufficient evidence satisfactory to the Debtors, in their reasonable business judgment, that such Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed Sale transaction and to fully satisfy the Qualified Bidder's Purchase Price and other obligations under its Bid.

d.   **Markup of the Purchase Agreement**:  Each Bid must be accompanied by executed transaction documents, including a draft purchase agreement, the form of which will be provided to any Potential Bidder prior to the Bid Deadline and in the case of an Auction of AQV Assets for which there is a Stalking Horse Bidder, a markup of the Stalking Horse Agreement, including the exhibits, schedules, and ancillary agreements related thereto and any other related material documents integral to such Bid pursuant to which the Potential Bidder proposes to effectuate the proposed Sale, along with copies that are marked to reflect any amendments and modifications from the form purchase agreement provided to such Potential Bidder, which amendments and modifications may not be materially more burdensome or otherwise inconsistent with these Bidding Procedures.  The Debtors, in their reasonable business judgment will determine whether any such amendments and modifications are materially more burdensome.  Each such purchase agreement must provide for payment in cash at closing of the Bid Protections to the Stalking Horse Bidder, if any.  To the extent the Bid is for the AQV Business as a going concern (an "AQV Going Concern Bid"), the Potential Bidder will submit its own form purchase agreement.

e.   **Committed Financing**:  Each Bid must include committed financing, documented to the Debtors' reasonable satisfaction, that demonstrates the Potential Bidder has received sufficient debt and equity funding commitments to satisfy such Potential Bidder's Purchase Price and other obligations under its Bid, including the identity and contact information of the specific person(s) or entity(s) responsible for such committed financing whom Guggenheim Securities and Paul, Weiss should contact regarding such committed financing.  Such funding commitment shall not be subject to any internal approval, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors.  The Debtors may, in their reasonable business judgment, waive this condition on a case-by-case basis.

f.   **Pro Forma Capital Structure**:  Each Bid must include a description of the Bidder's pro forma capital structure.

g. **Contingencies; No Financing or Diligence Outs**:  Any Bid shall not be conditioned on obtaining or the sufficiency of financing, any internal approval, or on the outcome or review of due diligence, and each Bid must identify with particularity each and every condition to closing, including the executory contracts and unexpired leases for which assumption and assignment is required, if any.  The Potential Bidders are expected to have completed all of their due diligence by the Bid Deadline, including all business, legal, accounting, and other confirmatory diligence.  The extent and nature of any remaining due diligence should be set forth in a specific list attached to each Bid.

h. **As-Is, Where-Is**:  Each Bid must include a written acknowledgement and representation that the Potential Bidder: (i) has had an opportunity to conduct any and all due diligence prior to making its offer; (ii) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the AQV Assets in making its Bid; and (iii) did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, by the Debtors, Guggenheim Securities, or the Debtors' other advisors regarding the completeness of any information provided in connection therewith, except, solely with respect to the Debtors, as expressly stated in the Potential Bidder's proposed purchase agreement.

i. **Authorization**:  Each Bid must contain evidence that the Potential Bidder has obtained authorization or approval from its shareholders and/or its board of managers or directors, as applicable, with respect to the submission of its Bid and the consummation of the Sale contemplated by such Bid.

j. **Assumption and Assignment of Contracts and Adequate Assurance of Future Performance**:  Solely to the extent a Bid is an AQV Going Concern Bid, such Bid must (i) identify the Contracts to be assumed and assigned in connection with the proposed Sale, (ii) provide for the payment of all Cure Amounts related to such Contract by the Potential Bidder, (iii) demonstrate, in the Debtors' reasonable business judgment, that the Potential Bidder can provide adequate assurance of future performance under all such Contracts, and (iv) confirm in writing that it will pay any incremental costs and expenses related to operating the AQV Business (or applicable AQV Asset(s)), on terms and conditions acceptable to the Debtors, during the period required to comply with the Assumption and Assignment Procedures with respect to the Contracts to be assumed and assigned with the proposed Sale.

k. **Government Approvals**:  Each Bid, including any Stalking Horse Bid, must include a description of all governmental, licensing, regulatory, or other approvals or consents that are required to close the proposed Sale, together with evidence satisfactory to the Debtors of the ability to obtain

such consents or approvals in a timely manner, as well as a description of any material contingencies or other conditions that will be imposed upon, or that will otherwise apply to, the obtainment or effectiveness of any such consents or approvals.

l.      **Government Approvals Timeframe**:  Each Bid must set forth (i) an estimated timeframe for obtaining any required governmental, licensing, regulatory, or other approvals or consents for consummating any proposed Sale, and (ii) the basis for such estimate.

m.      **Compliance with Bankruptcy Code and Non-Bankruptcy Law; Acknowledgment**:  Each Bid must comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law.  Each Bid must also include a written acknowledgment that the bidder agrees to all of the terms of the Sale set forth in these Bidding Procedures and that it has not engaged in any collusion, coordination, or unfair competitive practices with respect to its Bid.

n.      **Irrevocable**:  A Potential Bidder's Bid must be binding and irrevocable unless and until the Debtors notify such Potential Bidder that such Bid has not been approved as a Successful Bid (as defined herein) or a Backup Bid at the applicable Sale Hearing.

o.      **No Fees**:  Each Potential Bidder presenting a Bid or Bids will bear its own costs and expenses (including legal fees) in connection with the proposed Sale, and by submitting its Bid is agreeing to refrain from and waive any assertion or request for a Break-up Fee, transaction fee, termination fee, Expense Reimbursement, or any similar type of payment or reimbursement on any basis, including under section 503(b) of the Bankruptcy Code; *provided* that the Debtors are authorized, in their discretion, to offer Bid Protections and/or an Expense Reimbursement to one or more Stalking Horse Bidders in accordance with these Bidding Procedures and the Bidding Procedures Order.

p.      **Joint Bids**:  The Debtors will be authorized to approve joint Bids in their reasonable discretion on a case-by-case basis.

q.      **Adherence to Bidding Procedures**:  By submitting its Bid, each Potential Bidder is agreeing to abide by and honor the terms of these Bidding Procedures and agrees not to submit a Bid or seek to reopen the Sale process or the Auction (if held) after conclusion of the selection of the Successful Bidder (as defined herein).  By submitting its Bid, each Potential Bidder is agreeing to comply in all respects with the Bankruptcy Code and any applicable non-bankruptcy law.

r.   **Consent to Jurisdiction**:   Each Potential Bidder must submit to the jurisdiction of the Court and waive any right to a jury trial in connection with any disputes relating to the Debtors' qualification of Bids, the Auction (if held), the construction and enforcement of these Bidding Procedures, the Sale documents, and consummation of a Sale (or Sales) (including confirmation of chapter 11 plan in connection therewith), as applicable.

s.   **Backup Bid**:  Each Bid shall provide that the Potential Bidder will serve as a Backup Bidder if the Potential Bidder's Bid is the next highest or otherwise best Bid.

t.   **Expected Closing Date**:   Each Bid must state the Potential Bidder's expected date of closing of the Sale; *provided* that such closing date may be extended pursuant to the terms of the purchase agreement.

Only Bids fulfilling all of the preceding requirements contained in this section may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bids," and only those parties submitting Qualified Bids may, at the Debtors' reasonable discretion, be deemed to be "Qualified Bidders."  All information disclosed by any Potential Bidder in connection with all of the preceding requirements will promptly be made available by the Debtors to the Consultation Parties; *provided* that any confidential financing and/or equity commitment documents received from any such Potential Bidder shall only be shared with the Consultation Parties on a "professional eyes only" basis.

As soon as reasonably practicable following the Bid Deadline, the Debtors shall determine which Potential Bidders are Qualified Bidders and will notify the Potential Bidders whether Bids submitted constitute Qualified Bids, which will enable such Qualified Bidders to participate in the Auction (if held).  Any Bid that is not deemed a Qualified Bid shall not be considered by the Debtors; *provided*, *however*, that if the Debtors receive a Bid prior to the Bid Deadline that does not satisfy the requirements of a Qualified Bid, the Potential Bidder shall have the opportunity to remedy any deficiencies of such Bid prior to the Bid Deadline.  The Debtors may accept a single Qualified Bid or multiple Bids for non-overlapping material portions of the AQV Assets that, if taken together in the aggregate, would otherwise meet the standards for a single Qualified Bid (in which event those multiple bidders will be treated as a single Qualified Bidder for purposes of selecting the Successful Bidder; *provided* that the Debtors also reserve the right to conduct more than one Sale process or Auction with respect to non-overlapping material portions of the AQV Assets).

For the avoidance of doubt, the Stalking Horse Bidder (if any) shall be deemed to be a Qualified Bidder, a Stalking Horse Bid shall be deemed a Qualified Bid, and a Stalking Horse Bidder (if any) may participate in the Auction with respect to the AQV Assets.

## IX.     Bid Deadline

Each Bid must be transmitted via email (in .pdf or similar format) so as to be **actually received** on or before the Bid Deadline, which is **4:00 p.m. (prevailing Central Time) on March 25, 2024**, by the following parties:

a.  **Debtors' Proposed Counsel**.  Paul, Weiss, Rifkind, Wharton & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019, Attn: Jacob A. Adlerstein (jadlerstein@paulweiss.com) and Kyle J. Kimpler (kkimpler@paulweiss.com).

b.  **Debtors' Proposed Co-Counsel**.  Porter Hedges LLP, 1000 Main St., 36th Floor Houston, Texas 77002, Attn:  John F. Higgins (jhiggins@porterhedges.com), Shane Johnson  (sjohnson@porterhedges.com)  and  Megan  Young-John  (myoung-john@porterhedges.com).

c.  **Debtors' Proposed Investment Banker**.  Guggenheim Securities, LLC, 330 Madison  Avenue,  New  York,  New  York  10017,  Attn:  Matthew  Scheidemann (Matthew.Scheidemann@guggenheimpartners.com),  John  Welsh (John.Welsh@guggenheimpartners.com)  and  Rupak  Rajaram (Rupak.Rajaram@guggenheimpartners.com).

*provided, however*, that the Debtors reserve the right, in their sole discretion, to reschedule or waive any Bid Deadline and related marketing process deadlines and hearing dates.

## X.     Evaluation of Qualified Bids

Prior to the Auction, if any, the Debtors, with the assistance of their advisors, will evaluate Qualified Bids and identify the Qualified Bid(s) that is, in the Debtors' reasonable business judgment, the highest or otherwise best Bid (the "Starting Bid").  In the event a Stalking Horse Bidder is selected, the Starting Bid shall include the amount provided for in the Stalking Horse Bid, *plus* the amount of any Bid Protections, *plus* a minimum overbid increment to be determined by the Debtors in their business judgment and announced at the Auction.  In addition, prior to the selection of the Successful Bidder, the Debtors may, in the Debtors' reasonable business judgment, engage in negotiations with bidders with respect to their Bids.  For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as the Starting Bid in an Auction, if any, if each such Qualified Bid contemplates the purchase of different AQV Assets.  In conducting the evaluation of the Qualified Bids, the Debtors may take into consideration the following non-exclusive factors (the "Bid Qualification Criteria"):

a.     the amount of the Purchase Price of the Qualified Bid;

b.     the value to be provided to the Debtors under the Bid, including the net economic effect upon the Debtors' estates, taking into account any Stalking Horse Bidder's rights to any Bid Protections;

c.      the proposed changes or modifications to the form purchase agreement delivered in connection with such Qualified Bid and the comparative favorability of the terms set forth in such proposed purchase agreement versus any Stalking Horse Agreements, to the extent applicable;

d.      the assets and liabilities excluded from the Qualified Bid and any executory contracts or leases or other liabilities proposed to be assumed;

e.      any benefit to the Debtors' bankruptcy estates from any assumption of liabilities or waiver of liabilities;

f.      the transaction structure and execution risk, including conditions to, timing of, and certainty of closing; termination provisions; availability of financing and financial wherewithal to meet all commitments; and required governmental or other approvals; and

g.      any other factors the Debtors may, consistent with their fiduciary duties, reasonably deem relevant.

Promptly after determination of the Starting Bid and prior to the Auction, the Debtors will (a) notify any applicable Stalking Horse Bidder(s) as to which Qualified Bid is the Starting Bid for particular AQV Assets and (b) distribute a copy of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid with respect to such AQV Assets.

If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors will refund such Qualified Bidder's Good Faith Deposit within five (5) business days after the Bid Deadline.

## XI.    No Qualified Bids

If only one timely Qualifying Bid (including the Stalking Horse Bidder's bid, if any) is received by the Bid Deadline or if a Stalking Horse Bidder's Qualifying Bid is determined to be the Starting Bid and there are no other Qualifying Bids, the Debtors shall not hold an Auction.  At any time, the Debtors reserve the right to cancel or postpone the Auction.

## XII.    Auction

If two or more Qualified Bids are received by the Bid Deadline with respect to any applicable AQV Assets, then the Debtors shall conduct the Auction with respect to such AQV Assets.  The Auction will commence on **March 27, 2024 at 9:00 a.m. (prevailing Central Time)**, via remote videoconference or in person at the Debtors' election, or such later time or other place as the Debtors determine, in which case, the Debtors shall timely notify all Qualified Bidders of such later time or other place, and file a notice of the change on the Court's docket for these chapter 11 cases.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

14

h.   only Qualified Bidders, including any Stalking Horse Bidders, shall be entitled to bid at the Auction;

i.   the Qualified Bidders, including any Stalking Horse Bidders, shall appear at the Auction via remote video or in person, as applicable, or through duly authorized representatives at the Auction;

j.   only the following parties shall be permitted to attend the Auction: authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, and the Consultation Parties and their respective advisors;

k.   bidding at the Auction will begin at the applicable Starting Bid;

l.   Bids at the Auction, including any Bids by any Stalking Horse Bidder (if any), must be made in minimum increments of such amount, as the Debtors determine and announce at or prior to the Auction, of additional value (including after payment of the Bid Protections to any Stalking Horse Bidders, if applicable);

m.   each Qualified Bidder will be permitted a reasonable time to respond to previous Bids at the Auction, as determined by the Debtors;

n.   the bidding will be transcribed or recorded to ensure an accurate recording of the bidding at the Auction;

o.   no Qualified Bidders (or their respective representatives) may communicate with one another, collude, or otherwise coordinate for purposes of participating in the Auction, and each Qualified Bidder will be required to confirm on the record at the Auction that (i) it has not engaged in any collusion, coordination, or unfair competitive practices with respect to the bidding or the Sale and (ii) its Bid represents an irrevocable, binding, good faith, and bona fide offer to purchase some or all of the AQV Assets identified in such Bid if such Bid is selected as the Successful Bid (as defined herein); *provided*, *however*, that two or more Qualified Bidders may coordinate to the extent they wish to provide a combined Bid if the Debtors approve such coordination in their reasonable discretion;

p.   the Auction will not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an overbid at the Auction to the then-prevailing highest Bid, subject to the Debtors' right to require last and final Bids to be submitted on a "blind" basis;

q.   the Debtors reserve the right, in their reasonable business judgment to adjourn the Auction one or more times to, among other things, (i) facilitate discussions between the Debtors and Qualified Bidders, (ii) allow Qualified

15

Bidders to consider how they wish to proceed, and (iii) provide Qualified Bidders the opportunity to provide the Debtors with such additional evidence as the Debtors, in their reasonable business judgment, may require that the Qualified Bidder has sufficient internal resources or has received sufficient non-contingent debt and/or equity funding commitments to consummate the proposed transaction at the prevailing amount; and

r.      the Auction will be governed by such other Auction Procedures as may be announced by the Debtors and their advisors from time to time on the record at the Auction; *provided* that such other Auction Procedures are (i) not inconsistent with the Bidding Procedures Order, the Bankruptcy Code, or any other order of the Court, (ii) disclosed orally or in writing to all Qualified Bidders, and (iii) determined by the Debtors to further the goal of attaining the highest or otherwise best offer for the applicable AQV Assets.

For the avoidance of doubt, nothing in the Auction Procedures (if an Auction is held) will prevent the Debtors from exercising their respective fiduciary duties under applicable law (as reasonably determined in good faith by the Debtors).

## XIII.   Acceptance of the Successful Bid

The Auction, if any, shall continue until only one Qualified Bid is the highest or otherwise best Bid to purchase some, all, or substantially all of the AQV Assets or any portion thereof, in the Debtors' reasonable business judgment and in a manner consistent with the exercise of their fiduciary duties and outlined below in further detail (a "<u>Successful Bid</u>"), and that further bidding is unlikely to result in a different Successful Bid or Successful Bids that would be acceptable to the Debtors, at which point, the Auction will be closed. When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may consider the Bid Qualification Criteria and other factors that the Debtors deem appropriate.

For the avoidance of doubt, the Debtors may select more than one Qualified Bid to collectively serve as a Successful Bid if each such Qualified Bid contemplates the purchase of different AQV Assets. The Qualified Bidder or Qualified Bidders having submitted the Successful Bid or Successful Bids will be deemed the "<u>Successful Bidder</u>" or "<u>Successful Bidders</u>" with respect to the applicable AQV Assets. Following the Auction, the Debtors shall promptly file notice of the Successful Bid(s) and the Successful Bidder(s) with the Court (the "<u>Notice of Successful Bidder(s)</u>"). The Successful Bid(s) cannot be assigned to any party without the prior written consent of the Debtors.

The Debtors shall present the results of the Auction at a hearing (the "<u>Sale Hearing</u>") and shall seek Court approval to enter into a binding purchase agreement or other definitive documentation with the Successful Bidder(s) on the terms of the Successful Bid(s) (the order approving such entry, the "<u>Sale Order</u>"). For the avoidance of doubt, the Sale Order shall deem the Debtors' selection of the Successful Bid(s) final and, subject to the designation of the Backup Bid (defined below), the Debtors shall not solicit or accept any further Bids or offers to submit a Bid after such selection; *provided* that, notwithstanding anything to the contrary in these Bidding

Procedures, nothing in these Bidding Procedures shall require the board of directors, board of managers, or such similar governing body of any Debtor to take or refrain from taking any action that would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Each Successful Bidder and the Debtors shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments, or other documents evidencing and containing the terms upon which each such Successful Bid was made.

## XIV.   Designation of Backup Bidder

The Qualified Bidder or Qualified Bidders with the second highest or otherwise best Bid(s) or combination(s) of Bids (each, a "Backup Bid") to purchase any or all of the applicable AQV Assets (each, a "Backup Bidder") will be determined by the Debtors at the conclusion of the Auction and will be announced at that time to all the Qualified Bidders participating in the Auction. Each Backup Bidder shall be required to keep its Qualified Bid open and irrevocable until the closing of the transaction with the applicable Successful Bidder.  The Backup Bidder's Good Faith Deposit shall be held in escrow until the closing of the transaction with the applicable Successful Bidder.  The Backup Bid(s) cannot be assigned to any party without the prior written consent of the Debtors.

If for any reason a Successful Bidder fails to consummate the purchase of such AQV Assets within the time permitted after the entry of the Sale Order, then the Backup Bidder will automatically be deemed to have submitted the Successful Bid for such AQV Assets, and the Backup Bidder shall be deemed a Successful Bidder for such AQV Assets and shall be required to consummate the Sale with the Debtors as soon as is commercially practicable without further order of the Court; *provided* that the Debtors shall file a Notice of Successful Bidder notifying the Court of the designation of the Backup Bidder as the Successful Bidder.

## XV.   Approval of Sale

The Debtors will present the results of the Auction, if any, to the Court for approval at the Sale Hearing, at which certain findings will be sought from the Court regarding the Auction, including, among other things, that: (a) the Auction was conducted, and the Successful Bidder or Successful Bidders were selected, in accordance with the Bidding Procedures; (b) the Auction was fair in substance and procedure; (c) the Successful Bid or Successful Bids were Qualified Bids as defined in the Bidding Procedures; and (d) consummation of any Sale(s) as contemplated by the Successful Bid(s) at the Auction will provide the highest or otherwise best offer for the Debtors and the Debtors' AQV Assets and is in the best interests of the Debtors and their estates.

The Sale Order submitted at the Sale Hearing shall provide that:  (i) if the Successful Bid is not consummated, the Debtors may file a notice with the Court designating the applicable Backup Bidder(s) as the applicable Successful Bidder(s), and such Backup Bidder(s) shall be deemed the Successful Bidder(s) for all purposes; and (ii) the Debtors will be authorized, but not required, to consummate all transactions contemplated by the applicable Backup Bid, once so designated as the Successful Bid, without further order of the Court or notice to any party.

The Sale Hearing is presently scheduled to commence on **April 4, 2024** at **9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Court. The Sale Hearing may be adjourned or continued to a later date by the Debtors by filing a notice with the Court prior to, or making an announcement at, such Sale Hearing. No further notice of any such adjournment or continuance will be required to be provided to any party.

## XVI.   Return of Good Faith Deposit

The Good Faith Deposit of a Successful Bidder shall, upon consummation of any Sale, be credited to the Purchase Price paid for the applicable AQV Assets. If a Successful Bidder fails to consummate the Sale, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors, and the Debtors specifically reserve the right to seek all available damages from the defaulting Successful Bidder.

The Good Faith Deposit of any Qualified Bidders that are not Successful Bidders or Backup Bidders will be returned within five (5) business days after the Auction or upon the permanent withdrawal of the applicable proposed Sale, and the Good Faith Deposit of any Backup Bidders will be returned within five (5) business days after the consummation of the applicable Sale or upon the permanent withdrawal of the applicable proposed Sale.

Each Good Faith Deposit shall be held in an interest-free escrow or other segregated account and at no time shall be deemed property of the Debtors' estates absent further order of the Court, except as otherwise provided herein.

## XVII.   Reservation of Rights

The Debtors reserve their rights to modify these Bidding Procedures in their reasonable business judgment, in a manner consistent with the exercise of their fiduciary duties, and in any manner that will best promote the goals of the bidding process, or to impose, at or before the Auction (if held), additional customary terms and conditions on the sale of some or all of the AQV Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction; (c) modifying the Auction Procedures or adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the applicable minimum overbid increment, including by requesting that Qualified Bidders submit last or final Bids on a "blind" basis. For the avoidance of doubt, the Debtors reserve the right at any point prior to the selection of the Successful Bidder to terminate the Sale processes contemplated hereunder with respect to any or all of the AQV Assets and seek to sell any or all AQV Assets pursuant to section 363(b) of the Bankruptcy Code.

## XVIII. Consent to Jurisdiction

All Qualified Bidders at the Auction, if any, will be deemed to have consented to the core jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to any Sale, the Auction, and the construction and enforcement of these Bidding Procedures, any written indications of interest, any Preliminary Bid Documents, or any documents satisfying Bid

Requirements, as applicable, and to have consented to the entry of a final order or judgment in any way related to these Bidding Procedures, the bid process, the Auction, the Sale Hearing, or the construction and enforcement of any agreement or any other document relating to a Sale if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the parties.  Any parties raising a dispute relating to these Bidding Procedures must request that such dispute be heard by the Court on an expedited basis.

## XIX.   Fiduciary Out

Notwithstanding anything to the contrary in these Bidding Procedures, nothing in these Bidding Procedures or the Bidding Procedures Order shall require a Debtor or the board of directors, board of managers, or similar governing body of a Debtor, after consulting with counsel, to take any action or to refrain from taking any action related to any sale transaction to the extent taking or failing to take such action would be inconsistent with applicable law or its fiduciary obligations under applicable law.

Further, notwithstanding anything to the contrary in these Bidding Procedures, through the date of the Auction (if held), nothing in these Bidding Procedures or the Bidding Procedures Order shall diminish the right of the Debtors and their respective directors, officers, employees, investment bankers, attorneys, accountants, consultants, and other advisors or representatives to: (a) consider, respond to, and facilitate alternate proposals for sales or other restructuring transactions involving any or all of the AQV Assets (each, an "Alternate Proposal"); (b) provide access to non-public information concerning the Debtors to any entity or enter into confidentiality agreements or nondisclosure agreements with any entity; (c) maintain or continue discussions or negotiations with respect to Alternate Proposals; (d) otherwise cooperate with, assist, participate in, or facilitate any inquiries, proposals, discussions, or negotiation of Alternate Proposals; and (e) enter into or continue discussions or negotiations with holders of claims against or equity interests in a Debtor or any other party in interest in these chapter 11 cases, or any other entity regarding Alternate Proposals.

**Exhibit A**

| **Vessel** | **IMO Ship Identification Number** | **Flag** |
|---|---|---|
| American Queen | 1030765 | U.S. |
| American Duchess | 1030831 | U.S. |
| American Countess | 1037706 | U.S. |
| American Empress | 1140867 | U.S. |
| Ocean Voyager | 9213129 | Bahamas |
| Ocean Navigator | 9213131 | Bahamas |
| Ocean Victory (leased/chartered)[1] | 9213129 | Bahamas |

---

[1]    10 year lease for Ocean Victory vessel expires in 2031.

**<u>Exhibit 2</u>**

**Form of Sale Notice**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) Case No. 24-90061 (MI) |
| | ) |
| Debtors. | ) (Joint Administration Requested) |
| | ) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' AQV ASSETS**
**FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for a transaction or transactions for the purchase of some, all, or substantially all of the Debtors' AQV Assets, including the AQV Vessels set forth in **Exhibit A** attached hereto, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, consistent with the bidding procedures (the "Bidding Procedures") approved by the Court by entry of an order on [●], 2024 [Docket No. [●]] (the "Bidding Procedures Order").[2] **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

---

> **Copies of the Bidding Procedures Order or other documents related thereto, including an exhibit identifying the AQV Assets, may be obtained, free of charge, on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.**

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures provide for the consideration of Qualified Bids to acquire substantially all of the AQV Assets or separate Bids to acquire portions of the AQV Assets, to the extent that the consummation of such transactions maximizes value for stakeholders and can be accomplished efficiently.  All interested parties are invited to provide materials (as described in the Bidding Procedures) to apply to become a Potential Bidder (as defined in the Bidding Procedures) and to submit a Bid in accordance with the Bidding Procedures and the Bidding Procedures Order.  The Bidding Procedures provide information regarding the requirements a Potential Bidder must satisfy to become a "Qualified Bidder" and a Bid to be deemed a "Qualified Bid" for purposes of competing at an Auction, if any.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **March 25, 2024 at 4:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, Bid Requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **March 27, 2024 at 9:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors.  Only authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, and the Consultation Parties and their respective advisors shall be permitted to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sale(s) at the Sale Hearing, which is presently scheduled to commence on April 4, 2024 at 9:30 a.m. (prevailing Central Time), or as soon thereafter as counsel may be heard, before the Honorable Marvin Isgur in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002. The Debtors reserve the right to change the date of the Auction and/or the Sale Hearing, in their reasonable business judgment, in accordance with the Bidding Procedures and the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to Cure Amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale <u>must</u>: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **<u>March 20, 2024 at 4:00 p.m. (prevailing Central Time)</u>** (the "<u>Sale Objection Deadline</u>"); *provided, however*, that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two (2) days following the notification filed with the Court of such election not to proceed with an Auction.

## <u>CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION</u>

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE AQV ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

  **PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

  **PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and Bidding Procedures Order, as well as all other documents related thereto, are available: (a) free of charge on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower or (b) for a fee via PACER by visiting http://www.txs.uscourts.gov.

[<em>Remainder of page intentionally left blank</em>]

February \_\_\_, 2024

By: */s/ DRAFT* _____

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Sarah Harnett (admitted *pro hac vice*)
Neda Davanipour (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
sharnett@paulweiss.com
ndavanipour@paulweiss.com

*Proposed Counsel to the Debtors and
the Debtors in Possession*

**Exhibit A**

| **Vessel** | **IMO Ship Identification Number** | **Flag** |
|---|---|---|
| American Queen | 1030765 | U.S. |
| American Duchess | 1030831 | U.S. |
| American Countess | 1037706 | U.S. |
| American Empress | 1140867 | U.S. |
| Ocean Voyager | 9213129 | Bahamas |
| Ocean Navigator | 9213131 | Bahamas |
| Ocean Victory (leased/chartered)[1] | 9213129 | Bahamas |

---

[1]   10 year lease for Ocean Victory vessel expires in 2031.

**Exhibit 3**

**Form of Rejection Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**NOTICE TO CONTRACT PARTIES TO REJECTED
EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

---

**YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

---

    **PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

    **PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the Court entered the *Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] by which the Court approved (a) procedures for the Debtors' pursuit of one or more sales or

---

[1]    The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the *Debtors' <u>Emergency</u> Motion for Entry of an Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. 21] (the "<u>Motion</u>"), as applicable.

dispositions of the AQV Business or some, all, or substantially all of the assets of the Debtors' AQV Business (the "AQV Assets") under section 363 of the Bankruptcy Code free and clear of any liens, claims, and encumbrances (each, a "Sale"), which procedures are annexed to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), and (b) the scheduling of a hearing to approve the Debtors' Sale of the AQV Assets (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that the Debtors have determined to reject the Rejected Contracts listed on the schedule attached hereto as __Exhibit A__ (the "Rejected Contracts Schedule"), to at least one of which you are a counterparty, effective as of the date listed on the Rejected Contracts Schedule (the "Rejection Date"). The Rejected Contracts Schedule can also be viewed on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.

**PLEASE TAKE FURTHER NOTICE** that if you object to the Debtors' decision to reject your contract, including to the Rejection Date, you may file an objection with the Court (a "Rejection Objection"). Your objection must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed with the Court **no later than [●] at 4:00 p.m. (prevailing Central Time)** (the "Rejection Objection Deadline"). ***You are encouraged to contact counsel for the Debtors prior to filing a Rejection Objection to determine if an informal resolution thereof may be reached.***

**PLEAE TAKE FURTHER NOTICE** that if you do not file a Rejection Objection by the Rejection Objection Deadline or in accordance with the foregoing specifications, the Debtors shall seek authorization in the Sale Order (if any) that the rejection of your contract is effective as of the Rejection Date, or alternatively by submitting a proposed order filed with the Court under a certificate of no objection. You will be forever barred, estopped, and enjoined from objecting to such rejection.

**PLEASE TAKE FURTHER NOTICE** that if a timely Rejection Objection served as specified above is not withdrawn or resolved, the Debtors shall request that the Court hear the objection at the Sale Hearing (if any), or schedule a hearing at a later date on such objection, in accordance with the Bidding Procedures Order. If such objection is overruled or withdrawn, then the applicable contract will be rejected in accordance with the Bidding Procedures Order.

*[Remainder of page intentionally left blank]*

February __, 2024

By: */s/ DRAFT* _____

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Sarah Harnett (admitted *pro hac vice*)
Neda Davanipour (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
sharnett@paulweiss.com
ndavanipour@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**Exhibit A – Rejected Contracts Schedule**

**<u>Exhibit 4</u>**

**Form of Cure Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | ) |
|  | ) Chapter 11 |
|  | ) |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) Case No. 24-90061 (MI) |
|  | ) |
| Debtors. | ) (Joint Administration Requested) |
|  | ) |

**NOTICE TO CONTRACT PARTIES TO POTENTIALLY
ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

> **YOU ARE RECEIVING THIS NOTICE BECAUSE YOU OR ONE OF YOUR AFFILIATES IS A COUNTERPARTY TO AN EXECUTORY CONTRACT OR UNEXPIRED LEASE WITH ONE OR MORE OF THE DEBTORS AS SET FORTH ON <u>EXHIBIT A</u> ATTACHED HERETO.**

    **PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of Texas (the "<u>Court</u>").

    **PLEASE TAKE FURTHER NOTICE** that on [●], 2024, the Court entered the *Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. [●]] (the "<u>Bidding Procedures Order</u>"),[2] by which the Court approved (a) procedures for the Debtors' pursuit of one or more sales or

---

[1]    The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]    All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the *Debtors' <u>Emergency</u> Motion for Entry of an Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of Their Assets Free and Clear of all Liens, Claims, and, Encumbrances* [Docket No. 21] (the "<u>Motion</u>"), as applicable.

dispositions of the AQV Business or some, all, or substantially all of the assets of the Debtors' AQV Business (the "AQV Assets") under section 363 of the Bankruptcy Code free and clear of any liens, claims, and encumbrances (each, a "Sale"), which procedures are annexed to the Bidding Procedures Order as Exhibit 1 (the "Bidding Procedures"), and (b) the scheduling of a hearing to approve the Debtors' Sale of the AQV Assets (the "Sale Hearing").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Bidding Procedures and the terms of any Successful Bid for the AQV Business as a going concern, the Debtors may assume and assign to the Successful Bidder or Successful Bidder(s) certain of the Assigned Contracts listed on the Assigned Contracts Schedule, attached hereto as Exhibit A, to at least one of which you are a counterparty, upon approval of a Sale or other transaction (including, as the case may be, confirmation of a chapter 11 plan). The Assigned Contracts Schedule can also be viewed on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower. The Debtors have conducted a review of their books and records and have determined that the cure amount for unpaid monetary obligations under such Assigned Contracts is as set forth on Exhibit A attached hereto (the "Cure Amounts").

**PLEASE TAKE FURTHER NOTICE** that if you disagree with the proposed Cure Amounts, object to a proposed assignment to the Successful Bidder of any Assigned Contract, or object to the ability of the Successful Bidder to provide adequate assurance of future performance with respect to any Assigned Contract, you may file an objection with the Court. Your objection must: (i) comply with the applicable provisions of the Bankruptcy Rules, the Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; and (ii) be filed with the Court **no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of this Notice** (the "Cure Objection Deadline"). *You are encouraged to contact counsel for the Debtors prior to filing any such objection to determine if an informal resolution thereof may be reached.*

**PLEASE TAKE FURTHER NOTICE** that notwithstanding the foregoing, if the Debtors file one or more revised versions of this Potential Assumption Notice (a "Supplemental Cure Notice"), as set forth in the Order, any counterparty to a Contract that is (a) added to a Supplemental Cure Notice or (b) that is subject to an amended proposed cure amount shall have 14 calendar days following the service of such Supplemental Potential Assumption Notice to file an objection. Objections to the proposed assignment of any Contract to the applicable Successful Bidder (other than Cure Objections) shall (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Bankruptcy Local Rules, and any order governing the administration of these chapter 11 cases; (iii) state with specificity the nature of the objection; and (iv) be filed with the Court and actually received by the parties listed above no later than 4:00 p.m. (prevailing Central Time) on the date that is 14 days following the date of service of such Supplemental Cure Notice.

**PLEAE TAKE FURTHER NOTICE** that if no objection to (a) the Cure Amounts, (b) the proposed assignment and assumption of any Assigned Contract, or (c) adequate assurance of the Successful Bidder's ability to perform is filed by the Cure Objection Deadline or Adequate Assurance Objection Deadline, as applicable, then (i) you will be deemed to have stipulated that the Cure Amounts as determined by the Debtors are correct, (ii) you will be forever barred,

estopped, and enjoined from asserting any additional cure amount under the proposed Assigned Contract, and (iii) you will be forever barred, estopped, and enjoined from objecting to such proposed assignment to the Successful Bidder on the grounds that the Successful Bidder has not provided adequate assurance of future performance as of the closing date of the Sale.

**PLEASE TAKE FURTHER NOTICE** that any Cure Objection in connection with the Successful Bid that complies with these procedures yet remains unresolved as of the commencement of the Sale Hearing, shall be heard at a later date to be fixed by the Court in accordance with the Bidding Procedures.

**PLEASE THAT FURTHER NOTICE** that, notwithstanding anything herein, the mere listing of any Assigned Contract on the Cure Notice does not require or guarantee that such Assigned Contract will be assumed by the Debtors at any time or assumed and assigned, and all rights of the Debtors and the Successful Bidder with respect to such Assigned Contract are reserved. Moreover, the Debtors explicitly reserve their rights, in their reasonable discretion, to seek to reject or assume each Assigned Contract pursuant to section 365(a) of the Bankruptcy Code.

**PLEASE TAKE FURTHER NOTICE** that, nothing herein shall (i) alter, in any way, the prepetition nature of the Assigned Contracts or the validity, priority, or amount of any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract, (ii) create a post-petition contract or agreement, or (iii) elevate to administrative expense priority any claims of a counterparty to any Assigned Contract against the Debtors that may arise under such Assigned Contract.

*[Remainder of page intentionally left blank]*

[_____], 2024

By: */s/ DRAFT* _____

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Sarah Harnett (admitted *pro hac vice*)
Neda Davanipour (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
sharnett@paulweiss.com
ndavanipour@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**<u>Exhibit A – Cure Amounts</u>**