**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | Case No. 24-90061 (MI) |
| Debtors. | (Jointly Administered) |

# PROOF OF PUBLICATION

Attached hereto as Exhibit A and Exhibit B are the Proofs of Publication for the *Notice of Auction for the Sale of the Debtors' AQV Assets Free and Clear of Any and All Liens, Claims, and Encumbrances* as follows:

| Publication | Publication Date | Exhibit |
|---|---|---|
| **The New York Times** | **March 1, 2024** | **Exhibit A** |
| **TradeWinds** | **March 8, 2024** | **Exhibit B** |

/s/ Randy Lowry
Randy Lowry
Omni Agent Solutions, Inc.
5955 DeSoto Avenue, Suite 100
Woodland Hills, California 91367
(818) 906-8300
*Claims, Noticing, and Administrative Agent for the Debtors*

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

# **EXHIBIT A**



620 8th Avenue
New York, NY 10018
nytimes.com

## PROOF OF PUBLICATION

March 1, 2024

I, Larnyce Tabron, in my capacity as a Principal Clerk of the Publisher of The New York Times, a daily newspaper of general circulation printed and published in the City, County, and State of New York, hereby certify that the advertisement annexed hereto was published in the editions of The New York Times on the following date or dates, to wit on.

3/1/2024, NY & NATL, pg B5

Larnyce Tabron

JOHN MCGILL
Electronic Notary Public
Commonwealth of Virginia
Registration No. 8038092
My Commission Expires Dec 31, 2027

Digitally signed by John McGill
Date: 2024.03.01 14:53:07 -05'00'

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Chapter 11 |
| | ) | Case No. 24-90061 (MI) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' AQV ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for a transaction or transactions for the purchase of some, all, or substantially all of the Debtors' AQV Assets, including the AQV Vessels set forth in **Exhibit A** attached hereto, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, consistent with the bidding procedures (the "Bidding Procedures") approved by the Court by entry of an order on February 28, 2024 [Docket No. 166] (the "Bidding Procedures Order").[2] **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto, including an exhibit identifying the AQV Assets, may be obtained, free of charge, on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.**

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures provide for the consideration of Qualified Bids to acquire substantially all of the AQV Assets or separate Bids to acquire portions of the AQV Assets, to the extent that the consummation of such transactions maximizes value for stakeholders and can be accomplished efficiently. All interested parties are invited to provide materials (as described in the Bidding Procedures) to apply to become a Potential Bidder (as defined in the Bidding Procedures) and to submit a Bid in accordance with the Bidding Procedures and the Bidding Procedures Order. The Bidding Procedures provide information regarding the requirements a Potential Bidder must satisfy to become a "Qualified Bidder" and a Bid to be deemed a "Qualified Bid" for purposes of competing at an Auction, if any.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **March 25, 2024** at **4:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, Bid Requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **March 27, 2024 at 9:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors. Only authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, and the Consultation Parties and their respective advisors shall be permitted to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sale(s) at the Sale Hearing, which is presently scheduled to commence on **April 4, 2024 at 9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Marvin Isgur in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002. The Debtors reserve the right to change the date of the Auction and/or the Sale Hearing, in their reasonable business judgment, in accordance with the Bidding Procedures and the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to Cure Amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **March 20, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline"); *provided, however*, that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two (2) days following the notification filed with the Court of such election not to proceed with an Auction.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE AQV ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and Bidding Procedures Order, as well as all other documents related thereto, are available: (a) free of charge on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower or (b) for a fee via PACER by visiting http://www.txs.uscourts.gov.

February 28, 2024, By: /s/ John F. Higgins, **PORTER HEDGES LLP**, John F. Higgins (TX Bar No. 09597500), M. Shane Johnson (TX Bar No. 24083263), Megan Young-John (TX Bar No. 24088700), 1000 Main St., 36th Floor, Houston, Texas 77002, Telephone: (713) 226-6000, Facsimile: (713) 226-6248, jhiggins@porterhedges.com, sjohnson@porterhedges.com, myoung-john@porterhedges.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, Paul M. Basta (admitted *pro hac vice*), Jacob A. Adlerstein (admitted *pro hac vice*), Kyle J. Kimpler (admitted *pro hac vice*), Sarah Harnett (admitted *pro hac vice*), Neda Davanipour (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, pbasta@paulweiss.com, jadlerstein@paulweiss.com, kkimpler@paulweiss.com, sharnett@paulweiss.com, ndavanipour@paulweiss.com, *Proposed Counsel to the Debtors and the Debtors in Possession*

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**Exhibit A**

**Vessel, IMO Ship Identification Number, Flag:** American Queen, 1030765, U.S.; American Duchess, 1030831, U.S.; American Countess, 1037706, U.S.; American Empress, 1140867, U.S.; Ocean Voyager, 9213129, Bahamas; Ocean Navigator, 9213131, Bahamas; Ocean Victory (leased/chartered)[1], 9213129, Bahamas

[1] 10 year lease for Ocean Victory vessel expires in 2031.

**REGULATION**

# Boeing Is Said to Face Justice Dept. Review

By NIRAJ CHOKSHI and GLENN THRUSH

The Justice Department is reviewing whether an early January incident in which a part of a Boeing plane blew out in midflight violated a 2021 agreement to settle a criminal charge against the company, according to a person familiar with the review.

Boeing agreed to pay more than $2.5 billion to settle the charge, which stemmed from two fatal crashes of its 737 Max 8 planes. The deal, reached in the final weeks of the Trump administration, was criticized at the time as being too lenient on the company.

Under the terms, Boeing agreed to compensate the families of the crash victims as well as the airlines affected by the grounding of the planes. The Justice Department agreed to drop a criminal charge that was based on the actions of two employees who had withheld information from the F.A.A.

In January, a panel in the fuselage of a larger Max 9 blew out at an altitude of 16,000 feet shortly after takeoff from Portland, Ore., exposing passengers to deafening wind. There were no serious injuries, but the incident could have been catastrophic had it occurred minutes later, at a higher altitude. The panel is known as a "door plug," which is used to cover a gap left by an unneeded exit door.

*A Max 9 door blowout may have violated a settlement.*

The Justice Department review was reported earlier by Bloomberg.

The episode in January reignited the intense scrutiny and criticism that Boeing faced after crashes in Indonesia in late 2018 and Ethiopia in early 2019 killed a combined 346 people. The Max 8 and Max 9 were banned from flying globally days after the second crash. Since the jetliners started flying again in late 2020, they have carried out several million flights worldwide.

The weight of the crisis appeared to be lifting before the January incident. A preliminary report from the National Transportation Safety Board suggested that the plane in that episode may have left Boeing's factory without bolts needed to secure the panel. The Federal Aviation Administration immediately grounded nearly 200 Max 9 jets in the United States, pending inspections. Flights using the plane have since resumed.

The F.A.A. also increased inspections of the Washington State factory where Boeing makes the Max. On Wednesday, the agency gave the company 90 days to put together a plan to improve quality control.

"Boeing must commit to real and profound improvements," the F.A.A.'s administrator, Mike Whitaker, said in a statement announcing the deadline. "Making foundational change will require a sustained effort from Boeing's leadership, and we are going to hold them accountable every step of the way, with mutually understood milestones and expectations."

Earlier in the week, a group of F.A.A. experts released a long-awaited report stemming from the Max crashes, and it found that Boeing's safety culture was still lacking, despite improvements in recent years.

SCOTT MCINTYRE FOR THE NEW YORK TIMES

The proposed regulations would require additional training for workers.

# U.S. Offers New Rules to Help Air Travelers in Wheelchairs

By MARK WALKER

WASHINGTON — The Biden administration announced on Thursday that it was proposing new regulations for how airlines must treat passengers in wheelchairs, an effort aimed at improving air travel for people with disabilities.

Under the proposal, damaging or delaying the return of a wheelchair would be an automatic violation of an existing federal law that bars airlines from discriminating against people with disabilities. The Transportation Department said that change would make it easier for the agency to penalize airlines for mishandling wheelchairs.

The proposed regulations would also require more robust training for workers who physically assist disabled passengers or handle their wheelchairs.

"There are millions of Americans with disabilities who do not travel by plane because of inadequate airline practices and inadequate government regulation, but now we are setting out to change that," Transportation Secretary Pete Buttigieg said in a statement. "This new rule would change the way airlines operate to ensure that travelers using wheelchairs can travel safely and with dignity."

For people in wheelchairs, flying can be difficult and uncomfortable, and airline mishaps can make for an even more agonizing experience. More than 11,000 wheelchairs and scooters were mishandled by airlines last year, according to data reported to the Transportation Department.

The proposed regulations add to earlier moves by the Biden administration intended to improve the flying experience for disabled travelers. In 2022, the Transportation Department published a bill of rights for airline passengers with disabilities. Last year, the agency finalized new regulations to require more commercial aircraft to have accessible bathrooms.

Senator Tammy Duckworth of Illinois, a former Army helicopter pilot who uses a wheelchair after losing both her legs in the Iraq war, noted that airlines had previously fought unsuccessfully against a rule that requires them to disclose the number of wheelchairs and scooters they mishandle. Ms. Duckworth said that since airlines began reporting those numbers several years ago, she had noticed improvements at airports around the country.

Ms. Duckworth, a Democrat and the chairwoman of the Senate Commerce Committee's aviation subcommittee, said she hoped the proposed regulations would lead to a higher level of accountability for airlines. But she added that Congress should take steps to protect the policies that the Biden administration is moving to put in place.

"This rule could be overturned by a future Department of Transportation under a different administration," said Ms. Duckworth, who attended an event at the White House on Thursday where the new proposal was discussed.

At the event, Carl Blake, the chief executive of Paralyzed Veterans of America, which had petitioned the Transportation Department to develop new regulations to improve the boarding and deplaning process for disabled passengers, said he had never met a member of his organization who flew and whose wheelchair had not been damaged at some point.

Mr. Blake said the problem urgently needed to be addressed, and he emphasized the importance of using the new regulations to hold airlines accountable.

In a statement, a spokeswoman for Airlines for America, a trade group representing the country's largest air carriers, said that airlines had been making strides to improve the experience for disabled passengers through steps like enhancing employee training.

"U.S. airlines are committed to offering a high level of customer service and providing a positive and safe flight experience for passengers with disabilities," said the spokeswoman, Hannah Walden.

Public comments on the proposed regulations will be accepted for 60 days. The Transportation Department did not specify a timeline for when the new measures could be finalized.

# Biden Cites Security Threat in Blocking Chinese Cars

By JIM TANKERSLEY

WASHINGTON — President Biden took steps on Thursday toward blocking internet-connected Chinese cars and trucks from entry to the American auto market, including electric vehicles, saying they posed risks to national security because their operating systems could send sensitive information to Beijing.

The immediate action was the opening of a Commerce Department investigation into security threats, which could lead to new regulations or restrictions on Chinese vehicles.

But administration officials made clear it was the first step in what could be a wide range of policy responses meant to stop low-cost Chinese electric vehicles — either manufactured in China or assembled by Chinese companies in countries like Mexico — from flooding the U.S. market and potentially driving domestic automakers out of business.

China has rapidly scaled up its production of electric vehicles in recent years, setting it on a collision course with Mr. Biden's industrial policy efforts that seek to help American automakers dominate that market at home and abroad. Some of its smaller cars sell for less than $11,000 each — significantly less than a comparable American-made electric vehicle.

The administration's actions on Thursday come as Mr. Biden's likely opponent in November, former President Donald J. Trump, criticizes him for pushing automakers toward electric vehicles — and as each of the candidates tries to cast himself as tougher on China.

The measures stemmed from conversations with Detroit automakers, union autoworkers and the E.V. giant Tesla, which was recently supplanted by Chinese company BYD as the world's biggest seller of electric cars.

"China is determined to dominate the future of the auto market, including by using unfair practices," Mr. Biden said in a statement accompanying the announcement. "China's policies could flood our market with its vehicles, posing risks to our national security. I'm not going to let that happen on my watch."

Thursday's action did not immediately impose new barriers on Chinese electric vehicles, which already face high tariffs and have not yet penetrated the growing American market for clean energy cars.

At Mr. Biden's direction, the Commerce Department has begun an investigation into the threat from technology embedded in Chinese electric vehicles. That includes Chinese-made versions of common automotive software, which administration officials said could track where Americans drove and charged their vehicles, or even what music or podcasts they listened to on the road.

Administration officials noted that American auto manufacturers that sold vehicles to customers in China were essentially forced by Chinese officials to use Chinese software in their vehicles.

The announcement was the latest example of Mr. Biden's moving to ramp up technology restrictions on China, and continued a bipartisan trend toward more antagonistic trade relations between the world's largest economies. The Commerce Department investigation ordered by Mr. Biden marks the first use of a new authority established under an executive order issued in 2019 by Mr. Trump.

Biden officials said the investigation could result in new American restrictions on vehicles that depended on software from China.

Administration officials are eyeing other steps to further impede imports of Chinese vehicles, which have already surged through European markets, as a result of low prices driven in part by significantly lower labor costs. That could include increasing a 25 percent tariff on China's vehicles.

"We'll certainly continue to look at a range of policies to make sure that our carmakers and our autoworkers continue to be the most competitive in the world," Lael Brainard, who heads the president's National Economic Council, said in an interview.

The Treasury Department has already proposed rules meant to limit China's ability to supply materials for cars and trucks that qualify for a $7,500 electric vehicle tax credit included in Mr. Biden's signature climate bill.

The Commerce Department investigation announced on Thursday grew from a series of conversations that administration officials had with automakers last fall, after the settlement of a United Automobile Workers strike during which Mr. Biden stood with the union and joined a picket line. The carmakers told administration officials about the restrictions they faced selling in China, including on software.

Biden aides began to grow concerned about what might happen if the United States did not impose similar restrictions on Chinese software, which administration officials say only a handful of cars in America run on today.

China is "flooding foreign markets with their autos," Ms. Brainard said. "Many of those vehicles can connect on a continuous basis with our infrastructure potentially, with the drivers' smartphones, with nearby cars. So they're collecting a tremendous amount of information."

In a briefing call with reporters, Gina M. Raimondo, the commerce secretary, said it was "scary to contemplate the cyberrisks, espionage risks, that these pose."

Ms. Brainard stressed that Thursday's action was limited to software concerns. But she added, "It's also very important for our economic security and our national security to have a strong and vibrant U.S. auto industry, with U.S. autoworkers."

DOUG MILLS/THE NEW YORK TIMES · ELIZABETH FRANTZ/REUTERS

President Biden warned of China's determination to dominate the auto market. Lael Brainard, left, of the National Economic Council, cited the threat of vehicles' software.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

In re: HORNBLOWER HOLDINGS LLC, *et al.*,[1] Debtors. ) Chapter 11 ) Case No. 24-90061 (MI) ) (Joint Administration Requested)

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' AQV ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for a transaction or transactions for the purchase of some, all, or substantially all of the Debtors' AQV Assets, including the AQV Vessels set forth in **Exhibit A** attached hereto, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, consistent with the bidding procedures (the "Bidding Procedures") approved by the Court by entry of an order on February 28, 2024 [Docket No. 166] (the "Bidding Procedures Order").[2] **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto, including an exhibit identifying the AQV Assets, may be obtained, free of charge, on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.**

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures provide for the consideration of Qualified Bids to acquire substantially all of the AQV Assets or separate Bids to acquire portions of the AQV Assets, to the extent that the consummation of such transactions maximizes value for stakeholders and can be accomplished efficiently. All interested parties are invited to provide materials (as described in the Bidding Procedures) to apply to become a Potential Bidder (as defined in the Bidding Procedures) and to submit a Bid in accordance with the Bidding Procedures and the Bidding Procedures Order. The Bidding Procedures provide information regarding the requirements a Potential Bidder must satisfy to become a "Qualified Bidder" and a Bid to be deemed a "Qualified Bid" for purposes of competing at an Auction, if any.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **March 25, 2024** at **4:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, Bid Requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **March 27, 2024 at 9:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors. Only authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, and the Consultation Parties and their respective advisors shall be permitted to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sale(s) at the Sale Hearing, which is presently scheduled to commence on **April 4, 2024 at 9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Marvin Isgur in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002. The Debtors reserve the right to change the date of the Auction and/or the Sale Hearing, in their reasonable business judgment, in accordance with the Bidding Procedures and the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to Cure Amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **March 20, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline"); *provided, however*, that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two (2) days following the notification filed with the Court of such election not to proceed with an Auction.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE AQV ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and Bidding Procedures Order, as well as all other documents related thereto, are available: (a) free of charge on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower or (b) for a fee via PACER by visiting http://www.txs.uscourts.gov.

February 28, 2024, By: /s/ John F. Higgins, **PORTER HEDGES LLP**, John F. Higgins (TX Bar No. 09597500), M. Shane Johnson (TX Bar No. 24083263), Megan Young-John (TX Bar No. 24088700), 1000 Main St., 36th Floor, Houston, Texas 77002, Telephone: (713) 226-6000, Facsimile: (713) 226-6248, jhiggins@porterhedges.com, sjohnson@porterhedges.com, myoung-john@porterhedges.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**, Paul M. Basta (admitted *pro hac vice*), Jacob A. Adlerstein (admitted *pro hac vice*), Kyle J. Kimpler (admitted *pro hac vice*), Sarah Harnett (admitted *pro hac vice*), Neda Davanipour (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, pbasta@paulweiss.com, jadlerstein@paulweiss.com, kkimpler@paulweiss.com, sharnett@paulweiss.com, ndavanipour@paulweiss.com, *Proposed Counsel to the Debtors and the Debtors in Possession*

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**Exhibit A**

**Vessel, IMO Ship Identification Number, Flag:** American Queen, 1030765, U.S.; American Duchess, 1030831, U.S.; American Countess, 1037706, U.S.; American Empress, 1140867, U.S.; Ocean Voyager, 9213129, Bahamas; Ocean Navigator, 9213131, Bahamas; Ocean Victory (leased/chartered)[1], 9213129, Bahamas

[1] 10 year lease for Ocean Victory vessel expires in 2031.

**IN THE UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, DALLAS DIVISION**

In re: IMPEL PHARMACEUTICALS INC., *et al.*,[1] Debtors. ) Chapter 11 ) Case No. 23-80016 (SGJ) ) (Jointly Administered)

**NOTICE OF (I) COMBINED HEARING ON THE DISCLOSURE STATEMENT AND CONFIRMATION OF THE JOINT PLAN OF LIQUIDATION, (II) DEADLINE TO CAST VOTES TO ACCEPT OR REJECT THE PLAN, AND (III) NOTICE OF OBJECTION AND OPT OUT RIGHTS**

On February 27, 2024, the United States Bankruptcy Court for the Northern District of Texas (the "Bankruptcy Court") entered an order [Docket No. 260] (the "Disclosure Statement Order"): (a) authorizing the debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"), to solicit acceptances for the *First Amended Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 253] (as such may be modified, amended, or supplemented from time to time hereafter, including all exhibits and supplements thereto, the "Plan");[2] (b) conditionally approving the *First Amended Disclosure Statement for Joint Plan of Liquidation of Impel Pharmaceuticals Inc. and Impel NeuroPharma Australia Pty Ltd* [Docket No. 254] (as such may be modified, amended, or supplemented from time to time hereafter, including all exhibits and supplements thereto, the "Disclosure Statement") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code; (c) approving the solicitation materials and documents to be included in the solicitation packages (the "Solicitation Packages"); and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

A hearing on confirmation of the Plan and the adequacy of the Disclosure Statement (the "Combined Hearing") will be held before the Honorable Judge Stacey G. C. Jernigan, United States Bankruptcy Judge, in Courtroom 1 of the United States Bankruptcy Court, 1100 Commerce Street, Dallas, Texas 75242, on **April 1, 2024, at 9:30 a.m., prevailing Central Time**, to consider the adequacy of the Disclosure Statement, any objections to the Disclosure Statement, confirmation of the Plan, any objections thereto, and any other matter that may properly come before the Bankruptcy Court.

**Please be advised that you may participate at the hearing either in person or by an audio or video connection.** Audio communication will be by use of the Court's dial-in facility. You may access the facility at **(650) 479-3207**. Video communication will be by use of the Cisco WebEx platform. Connect via the Cisco WebEx application or click the link on Judge Jernigan's home page, https://us-courts.webex.com/meet/jerniga. The meeting code is 479 393 582. Click the settings icon in the upper right corner and enter your name under the personal information setting. Please be advised that the Combined Hearing may be continued from time to time by the Court or the Debtor without further notice other than by such adjournment being announced in open court or by a notice of adjournment filed with the Court and served on other parties entitled to notice.

**CRITICAL INFORMATION REGARDING VOTING ON THE PLAN**

Voting Record Date. The Voting Record date is **February 23, 2024**, which is the date for determining which Holders of Claims in the Voting Classes are entitled to vote on the Plan.

Voting Deadline. The deadline for voting on the Plan is **March 27, 2024 at 4:00 p.m. prevailing Central Time**. If you received a Solicitation Package, including a Ballot, and intend to vote on the Plan you must: (a) follow the instructions on the Ballot carefully; (b) complete all of the required information on the Ballot; and (c) execute and return your completed Ballot according to and as set forth in detail in the voting instructions on the Ballot so that it is actually received by the Debtors' claims, noticing and solicitation agent, Omni Agent Solutions, Inc., (the "Claims, Noticing and Solicitation Agent") on or before the Voting Deadline. A failure to follow such instructions may disqualify your vote.

Plan Objection Deadline. Objections (each, an "Objection"), if any, to the Plan or the Disclosure Statement must: (a) be in writing; (b) conform to the Federal Rules of Bankruptcy Procedure, the Bankruptcy Local Rules for the Northern District of Texas, and any orders of the Court; (c) state, with particularity, the legal and factual bases and nature of any objection and, if practicable, a proposed modification to the Plan (or related materials) that would resolve such objection; and (d) be filed with the Bankruptcy Court (contemporaneously with a proof of service) and served upon the following parties so as to be actually received on or before **March 27, 2024 at 4:00 p.m. prevailing Central Time**: (i) **Debtors: Impel Pharmaceuticals, Inc.**, 201 Elliott Avenue West, Suite 260, Seattle, Washington 98119, Attn: Brandon Smith, Chief Restructuring Officer, Email: brandon.smith@teneo.com; (ii) **Counsel to the Debtors: Sidley Austin LLP**, 555 West Fifth Avenue, Los Angeles, California 90013, Attn: Samuel A. Newman, Email: sam.newman@sidley.com -and- **Sidley Austin LLP**, 2021 McKinney Avenue, Suite 2000, Dallas, Texas 75201, Attn: Rakhee V. Patel, Email: rpatel@sidley.com -and- **Sidley Austin LLP**, One South Dearborn, Chicago, IL 60603, Attn: Jackson T. Garvey, Email: jgarvey@sidley.com; and (iii) **United States Trustee: Office of The United States Trustee**, 1100 Commerce Street, Room 976, Dallas, Texas 75242, Attn: Lisa L. Lambert.

**UNLESS AN OBJECTION IS TIMELY SERVED AND FILED IN ACCORDANCE WITH THIS NOTICE IT MAY NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

**CRITICAL INFORMATION REGARDING OBJECTING TO THE PLAN**

**ARTICLE IX OF THE PLAN CONTAINS RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS, AND ARTICLE IX.B CONTAINS A THIRD PARTY RELEASE. THUS, YOU ARE ADVISED TO REVIEW AND CONSIDER THE PLAN CAREFULLY BECAUSE YOUR RIGHTS MIGHT BE AFFECTED THEREUNDER.**

**ALL HOLDERS OF CLAIMS OR INTERESTS THAT DO NOT (A) ELECT TO OPT OUT OF THE THIRD PARTY RELEASE CONTAINED IN ARTICLE IX.B OF THE PLAN; OR (B) TIMELY FILE WITH THE BANKRUPTCY COURT ON THE DOCKET OF THE CHAPTER 11 CASES AN OBJECTION TO THE THIRD PARTY RELEASES CONTAINED IN ARTICLE IX.B OF THE PLAN THAT IS NOT RESOLVED BEFORE CONFIRMATION WILL BE DEEMED TO HAVE EXPRESSLY, UNCONDITIONALLY, GENERALLY, INDIVIDUALLY, AND COLLECTIVELY CONSENTED TO THE THIRD PARTY RELEASE AND DISCHARGE OF ALL CLAIMS AND CAUSES OF ACTION AGAINST THE DEBTORS AND THE RELEASED PARTIES. PLEASE BE ADVISED THAT YOUR DECISION TO OPT OUT DOES NOT AFFECT THE AMOUNT OF DISTRIBUTION YOU WILL RECEIVE UNDER THE PLAN. SPECIFICALLY, YOUR RECOVERY UNDER THE PLAN WILL BE THE SAME IF YOU OPT OUT.**

Article IX.B of the Plan contains the following Third Party Release: As of the Effective Date, each of the Releasing Parties other than the Debtors shall, and shall be deemed to have, expressly, absolutely, unconditionally, irrevocably, generally, individually, and collectively, released, acquitted, and discharged each of the Released Parties from any and all Causes of Action, including any Avoidance Actions or derivative Causes of Action asserted or assertable by or on behalf of a Debtor, Wind-Down Debtor, or any of their Estates, and any Causes of Action asserted or assertable by or on behalf of the Holder of any Claim or Interest or other Entity, whether known or unknown, foreseen or unforeseen, asserted or unasserted, matured or unmatured, existing or hereafter arising, in law, equity, contract, tort, or otherwise that the Releasing Parties (whether individually or collectively) ever had, now have, or thereafter can, shall, or may have, based on or relating to, or in any manner arising from, in whole or in part: (a) the Debtors, the Debtors' in- or out-of-court restructuring efforts, the Marketing Process, intercompany transactions, the Chapter 11 Cases, the purchase, sale, or rescission of any security of the Debtors, the formulation, preparation, dissemination, negotiation, or filing of the Transaction Documents, the PSA, the Disclosure Statement, or the Plan, including the Plan Supplement; (b) any Liquidation Transaction, contract, instrument, release, or other agreement or document (including any legal opinion requested by any Entity regarding any transaction, contract, instrument, document, or other agreement contemplated by the Plan or the reliance by any Released Party on the Plan or the Confirmation Order in lieu of such legal opinion) created or entered into in connection with the Sale Transaction, the PSA, the Disclosure Statement, or the Plan, including the Plan Supplement; (c) the business or contractual arrangements between any Debtor and any Releasing Party, whether before or during the Debtors' restructuring, or the restructuring of Claims and Interests before or during the Chapter 11 Cases; (d) the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is affected by or classified in the Plan; (e) the filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of consummation of the Plan, the administration and implementation of the Plan, including any issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement; (f) any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date arising from or relating to any of the foregoing, including, without limitation, the Prepetition Loan Documents, and all matters relating thereto; or (g) any direct claims the Prepetition Term Loan secured Parties may have against former directors and officers of the Debtors who were not directors or officers as of the Petition Date.

Notwithstanding anything to the contrary in the foregoing, the releases set forth above shall not release, prejudice, limit, impact, or otherwise impair: (a) to the extent that any Causes of Action against any Releasing Party are not released or discharged pursuant to the Plan, any rights of such Releasing Party to assert any and all counterclaims, crossclaims, offsets, indemnities, claims for contribution, defenses, and similar claims in response to such Causes of Action; (b) any rights of the Prepetition Term Loan Administrative Agent to (i) payment of fees, expenses, and indemnification obligations as against any money or property distributable to holders of Claims under the Prepetition Term Loan Credit Agreement, respectively, including any rights to priority of payment and/or to exercise charging liens or (ii) seek compensation and/or reimbursement of fees and expenses in accordance with the terms of the Plan and Confirmation Order, as applicable; (c) any Prepetition Term Loan Secured Party from pursuing claims in its own name against Adrian Adams; (d) any commercial Cause of Action arising in the ordinary course of business, such as accounts receivable and accounts payable on account of goods and services being performed; (e) any post- Effective Date obligations of any party or Entity under the Plan, any Liquidation Transaction, or any document, instrument, or agreement executed to implement the Plan (including those set forth in the Plan Supplement); or (f) any obligations of any party or Entity under the Transaction Documents.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained herein, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (a) essential to the Confirmation of the Plan; (b) given in exchange for the good and valuable consideration and substantial contributions provided by the Released Parties; (c) a good faith settlement and compromise of the Causes of Action released by the Third-Party Release; (d) in the best interests of the Debtors and their Estates; (e) fair, equitable, and reasonable; (f) given and made after due notice and opportunity for hearing; (g) consensual; and (h) a bar to any of the Releasing Parties asserting any Claim or Cause of Action released pursuant to the Third-Party Release.

Each of the Releasing Parties expressly acknowledges that although ordinarily a general release may not extend to Claims or Causes of Action that the Releasing Party does not know or suspect to exist in its favor, which if known by it may have materially affected its settlement with the party released, they have carefully considered, and taken into account in determining to enter into the above releases described in the Plan, the possible existence of such unknown losses or Claims or Causes of Action. Without limiting the generality of the foregoing, each Releasing Party expressly waives and relinquishes any and all rights and benefits such party may have or conferred upon it under any federal, state, or local statute, rule, regulation, or principle of common law or equity that provides that a release does not extend to Claims or Causes of Action that the claimant does not know or suspect to exist in its favor at the time of providing the release or that may in any way limit the effect or scope of the releases with respect to released Claims or Causes of Action that such party did not know or suspect to exist in such party's favor at the time of providing the release, which in each case if known by it may have materially affected its settlement with any Released Party, including, without limitation, California Civil Code § 1542, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of the Releasing Parties expressly acknowledges that the releases and covenants not to sue contained in the Plan are effective regardless of whether those released matters or released Claims or Causes of Action are presently known or unknown, suspected or unsuspected, or foreseen or unforeseen.

Article I of the Plan contains the following definitions:

"**Released Party**" means collectively the Releasing Parties and each of their and their affiliates' respective predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such, provided that, in each case, an Entity shall not be a Released Party if it: (a) elects to opt out of the releases contained in the Plan, or (b) files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

"**Releasing Party**" means collectively, and in each case in its capacity as such: (a) the Debtors (b) the Wind-Down Debtors, (c) the Prepetition Term Loan Secured Parties, (d) the Consenting Unsecured Creditors, (e) any Statutory Committee and each of its members, (f) the holders of all Claims or Interests who vote to accept the Plan, (g) the holders of all Claims or Interests whose vote to accept or reject the Plan is solicited but who do not vote either to accept or to reject the Plan and do not opt out of granting the releases set forth herein, (h) the holders of all Claims or Interests who vote, or are deemed to vote, to reject the Plan but do not opt out of granting the releases set forth herein, (i) the holders of all Claims and Interests who are Unimpaired under the Plan, (j) with respect to each of the foregoing Persons, in clauses (a) through (i), each of their affiliates, and (k) with respect to each of the foregoing Persons in clauses (a) through (j), each of their and their affiliates' respective predecessors, successors, assigns, subsidiaries, affiliates, current and former officers and directors, principals, equity holders, members, partners, managers, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and such Persons' respective heirs, executors, estates, and nominees, in each case in their capacity as such and for which such Entity is legally entitled to bind such party to the releases contained in the Plan and under applicable law; *provided* that the Prepetition Term Loan Secured Parties shall not be deemed to release any direct claims they may have against former directors and officers of the Debtors who were not directors or officers as of the Petition Date; *provided further* that an Entity shall not be a Releasing Party if it files with the Bankruptcy Court an objection to the Plan that is not consensually resolved before Confirmation or supports any such objection or objector.

**YOU ARE ADVISED TO CAREFULLY REVIEW AND CONSIDER THE PLAN, INCLUDING THE DISCHARGE, RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS IN ARTICLE IX OF THE PLAN, AS YOUR RIGHTS MIGHT BE AFFECTED.**

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Impel Pharmaceuticals Inc. (8238); and Impel NeuroPharma Australia Pty Ltd (N/A). The Debtors' service address is 201 Elliot Avenue West, Suite 260, Seattle, WA 98119.

[2] Capitalized terms used but not defined herein have the meanings given to them in the Plan or the Disclosure Statement, as applicable. The statements contained herein are summaries of the provisions contained in the Plan and the Disclosure Statement and do not purport to be precise or complete statements of all the terms and provisions of the Plan or the documents referred therein. To the extent there is a discrepancy between the terms herein and the Plan or the Disclosure Statement, the Plan or the Disclosure Statement, as applicable, shall govern and control. For a more detailed description of the Plan, please refer to the Disclosure Statement.

# EXHIBIT B

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
| Debtors. | ) | (Joint Administration Requested) |

**AFFIDAVIT OF PUBLICATION**

I, Leonidas E. Denslow, being duly sworn, hereby certify that (a) I am VP of Sales for *TradeWinds* and (b) that the legal notice titled "NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' AQV ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES," of which the annexed is a copy, was published in the following publication:

***TradeWinds*** on Friday, March, 8th, 2024

Commonwealth of Virginia • Electronic Notary Public
Katherine Ann Marin
REGISTRATION NUMBER 7718208
COMMISSION EXPIRES November 30, 2024

X LEONIDAS DENSLOW
(Signature)

VP of Sales
(Title)

Notarized remotely online using communication technology via Proof.

Sworn to before me this: 8th day of March, 2024

Commonwealth of Virginia
County of Roanoke City

The foregoing instrument was subscribed and sworn before me on 03/08/2024 by LEONIDAS DENSLOW.

Katherine Ann Marin
Notary Public

1 The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

# Baack mulls risk as Red Sea becomes no-go zone

## Hamburg-based shipowner will keep paying dividends

**Jonas Walsgård**
Hamburg

The situation in the Red Sea has made markets more volatile for MPC Container Ships.

"It's a market that is super difficult to predict this year," said CEO Constantin Baack in an interview at his office in Hamburg.

Clarksons forecasts that the container segment will have an annual fleet growth of 8.5% in 2024. At the same time, Red Sea diversions have increased in teu-miles by 11%.

"I think the market tends to see oversupply for this year, potentially next year," Baack said.

"But at the same time, we have these disruptions in the supply chain that might be a counterfactor. That is difficult to foresee because we don't know how long the Red Sea situation will last."

The Oslo-listed company has stopped passing through the Red Sea since the Houthi attacks began.

"We're not going there because the health and safety of our crew is more important than anything else. It is completely unjustifiable to risk the lives of people," Baack said.

"That means our ships have to divert in close cooperation with our charterers."

MPC Container has a fleet of about 60 vessels including newbuildings. The shipowner focuses on container ships of 1,000 teu to 6,000 teu.

Clients include liner operators such as AP Moller-Maersk, CMA CGM, Hapag-Lloyd and MSC Mediterranean Shipping Company.

Baack said the orderbook for smaller ships, like the ones MPC Container owns, is not "particularly large".

"If you look at the market, the next one to two years are difficult to read because of the orderbook that is being delivered," he said.

"At the same time, the fleet in our segment is fairly old, which should lead to more scrapping.

"I do believe over the next three to five years there will be a bit of a supply crunch in our favour. But the next two years might be a bit choppy waters."

In connection with its report for the fourth quarter, the company guided for Ebitda of $240m to $280m in 2024, which disappointed the stock market last week, Baack said.

"We don't factor in that the Red Sea situation will last the whole year.

"The guidance indicates that we will see a weaker second half. But if the Red Sea situation continues, we might see a stronger second half. Then we will probably be in the upper side of the range or even above.

The company also has drydockings and retrofits in 2024, resulting in significant technical off-hire times.

In the past years, MPC Container has sold 20 ships with an average age of 17 years.

It has bought 12 ships including newbuildings with an average age of four years.

Recently it sold a vessel to MSC.

"We will continue fleet renewal. We will continue to pay dividends. And we will continue to operate on low leverage. Those are the three principles that we have," Baack said.

MPC Container currently has five newbuildings on order — two conventional ships, which are methanol-ready, and three dual-fuel methanol vessels.

Baack said methanol is one option for the company.

"The most important thing for us is to be fuel agnostic," he said.

Decarbonisation is a transition that will take five, 10 or 20 years, Baack said.

"We believe down the road throughout the cargo chain people will be willing to pay a premium for more efficient vessels. Eventually, in the container ship market it's the consumer who pays a bit more," he said.

**CONSTANTIN BAACK:** MPC Container Ships CEO
Photo: MPC Container Ships

# Marinakis offloads boxship trio

**Harry Papachristou**

US-listed Capital Product Partners has unveiled its second batch of sales as part of a wind down of its container ship fleet.

A month after kick-starting its disposal drive with the sale of the 5,100-teu Long Beach Express (built 2008), the Evangelos Marinakis-controlled company is offloading three extra vessels in two separate transactions.

In the first deal, Capital said it agreed to part with the 9,300-teu Akadimos (built 2015), which will be delivered promptly to its new owner this month.

In the second transaction, the 5,100-teu Fos Express and Seattle Express (both built 2008) will go to an undisclosed party, with delivery by April.

Capital did not disclose the per-vessel price.

However, Capital revealed it has received gross cash proceeds — after debt repayment — of about $81m from the four boxships it has sold so far.

The actual price was certainly much higher. The four vessels combined are worth nearly $130m, according to VesselsValue.

Capital has already said it would gradually divest its entire fleet of 15 container ships, which VesselsValue estimated last month was worth $850m. It now has 11 left.

Sales conditions have materially improved lately, as boxship freight markets and asset values tick up in the wake of large-scale trade disruption in the Red Sea.

The buyers of Capital's four boxships remain unknown.

The three panamaxes among them — the Fos Express, Seattle Express and Long Beach Express — have all been operated for quite some time by Germany's NSC Holding.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS, HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
| Debtors. | ) | (Joint Administration Requested) |

**NOTICE OF AUCTION FOR THE SALE OF THE DEBTORS' AQV ASSETS FREE AND CLEAR OF ANY AND ALL LIENS, CLAIMS, AND ENCUMBRANCES**

**PLEASE TAKE NOTICE** that on February 21, 2024, the above-captioned debtors and debtors in possession (collectively, the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for a transaction or transactions for the purchase of some, all, or substantially all of the Debtors' AQV Assets, including the AQV Vessels set forth in **Exhibit A** attached hereto, each free and clear of any liens, claims, and encumbrances under section 363 of the Bankruptcy Code, consistent with the bidding procedures (the "Bidding Procedures") approved by the Court by entry of an order on February 28, 2024 [Docket No. 166] (the "Bidding Procedures Order").[2] **All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order**. To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order, the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

**Copies of the Bidding Procedures Order or other documents related thereto, including an exhibit identifying the AQV Assets, may be obtained, free of charge, on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower.**

**PLEASE TAKE FURTHER NOTICE** that the Bidding Procedures provide for the consideration of Qualified Bids to acquire substantially all of the AQV Assets or separate Bids to acquire portions of the AQV Assets, to the extent that the consummation of such transactions maximizes value for stakeholders and can be accomplished efficiently. All interested parties are invited to provide materials (as described in the Bidding Procedures) to apply to become a Potential Bidder (as defined in the Bidding Procedures) and to submit a Bid in accordance with the Bidding Procedures and the Bidding Procedures Order. The Bidding Procedures provide information regarding the requirements a Potential Bidder must satisfy to become a "Qualified Bidder" and a Bid to be deemed a "Qualified Bid" for purposes of competing at an Auction, if any.

**PLEASE TAKE FURTHER NOTICE** that the Bid Deadline is **March 25, 2024** at **4:00 p.m. (prevailing Central Time)**, and that any person or entity who wishes to participate in the Auction must comply with the participation requirements, Bid Requirements, and other requirements set forth in the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that the Debtors intend to conduct the Auction, at which time they will consider proposals submitted to the Debtors and their professionals, by and pursuant to the Bidding Procedures as set forth in the Bidding Procedures Order, beginning on **March 27, 2024 at 9:00 a.m. (prevailing Central Time)** via videoconference or such other form of remote communication arranged by counsel to the Debtors. Only authorized representatives of each of the Qualified Bidders (including any Stalking Horse Bidders), the Debtors and their respective advisors, and the Consultation Parties and their respective advisors shall be permitted to attend the Auction.

**PLEASE TAKE FURTHER NOTICE** that the Debtors expect to seek approval of any Sale(s) at the Sale Hearing, which is presently scheduled to commence on **April 4, 2024 at 9:30 a.m. (prevailing Central Time)**, or as soon thereafter as counsel may be heard, before the Honorable Marvin Isgur in the United States Courthouse, 515 Rusk Street, Houston, Texas 77002. The Debtors reserve the right to change the date of the Auction and/or the Sale Hearing, in their reasonable business judgment, in accordance with the Bidding Procedures and the Bidding Procedures Order.

**PLEASE TAKE FURTHER NOTICE** that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to Cure Amounts or the assumption and assignment of Assigned Contracts, objections, if any, to a proposed Sale must: (a) be in writing; (b) conform to the applicable provisions of the Bankruptcy Rules and the Bankruptcy Local Rules; (c) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (d) be filed with the Court by **March 20, 2024 at 4:00 p.m. (prevailing Central Time)** (the "Sale Objection Deadline"); *provided, however*, that any objections to the manner in which the Auction was conducted and the identity of the Successful Bidder or Backup Bidder may be filed up to 24 hours prior to the Sale Hearing, or, if the Debtors elect not to proceed with an Auction, two (2) days following the notification filed with the Court of such election not to proceed with an Auction.

**CONSEQUENCES OF FAILING TO TIMELY MAKE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO A SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE AQV ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS, EXCEPT AS SET FORTH IN THE APPLICABLE PURCHASE AGREEMENT(S).**

**PLEASE TAKE FURTHER NOTICE** that the Debtors reserve the right, in their reasonable business judgment and subject to the exercise of their fiduciary duties, to modify the Bidding Procedures and/or to terminate discussions with any Potential Bidders at any time, to the extent not materially inconsistent with the Bidding Procedures.

**PLEASE TAKE FURTHER NOTICE** that copies of the Bidding Procedures and Bidding Procedures Order, as well as all other documents related thereto, are available: (a) free of charge on the website maintained by the Debtors' claims and noticing agent, Omni Agent Solutions, Inc., at https://omniagentsolutions.com/Hornblower or (b) for a fee via PACER by visiting http://www.txs.uscourts.gov.

February 28, 2024, By: */s/ John F. Higgins*, **PORTER HEDGES LLP,** John F. Higgins (TX Bar No. 09597500), M. Shane Johnson (TX Bar No. 24083263), Megan Young-John (TX Bar No. 24088700), 1000 Main St., 36th Floor, Houston, Texas 77002, Telephone: (713) 226-6000, Facsimile: (713) 226-6248, jhiggins@porterhedges.com, sjohnson@porterhedges.com, myoung-john@porterhedges.com -and- **PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP,** Paul M. Basta (admitted *pro hac vice*), Jacob A. Adlerstein (admitted *pro hac vice*), Kyle J. Kimpler (admitted *pro hac vice*), Sarah Harnett (admitted *pro hac vice*), Neda Davanipour (admitted *pro hac vice*), 1285 Avenue of the Americas, New York, New York 10019, Telephone: (212) 373-3000, Facsimile: (212) 757-3990, pbasta@paulweiss.com, jadlerstein@paulweiss.com, kkimpler@paulweiss.com, sharnett@paulweiss.com, ndavanipour@paulweiss.com, *Proposed Counsel to the Debtors and the Debtors in Possession*

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

**Exhibit A**

**Vessel, IMO Ship Identification Number, Flag:** American Queen, 1030765, U.S.; American Duchess, 1030831, U.S.; American Countess, 1037706, U.S.; American Empress, 1140867, U.S.; Ocean Voyager, 9213129, Bahamas; Ocean Navigator, 9213131, Bahamas; Ocean Victory (leased/chartered)[1], 9213129, Bahamas

[1] 10 year lease for Ocean Victory vessel expires in 2031.