IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) CONDITIONALLY
APPROVING THE ADEQUACY OF THE DISCLOSURE
STATEMENT, (B) APPROVING THE SOLICITATION PROCEDURES AND
SOLICITATION PACKAGES, (C) SCHEDULING A COMBINED HEARING,
(D) ESTABLISHING PROCEDURES FOR OBJECTING TO THE PLAN AND FINAL
APPROVAL OF THE DISCLOSURE STATEMENT, (E) APPROVING THE FORM,
MANNER, AND SUFFICIENCY OF  NOTICE OF THE COMBINED HEARING, (F)
APPROVING THE RIGHTS OFFERING PROCEDURES AND RELATED
MATERIALS, (G) SCHEDULING CERTAIN DATES RELATED THERETO, AND
(H) GRANTING RELATED RELIEF**

---

**If you object to the relief requested, you must respond in writing. Unless otherwise directed by the court, you must file your response electronically at https://ecf.txsb.uscourts.gov/ within twenty-one days from the date this motion was filed. If you do not have electronic filing privileges, you must file a written objection that is actually received by the clerk within twenty-one days from the date this motion was filed. Otherwise, the court may treat the pleading as unopposed and grant the relief requested.**

**A hearing will be conducted on this matter on April 12, 2024, at 7:30 a.m. (prevailing Central Time) in Courtroom 404, 4th floor, 515 Rusk, Houston, Texas 77002.  You may participate in the hearing either in person or by an audio and video connection.**

**Audio communication will be by use of the Court's dial-in facility.  You may access the facility at (832) 917-1510.  Once connected, you will be asked to enter the conference room number. Judge Isgur's conference room number is 954554.  Video communication will be by use of the GoToMeeting platform. Connect via the free GoToMeeting application or click the link on Judge Isgur's homepage.  The meeting code is "judgeisgur".  Click the settings icon in the upper right corner and enter your name under the personal information setting.**

**Hearing appearances must be made electronically in advance of both electronic and in-person hearings. To make your appearance, click the "Electronic Appearance" link on Judge Isgur's homepage.  Select the case name, complete the required fields, and click "Submit" to complete your appearance.**

---

[1]   The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035.  Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Hornblower.  The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

The debtors and debtors-in-possession (collectively, the "Debtors") in the above-captioned cases respectfully state as follows in support of this motion:

**Preliminary Statement[2]**

1.      The Debtors file this motion to facilitate the swift confirmation of a chapter 11 plan that implements the terms of a comprehensive financial restructuring supported by an overwhelming majority of their first lien lenders.  As a result of extensive negotiations with the Ad Hoc Group, on February 21, 2024, the Debtors executed a Restructuring Support Agreement (the "RSA") with the Holders of over 98% of the HB First Lien Claims, which sets forth the framework for the Restructuring Transactions embodied in the Plan and as is further described in the related Disclosure Statement, each of which were filed contemporaneously with this motion.

2.      Among other things, the Plan provides for (a) the deleveraging of the Debtors' balance sheet through the equitization of more than $700 million of HB First Lien Claims, resulting in a material reduction of funded indebtedness, (b) a fully backstopped rights offering to participate in the purchase of $345 million (subject to reduction as described in the Plan) of new equity interests in Reorganized Hornblower offered to holders of Allowed HB First Lien Claims (the "Rights Offering"), and (c) the incurrence of the Exit Term Loans and Exit Revolver, which will, among other things, provide sufficient liquidity for the Debtors to operate successfully post-emergence.  To that end, consistent with their obligations under the RSA, the Debtors are seeking to emerge from chapter 11 as quickly as the Court's schedule and the requisite notice periods will permit.  The Debtors are confident that confirmation of the Plan represents the best avenue for the Debtors to reorganize and maximize the value of their estates for the benefit of all stakeholders.

---

[2]     Capitalized terms used but not defined herein shall have the meaning ascribed to such terms in the Plan, the Disclosure Statement, or the Rights Offering Procedures, as applicable.

## Relief Requested

3.      By this motion, the Debtors seek entry of an order, substantially in the form attached hereto (the "Order"):

      a.      conditionally approving the adequacy of the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Hornblower Holdings LLC and Its Debtor Affiliates*, dated March 18, 2024, and filed contemporaneously herewith (as amended, modified, or supplemented from time to time, the "Disclosure Statement");

      b.      scheduling a hearing (the "Combined Hearing") to consider final approval of the Disclosure Statement and confirmation of the *Joint Chapter 11 Plan of Reorganization of Hornblower Holdings LLC and Its Debtor Affiliates* (as amended, modified, or supplemented from time to time, the "Plan"), filed contemporaneously herewith;

      c.      approving the solicitation procedures set forth herein (the "Solicitation Procedures") with respect to the Plan, including approving the Solicitation Packages (as defined herein) and the forms of Ballots and Notices of Non-Voting Status (each as defined herein), establishing a voting record date and voting deadline, and approving the vote tabulation procedures;

      d.      approving the Rights Offering Procedures (as defined herein) and related dates and deadlines, substantially in the form attached to the Order as Exhibit I, and the form of materials necessary to consummate the Rights Offering under the terms of the Rights Offering Procedures, including the subscription form to be utilized by holders of Allowed HB First Lien Claims to exercise subscription rights in the Rights Offering (the "Subscription Form") and the affidavit of U.S. citizenship in connection with the Debtors' obligations under the U.S. Coastwise Trade Laws (a "U.S. Citizenship Affidavit", and together with the Subscription Form, the "Rights Offering Materials"), substantially in the forms attached to the Order as Exhibit J and Exhibit K, respectively;

      e.      finding that the solicitation materials and documents included in the Solicitation Packages comply with rules 3017(d) and 2002(b) of the Federal Rules of Bankruptcy Procedure, as modified by the Order;

      f.      approving the letter (the "Cover Letter") that the Debtors will send to Holders of Claims entitled to vote to accept or reject the Plan, urging such Holders to vote in favor of the Plan;

      g.      establishing the deadline to object to confirmation of the Plan (the "Objection Deadline");

h.      approving the form and manner of the publication notice of the Combined Hearing (the "Publication Notice");

i.      approving the form of notices to counterparties to Executory Contracts and Unexpired Leases that will be assumed or rejected pursuant to the Plan (the "Cure Notice" and the "Rejection Notice," respectively);

j.      establishing certain dates and deadlines with respect to the schedule for confirmation of the Plan, subject to modification if necessary;

k.      approving the form and manner of notice of the Combined Hearing (the "Combined Hearing Notice"); and

l.      granting related relief.

4.      The following table provides certain proposed dates and deadlines requested by this motion (in each case, subject to the Court's calendar):

| Event | Date | Description |
|---|---|---|
| **Voting Record Date & Record Date for Rights Offering** | April 22, 2024 | Date to determine (i) which Holders of Claims are entitled to vote to accept or reject the Plan (the "Voting Record Date") and (ii) which Holders of Claims are eligible to participate in the Rights Offering. |
| **Mailing & Publication Deadline** | Within four (4) business days after the later of (i) entry of the Order and (ii) the filing of the Debtors' Schedules (as defined herein), or as soon as reasonably practicable thereafter | Date by which the Debtors will mail the Combined Hearing Notice and publish the Publication Notice. |

| Event | Date | Description |
|---|---|---|
| **Solicitation Deadline & Subscription Commencement Date** | Within four (4) business days after the later of (i) entry of the Order and (ii) the filing of the Debtors' Schedules | Date by which (a) the Debtors will begin soliciting votes to accept or reject the Plan from (i) Holders of Claims that are scheduled by the Debtors and (ii) parties that Filed a Proof of Claim on or before Voting Record Date, (b) the Debtors will distribute a Notice of Non-Voting Status to (i) Holders of Claims that are scheduled by the Debtors and (ii) parties that Filed a Proof of Claim on or before Voting Record Date that are not entitled to vote to accept or reject the Plan (the "Solicitation Deadline"), (c) the Debtors will commence the Rights Offering, and (d) Eligible Holders will receive copies of the Rights Offering Procedures and the Subscription Form and Requisite Documentation and may exercise Subscription Rights (the "Subscription Commencement Date"). |
| **Plan Supplement Filing** | May 17, 2024 | Date by which the Debtors will file the Plan Supplement. |
| **Voting Resolution Event Deadline** | May 17, 2024 | Date by which creditors seeking to have a Claim temporarily allowed for purposes of voting to accept or reject the Plan pursuant to Bankruptcy Rule 3018(a) are required to file a motion. |
| **Voting Deadline & Rights Offering Expiration Time** | May 24, 2024, at 4:00 p.m. (prevailing Central Time) | Deadlines by which (a) Holders of Claims entitled to vote on the Plan must vote to accept or reject the Plan, (b) Holders of Claims and Interests in non-voting Classes may submit opt-out forms, and (c) Eligible Holders must exercise Subscription Rights and subscribe for the Subscription Securities. |
| **Objection Deadline** | May 24, 2024, at 4:00 p.m. (prevailing Central Time) | Deadline by which parties in interest may object to confirmation of the Plan. |
| **Deadline to File Voting Report** | May 29, 2024, at 4:00 p.m. (prevailing Central Time) | Date by which the report tabulating the voting on the Plan (the "Voting Report") shall be filed with the Court. |
| **Confirmation Brief Deadline & 3018(a) Motion Response Deadline** | May 31, 2024 | Deadlines by which the Debtors shall (i) file brief(s) in support of confirmation of the Plan and (ii) file response(s) to any filed 3018(a) motions. |
| **Combined Hearing** | June 3, 2024, at 9:00 a.m. (prevailing Central Time) | Combined Hearing. |

**Jurisdiction and Venue**

5.      The United States Bankruptcy Court for the Southern District of Texas (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.

6.      This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. § 1408.

7.      The bases for the relief requested herein are sections 105(a), 1125, 1126, and 1128 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), rules 2002, 3016, 3017, 3018, 3020, and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), rules 3016-1 and 9013-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Bankruptcy Local Rules"), and the *Procedures for Complex Chapter 11 Cases in the Southern District of Texas* effective as of January 1, 2023 (the "Complex Case Procedures").

8.      On February 21, 2024 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  On February 21, 2024, the Court entered an order authorizing the joint administration and procedural consolidation of these chapter 11 cases pursuant to Bankruptcy Rule 1015(b) and Bankruptcy Local Rule 1015-1 [Docket No. 20].  The Debtors are operating their businesses and managing their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  On March 5, 2024, the Office of the United States Trustee for the Southern District of Texas (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee") [Docket No. 195].[3]  No request for the appointment of a trustee or examiner has been made in these chapter 11 cases.

9.      A detailed description of the Debtors and their businesses, including the facts and circumstances giving rise to the Debtors' chapter 11 cases, is set forth in the *Declaration of*

---

[3]      The U.S. Trustee filed a corrected notice of appointment on March 6, 2024 [Docket No. 208].

*Jonathan Hickman in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 25] (the

"First Day Declaration"), incorporated herein by reference.

## **Summary of Plan Treatment**

10.     The Plan classifies Claims against and Interests in the Debtors, and provides for the

treatment of each Class as follows:[4]

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| 1 | Other Secured Claims | Each Holder of an Allowed Other Secured Claim shall receive, at the option of the Debtors, Reorganized Debtors, or AQV Wind Down Co., as applicable, either:<br><br>i.   payment in full in Cash of the unpaid portion of their Allowed Other Secured Claim, including any interest thereon required to be paid under section 506(b) of the Bankruptcy Code (or if payment is not then due, on the due date of such Allowed Other Secured Claim);<br>ii.  Reinstatement pursuant to section 1124 of the Bankruptcy Code;<br>iii. the return or abandonment of the collateral securing such Claim to such Holder; or<br>iv.  such other treatment necessary to satisfy section 1124 of the Bankruptcy Code. | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 2 | Other Priority Claims | Each Holder of an Allowed Other Priority Claim shall receive payment in full, in Cash, of the unpaid portion of its Allowed Other Priority Claim on the Plan Effective Date or as soon thereafter as reasonably practicable (or, if payment is not then due, on the due date of such Other Priority Claim). | Unimpaired | Not Entitled to Vote (Presumed to Accept) |
| 3 | First Lien Claims | On the Plan Effective Date or as soon thereafter as reasonably practicable, each Holder of an Allowed First Lien Claim shall receive its Pro Rata share of:<br><br>i.   96% of the Rights; | Impaired | Entitled to Vote |

---

[4]   This summary is for ease of reference only and shall not limit, modify, or amend the proposed treatment set forth in the Plan, which, in the event of any inconsistency, shall govern.  Subject to the terms of the Plan, each Holder of an Allowed Claim or Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Holder's Allowed Claim or Interest, except to the extent less favorable treatment is agreed to by the Debtors or Reorganized Debtors and the Holder of such Allowed Claim or Interest.  Unless otherwise indicated, the Holder of an Allowed Claim or Interest shall receive such treatment on the later of the Plan Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Interest or as soon as reasonably practicable thereafter.

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| | | ii. 96% of the New HB Common Equity (or New Warrants) (subject to dilution on account of the New HB Common Equity (or New Warrants) issued in connection with (A) the Rights Offering, (B) the Backstop Commitment Premium, and (C) the MIP Equity); <br> iii. the Crestview Cash Contribution; *provided* that such Holder (or any Related Fund) may elect to use its Pro Rata share of the Crestview Cash Contribution as a credit towards the exercise of its Rights, in which case such portion of the Crestview Cash Contribution shall be retained by the Hornblower Debtors; and <br> iv. 96% of the AQV Net Cash Proceeds. | | |
| 4 | Revolver Claims | On the Plan Effective Date or as soon thereafter as reasonably practicable, each Holder of an Allowed Revolver Claim shall receive its Pro Rata share of: <br> i. 4% of the Rights; <br> ii. 4% of the New HB Common Equity (or New Warrants) (subject to dilution on account of the New HB Common Equity (or New Warrants) issued in connection with (A) the Rights Offering, (B) the Backstop Commitment Premium, and (C) the MIP Equity); and <br> iii. 4% of the AQV Net Cash Proceeds. | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | [●] | Impaired | Entitled to Vote |
| 6 | Unsecured Go-Forward Trade Claims | [●] | Impaired | Entitled to Vote |
| 7 | Intercompany Claims | On the Plan Effective Date, all Intercompany Claims will be adjusted, Reinstated, or discharged in the Debtors' discretion, subject to the reasonable consent of, with respect to Intercompany Claims held by another Debtor or against a Hornblower Debtor, the Required Consenting HB First Lien Lenders and, with respect to Intercompany Claims held by any Journey Beyond Entity against Journey Beyond Holdings, LLC, the Consenting JBIH Lenders. For the avoidance of doubt, on the Plan Effective Date, the JB Intercompany Loans shall be cancelled and discharged. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |

| Class | Claims or Interests | Treatment | Impaired or Unimpaired | Entitlement to Vote |
|---|---|---|---|---|
| 8 | Intercompany Interests | All Intercompany Interests shall be Reinstated or cancelled in the Debtors' discretion, subject to the reasonable consent of, with respect to the Reorganized Hornblower Debtors, the Required Consenting HB First Lien Lenders, and, with respect to the Journey Beyond Entities, the Consenting JBIH Lenders. | Unimpaired / Impaired | Not Entitled to Vote (Presumed to Accept / Deemed to Reject) |
| 9 | Section 510(b) Claims | On the Plan Effective Date, all Section 510(b) Claims against the Debtors shall be discharged and released, and the Holders of Section 510(b) Claims shall not receive or retain any distribution, property, or other value on account of their Section 510(b) Claims. | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 10 | Interests in Hornblower and Hornblower Holdings LLC | On the Plan Effective Date, all Interests in Hornblower and Hornblower Holdings LLC will be cancelled and the Holders of such Interests shall not receive or retain any distribution, property, or other value on account of their Interests in Hornblower or Hornblower Holdings LLC. | Impaired | Not Entitled to Vote (Deemed to Reject) |

**Proposed Solicitation Procedures**

11.     In connection with the Plan, the Debtors have prepared the Disclosure Statement, which describes, among other things, the Debtors' proposed restructuring and its effects on Holders of Claims against and Interests in the Debtors.  The proposed Solicitation Procedures provide that, within four (4) business days following the later of (i) the Court's entry of the Order and (ii) the filing of the Debtors' Schedules, the Debtors, through their notice and claims agent, Omni Agent Solutions, Inc. (the "Notice and Claims Agent"), will mail to the Holders of Claims, as of the Voting Record Date, in Class 3 (First Lien Claims), Class 4 (Revolver claims), Class 5 (General Unsecured Claims), and Class 6 (Unsecured Go-Forward Trade Claims) (such classes, the "Voting Classes"), the following materials in connection with voting on the Plan (the "Solicitation Package"): (a) the Disclosure Statement; (b) the exhibits to the Disclosure Statement, which include (i) the Plan and exhibits thereto, (ii) the RSA and the exhibits thereto, (iii) the Debtors' corporate structure chart, (iv) the Valuation Analysis, (v) the Liquidation

Analysis, and (vi) the Financial Projections; (c) a copy of the Order entered by this Court (without exhibits) approving, among other things, the Disclosure Statement on a conditional basis and the Solicitation Procedures; (d) the appropriate ballot with voting instructions for each Holder (accompanied by a postage prepaid business reply envelope addressed to the Notice and Claims Agent); (e) the Combined Hearing Notice; and (f) the Cover Letter, a form of which is attached to the Order as Exhibit H.  Copies of the documents provided in the Solicitation Package may also be downloaded and/or viewed free of charge by all parties in interest at the website maintained by the Notice and Claims Agent at https://omniagentsolutions.com/Hornblower or by contacting the Notice and Claims Agent via email at HornblowerInquiries@OmniAgnt.com.

12.     The instructions on the Ballots advise the Holders in Voting Classes that, to be counted, their Ballots must be properly executed, completed, and delivered to the Notice and Claims Agent so that the Ballots are actually received by the Notice and Claims Agent no later than 4:00 p.m. (prevailing Central Time) on May 24, 2024, unless such time is extended by the Debtors.  The Debtors anticipate commencing solicitation of the Plan promptly after entry of the Order.

13.     Holders of Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), Class 9 (Section 510(b) Claims), and Class 10 (Interests in Hornblower and Hornblower Holdings LLC) (such Classes, the "Non-Voting Classes") will not be provided the Solicitation Package because such Holders are either (a) unimpaired under, and conclusively presumed to accept, the Plan pursuant to section 1126(f) of the Bankruptcy Code or (b) impaired under, and conclusively presumed to reject, the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Notwithstanding the foregoing, as discussed further herein, for purposes of effectuating the releases set forth in the Plan, the Debtors propose

to send the Notice of Non-Voting Status to all Holders in the Non-Voting Classes (other than

Holders in Class 7 and Class 8) contemporaneously with distributing the Solicitation Packages.

With respect to Non-Voting Holders of Claims in Classes 1, 2, 9, and 10, such notices will include

a form and return envelope addressed to the Notice and Claims Agent allowing such Holders, at

their election, to opt-out of the releases set forth in the Plan by the Voting Deadline.

14.     In compliance with section 1123(a)(1) of the Bankruptcy Code and as reflected in

Article II of the Plan, Administrative Claims, DIP Claims, and Priority Tax Claims are not

classified under the Plan.  *See* 11 U.S.C. § 1123(a)(1) (providing for classification of claims other

than administrative and priority tax claims).  As such, Holders of such Claims are not entitled to

vote on the Plan and will not be provided the Solicitation Package; however, the Notice and Claims

Agent will send Holders of such Claims a Combined Hearing Notice.

## Rights Offering Procedures

15.     In connection with the Plan, the Debtors intend, upon the Court's approval of the

Rights Offering Procedures attached to the Order as Exhibit I, to launch the Rights Offering

pursuant to which Eligible Holders (as defined in the Rights Offering Procedures) will be offered

the right to participate in the Rights Offering.  The Debtors, in consultation with the advisors to

the Commitment Parties, have formulated the Rights Offering Procedures.  The following chart

summarizes the principal terms of the Rights Offering Procedures:[5]

| Summary of Rights Offering Procedures | |
| --- | --- |
| **Transaction** | Pursuant to the Plan, each Eligible Holder is entitled to participate in the Rights Offering to subscribe for up to its Pro Rata share to purchase New HB Common Equity |

---

[5]   This summary is qualified in its entirety by reference to the provisions of the Rights Offering Procedures.  To the extent that any discrepancies exist between the summary described in this motion and the terms of the Rights Offering Procedures, the Rights Offering Procedures control.  Capitalized terms used in this summary shall have the meaning ascribed to them in the Rights Offering Procedures or this motion, as applicable.

| | |
|---|---|
| | (or New Warrants) of Reorganized Hornblower for an aggregate cash purchase price of $345 million (subject to reduction pursuant to the Plan), on the terms set forth in the Rights Offering Procedures and the Plan; *provided*, however, that Eligible Holders that are Commitment Parties must exercise their Subscription Rights pursuant to the Backstop Commitment Agreement. |
| **Eligibility** | Holders of Allowed HB First Lien Claims. |
| **Rights Offering Subscription Agent** | Omni Agent Solutions. |
| **Transfer Restriction; Revocation** | Once an Eligible Holder has properly exercised its Subscription Rights, such exercise will be irrevocable unless the Rights Offering is terminated. |
| **Exercise of Subscription Rights** | An Eligible Holder electing to participate in the Rights Offering must:<br><br>• (a) duly complete and execute a Subscription Form (including accompanying IRS Form W-9 or appropriate IRS Form W-8, as applicable, and the Requisite Documentation) in accordance with the Rights Offering Procedures, and (b) deliver its executed Subscription Form and the Requisite Documentation, including the U.S. Citizenship Affidavit, to the Rights Offering Subscription Agent such that the Subscription Form and Requisite Documentation is actually received by the Rights Offering Subscription Agent at or prior to the Rights Offering Expiration Time via the Rights Offering Subscription Agent's E-Portal;<br>• for Eligible Holders who wish to designate another person to receive their Subscription Securities, complete Item 5 of the Subscription Form with such designee's information;<br>• if the Eligible Holder is not a Commitment Party, coordinate payment of its Purchase Price at or prior to the Rights Offering Expiration Time for the Subscription Securities for which it has subscribed by wire transfer **ONLY** of immediately available funds to the Rights Offering Subscription Agent; and<br>• if the Eligible Holder is a Commitment Party, make payment of its Purchase Price to the Subscription Account at or prior to the Subscription Funding Date in accordance with |

| | |
|---|---|
| | Section 2.4 of the Backstop Commitment Agreement. |
| **Termination; Reduction of Rights Offering Amount; Return of Payment** | Unless the Plan Effective Date has occurred, the Rights Offering (a) will be deemed automatically terminated without any action of any party upon the termination of the Backstop Commitment Agreement in accordance with its terms or (b) may be terminated by mutual agreement of the Debtors and the Required Commitment Parties.  Pursuant to the Plan, the Rights Offering Amount may be reduced to the extent Projected Minimum Liquidity would exceed the Minimum Liquidity Amount.  In the event that (i) the Rights Offering is terminated or (ii) the Rights Offering Amount is reduced pursuant to the Plan, any payments (or, in the case of a reduction in the Rights Offering Amount, any excess payments) received pursuant to the Rights Offering Procedures will be returned, without interest, to the applicable Eligible Holder or relevant payee as soon as reasonably practicable, but in any event within seven (7) Business Days after the date of termination or reduction, as applicable, and upon receipt by the Rights Offering Subscription Agent of the final refund instructions from the Debtors (or such earlier date set forth in the Backstop Commitment Agreement or the agreement governing the Subscription Account). |

16.     The Rights Offering will be backstopped, severally and not jointly, by the Backstop Parties pursuant to the Backstop Commitment Agreement, subject to this Court's approval of the Backstop Commitment Agreement as requested in the *Debtors' Motion for Entry of an Order (I) Authorizing the (A) Debtors' Entry Into, and Performance Under, the Backstop Commitment Agreement and (B) Payment of Related Fees, Premiums, Indemnities, and Expenses, and (II) Granting Related Relief* [Docket No. 243].

17.     All New HB Common Equity (or New Warrants) issued pursuant to the Rights Offering will be issued in reliance on and in compliance with the exemption from registration provided by Section 4(a)(2) of the Securities Act ("Section 4(a)(2)") and/or Regulation D promulgated thereunder ("Regulation D"), or another available exemption from registration, as

applicable.   Such securities will be "restricted securities" within the meaning of Rule 144 promulgated under the Securities Act, and subject to resale restrictions and may be resold, exchanged, assigned, or otherwise transferred only pursuant to registration or an applicable exemption from registration under the Securities Act and other applicable law.   All New HB Common Equity (or New Warrants) issued to (i) the Holders of Allowed HB First Lien Claims on account of their Allowed HB First Lien Claims and (ii) the Commitment Parties in satisfaction of the Backstop Commitment Premium pursuant to the Backstop Commitment Agreement, will be issued in reliance on the exemption from registration under the Securities Act provided by section 1145 of the Bankruptcy Code to the maximum extent permitted by law and, to the extent such exemption is unavailable, will be issued solely to qualified holders in reliance on the exemption provided by Section 4(a)(2) and/or Regulation D, or another available exemption from registration, as applicable.

18.    Upon the Court's entry of the Order, the Debtors intend to commence the Rights Offering by the Solicitation Deadline, and, in accordance with the Rights Offering Procedures, set the Rights Offering Expiration Time on May 24, 2024 at 4:00 p.m. (prevailing Central Time).  The proposed duration of the Rights Offering will afford Eligible Holders at least twenty-nine (29) calendar days to participate in the Rights Offering, and is reasonable under the circumstances.

19.    For more information regarding the Rights Offering, Eligible Holders should refer to the Rights Offering Procedures.  The Rights Offering Procedures are designed to efficiently transmit all materials necessary for participation in the Offering in compliance with applicable bankruptcy and non-bankruptcy law.  The respective Subscription Form and U.S. Citizenship Affidavit, in the forms attached to the Order as Exhibits J and K, respectively, are each designed to assure the clear communication of the requirements for, and to facilitate, such participation.

**Basis for Relief**

**A.      The Court Should Conditionally Approve the Disclosure Statement**

20.      Pursuant to section 1125(b) of the Bankruptcy Code, "[a]n acceptance or rejection of a plan may not be solicited . . . unless . . . a written disclosure statement [is] approved . . . by the court as containing adequate information."   11 U.S.C. § 1125(b).   Section 1125(a)(1) of the Bankruptcy Code defines "adequate information" as follows:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan . . .

11 U.S.C. § 1125(a)(1).  *See also In re J.D. Mfr., Inc.*, 2008 WL 4533690, at *2 (Bankr. S.D. Tex. Oct. 2, 2008) ("'Adequacy' of information is a determination that is relative both to the entity (*e.g.*, assets/business being reorganized or liquidated) and to the sophistication of the creditors to whom the disclosure statement is addressed."); *In re U.S. Brass Corp.*, 194 B.R. 420, 423 (Bankr. E.D. Tex. 1996) (stating that "[t]he purpose of the disclosure statement is . . . to provide enough information to interested persons so they may make an informed choice").  Congress intended the determination of whether a disclosure statement contains adequate information to be a flexible, fact-specific inquiry left to the Court's discretion:

> Precisely what constitutes adequate information in any particular instance will develop on a case-by-case basis. Courts will take a practical approach as to what is necessary under the circumstances of each case, such as the cost of preparation of the statements, the need for relative speed in solicitation and confirmation, and, of course, the need for investor protection. There will be a balancing of interests in each case. In reorganization cases, there is frequently great uncertainty. Therefore the need for flexibility is greatest.

H.R. Rep. 95-595, at 409 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6365.  *See also Mabey* v.

*Sw. Elec. Power Co. (In re Cajun Elec. Power Co-op., Inc.)*, 150 F.3d 503, 518 (5th Cir. 1998)

("The legislative history of § 1125 indicates that, in determining what constitutes 'adequate information' with respect to a particular disclosure statement . . . the kind and form of information are left essentially to the judicial discretion of the court and that the information required will necessarily be governed by the circumstances of the case.").

21.    In making a determination as to whether a disclosure statement contains adequate information as required by section 1125 of the Bankruptcy Code, courts typically look for disclosures related to topics such as:

a.    the events that led to the filing of a bankruptcy petition;

b.    the relationship of the debtors with their affiliates;

c.    a description of the available assets and their value;

d.    the anticipated future of the companies;

e.    the source of information stated in the disclosure statement;

f.    the present condition of the debtors while in chapter 11;

g.    claims asserted against the debtors;

h.    the estimated return to creditors under a chapter 7 liquidation;

i.    the chapter 11 plan or a summary thereof;

j.    financial information, valuations, and projections relevant to the creditors' decision to accept or reject the chapter 11 plan;

k.    information relevant to risks posed to creditors under the plan;

l.    the actual or projected realizable value from recovery of preferential or otherwise avoidable transfers;

m.    litigation likely to arise in a non-bankruptcy context; and

n.    tax attributes of the debtors.

*See In re U.S. Brass Corp.*, 194 B.R. at 424-25 (citing *In re Metrocraft Pub. Servs., Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984)); *see also In re Phx. Petroleum Co.*, 278 B.R. 385, 393 (Bankr.

E.D. Pa. 2001) (citing factors that courts have considered in determining the adequacy of information provided in a disclosure statement); *In re Scioto Valley Mortg. Co.*, 88 B.R. 168, 170-71 (Bankr. S.D. Ohio 1988) (setting forth a non-exhaustive list of 19 categories of information that may be included in a disclosure statement).  Disclosure regarding all of the aforementioned topics is not necessary in every case.  *See In re U.S. Brass*, 194 B.R. at 425; *see also In re Phx. Petroleum*, 278 B.R. at 393 ("[C]ertain categories of information which may be necessary in one case may be omitted in another; no one list of categories will apply in every case.").

22.     Here, the Disclosure Statement is extensive and comprehensive and contains adequate information within the meaning of section 1125 of the Bankruptcy Code.  The Disclosure Statement contains detailed information with respect to, among other things, (a) the Plan, (b) the Debtors' business operations, (c) key events leading to the commencement of these chapter 11 cases, (d) the Debtors' significant prepetition indebtedness, (e) the proposed capital structure of the Reorganized Debtors, (f) financial information and valuations that would be relevant to creditors' determination to accept or reject the Plan, (g) a liquidation analysis setting forth the estimated return that Holders of Claims and Interests would receive in a hypothetical chapter 7 liquidation, (h) securities disclosures with respect to the Plan, (i) risk factors associated with the Plan, and (j) federal tax law consequences of the Plan.[6]  In addition, the Disclosure Statement was the subject of extensive review and comment by, among others, counsel and advisors to the RSA Parties leading up to its filing and the filing of this motion.  The Debtors believe that the information provided in the Disclosure Statement is sufficiently detailed and contains adequate

---

[6]     To the extent any of this information is not already included in the Disclosure Statement, such information will be provided prior to the hearing to consider the Disclosure Statement.

information to allow the Holders of Claims in the Voting Classes to make an informed decision regarding whether to vote to accept or reject the Plan.

23.     Bankruptcy Local Rule 3016-2 and section P of the Complex Case Procedures permit a plan proponent to move for conditional approval of a disclosure statement and a combined hearing to consider final approval of the disclosure statement and confirmation of the plan. Conditional approval of the Disclosure Statement and proceeding with the Combined Hearing on an expedited timeline are warranted under the circumstances of these chapter 11 case to meet the milestones in the RSA and to expedite the chapter 11 cases.  Accordingly, the Debtors respectfully submit that the Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and, therefore, should be conditionally approved by the Court.

**B.      The Disclosure Statement Provides Sufficient Notice of Injunction, Release, and Exculpation Provisions in the Plan**

24.     Bankruptcy Rule 3016(c) requires that, if a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, the plan and disclosure statement must describe, in specific and conspicuous language, the acts to be enjoined and the entities subject to the injunction.  *See* Fed. R. Bankr. P. 3016(c).

25.     Article IX.F of the Plan describes in detail the entities subject to an injunction under the Plan and the acts that they are enjoined from pursuing.  Moreover, Articles IX.C, D, and E of the Plan describe in detail the release and exculpation provisions of the Plan.  Articles IX.C, D, E, and F are set forth conspicuously in bold typeface in the Plan and in Article VI of the Disclosure Statement.  Accordingly, the Debtors respectfully submit that the Disclosure Statement complies with Bankruptcy Rule 3016(c).

**C.     The Court Should Approve the Solicitation Procedures and Forms of Solicitation Materials**

i.     Establishing a Voting Record Date

26.     Bankruptcy Rule 3017(d) provides that, for soliciting votes in connection with a plan, eligible voting holders of claims and interests are "of record on the date the order approving the disclosure statement is entered or another date fixed by the court, for cause, after notice and a hearing."  Fed. R. Bankr. P. 3017(d); *see also* Fed. R. Bankr. P. 3018(a) (containing a similar provision for determination of a voting record date).  The Debtors request that the Court establish April 22, 2024, as the date for determining: (a) the Holders of Claims that are entitled to receive a Solicitation Package, (b) the Holders of Claims that are entitled to vote to accept or reject the Plan, and (c) whether Claims have been properly transferred to an assignee pursuant to Bankruptcy Rule 3001(e) such that the assignee can vote as the Holder of such Claim.  To the extent a claimant that was not included on the Debtors' Schedules of Assets and Liabilities and Statements of Financial Affairs (the "Schedules") files a proof of claim asserting a general unsecured claim before the Voting Record Date, such claimant will also be sent the Solicitation Package (including a Ballot).

ii.     Approval of the Solicitation Packages and Procedures

27.     To perform a solicitation, Bankruptcy Rule 3017(d) requires, unless the Court orders otherwise, that the Debtors transmit certain information to holders of claims and interests, as well as to the U.S. Trustee.  *See* Fed. R. Bankr. P. 3017(d).  Pursuant to Bankruptcy Rule 3017(d), the Debtors propose that, within four (4) business days after the later of (i) the Court's entry of the Order and (ii) the filing of the Debtors' Schedules, the Debtors, through the Notice and Claims Agent, will complete distribution of the Solicitation Packages by first-class postage, prepaid mail, overnight mail, or next day business service to the Holders in the Voting Classes as

19

discussed herein.  The Debtors also propose to serve the Solicitation Package, minus a Ballot, on the Notice Parties (as defined herein), including the U.S. Trustee, as contemplated by Bankruptcy Rule 3017(d), but request any provision of Bankruptcy Rule 3017(d) requiring the Debtors to distribute the Disclosure Statement and the Plan to Holders of Claims and/or Interests in the Non-Voting Classes, whether because they are unimpaired or because they are deemed to reject the Plan, or any parties in interest other than as prescribed in the Order, be waived.

28.     Given that the contents of the Solicitation Package are quite voluminous, and to save unnecessary costs, the Debtors further request that they be authorized, but not directed, to distribute the contents of the Solicitation Packages consisting of the (i) Disclosure Statement (with all exhibits thereto, including the Plan and all exhibits thereto) and (ii) Order (without exhibits) in an electronic format, such as a flash drive, instead of paper format.  In the event such an electronic format is used, only the contents of the Solicitation Packages consisting of the (i) Cover Letter, (ii) Ballot (with prepaid business reply envelope addressed to the Notice and Claims Agent), and (iii) Combined Hearing Notice will be delivered in paper format to Holders of Claims in the Voting Classes eligible to vote on the Plan.  If a party who receives a Solicitation Package electronically prefers a paper copy format, the party may request paper copies from the Notice and Claims Agent free of charge by (a) visiting the Debtors' case website at https://omniagentsolutions.com/Hornblower, (b) writing to Hornblower Ballot Processing c/o Omni Agent Solutions, Inc., 5955 De Soto Avenue, Suite 100, Woodland Hills, CA 91367, emailing HornblowerInquiries@OmniAgnt.com (with "Hornblower Solicitation" in the subject line), or (c) calling the Debtors' restructuring hotline at (888) 504-8055 (domestic toll-free) or +1 (747) 263-0163 (international toll).  The Plan and Disclosure Statement are also available free of charge on the Debtors' case website at https://omniagentsolutions.com/Hornblower.

29.     In addition, for purposes of serving the Solicitation Package (with respect to voting and non-voting parties), the Debtors seek authority for the Notice and Claims Agent to rely on the address information maintained by the Debtors and provided to the Notice and Claims Agent as of the Voting Record Date.  The Debtors further request that the Court waive (a) any requirement to re-mail undeliverable Solicitation Packages or other undeliverable solicitation-related notices that were returned marked "undeliverable," "moved—no forwarding address," or otherwise returned, unless the Debtors and/or the Notice and Claims Agent have been informed in writing by such person of that person's new address seven (7) days prior to the Voting Deadline and (b) any obligation for the Debtors or the Notice and Claims Agent to conduct any additional research for updated addresses based on undeliverable Solicitation Packages or other undeliverable solicitation-related notices.

     iii.    <u>Approval of the Form of Ballots</u>

30.     Bankruptcy Rule 3018(c) provides that a vote to accept or reject a plan shall be on a form that conforms substantially to the appropriate official form.  Fed. R. Bankr. P. 3018(c).  In accordance with Bankruptcy Rule 3018(c), the Debtors have prepared Ballots, substantially in the forms attached to the Order as <u>Exhibits E – 1 through E – 4</u>, for Holders of Claims in the Voting Classes, including (a) a Ballot for Holders of Class 3 First Lien Claims, (b) a Ballot for Holders of Class 4 Revolver Claims, (c) a Ballot for Holders of Class 5 General Unsecured Claims, and (d) a Ballot for Holders of Class 6 Unsecured Go-Forward Trade Claims.  The Ballots comply with Bankruptcy Rule 3018(c) and conform substantially to Official Form No. 314, having been modified to address the particular circumstances of these chapter 11 cases and including certain additional information that is relevant and appropriate for the Holders of Claims in the Voting Classes.

31.     The Debtors, through the Notice and Claims Agent, will distribute (or will cause to be distributed) the Ballots to the Holders of Claims in the Voting Classes as of the Voting Record Date.[7]  The Notice and Claims Agent will then tabulate the beneficial Holder votes contained in each such Ballot received.

32.     In addition to accepting physical Ballots, the Debtors request authorization to accept Ballots via electronic transmissions, solely via upload to the online balloting portal on the Debtors' case website maintained by the Notice and Claims Agent at https://omniagentsolutions.com/Hornblower-Ballots (the "Ballot Upload Portal").  Parties entitled to vote may, where applicable, upload a completed Ballot and submit the Ballot instantly by utilizing the Ballot Upload Portal.  Instructions for electronic, online transmission of Ballots are set forth on the forms of Ballots, in the Disclosure Statement, and on the Debtors' case website at https://omniagentsolutions.com/Hornblower-Ballots.  The encrypted ballot data and audit trail created by such electronic submission shall become part of the record of any Ballot submitted in this manner and the electronic signature of the party entitled to vote will be deemed to be immediately legally valid and effective.  Ballots submitted by utilizing the online balloting portal will be deemed to include an original electronic signature.

33.     Each Ballot contains detailed instructions on how to complete it and how to make any applicable elections contained therein.  In particular, each Ballot indicates that, to be counted as a vote to accept or reject the Plan, the Ballot must be properly executed, completed, and delivered to the Notice and Claims Agent so that it is received no later than the Voting Deadline.

---

[7]     As discussed below, the remaining Non-Voting Classes are not entitled to vote on the Plan and therefore will not receive Ballots because (a) they are deemed unimpaired and are therefore conclusively presumed to accept the Plan pursuant to section 1126(f) of the Bankruptcy Code or (b) they are not entitled to receive or retain any property under the Plan and are therefore deemed to reject the Plan pursuant to section 1126(g) of the Bankruptcy Code.

34.     The Ballots also clearly indicate that, if a Holder does not vote to either accept or reject the Plan or votes to accept or reject the Plan <u>and</u>, in each case, does not check the box in Item 3 of the Ballots indicating an intent to opt out of granting the releases provided in Article IX.D of the Plan (which provisions are annexed as Exhibit 1 to each Ballot, substantially in the form attached to the Order as <u>Exhibit E-5</u>), such voting Holder will be deemed to have consented to the release provisions set forth in Article IX.D.

35.     Finally, the materials in the Solicitation Packages establish and communicate how the Notice and Claims Agent will tabulate the votes and elections contained in the Ballots.  Those tabulation rules provide, among other things, that: (a) a timely, executed, and otherwise valid Ballot submitted by a Holder of Claims in a Voting Class will supersede and revoke any prior Ballot(s) submitted by that Holder, *provided*, that if a Holder of Claims timely submits both a paper Ballot and an electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot; (b) Ballots that attempt to partially accept and partially reject the Plan will not be counted; (c) illegible Ballots will not be counted; (d) Ballots containing insufficient information to identify the claimant will not be counted; and (e) Ballots received after the Voting Deadline (provided that the Voting Deadline has not been extended) will not be counted.  As specified on the Ballots, any Ballot that is otherwise properly completed, executed, and timely returned to the Notice and Claims Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted as a vote in determining acceptance or rejection of the Plan.

iv.     <u>Approving the Procedures to Tabulate Votes on the Plan</u>

36.     The Debtors request that the Court approve the voting and tabulation procedures described herein in accordance with section 1126(c) of the Bankruptcy Code.  Specifically, section 1126(c) of the Bankruptcy Code provides that:

> A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

37.     As described above and in the Ballots, in tabulating the votes of the Voting Classes, the Notice and Claims Agent will not count or consider for any purpose in determining whether the Plan has been accepted or rejected the following Ballots, subject to the Debtors' right to waive any of the below specified requirements for completion and submission of Ballots: (a) except in the Debtors' sole discretion, any Ballot received after the Voting Deadline; (b) any Ballot that is illegible or contains insufficient information to permit the identification of the claimant; (c) any Ballot cast by a person or entity that does not hold a Claim in the Voting Classes; (d) any unsigned Ballot; (e) any Ballot delivered directly to the Court, the Debtors, or the Debtors' agents or advisors (other than the Notice and Claims Agent); or (f) except in the Debtors' sole discretion, any Ballot transmitted to the Notice and Claims Agent by telecopy, facsimile, e-mail, or other electronic means not using the Notice and Claims Agent's Ballot Upload Portal.   As specified on the Ballot, any Ballot that is otherwise properly completed, executed, and timely returned to the Notice and Claims Agent, but does not indicate an acceptance or rejection of the Plan, or that indicates both an acceptance and rejection of the Plan, will not be counted as a vote on the Plan.

38.     The Debtors require that the Holders of Claims in their respective Voting Classes vote all of their Claims, as applicable, either to accept or reject the Plan.  Except as otherwise discussed below, subject to the Debtors' right to waive such requirement, the Debtors propose that

whenever two or more Ballots are cast voting the same Claim, the last timely, executed, and otherwise valid Ballot received before the Voting Deadline should be deemed to reflect the voter's intent and to thus supersede any prior Ballot(s), without prejudice to the Debtors' right to object to the validity of the second ballot on any basis permitted by law, *provided*, that if a Holder of Claims timely submits both a paper Ballot and an electronic Ballot on account of the same Claim, the electronic Ballot shall supersede the paper Ballot.

39.   Bankruptcy Rule 3018(a) provides in relevant part that "[n]otwithstanding objection to a claim or interest, the court after notice and a hearing may temporarily allow the claim or interest in an amount which the court deems proper for the purpose of accepting or rejecting a plan." To establish Claim amounts for the purposes of voting, the Debtors propose to utilize the following procedures:

a.   Holders of Claims Entitled to Vote:  Only Holders of Claims, as of the Voting Record Date in the Voting Classes shall be entitled to vote on the Plan in respect of their Claims, subject to the procedures set forth herein.

b.   Class 3 First Lien Claims:  The amount of First Lien Claims in Class 3 First Lien Claims for voting purposes only will be determined by reference to the list of lenders to the First Lien Credit Agreement and those lenders' corresponding First Lien Claim as of the Voting Record Date as reflected in the loan register maintained by the administrative agent under the First Lien Credit Agreement, which shall be provided by such administrative agent no later than one (1) Business Day following the Voting Record Date.  For voting purposes, any and all Proofs of Claim filed on account of Class 3 First Lien Claims shall be disregarded.  A vote by a Holder of Class 3 First Lien Claims to accept (or reject) the Plan shall apply to the unsecured portion of such Claims and be deemed a vote to accept (or reject) the Plan with respect to such Holder's HB First Lien Deficiency Claims.

c.   Class 4 Revolver Claims:  The amount of Revolver Claims in Class 4 Revolver Claims for voting purposes only will be determined by reference to the list of lenders to the Revolver Credit Agreement and those lenders' corresponding Revolver Claim as of the Voting Record Date as reflected in the loan register maintained by the administrative agent under the Revolver Credit Agreement, which shall be provided by such administrative agent no later than one (1) Business Day following the Voting Record Date.  For voting purposes, any and all Proofs of Claim filed on account of Class 4

Revolver Claims shall be disregarded. A vote by a Holder of Class 4 Revolver Claims to accept (or reject) the Plan shall apply to the unsecured portion of such Claims and be deemed a vote to accept (or reject) the Plan with respect to such Holder's HB First Lien Deficiency Claims.

d. <u>HB First Lien Deficiency Claims in Class 5</u>: The amount of the HB First Lien Deficiency Claims in Class 5 for voting purposes only will be determined by the amount of the unsecured portion of the HB First Lien Claims as set forth in the Plan and (i) reference to the list of lenders to the First Lien Credit Agreement and those lenders corresponding First Lien Claim amounts as of the Voting Record Date as reflected in the loan register maintained by the administrative agent under the First Lien Credit Agreement, which shall be provided by such administrative agent no later than one (1) Business Day following the Voting Record Date and (ii) reference to the list of lenders to the Revolver Credit Agreement and those lenders corresponding Revolver Claim amounts as of the Voting Record Date as reflected in the loan register maintained by the administrative agent under the Revolver Credit Agreement, which shall be provided by such administrative agent no later than one (1) Business Day following the Voting Record Date. For voting purposes, any and all Proofs of Claim filed on account of Class 5 HB First Lien Deficiency Claims shall be disregarded.

e. <u>All Other Filed and Scheduled Claims (to the extent applicable)</u>:

i. the amount of the Claim agreed upon by the Debtors, as reflected in a court pleading, stipulation, agreement, or other document filed with the Court, in an order of the Court, or in a document executed by the Debtors pursuant to authority granted by the Court;

ii. the amount of the Claim determined through a Voting Resolution Event (as defined herein) in accordance with the resolution procedures set forth herein;

iii. the amount of the Claim listed in a valid Proof of Claim filed on or before the Voting Record Date as not contingent, not unliquidated, and not disputed, if such Claim is not subject to an objection filed in the Court on or before the date that is ten (10) days prior to the Voting Deadline;[8] *provided*, *however*, that a Proof of Claim filed on or before the Voting Record Date asserting a wholly contingent, wholly unliquidated, and/or wholly disputed amount (as determined by the Debtors) to which there is no objection filed on or before the date that is

---

[8]   If the Debtors file an objection to reduce and allow a Claim, the Claim shall vote in the reduced amount. If the Debtors file an objection to reclassify a Claim, the Claim shall be treated for solicitation and tabulation purposes as that reclassified Claim, which may include being moved out of one of the Voting Classes.

ten (10) days prior to the Voting Deadline shall vote in the amount of $1.00;

iv.   the amount of the Claim listed in the Schedules and not otherwise set forth in a Proof of Claim as not contingent, not unliquidated, and not disputed as of the Voting Record Date; *provided*, *however*, that a Claim listed in the Schedules and not otherwise set forth in a Proof of Claim as contingent, unliquidated, or disputed shall vote in the amount of $1.00 (solely for the purposes of satisfying the dollar amount provisions of section 1126(c) of the Bankruptcy Code); and

v.   in the absence of any of the foregoing and to the extent a Claim is the subject of an objection filed in the Court on or before the date that is ten (10) days prior to the Voting Deadline, the Claim shall be disallowed for voting purposes, except as otherwise ordered by the Court.

40.   Subject to the procedures described immediately above, Holders of Claims that are subject to a pending objection by the Debtors are not entitled to vote the disputed portion of their Claim, and the Debtors will provide notice to such Holders, substantially in the form attached to the Order as <u>Exhibit G</u>, to explain to such Holders the following procedures for establishing claim amounts for voting purposes and attempting to obtain a Voting Resolution Event (as defined below) where possible (the "<u>Disputed Claim Notice</u>").  A Holder of a Claim not entitled to vote on the Plan pursuant to the procedures described immediately above shall be permitted to vote such Claim (or to vote such Claim in an amount other than the amount set forth in the Schedules) only if one of the following shall have occurred with respect to such claim (a "<u>Voting Resolution Event</u>") on or before May 17, 2024 (the "<u>Voting Resolution Event Deadline</u>"):

a.   <u>Agreement Between the Parties</u>.  A stipulation or other agreement is executed between the Holder of such Claim and the Debtors allowing the Holder of such Claim to vote such Claim in an agreed upon amount.

b.   <u>Bankruptcy Rule 3018(a) Motion</u>.  A Holder files with the Court a motion pursuant to Bankruptcy Rule 3018(a) (a "<u>Rule 3018(a) Motion</u>") on or before the Voting Resolution Event Deadline seeking temporary Allowance of its Claim for voting purposes in the amount other than set forth in the Schedules or in response to an objection filed by the Debtors that has not otherwise been sustained by the Court after notice and a hearing.

27

1. The Debtors request that the Court direct that any Rule 3018(a) Motion must: (i) be made in writing, (ii) comply with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, (iii) set forth the name of the party asserting the Rule 3018(a) Motion, (iv) state with particularity the legal and factual bases for the Rule 3018(a) Motion, and (v) be set for hearing at or before the Combined Hearing.

2. The Debtors further request that, in the event that the Debtors and such parties are unable to resolve any issues raised by the Rule 3018(a) Motion before submitting their voting certification, the Notice and Claims Agent shall tabulate the vote as if no Rule 3018(a) Motion was filed and shall include in the voting certification representations that such vote was subject to a Rule 3018(a) Motion and whether including such Ballot in the amount sought by the party in the Rule 3018(a) Motion would change the particular Voting Class's acceptance or rejection of the Plan. The Court then shall determine at or before the Combined Hearing whether the Ballot should be counted as a vote on the Plan and in what amount.

c. <u>Other Order of the Court</u>. The Court otherwise orders the allowance of such Claim for purposes of voting to accept or reject the Plan.

41. The Debtors propose that the Notice and Claims Agent will provide any party that is permitted to provisionally vote its Claim on account of the timely occurrence of a Voting Resolution Event with a Solicitation Package, including a Ballot, within one (1) business day after the Voting Resolution Event Deadline. Such parties must then return a completed, properly executed Ballot to the Notice and Claims Agent so that it is received no later than the Voting Deadline (unless the Debtors extend the deadline, in their sole discretion, to facilitate a reasonable opportunity for such creditor to vote on the Plan). This affords parties voting provisional claims approximately four days to vote on the Plan.

42. The Debtors respectfully request that the Court approve the proposed voting and tabulation procedures and related relief set forth herein in accordance with section 1126(c) of the Bankruptcy Code and Bankruptcy Rule 3018(a). Furthermore, the Debtors request that the Notice

and Claims Agent be permitted to inspect, monitor, and supervise the solicitation process, inspect and tabulate the Ballots, and certify to the Court the results of the balloting.

### vi.   Establishing a Voting Deadline

43.      The Debtors propose to establish 4:00 p.m. (prevailing Central Time) on May 24, 2024 as the Voting Deadline for Holders in the Voting Classes, thereby establishing a solicitation period of at least twenty-nine (29) calendar days pursuant to the solicitation mailing, respectively (the "Solicitation Period").  The Debtors believe this is ample time for voting Holders to come to an informed decision on whether to vote to accept or reject the Plan and to submit their respective Ballots to the Notice and Claims Agent so that such Ballots are actually received by the Voting Deadline.  The Debtors further believe that the Voting Deadline and proposed Solicitation Period are appropriate as they allow the Debtors to comply with the milestones set forth in the RSA.  These milestones maintain a speedy and efficient timeline in which to achieve confirmation of the Plan, thereby maximizing the value of the Debtors' estates.  Accordingly, given the duration of the Solicitation Period and the circumstances giving rise to the Plan, the Debtors respectfully submit that the proposed Voting Deadline is reasonable under the circumstances and is sufficient and appropriate for the Holders of Claims in the Voting Classes to make an informed decision with respect to the Plan.

### vii.   Non-Solicitation of Classes Presumed to Accept or Deemed to Reject the Plan

44.      Section 1126(f) of the Bankruptcy Code provides that a class that is unimpaired by a plan does not need to be solicited, as "each holder of a claim or interest of such class [is] conclusively presumed to have accepted the plan."  *See* 11 U.S.C. § 1126(f).  Section 1126(g) of the Bankruptcy Code provides that a class that is fully impaired by a plan and does not entitle its

holders to receive or retain any property or recovery does not need to be solicited, as such class is deemed to reject the Plan. *See* 11 U.S.C. § 1126(g).

45. The Plan provides that Holders of Claims in Class 1 (Other Secured Claims) and Class 2 (Other Priority Claims) are unimpaired. Pursuant to section 1126(f) of the Bankruptcy Code, such Holders in those Classes are conclusively presumed to accept the Plan and will not be solicited.

46. In addition, pursuant to the Plan, Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) will either be (a) unimpaired and presumed to accept the Plan or (b) impaired and deemed to reject the Plan. Class 9 (Section 510(b) Claims) and Class 10 (Interests in Hornblower and Hornblower Holdings LLC) will be impaired and deemed to reject the Plan. Therefore, pursuant to sections 1126(f) and 1126(g) of the Bankruptcy Code, as applicable, Holders in Classes 8, 9, and 10 will not be solicited.

47. The Debtors respectfully request a waiver of the requirement that they mail copies of the Plan and Disclosure Statement to Holders of Claims or Interests in the above-described Non-Voting Classes (such Holders, the "Non-Voting Holders"). *See* Fed. R. Bankr. P. 3017(d) (requiring transmission of court-approved disclosure statement to, *inter alia*, classes of unimpaired creditors and equity security holders). The Debtors believe that it would be a material and unnecessary administrative burden on the Debtors to transmit the Solicitation Package to Holders of Claims or Interests that have been deemed to accept or reject the Plan.

48. In lieu of furnishing each Non-Voting Holder with the Solicitation Package, the Debtors propose to send to the Non-Voting Holders in Class 1 (Other Secured Claims), Class 2 (Other Priority Claims), Class 9 (Section 510(b) Claims), and Class 10 (Interests in Hornblower and Hornblower Holdings LLC), the notice of non-voting status (the "Notice of Non-Voting

Status"), which the Debtors propose to mail (or cause to be mailed) to such Holders by the Solicitation Deadline.  The Notice of Non-Voting Status sets forth a summary of the Plan, the treatment of such Non-Voting Holder's Claims, and the manner in which a copy of the Plan and the Disclosure Statement may be obtained.  In addition, the Debtors have made the Disclosure Statement and the Plan available at no cost on the Debtors' case website at https://omniagentsolutions.com/Hornblower.  With respect to Class 7 (Intercompany Claims) and Class 8 (Intercompany Interests) the Debtors request a waiver of any requirement to serve a Notice of Non-Voting Status or any other type of notice in connection with the Plan because such Claims and Interests are held by the Debtors and their affiliates.

49.     The Notice of Non-Voting Status, attached as Exhibit F to the Order, contains the full text of the release, exculpation, and injunction provisions set forth in Articles IX.C, D, E, and F of the Plan and advises such Non-Voting Holders that they will be deemed to have consented to the third-party release provision in Article IX.D of the Plan unless they timely and properly choose to opt out by properly executing, completing, and delivering the third-party release opt-out form attached to the Notice of Non-Voting Status to the Notice and Claims Agent so that it is received no later than the Voting Deadline.  The Notice of Non-Voting Status also includes instructions for where Holders can obtain copies of the Plan, Disclosure Statement, and related exhibits such as the valuation analyses, financial projections, liquidation analyses, and Plan Supplement documents, and information generally about the Plan and Combined Hearing.  Under the circumstances, the Debtors submit that the Notice of Non-Voting Status will be adequate and appropriate to provide the Non-Voting Holders notice of their non-voting status and the opportunity to object to and/or opt out of the third-party release provision set forth in Article IX.D of the Plan.

50.     The Solicitation Procedures undertaken by the Debtors and described herein with respect to the Non-Voting Holders comply with the Bankruptcy Code and should be approved. Accordingly, the Debtors respectfully request that the Court approve the Solicitation Procedures with respect to these Classes.

**D.     The Court Should Establish the Combined Hearing Date and Approve Notice Thereof and Objection Procedures**

51.     Section 1128(a) of the Bankruptcy Code provides that "[a]fter notice, the court shall hold a hearing on confirmation of a plan."   11 U.S.C. § 1128(a).   Bankruptcy Rule 3017(c) provides that in the order approving a disclosure statement, the court "may fix a date for the hearing on confirmation" of a plan.  In addition, Bankruptcy Rule 3020(b)(1) authorizes the Court to fix a time for filing objections to confirmation of a plan of reorganization.  *See* Fed. R. Bankr. P. 3017(a).  Bankruptcy Rule 2002(b) further requires that 28 days' notice be given by mail to all creditors of the time fixed for filing objections to confirmation of a plan of reorganization, subject to the Court's discretion to shorten such period under Bankruptcy Rule 9006(c)(1).

52.     As discussed above, the Debtors propose that the Combined Hearing be set, subject to the Court's schedule, on June 3, 2024, at 9:00 a.m. (prevailing Central Time), and that the Court establish May 24, 2024 at 4:00 p.m. (prevailing Central Time) as the Objection Deadline.  The Debtors further propose that the Court direct that any objections with respect to the Plan must (a) be in writing; (b) state the name and address of the objecting party and the amount and nature of the Claim or Interest of such party; (c) state the legal and factual basis for and nature of any objection; (d) conform to the applicable Bankruptcy Rules and Bankruptcy Local Rules; and (e) be filed with the Court, together with proof of service.

53.     The proposed schedule for the Combined Hearing, including the fixing of the Objection Deadline, is in the best interests of the Debtors, their estates, creditors, and all parties in interest.

54.     The Debtors further propose, no later than four (4) business days after the later of (i) entry of the Order and (ii) the filing of the Debtors' Schedules, to complete service (a) by mail to all known Holders of Claims against and Interests in the Debtors and (b) to all Notice Parties, in each case, as of the Voting Record Date, with a notice (the "<u>Combined Hearing Notice</u>"), substantially in the form annexed as <u>Exhibit A</u> to the Order, setting forth, among other things, (a) the date, time, and place of the Combined Hearing, (b) instructions for obtaining copies of the Disclosure Statement, the Plan, and the Order conditionally approving the Disclosure Statement, (c) the Objection Deadline and procedures for filing objections to confirmation of the Plan, and (d) a summary of the Plan, including a chart summarizing the distributions under the Plan.  The Combined Hearing Notice also clearly provides that Non-Voting Holders in Class 1, Class 2, Class 9, and Class 10 who do not timely opt out of the releases provided in Article IX.D of the Plan (which provisions are annexed to the Combined Hearing Notice) by the Voting Deadline will be deemed to have granted the releases therein.  In addition, as required by Bankruptcy Rule 2002(c), Article IX.F of the Plan, which sets forth the entities subject to an injunction under the Plan and the acts they are enjoined from pursuing, is set forth conspicuously in bold typeface in the Combined Hearing Notice.[9]

55.     The Debtors propose to send the Combined Hearing Notice to Holders of Class 3 (First Lien Claims), Class 4 (Revolver Claims), Class 5 (General Unsecured Claims), and Class 6

---

[9]     If a plan provides for an injunction against conduct not otherwise enjoined under the Bankruptcy Code, Bankruptcy Rule 2002(c) requires that the notice of hearing on plan confirmation provided under Bankruptcy Rule 2002(b)(2) include in conspicuous language a description of the injunction and the entities that would be subject to the injunction.

(Unsecured Go-Forward Trade Claims) as reflected in the books and records maintained by the applicable administrative agent or the Debtors' books and records, as of the Voting Record Date.

56.     To provide additional notice to parties in interest in these cases, the Debtors propose to post to the Debtors' case website various documents, including the following: (a) the Plan, (b) the Disclosure Statement, (c) this motion and any orders entered in connection with this motion, and (d) the Combined Hearing Notice.    The website address is https://omniagentsolutions.com/Hornblower.

57.     Bankruptcy Rule 2002(l) permits the Court to order "notice by publication if it finds that notice by mail is impracticable or that it is desirable to supplement the notice."  The Debtors request that the Court authorize the Debtors, in their discretion, to give supplemental Publication Notice, substantially in the form annexed as Exhibit B to the Order, of the Combined Hearing on a date no less than 28 days before the Combined Hearing in the national edition of the *New York Times*, the *San Francisco Chronicle*, and in any other trade or other publications that the Debtors deem prudent in their sole discretion.  The Debtors believe that the publication of certain of the contents of the Combined Hearing Notice in this manner would provide sufficient notice of the date, time, and place of the Combined Hearing and the Objection Deadline (and related procedures) to persons who do not otherwise receive the Combined Hearing Notice by mail.

58.     As contemplated by the Plan, all Executory Contracts and Unexpired Leases of the Hornblower Debtors (the "HB Contracts and Leases") will be deemed assumed under the Plan as of the Plan Effective Date unless such contract or lease (1) was previously assumed or rejected by the Debtors pursuant to an Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its terms; (3) is the subject of the motion to assume, assume and assign, or reject filed by the Debtors that is pending on or before the date of entry of the Confirmation Order; or (4) is

identified on the Schedule of Rejected Executory Contracts and Unexpired Leases, with such Executory Contracts and Unexpired Leases to be rejected under the Plan. As further contemplated by the Plan, all Executory Contracts and Unexpired Leases of the AQV Debtors (the "AQV Contracts and Leases"), except as otherwise provided in the Plan or AQV Bidding Procedures Order [Docket No. 166], will be deemed rejected under the Plan as of the Plan Effective Date, unless such contract or lease (1) was previously assumed or rejected by the Debtors, pursuant to an Order of the Bankruptcy Court; (2) previously expired or terminated pursuant to its terms; or (3) is the subject of a motion to assume, assume and assign, or reject filed by the Debtors that is pending on or before the date of entry of the Confirmation Order.

59. The Schedule of Rejected Executory Contracts and Unexpired Leases will be included in the Plan Supplement. In advance of the Objection Deadline, the Debtors propose to send a notice of rejection, a form of which is attached to the Order as Exhibit C (the "Rejection Notice"), to the counterparties to HB Contracts and Leases identified on the Schedule of Rejected Executory Contracts and Unexpired Leases. The Rejection Notice will notify such counterparties of, among other things, their inclusion on the Schedule of Rejected Executory Contracts and Unexpired Leases, their proposed treatment under the Plan, the date, time, and place of the Combined Hearing, and the procedures to object to the rejection of such counterparty's respective Executory Contract(s) and/or Unexpired Lease(s) by the Objection Deadline.

60. In addition, as contemplated by the Plan, the Debtors propose to serve a cure notice, a form of which is attached to the Order as Exhibit D (the "Cure Notice"), on counterparties to Executory Contracts and Unexpired Leases to be assumed pursuant to Article V.A of the Plan by no later than fourteen (14) days prior to the Combined Hearing. The Cure Notice will notify such counterparties of, among other things, their proposed treatment under the Plan, their related Cure

35

Claim, and the procedures to object to the assumption, assumption and assignment, or related Cure Claim for such counterparty's respective Executory Contract(s) and/or Unexpired Lease(s).

61.     The proposed service of the Combined Hearing Notice will provide sufficient notice to all parties in interest of the date, time, and place of the Combined Hearing and the procedures for objecting to the confirmation of the Plan.  In addition, the Publication Notice will provide sufficient notice to persons who did not otherwise receive notice pursuant to the Combined Hearing Notice.  Further, the Rejection Notice will provide sufficient notice to all applicable counterparties of Executory Contracts and Unexpired Leases identified on the Schedule of Rejected Executory Contracts and Unexpired Leases of such Executory Contracts and Unexpired Leases' proposed treatment and the date, time, and place of the Combined Hearing and the procedures for objecting to their agreement's rejection and proposed treatment under the Plan. Finally, the Cure Notice will provide sufficient notice to applicable counterparties of Executory Contracts and Unexpired Leases to be assumed pursuant to Article V.A of the Plan of their proposed treatment under the Plan, including applicable Cure Claims, and the procedures for objecting to such proposed treatment.

62.     The Debtors respectfully submit that the proposed dates and procedures comply with the applicable Bankruptcy Rules and will afford all parties in interest ample notice of the Combined Hearing and applicable objection deadlines and procedures, and therefore should be approved.  First, the Debtors' proposed schedule would provide all parties, including all Holders in the Voting Classes, with adequate notice of the Combined Hearing and Objection Deadline.  In addition, the requested relief otherwise complies with the applicable rules and will provide the Court, the Debtors, and other parties in interest with sufficient time to consider any objections or proposed modifications to the Plan before the Combined Hearing.  Accordingly, the proposed dates

and procedures will ensure that all parties will receive sufficient notice of the Objection Deadline and the Combined Hearing in accordance with the applicable Bankruptcy Rule, and should therefore be approved.

**E.     The Court Should Approve the Rights Offering Procedures and the Form of Rights Offering Materials**

63.     Section 363(b) of the Bankruptcy Code provides, in relevant part, that a debtor, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  In the Fifth Circuit, bankruptcy courts have authorized the use or sale of property of the estate outside the ordinary course of business when such use or sale is grounded upon a "sound business purpose" and is proposed in good faith.  *See, e.g.*, *In re Cont'l Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986) ("[F]or a debtor-in-possession or trustee to satisfy its fiduciary duty to the debtor, creditors and equity holders, there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."). Once a debtor articulates a valid business justification under section 363, a presumption arises that the debtor's decision was made on an informed basis, in good faith, and in the honest belief the action was in the best interest of the company.  *See In re Pisces Energy, LLC*, No. 09-36591-H5-11, 2009 WL 7227880, at *6 (Bankr. S.D. Tex. Dec. 21, 2009) (holding that the 'business judgment test' "requires a showing that the proposed course of action will be advantageous to the estate and the decision be based on sound business judgment").  Further, once "the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Thus, if a debtor's actions satisfy the business judgment rule, then the transaction in question should be approved under section 363(b)(1) of the Bankruptcy Code.

64.     The Rights Offering, which will fund costs associated with the Debtors' emergence from these chapter 11 cases, is a critical component of the Debtors' proposed restructuring and a key source of value for Eligible Holders.  The Debtors and the Commitment Parties held extensive arms-length negotiations of the Rights Offering terms.  Approval of the Rights Offering Procedures and Rights Offering Materials is necessary to successfully effectuate the Rights Offering and will provide the Eligible Holders a fair and reasonable opportunity to participate in the Rights Offering.  Approval of the Rights Offering Procedures and the Rights Offering Materials is in the best interests of the Debtors' estates, creditors, and all other parties in interest, and constitutes an appropriate exercise of business judgment.  Therefore, the form and manner of the Rights Offering Materials should be approved.

## Non-Material Modifications

65.     The Debtors request authorization, subject to any consent rights set forth in the RSA, to make non-material changes to the Disclosure Statement, Plan, Combined Hearing Notice, Solicitation Packages, Rights Offering Procedures, Rights Offering Materials, Notice of Non-Voting Status, Ballots, Solicitation Procedures, Cure and Rejection Notices, voting and tabulation procedures, and related documents, including changes to correct typographical and grammatical errors, if any, and to make conforming changes to the Disclosure Statement, the Plan, and any other materials in the Solicitation Packages before distribution, without further Order of the Court.

## No Previous Request

66.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

## Notice

67.     Notice of the hearing on the relief requested in this motion will be provided by the Debtors in accordance and compliance with Bankruptcy Rules 4001 and 9014, as well as the

38

Bankruptcy Local Rules, and is sufficient under the circumstances. Without limiting the foregoing, due notice will be afforded, whether by facsimile, electronic mail, overnight courier, or hand delivery, to parties in interest, including (a) the U.S. Trustee; (b) the holders of the 30 largest unsecured claims against the Debtors (on a consolidated basis); (c) counsel to the Ad Hoc Group, Milbank LLP, 55 Hudson Yards, New York, NY 10001; (d) counsel to Crestview, Davis Polk & Wardwell LLP, 450 Lexington Avenue, New York, NY 10017; (e) counsel to the Senior DIP Lenders, White & Case LLP, 1221 Avenue of the Americas, New York, NY 10020; (f) proposed counsel to the Creditors' Committee, Pachulski Stang Ziehl & Jones LLP, 10100 Santa Monica Blvd 13th Floor, Los Angeles, CA 90067; (g) counsel to Alter Domus (US) LLC, as agent under the Superpriority Credit Agreement, Norton Rose Fulbright US LLP, 1301 6th Avenue, New York, NY 10019; (h) counsel to GLAS Trust Company LLC, as agent under the Senior DIP Facility, Seward & Kissel LLP, One Battery Park Plaza, New York, NY 10004; (i) counsel to GLAS Trust Company LLC, as agent under the Junior DIP Facility and under the First Lien Credit Agreement, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, NY 10019; (j) counsel to UBS AG, Stamford Branch, as agent under the Revolving Credit Agreement, Cahill Gordon & Reindel LLP, 32 Old Slip, New York, NY 10005; (k) the United States Attorney's Office for the Southern District of Texas; (l) the Internal Revenue Service; (m) the United States Securities and Exchange Commission; (n) the state attorneys general for states in which the Debtors conduct business; (o) other regulatory agencies having a regulatory or statutory interest in these cases; and (p) any party that has requested notice pursuant to Bankruptcy Rule 2002 (collectively, the "Notice Parties"). The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

68.     A   copy   of   this   motion   is   available   on   (a)   the   Court's   website,   at
www.txs.uscourts.gov, and (b) the website maintained by the Debtors' Notice and Claims Agent
at https://omniagentsolutions.com/Hornblower.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request entry of the Order granting the relief requested herein and such other relief as is just and proper.

March 18, 2024

Respectfully submitted,

By: */s/ John F. Higgins*
**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

- and -

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
Paul M. Basta (admitted *pro hac vice*)
Jacob A. Adlerstein (admitted *pro hac vice*)
Kyle J. Kimpler (admitted *pro hac vice*)
Sarah Harnett (admitted *pro hac vice*)
Neda Davanipour (admitted *pro hac vice*)
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 373-3000
Facsimile: (212) 757-3990
pbasta@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
sharnett@paulweiss.com
ndavanipour@paulweiss.com

*Proposed Counsel to the Debtors and the Debtors in Possession*

**<u>Certificate of Service</u>**

      I certify that on March 18, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ John F. Higgins*

John F. Higgins
