## Exhibit A

**Redline**

**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HORNBLOWER HOLDINGS LLC, *et al*.,[1] | ) | Case No. 24-90061 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered ~~Requested~~) |
| | ) | |

~~**INTERIM**~~**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) OBTAIN
SENIOR SECURED POSTPETITION FINANCING, (B) USE CASH COLLATERAL,
AND (C) GRANT LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE
CLAIMS, (II) GRANTING ADEQUATE PROTECTION TO CERTAIN PREPETITION
SECURED PARTIES, (III) MODIFYING THE AUTOMATIC STAY, AND
(IV) ~~SCHEDULING A
FINAL HEARING, AND (V)~~ GRANTING RELATED RELIEF**

[Relates to Docket ~~No~~**Nos**. 35**, 72**]

Upon the motion (the "**DIP Motion**")[2] of Hornblower Holdings LLC and each of its

above-captioned affiliated debtors and debtors-in-possession (collectively, the "**Debtors**"),

pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 363(m), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et*

*seq.* (as amended, the "**Bankruptcy Code**"), rules 2002, ~~4001,~~ 6003, 6004 and 9014 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), rules 2002-1, ~~4001-1(b),~~

4002-1(i), and 9013-1 of the Bankruptcy Local Rules of the United States Bankruptcy Court for

---

[1]   The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035.  Due to the large
      number of debtor entities in these chapter 11 cases, ~~for which the Debtors have requested joint administration
      which are being jointly administered~~, a complete list of the debtor entities and the last four digits of their
      federal tax identification numbers is not provided herein.  A complete list of such information may be obtained
      on      the      website      of      the      Debtors'      proposed      claims      and      noticing      agent      at
      https://omniagentsolutions.com/Hornblower.  The location of the Debtors' service address for purposes of these
      chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]   Capitalized terms used but not defined herein are given the meanings ascribed to such terms in the DIP Motion,
      the Senior DIP Credit Agreement (as defined herein), or the Junior DIP Credit Agreement (as defined herein),
      as applicable.

the Southern District of Texas (the "**Local Rules**"), and the Procedures for Complex Chapter 11 Bankruptcy Cases (the "**Complex Case Rules**" and, together with the Local Rules, the "**Bankruptcy Local Rules**"), seeking entry of ~~this interim~~**the Interim Order (as defined below) and a final** order (this "~~Interim Order") and a~~ **Final Order** ~~(as defined herein~~**"** and, together with ~~this~~**the** Interim Order, the "**DIP Orders**") among other things:

- authorizing Hornblower Sub, LLC and American Queen Sub, LLC (together, the "**Borrowers**") to obtain postpetition financing ("**DIP Financing**") pursuant to (a) a senior secured, superpriority, priming debtor in possession term loan facility (the "**Senior DIP Facility**") subject to the terms and conditions set forth in that certain Senior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement attached ~~hereto~~**to the Interim Order** in substantially final form as **Exhibit A** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Senior DIP Credit Agreement**") by and among the Borrowers, the DIP Guarantors (as defined below), the financial institutions or other entities from time to time party thereto as lenders (the "**Senior DIP Lenders**"), and GLAS Trust Company LLC, as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "**Senior DIP Agent**" and, together with the Senior DIP Lenders, the "**Senior DIP Secured Parties**") and (b) a junior secured, superpriority, priming debtor in possession multi-draw term loan facility (the "**Junior DIP Facility**" and, together with the Senior DIP Facility, the "**DIP Facilities**") subject to the terms and conditions set forth in that certain Junior Secured Superpriority Debtor-in-Possession Term Loan Credit Agreement attached ~~hereto~~**to the Interim Order** in substantially final form as **Exhibit B** (as amended, restated, amended and restated, supplemented, or otherwise modified from time to time, the "**Junior DIP Credit Agreement**" and, together with the Senior DIP Credit Agreement, the "**DIP Credit Agreements**") by and among the Borrowers, the DIP Guarantors, the financial institutions or other entities from time to time party thereto as lenders (the "**Junior DIP Lenders**" and, together with the Senior DIP Lenders, the "**DIP Lenders**"), and GLAS Trust Company LLC, as administrative agent and collateral agent (in such capacity, together with its successors and permitted assigns, the "**Junior DIP Agent**" and, together with the Senior DIP Agent, the "**DIP Agents**"),[3] consisting of (i) with respect to the Senior DIP Facility, new-money term loans in an aggregate principal amount of $300 million, the entirety of which ~~will be~~**was made** available immediately upon entry of ~~this~~**the** Interim Order (including for the purpose of refinancing all of the Prepetition Superpriority Obligations) and (ii) with respect to the Junior DIP Facility, term loans in an aggregate principal amount of $285 million, of which $224 million ~~will be~~**was made** available immediately upon

---

[3] The Junior DIP Agent, together with the Junior DIP Lenders, shall be referred to herein as the "**Junior DIP Secured Parties**." The Junior DIP Secured Parties, together with the Senior DIP Secured Parties, shall be referred to herein as the "**DIP Secured Parties**."

entry of ~~this~~**the** Interim Order (including for the purpose of refinancing all of the Prepetition Incremental Superpriority Obligations) (such loans, together, the "**DIP Loans**" and the commitments therefor, the "**DIP Commitments**");[4]

- authorizing the Borrowers to incur, and the other Debtors to jointly and severally guarantee (such Debtors, in this capacity, the "**DIP Guarantors**" and, together with the Borrowers, the "**DIP Loan Parties**"), the DIP Loans and all extensions of credit, financial accommodations, reimbursement obligations, fees and premiums (including, without limitation, commitment fees or premiums and administrative agency fees), costs, expenses, obligations in respect of any Secured Cash Management Agreement, and other liabilities and obligations (including indemnities and similar obligations, whether contingent or absolute) due or payable under the DIP Documents (as defined below) (such obligations incurred under the Senior DIP Facility, the "**Senior DIP Obligations**," such obligations incurred under the Junior DIP Facility, the "**Junior DIP Obligations**" and, collectively, the "**DIP Obligations**");

- authorizing the DIP Loan Parties to execute, deliver and perform under each of the DIP Credit Agreements and all other documents and instruments that may be reasonably requested by the Senior DIP Secured Parties in connection with the Senior DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, together with the Senior DIP Credit Agreement, the "**Senior DIP Documents**") and by the Junior DIP Secured Parties in connection with the Junior DIP Facility (in each case, as amended, restated, supplemented, waived or otherwise modified from time to time in accordance with the terms thereof and hereof, together with the Junior DIP Credit Agreement, the "**Junior DIP Documents**" and, together with the Senior DIP Documents, the "**DIP Documents**");

- subject to the Carve-Out (as defined below) and otherwise solely to the extent set forth herein, granting to each of the DIP Agents, for the benefit of the applicable DIP Secured Parties, allowed superpriority administrative expense claims pursuant to section 364(c)(1) of the Bankruptcy Code;

- granting to each of the DIP Agents, for the benefit of the applicable DIP Secured Parties, valid, enforceable, non-avoidable and automatically perfected liens pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code on the DIP Collateral (as defined below), on the terms described herein;

- authorizing each of the DIP Agents, acting at the direction of the applicable Required DIP Lenders (as defined below), to take all commercially reasonable actions to implement the terms of ~~this Interim Order~~**the DIP Orders**;

---

[4] The Debtors also seek authorization to enter into, and perform under, those certain Agent Fee Letters, Lender Fee Letter, and the Exit Facilities Commitment Letter (each as defined in the DIP Credit Agreements and collectively, the "**Fee Letters**"), substantially in the form attached ~~hereto~~**to the Interim Order** as **Exhibit C**.

- waiving (a) the Debtors′ right to surcharge Prepetition Collateral (as defined below) and the DIP Collateral (together, the ″**Collateral**″) pursuant to section 506(c) of the Bankruptcy Code and (b) any ″equities of the case″ exception under section 552(b) of the Bankruptcy Code; ~~*provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of such Final Order;~~

- waiving the equitable doctrine of "marshaling" and other similar doctrines (a) with respect to the DIP Collateral for the benefit of any party other than the DIP Secured Parties and (b) with respect to the Prepetition Collateral (as defined below) for the benefit of any party other than the Prepetition Secured Parties (as defined below); ~~*provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order;~~

- authorizing the Debtors to use proceeds of the DIP Facilities and Cash Collateral (as defined below) solely in accordance with the DIP Orders and the DIP Documents, including the refinancing of the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations;

- authorizing the Debtors to pay the DIP Obligations as they become due and payable in accordance with the DIP Orders and the DIP Documents;

- subject to the restrictions set forth in the DIP Documents and the DIP Orders, authorizing the Debtors to use Prepetition Collateral and provide adequate protection to certain Prepetition Secured Parties for any Diminution in Value (as defined below);

- vacating and modifying the automatic stay to the extent necessary to permit the Debtors, the DIP Secured Parties, and the Prepetition Secured Parties to implement and effectuate the terms and provisions of the DIP Orders and the DIP Documents; **and**

- waiving any applicable stay (including under Bankruptcy Rule 6004) and providing for immediate effectiveness of this ~~Interim Order and, upon entry, the~~ Final Order~~; and~~.

- ~~scheduling a final hearing (the "**Final Hearing**") to consider final approval of the DIP Facilities and the use of Cash Collateral on the terms of a proposed order (the "**Final Order**") to be posted to the docket prior to the Final Hearing.~~

The Court having considered the ~~interim~~ relief requested in the DIP Motion, the exhibits attached thereto, the *Declaration of Matthew Scheidemann in Support of Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Adequate Protection to*

Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief (the "**DIP Declaration**"), and the *Declaration of Jonathan Hickman in Support of Chapter 11 Cases and First Day Motions* (the "**First Day Declaration**"), the available DIP Documents, and the evidence submitted and arguments made at the interim hearing held on February 21, 2024 (the "**Interim Hearing**") **and at the final hearing on the DIP Motion held on March [25], 2024 (the "Final Hearing")**; and due and sufficient notice of the ~~Interim~~**Final** Hearing having been given in accordance with Bankruptcy ~~Rules~~**Rule** 2002~~, 4001(b), (c) and (d)~~, and all applicable Bankruptcy Local Rules; and the ~~Interim~~**Court having entered the** *Interim Order (I) Authorizing the Debtors to (A) Obtain Senior Secured Postpetition Financing, (B) Use Cash Collateral, and (C) Grant Liens and Superpriority Administrative Expense Claims, (II) Granting Adequate Protection to Certain Prepetition Secured Parties, (III) Modifying the Automatic Stay, (IV) Scheduling a Final Hearing, and (V) Granting Related Relief* **[Docket No. 72] (the "Interim Order"); and the Final** Hearing having been held and concluded; and ~~no~~**all** objections**, if any,** to the ~~interim~~**final** relief requested in the DIP Motion having been ~~filed or made~~**withdrawn, resolved or overruled by the Court**; and it appearing that approval of the ~~interim~~**final** relief requested in the DIP Motion is necessary to avoid ~~immediate and~~ irreparable harm to the Debtors and their estates ~~pending the Final Hearing,~~**.**, otherwise is fair and reasonable, in the best interests of the Debtors and their estates, and essential for the continued operation of the Debtors' businesses and the preservation of the value of the Debtors' assets; and it appearing that the DIP Loan Parties' entry into the DIP Documents is a sound and prudent exercise of the Debtors' business judgment; and after due deliberation and consideration, and good and sufficient cause appearing therefor,

5

**BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING AND FINAL HEARING, THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[5]

A.      *Petition Date.*  On February 21, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (the "**Court**").

B.      *Debtors in Possession.*  The Debtors have continued in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

C.      *Jurisdiction and Venue.*  This Court has jurisdiction over these cases pursuant to 11 U.S.C. § 1334.  Consideration of the DIP Motion constitutes a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  The Court may enter a final order approving the relief sought in the DIP Motion consistent with Article III of the United States Constitution. Venue for these cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. § 1408.  The predicates for the relief sought herein are sections 105, 361, 362, 363(b), 363(c), 363(e), 363(m), 364(c), 364(d)(1), 364(e), 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004 and 9014, and Bankruptcy Local Rules 2002-1, 4001-1(b), 4002-1(i), and 9013-1.

D.      *Committee Formation.*  As of the date hereof **On March 5, 2024**, the United States Trustee for the Southern District of Texas (the "**U.S. Trustee**") has not appointed an official committee of unsecured creditors in these cases (a**the** "**Creditors' Committee**").

---

[5]   The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

E.       *Notice*.   The ~~Interim~~**Final** Hearing was held ~~pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2)~~**on March [25], 2024**.  Proper, timely, adequate and sufficient notice of the DIP Motion and the ~~Interim~~**Final** Hearing has been provided in accordance with the Bankruptcy Code, Bankruptcy Rules and Bankruptcy Local Rules, and no other or further notice was required under the circumstances.  The ~~interim~~**final** relief granted herein is necessary to avoid ~~immediate and~~ irreparable harm to the Debtors and their estates ~~pending the Final Hearing~~.

F.       *Cash Collateral*.  As used herein, the term "**Cash Collateral**" shall mean all of the Debtors' cash, wherever located and held, including cash in deposit accounts, that constitutes or will constitute "cash collateral" of any of the Prepetition Secured Parties or DIP Secured Parties within the meaning of section 363(a) of the Bankruptcy Code.

G.       *Debtors' Stipulations*.  Subject to the provisions and limitations contained in paragraph ~~17 hereof,~~**18 hereof, upon entry of the Interim Order and reaffirmed pursuant to this Final Order,** and after consultation with their attorneys and financial advisors, the Debtors ~~admit, stipulate and agree~~**admitted, stipulated and agreed** that (the following are referred to herein as the "**Debtors' Stipulations**"):

(i)       *Prepetition Superpriority Credit Agreement*.  Pursuant to that certain Credit Agreement, dated as of November 10, 2020 (the "**Prepetition Superpriority Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Superpriority Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Superpriority Loan Documents**"), by and among (a) Hornblower Holdco, LLC ("**Hornblower Parent**") and American Queen Holdco, LLC ("**American Queen Parent**" and, together with Hornblower

Parent, the "**Parents**"), as parents, (b) the Borrowers, as borrowers (the "**Prepetition Superpriority Borrowers**" and, together with Parents, Journey Beyond Holdings, LLC, a Delaware limited liability company ("**JB TopCo**") as guarantor,  and any other guarantors under the Prepetition Superpriority Credit Agreement, the "**Prepetition Superpriority Loan Parties**"), (c) Alter Domus (US) LLC, as administrative agent and collateral agent (the "**Prepetition Superpriority Agent**"), and (d) the lenders from time to time thereunder (the "**Prepetition Superpriority Lenders**" and, together with the Prepetition Superpriority Agent, the "**Prepetition Superpriority Secured Parties**"), the Prepetition Superpriority Loan Parties incurred Loan Obligations (as defined in the Prepetition Superpriority Credit Agreement, and together with all accrued but unpaid interest, fees, and expenses due thereon in accordance with the terms of the Prepetition Superpriority Credit Agreement and Prepetition Superpriority Loan Documents, the "**Prepetition Superpriority Obligations**");

(ii)     *Prepetition Incremental Superpriority Credit Agreement*.  Pursuant to that certain Incremental Superpriority Credit Agreement, dated as of November 17, 2023 (the "**Prepetition Incremental Superpriority Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Incremental Superpriority Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Incremental Superpriority Loan Documents**"), by and among (a) Parents, as parents, (b) the Borrowers, as borrowers (the "**Prepetition Incremental Superpriority Borrowers**" and, together with Parents, JB Topco as guarantor, and any other guarantors under the Prepetition Incremental Superpriority Credit Agreement, the "**Prepetition Incremental Superpriority Loan Parties**"), (c) Alter Domus (US) LLC, as

administrative agent, collateral agent, and incremental term loan representative (the "**Prepetition Incremental Superpriority Agent**"), and (d) the lenders from time to time thereunder (the "**Prepetition Incremental Superpriority Lenders**" and, together with the Prepetition Incremental Superpriority Agent, the "**Prepetition Incremental Superpriority Secured Parties**"), the Prepetition Incremental Superpriority Loan Parties incurred Loan Obligations (as defined in the Prepetition Incremental Superpriority Credit Agreement, and together with all accrued but unpaid interest, fees, and expenses due thereon in accordance with the terms of the Prepetition Incremental Superpriority Credit Agreement and Prepetition Superpriority Loan Documents, the "**Prepetition Incremental Superpriority Obligations**");

(iii)    *Prepetition First Lien Credit Agreement*.   Pursuant to that certain First Lien Credit Agreement, dated as of April 27, 2018 (the "**Prepetition First Lien Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition First Lien Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition First Lien Loan Documents**"), by and among (a) the Parents, as parents, (b) the Borrowers, as borrowers (the "**Prepetition First Lien Borrowers**" and, together with Parents, JB Topco as guarantor, and any other guarantors under the Prepetition First Lien Credit Agreement, the "**Prepetition First Lien Loan Parties**"), (c) GLAS Trust Company LLC, as successor to UBS AG, Stamford Branch, as administrative agent and collateral agent (the "**Prepetition First Lien Agent**"), (d) UBS Securities LLC and Barclays Bank PLC, as joint lead arrangers and joint bookrunners, (e) Fifth Third Bank, as documentation agent, and (f) the lenders from time to time thereunder (the "**Prepetition First Lien Lenders**" and, together with the Prepetition First Lien Agent, the

"**Prepetition First Lien Secured Parties**"), the Prepetition First Lien Loan Parties incurred Loan Obligations (as defined in the Prepetition First Lien Credit Agreement, and together with all accrued but unpaid interest, fees, and expenses due thereon in accordance with the terms of the Prepetition First Lien Credit Agreement and Prepetition First Lien Loan Documents, the "**Prepetition First Lien Obligations**");

(iv)     *Prepetition Revolving Credit Agreement.*  Pursuant to that certain Credit Agreement, dated as of May 13, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Prepetition Revolving Credit Agreement**" and, collectively with the other "Loan Documents" (as defined in the Prepetition Revolving Credit Agreement) and any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived, or otherwise modified prior to the Petition Date, the "**Prepetition Revolving Loan Documents**" and, together with the Prepetition Superpriority Loan Documents, Prepetition Incremental Superpriority Loan Documents, and Prepetition First Lien Loan Documents, the "**Prepetition Loan Documents**"), by and among (a) the Parents, as parents, (b) the Borrowers, as borrowers (the "**Prepetition Revolving Borrowers**" and, together with Parents and any guarantors under the Prepetition Revolving Credit Agreement (which do not include JB Topco), the "**Prepetition Revolving Loan Parties**" and, together with the Prepetition Superpriority Loan Parties, the Prepetition Incremental Superpriority Loan Parties, and the Prepetition First Lien Loan Parties, the "**Prepetition Loan Parties**"), (c) UBS AG, Stamford Branch, as administrative agent and collateral agent (the "**Prepetition Revolving Agent**" and, together with the Prepetition Superpriority Agent, the Prepetition Incremental Superpriority Agent and the Prepetition First Lien Agent, the "**Prepetition Agents**"), (d) UBS Securities LLC, as sole lead arranger and

bookrunner, and (f) the lenders from time to time thereunder (the "**Prepetition Revolving Lenders**" and, together with the Prepetition Revolving Agent, the "**Prepetition Revolving Secured Parties**" and, together with the Prepetition Superpriority Secured Parties, the Prepetition Incremental Superpriority Secured Parties and the Prepetition First Lien Secured Parties, the "**Prepetition Secured Parties**"), the Prepetition Revolving Loan Parties incurred Loan Obligations (as defined in the Prepetition Revolving Agreement, and together with all accrued but unpaid interest, fees, and expenses due thereon in accordance with the terms of the Prepetition Revolving Credit Agreement and Prepetition Revolving Loan Documents, the "**Prepetition Revolving Obligations**" and, together with the Prepetition Superpriority Obligations, the Prepetition Incremental Superpriority Obligations and the Prepetition First Lien Obligations, the "**Prepetition Secured Obligations**").

(v)     *Superpriority Intercreditor Agreement.* Pursuant to that certain Amended and Restated Superpriority Intercreditor Agreement, dated as of November 17, 2023 (as amended, restated, supplemented or otherwise modified from time to time, the "**Superpriority Intercreditor Agreement**"), by and among the Prepetition Superpriority Agent, the Prepetition Incremental Superpriority Agent, the Prepetition First Lien Agent, the Prepetition Revolving Agent, the Parents, the Borrowers, and the Subsidiary Loan Parties (as defined therein) party thereto, the parties thereto agreed, among other things, that any lien on the Common Collateral (as defined in the Superpriority Intercreditor Agreement, and which includes liens on assets of JB Topco, the "**Superpriority ICA Common Collateral**") securing or purporting to secure any Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations of any Prepetition Superpriority Secured Parties and Prepetition Incremental Superpriority Secured Parties, respectively, shall have priority over and be senior in all respects and prior to any lien on

the Superpriority ICA Common Collateral securing or purporting to secure any Prepetition First Lien Obligations or Prepetition Revolving Obligations, other than with respect to any lien on the Pari Passu Collateral (as defined in the Superpriority Intercreditor Agreement), the priority of which is governed by the Pari Passu Intercreditor Agreement (as defined below).

(vi)     *Pari Passu Intercreditor Agreement*.  Pursuant to that certain Amended and Restated First Lien/First Lien Intercreditor Agreement, dated as of November 12, 2020 (as amended, restated, supplemented or otherwise modified from time to time, the "**Pari Passu Intercreditor Agreement**"), by and between the Prepetition Superpriority Agent, the Prepetition Incremental Superpriority Agent, the Prepetition First Lien Agent, the Prepetition Revolving Agent, the Borrowers, the Parents, and the Subsidiary Loan Parties (as defined therein) party thereto, the parties thereto agreed, among other things, that (a) any lien on the Common Collateral (as defined in the Pari Passu Intercreditor Agreement, and which does not include any liens on assets of JB Topco, the "**Pari ICA Common Collateral**") securing or purporting to secure any Prepetition First Lien Obligations or Prepetition Revolving Obligations shall be *pari passu* and (b) any lien on the Pari Passu Collateral (as defined in the Pari Passu Intercreditor Agreement, the "**Pari Passu Collateral**") securing or purporting to secure any Prepetition Secured Obligations shall be *pari passu*.

(vii)    *Superpriority Collateral Agreement*. Pursuant to that certain Second Amended and Restated Collateral Agreement (Superpriority), dated as of December 28, 2023 (as amended, restated, supplemented or otherwise modified from time to time, the "**Superpriority Collateral Agreement**"), by and among the Borrowers, certain subsidiaries of the Borrowers identified therein, the Prepetition Superpriority Agent, and the Prepetition Incremental Superpriority Agent, the parties thereto agreed, among other things, that proceeds from the

Collateral (as defined in the Superpriority Collateral Agreement) shall be applied: *first*, to pay ratably the costs and expenses owed to the Prepetition Superpriority Agent and the Prepetition Incremental Superpriority Agent; *second*, to pay the Prepetition Superpriority Obligations in full; and *third*, to pay the Prepetition Incremental Superpriority Obligations.

(viii)   *Prepetition Superpriority Obligations*.   As of the Petition Date, the Prepetition Superpriority Loan Parties were justly and lawfully indebted and liable to the Prepetition Superpriority Secured Parties without contest, attack, defense, challenge, rejection, recovery, reduction, subordination, recharacterization, avoidance, objection, claim, counterclaim, or offset of any kind, for Prepetition Superpriority Obligations in the aggregate principal amount of not less than $282,876,289, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition Superpriority Obligations incurred under the Prepetition Superpriority Loan Documents;

(ix)   *Prepetition Incremental Superpriority Obligations*.   As of the Petition Date, the Prepetition Incremental Superpriority Loan Parties were justly and lawfully indebted and liable to the Prepetition Incremental Superpriority Secured Parties without contest, attack, defense, challenge, rejection, recovery, reduction, subordination, recharacterization, avoidance, objection, claim, counterclaim, or offset of any kind, for Prepetition Incremental Superpriority Obligations in the aggregate principal amount of not less than $156,999,140, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition Incremental Superpriority Obligations incurred under the Prepetition Incremental Superpriority Loan Documents;

13

(x)      *Prepetition First Lien Obligations*.   As of the Petition Date, the Prepetition First Lien Loan Parties were justly and lawfully indebted and liable to the Prepetition First Lien Secured Parties without contest, attack, defense, challenge, rejection, recovery, reduction, subordination, recharacterization, avoidance, objection, claim, counterclaim, or offset of any kind, for Prepetition First Lien Obligations in the aggregate principal amount of not less than $695,543,945, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition First Lien Obligations incurred under the Prepetition First Lien Loan Documents;

(xi)     *Prepetition Revolving Obligations*.   As of the Petition Date, the Prepetition Revolving Loan Parties were justly and lawfully indebted and liable to the Prepetition Revolving Secured Parties without contest, attack, defense, challenge, rejection, recovery, reduction, subordination, recharacterization, avoidance, objection, claim, counterclaim, or offset of any kind, for Prepetition Revolving Obligations in the aggregate principal amount of not less than $26,159,240, plus accrued and unpaid interest thereon and any fees, premium, expenses and disbursements (including any attorneys' fees, accountants' fees, appraisers' fees, auditors' fees, and financial advisors' fees), costs, charges, indemnities, and other Prepetition Revolving Obligations incurred under the Prepetition Revolving Loan Documents;

(xii)    *Validity of Prepetition Secured Obligations*.   The Prepetition Secured Obligations constitute legal, valid, binding, and non-avoidable obligations of the Prepetition Loan Parties, as applicable, enforceable in accordance with the respective terms of the relevant documents, and no portion of the Prepetition Secured Obligations or any payment made to the Prepetition Secured Parties or applied to or paid on account of the Prepetition Secured

Obligations prior to the Petition Date is subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim (as such term is defined in the Bankruptcy Code), cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(xiii) *Validity, Perfection and Priority of Prepetition Superpriority Liens*.  As of the Petition Date, pursuant to the Prepetition Superpriority Loan Documents, the Prepetition Superpriority Loan Parties granted to the Prepetition Superpriority Agent, for the benefit of the Prepetition Superpriority Secured Parties, a security interest in and continuing lien on (the "**Prepetition Superpriority Liens**") substantially all of their respective assets and property, including Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "**Prepetition Superpriority Collateral**"), junior, subject and subordinate only to the senior liens permitted by the Prepetition Superpriority Loan Documents, solely to the extent such permitted liens are (i) permitted to be senior **to the Prepetition Superpriority Liens** by the Prepetition Superpriority Loan Documents and (ii)(a) valid, perfected and non-avoidable on the Petition Date, or (b) valid and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition Superpriority Permitted Senior Liens**");

(xiv) *Validity, Perfection and Priority of Prepetition Incremental Superpriority Liens*.  As of the Petition Date, pursuant to the Prepetition Incremental Superpriority Loan Documents, the Prepetition Incremental Superpriority Loan Parties granted to the Prepetition Incremental Superpriority Agent, for the benefit of the Prepetition Incremental Superpriority

Secured Parties, a security interest in and continuing lien on (the "**Prepetition Incremental Superpriority Liens**") substantially all of their respective assets and property, including Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "**Prepetition Incremental Superpriority Collateral**"), junior, subject and subordinate only to the senior liens permitted by the Prepetition Incremental Superpriority Loan Documents solely to the extent such permitted liens are (i) permitted to be senior **to the Prepetition Incremental Superpriority Liens** by the Prepetition Incremental Superpriority Loan Documents and (ii)(a) valid, perfected and non-avoidable on the Petition Date, or (b) valid and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (collectively, the "**Prepetition Incremental Superpriority Permitted Senior Liens**");

(xv)     *Validity, Perfection and Priority of Prepetition First Liens*.   As of the Petition Date, pursuant to the Prepetition First Lien Loan Documents, the Prepetition First Lien Loan Parties granted to the Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, a security interest in and continuing lien on (the "**Prepetition First Liens**") substantially all of their assets and property, including Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "**Prepetition First Lien Collateral**"), junior, subject and subordinate only to the (i) liens of the Prepetition Superpriority Agent and Prepetition Incremental Superpriority Agent with respect to the Superpriority ICA Common Collateral (other than, solely with respect to the Pari Passu Collateral, as to which the Prepetition First Liens are *pari passu* with the liens securing the other Prepetition Secured Obligations), and (ii) senior liens

permitted by the Prepetition First Lien Loan Documents solely to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date, or (b) valid and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition Date in accordance with section 546(b) of the Bankruptcy Code (the "**Prepetition First Lien Permitted Senior Liens**");

    (xvi) *Validity, Perfection and Priority of Prepetition Revolving Liens*.  As of the Petition Date, pursuant to the Prepetition Revolving Loan Documents, the Prepetition Revolving Loan Parties granted to the Prepetition Revolving Agent, for the benefit of the Prepetition Revolving Secured Parties, a security interest in and continuing lien on (the "**Prepetition Revolving Liens**" and, together with the Prepetition Superpriority Liens, the Prepetition Incremental Superpriority Liens and the Prepetition First Liens, the "**Prepetition Liens**") substantially all of their assets and property, including Cash Collateral, and all proceeds, products, accessions, rents, and profits thereof, in each case whether then owned or existing or thereafter acquired or arising (the "**Prepetition Revolving Collateral**" and, together with the Prepetition Superpriority Collateral, the Prepetition Incremental Superpriority Collateral and the Prepetition First Lien Collateral, the "**Prepetition Collateral**"), junior, subject and subordinate only to the (i) liens of the Prepetition Superpriority Agent and Prepetition Incremental Superpriority Agent with respect to the Superpriority ICA Common Collateral (other than, solely with respect to the Pari Passu Collateral, as to which the Prepetition Revolving Liens are *pari passu* with the liens securing the other Prepetition Secured Obligations) and (ii) senior liens permitted by the Prepetition Revolving Loan Documents solely to the extent such permitted liens are (a) valid, perfected and non-avoidable on the Petition Date, or (b) valid and non-avoidable liens in existence on the Petition Date that are perfected subsequent to the Petition

Date in accordance with section 546(b) of the Bankruptcy Code (the "**Prepetition Revolving Permitted Senior Liens**" and, together with the Prepetition Superpriority Permitted Senior Liens, the Prepetition Incremental Superpriority Permitted Senior Liens and the Prepetition First Lien Permitted Senior Liens, the "**Prepetition Permitted Senior Liens**");

(xvii)   *Waiver of Challenge*.   None of the Prepetition Liens are subject to any contest, attack, rejection, recovery, reduction, defense, counterclaim, subordination, recharacterization, avoidance or other cause of action (including any avoidance actions under Chapter 5 of the Bankruptcy Code), choses in action or other challenge of any nature under the Bankruptcy Code or any applicable non-bankruptcy law;

(xviii)  *No Control*.   None of the Prepetition Secured Parties (in their capacity as such) control (or have in the past controlled) any of the Debtors or their respective properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of any Debtor, in each case, solely by virtue of any actions taken with respect to, in connection with, related to or arising from any Prepetition Loan Documents;

(xix)   *No Claims or Causes of Action*.   No claims or causes of action held by the Debtors or their estates exist against, or with respect to, the Prepetition Secured Parties or any of their respective Representatives (as defined below), in each case, in their capacity as such, under or relating to any agreements by and among the Debtors and any Prepetition Secured Party that is in existence as of the Petition Date; and

(xx)   *Release*.   Subject to paragraph ~~17~~**18** hereof and entry of this ~~Interim~~**Final** Order, each of the Debtors and their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns,

hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the Prepetition Secured Parties, and each of their respective Representatives (in their capacity as such) (collectively, the "**Released Parties**"), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to, as applicable, the Prepetition Loan Documents and the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or may have against any of the Released Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this ~~Interim~~**Final** Order; *provided* that the release set forth in this section shall not release any claims against or liabilities of a Released Party that a court of competent jurisdiction determines has resulted from such Released Party's (or any Released Party's directors', officers', agents', or employees') actual fraud, gross negligence or willful misconduct.

H.    *Findings Regarding DIP Financing and Use of Cash Collateral.*

(i)    Good and sufficient cause has been shown for the entry of this ~~Interim~~**Final** Order and for authorization of the DIP Loan Parties to use Cash Collateral, obtain financing pursuant to the DIP Documents, in each case, as contemplated herein, and secure committed exit financing necessary to consummate a plan of reorganization.

(ii)    The Debtors have demonstrated ~~an immediate and critical~~**a continued** need to obtain the DIP Financing and to use Prepetition Collateral (including Cash Collateral) in

order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to satisfy other working capital and operational needs and to fund administrative expenses of these chapter 11 cases.  Access to sufficient working capital and liquidity under the DIP Documents and other financial accommodations provided under the DIP Documents, as well as through the use of Cash Collateral, is necessary for the avoidance of ~~immediate and~~ irreparable harm to the Debtors' estates and for the preservation and maintenance of their going concern value.

(iii)    The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents.  The Debtors are also unable to obtain secured credit without granting to the DIP Secured Parties the DIP Liens and the DIP Superpriority Claims (each as defined below) and incurring the Adequate Protection Obligations (as defined herein) on the terms and subject to the conditions set forth in this ~~Interim~~**Final** Order and in the DIP Documents.

(iv)    The Debtors continue to collect cash, rents, income, offspring, products, proceeds, and profits generated by the Prepetition Collateral and acquire equipment, inventory and other personal property, all of which constitutes the Prepetition Secured Parties' Cash Collateral under section 363(a) of the Bankruptcy Code.  The Debtors desire and need to use the Prepetition Secured Parties' Cash Collateral for general corporate purposes.

(v)    Based on the DIP Motion, the First Day Declaration, the DIP Declaration, the applicable DIP Documents, and the ~~record~~**records** and ~~argument~~**arguments** presented to the Court at the Interim Hearing **and Final Hearing**, the terms of the DIP Financing, the terms of the adequate protection granted to certain Prepetition Secured Parties as provided in paragraph

~~12~~**13** of this ~~Interim~~**Final** Order (collectively, the "**Adequate Protection**"), and the terms on which the Debtors may continue to use Prepetition Collateral (including Cash Collateral) pursuant to this ~~Interim~~**Final** Order and the DIP Documents are consistent with the Bankruptcy Code, including section 506(b) thereof, are fair and reasonable, and reflect the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties under the circumstances.

(vi)    ~~This Interim Order~~**The DIP Orders**, the DIP Financing, the Adequate Protection, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the DIP Loan Parties, the DIP Secured Parties, and the Prepetition Secured Parties (each of whom acted in good faith in negotiating such documents), and all of the loans and other financial accommodations extended by the DIP Secured Parties to the DIP Loan Parties under, in respect of, or in connection with, the DIP Financing and the DIP Documents shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(c) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~**Final** Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  Moreover, without limitation to any other right to indemnification, the DIP Secured Parties shall be and hereby are indemnified (as applicable) as provided in the DIP Documents, as applicable, including, without limitation, Section 9.03 of the Senior DIP Credit Agreement and Section 9.03 of the Junior DIP Credit Agreement.

(vii)     The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Debtors' continued use of the Prepetition Collateral (including Cash Collateral), and the granting of the Adequate Protection Liens (as defined below), and the Prepetition Secured Parties (and their respective successors and assigns) shall be entitled to the full protection of sections 363(m) and 364(e) of the Bankruptcy Code in the event that this ~~Interim~~**Final** Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(viii)     The Prepetition Secured Parties and the DIP Secured Parties have acted in good faith and without negligence, misconduct, or violation of public policy or law, in respect of all actions taken by them in connection with or related in any way to negotiating, implementing, documenting, or obtaining requisite approvals of this ~~Interim~~**Final** Order, the DIP Facilities, the use of Cash Collateral, and the granting of the DIP Liens and the Adequate Protection Liens.

(ix)     Certain Prepetition Secured Parties are entitled to the Adequate Protection as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the DIP Motion and on the record presented to the Court, the terms of the proposed Adequate Protection are fair and reasonable, reflect the Debtors' prudent exercise of business judgment and constitute reasonably equivalent value and fair consideration for the use of Prepetition Collateral, including Cash Collateral, and the priming of the Prepetition Liens as contemplated herein.

(x)     To the extent their consent is required, the requisite Prepetition Secured Parties have consented or are deemed to have consented to the use of Prepetition Collateral, including Cash Collateral, and the priming of the Prepetition Liens by the DIP Liens and the Carve-Out, in each case on the terms set forth in this ~~Interim~~**Final** Order and the DIP

Documents; *provided* that nothing in this ~~Interim~~**Final** Order or the DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral other than on the terms set forth in this ~~Interim~~**Final** Order and in the context of the DIP Financing authorized by this ~~Interim~~**Final** Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering Prepetition Collateral (whether senior or junior) other than as contemplated by this ~~Interim~~**Final** Order, or (z) prejudice, limit or otherwise impair the rights of any Prepetition Secured Party to seek new, different or additional adequate protection or assert any other right, and the rights of any other party in interest, including the DIP Loan Parties and the DIP Secured Parties, to object to such relief are hereby preserved.

(xi)     The Debtors have prepared and delivered to the DIP Secured Parties and their advisors an initial budget (the "**Initial DIP Budget**"), attached ~~hereto~~**to the Interim Order** as Schedule 1.  The Initial DIP Budget reflects, among other things, the Debtors' anticipated operating receipts, operating disbursements, non-operating disbursements, net operating cash flow, and liquidity for each calendar week covered thereby.  The Initial DIP Budget may be modified, amended, extended, and updated from time to time in accordance with each DIP Credit Agreement.  Each subsequent budget, once approved by the Required Lenders under (and as defined in) the Senior DIP Credit Agreement (the "**Required Senior DIP Lenders**") and the Required Lenders under (and as defined in) the Junior DIP Credit Agreement (the "**Required Junior DIP Lenders**" and, together with the Required Senior DIP Lenders, the "**Required DIP Lenders**") (which approval may be given through e-mail among counsel), shall modify, replace, supplement or supersede, as applicable, the Initial DIP Budget for the periods covered thereby (the Initial DIP Budget and each subsequent approved budget, an "**Approved Budget**").  The

23

Debtors believe that the Initial DIP Budget is reasonable under the circumstances. In determining to extend postpetition financing under the DIP Documents and ~~this Interim Order~~**the DIP Orders**, the DIP Secured Parties are relying, in part, upon the DIP Loan Parties' agreement to comply with the Approved Budget (subject to permitted variances).

(xii)     Each of the Prepetition Secured Parties shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the Prepetition Secured Parties with respect to proceeds, product, offspring, or profits of any of the Prepetition Collateral~~;~~ *~~provided~~*  ~~that the foregoing shall be without prejudice to the terms of the Final Order with respect to the period from and after the entry of the Final Order~~.

(xiii)    The refinancing of the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations with the proceeds of the DIP Facilities reflects the DIP Loan Parties' exercise of prudent business judgment consistent with their fiduciary duties.  Obtaining the DIP Facilities and refinancing the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations are necessary steps to implementation of the Restructuring Transactions (as defined in the Restructuring Support Agreement).  The DIP Lenders would not have consented to extend the DIP Loans and other accommodations in the DIP Facilities and Restructuring Support Agreement to the Debtors without the refinancing of the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations with the proceeds of the DIP Facilities.   The refinancing of the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations with the proceeds of the DIP Facilities is consideration for the agreement of the DIP Lenders (or affiliates thereof) to extend the DIP Loans.

I. *Immediate Entry.* Sufficient cause exists for immediate entry of this Interim Order pursuant to Bankruptcy Rules 4001(b)(2) and (c)(2) and Bankruptcy Local Rule 4001-1(b). Absent the relief granted in this Interim Order, the Debtors' estates will be immediately and irreparably harmed. Consummation of the DIP Financing and continued use of Prepetition Collateral (including Cash Collateral), in accordance with this Interim Order and the DIP Documents, are therefore in the best interests of the Debtors' estates and consistent with the Debtors' exercise of their fiduciary duties. The DIP Motion and this Interim Order comply with the requirements of Bankruptcy Local Rule 4001-1(b).

JI. *Prepetition Permitted Senior Liens; Continuation of Prepetition Liens.* Nothing herein constitutes a finding or ruling by this Court that any alleged Prepetition Permitted Senior Lien is valid, senior, enforceable, prior, perfected, or non-avoidable. Moreover, nothing herein shall prejudice the rights of any party-in-interest, including, but not limited to, the Debtors, the DIP Secured Parties, or any Prepetition Secured Party to challenge the validity, priority, enforceability, seniority, avoidability, perfection, or extent of any alleged Prepetition Permitted Senior Lien. For the avoidance of doubt, the right of a seller of goods to reclaim goods under section 546(c) of the Bankruptcy Code does not constitute a Prepetition Permitted Senior Lien and such right is expressly subject to the DIP Liens (as defined herein) and Prepetition Liens. The Prepetition Liens and the DIP Liens are continuing liens and the Prepetition Collateral and the DIP Collateral, respectively, is and will continue to be encumbered by such liens to the extent provided for in this InterimFinal Order.

KJ. *Intercreditor Agreements.* Pursuant to Section 510 of the Bankruptcy Code, the Superpriority Intercreditor Agreement, the Pari Passu Intercreditor Agreement, and any other applicable intercreditor or subordination provisions contained in any of the other Prepetition Loan Documents (collectively, the "**Intercreditor Agreements**") shall (i) remain in full force and effect, (ii) continue to govern the relative priorities, rights, and remedies of the Prepetition

Secured Parties (including the relative priorities, rights and remedies of such parties with respect to replacement liens, administrative expense claims and superpriority administrative expense claims or amounts payable in respect thereof), and (iii) not be deemed to be amended, altered or modified by the terms of this ~~Interim~~**Final** Order or the DIP Documents.

Based upon the DIP Motion, the foregoing findings and conclusions, and the overall record before the Court, and after due consideration, and good and sufficient cause appearing therefor,

**IT IS HEREBY ORDERED THAT:**

1.      *Motion Granted*.  The DIP Motion is granted on ~~an interim~~**a final** basis on the terms and conditions set forth in this ~~Interim~~**Final** Order.  ~~No~~**All** objections to ~~the Interim Order have been filed~~**this Final Order to the extent not withdrawn, waived, settled, or resolved are hereby overruled on the merits**.

2.      *Authorization of the DIP Financing and the DIP Documents.*

(a)      ~~The~~**Each** DIP Loan ~~Parties are hereby~~**Party was** authorized**, effective upon entry of the Interim Order, as hereby reaffirmed,** to execute, deliver, enter into and perform all of their obligations under the DIP Documents and perform such other acts as may be necessary, appropriate or desirable in connection therewith. ~~The~~ **Effective upon entry of the Interim Order, the** Borrowers ~~are hereby~~**were** authorized to borrow up to (i) $300 million in Senior DIP Loans pursuant to the Senior DIP Credit Agreement and (ii) $224 million in Junior DIP Loans on an interim basis ~~and~~**pursuant to the Junior DIP Credit Agreement, and are hereby authorized to borrow up to** $285 million on a final basis pursuant to the Junior DIP Credit Agreement, and the DIP Guarantors **were and** are ~~hereby~~ authorized to guarantee the Borrowers' obligations under the DIP Credit Agreements, subject to any limitations set forth in

the DIP Documents.  The proceeds of the DIP Loans shall be funded into the Debtors' bank account with Account No. ending in 9225 maintained at Chase Bank for the purpose of receiving the proceeds of the DIP Financing (such account, the "**DIP Account**") and used for all purposes permitted under the DIP Documents and the ~~Interim Order~~**DIP Orders**, including for the purpose of refinancing all the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations, subject to and in accordance with the Approved Budget (subject to any permitted variances).

(b)    Subject to paragraph ~~17~~**18** hereof and entry of ~~this~~**the** Interim Order, proceeds of the Senior DIP Facility ~~shall be~~**were** used to (among other things) refinance all Prepetition Superpriority Obligations and proceeds of the Junior DIP Facility ~~shall be~~**were** used to (among other things) refinance all Prepetition Incremental Superpriority Obligations.

(c)    In furtherance of the foregoing and without further approval of this Court, each DIP Loan Party ~~is~~**was** authorized and directed ~~to~~ **, effective upon entry of the Interim Order, as hereby reaffirmed, to** perform all acts, to make, execute and deliver all instruments, certificates, agreements, charges, deeds and documents, execute or record pledge and security agreements, mortgages, financing statements and other similar documents, if any, and to pay all fees, expenses and indemnities in connection with or that may be reasonably required, necessary, or desirable in connection with for the DIP Financing, including, without limitation:

(i)    the execution and delivery of, and performance under, each of the DIP Documents;

(ii)    the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the applicable DIP Secured Parties may accept, it being understood that no

further approval of this Court shall be required for any such amendments, waivers, consents or other modifications or the payment of any fees, including attorneys', accountants', appraisers' and financial advisors' fees, and other expenses, charges, costs, indemnities and other like obligations in connection therewith that do not shorten the maturity of the DIP Facilities, increase the aggregate DIP Commitments, or increase the rate of interest or fees payable thereunder.  Updates, modifications, and supplements to the Approved Budget shall not require any further approval of this Court; *provided, however,* **that the Approved Budget shall not be modified in any manner that would reduce the budgeted professional fees of the Committee Professionals without the prior written consent of the Creditors' Committee.**

(iii)    the non-refundable payment to any of the DIP Secured Parties of any fees in connection with the DIP Facilities under the DIP Documents, including any amendment fees, premiums, servicing fees, audit fees, liquidator fees, structuring fees, fees to the DIP Agents, collateral agent or security trustee, upfront fees, closing fees, commitment premiums, exit fees, closing date fees, prepayment fees, extension fees or agency fees, and any amounts due in respect of any indemnification and expense reimbursement obligations, including, without limitation, the reasonable fees and expenses of professionals retained by, or on behalf of, any of the DIP Secured Parties (including, without limitation, those of (i) White & Case LLP, any specialist maritime counsel and any local legal counsel or other advisors in any foreign jurisdiction, on behalf of the Senior DIP Lenders, (ii) Seward & Kissel LLP, any specialist maritime counsel and any local legal counsel or other advisors in any foreign jurisdiction, on behalf of the Senior DIP Agent (iii) Milbank LLP, Davis Polk & Wardwell LLP (subject to the proviso set forth in the definition of "Crestview Fees and Expenses" in the Restructuring Support Agreement), Perella Weinberg Partners L.P., FTI Consulting, Inc., Haynes

and Boone, LLP, Seward & Kissel LLP, Vinson & Elkins LLP (subject to the proviso set forth in the definition of "Crestview Fees and Expenses" in the Restructuring Support Agreement), ArentFox Schiff LLP, one government concession contracts counsel, any local legal counsel or other advisors in any foreign jurisdiction, and any other Crestview Fees and Expenses (as defined in the Restructuring Support Agreement and subject to the limitations set forth therein) on behalf of the Junior DIP Secured Parties, and (iv) any other advisors as permitted under the DIP Documents), in each case, to the extent provided in the DIP Documents (collectively, the "**DIP Fees and Expenses**")), without the need to file retention or fee applications, but subject to the review procedures in paragraph 16**17** hereof; the payment of the foregoing amounts shall be irrevocable, and ~~shall be deemed to have been~~**were** approved upon entry of ~~this~~**the** Interim **Order, as reaffirmed upon entry of this Final** Order, whether any such obligations arose before or after the Petition Date, and whether or not the transactions contemplated hereby are consummated, and upon payment thereof, shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance, disallowance, impairment, or other claim, cause of action or other challenge of any nature under the Bankruptcy Code or applicable non-bankruptcy law;

(iv)    the refinancing of all the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations and the performance of such other and further acts as may be necessary, desirable or appropriate in connection therewith, in each case in accordance with the terms of the applicable DIP Documents.

3.    *DIP Obligations*. ~~Upon~~ **Subject and subordinate to the Carve Out, as approved upon entry of the Interim Order and reaffirmed pursuant to this Final Order, upon** execution and delivery of the DIP Documents, the DIP Documents shall constitute legal,

valid, binding and non-avoidable obligations of the DIP Loan Parties, enforceable, in accordance with their respective terms and ~~this Interim Order~~**the DIP Orders**, against each DIP Loan Party and their estates and any successors thereto, including any trustee appointed in these chapter 11 cases, or in any case under chapter 7 of the Bankruptcy Code upon conversion of any of these cases, or in any other proceedings superseding or related to any of the foregoing (collectively, the "**Successor Cases**").  Upon execution and delivery of the DIP Documents, the DIP Obligations shall include all loans and any other indebtedness or obligations, contingent or absolute, which may from time to time be owing by any of the DIP Loan Parties to any of the DIP Secured Parties, in such capacities, in each case, under the DIP Documents and ~~this Interim Order~~**the DIP Orders**, including all principal, interest, costs, fees, expenses, premiums, indemnities, equity conversion rights and terms, and other amounts.  The DIP Loan Parties shall be jointly and severally liable for (i) the Senior DIP Obligations under the Senior DIP Facility and (ii) the Junior DIP Obligations under the Junior DIP Facility.  Except as permitted ~~hereby~~**by this Final Order**, no obligation, payment, transfer, or grant of security hereunder or under the DIP Documents to any DIP Agent and/or any other DIP Secured Party shall be stayed, restrained, voidable, avoidable, or recoverable under the Bankruptcy Code or any applicable law (including, without limitation, sections 502(d), 544, and 547 to 550 of the Bankruptcy Code or any applicable state Uniform Voidable Transactions Act, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or subject to any defense, avoidance, reduction, setoff, recoupment, offset, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, claim, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity.

30

4.      *Carve-Out.*

(a)      As used herein, the "**Carve-Out**" means the sum of (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iv) below); (ii) fees and expenses up to $100,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice set forth in (iv) below); (iii) to the extent allowed at any time, whether by interim or final compensation order or otherwise, all unpaid fees and expenses incurred relating to services rendered by persons or firms retained by the DIP Loan Parties pursuant to and in accordance with sections 327, 328, 329, 330, 331, 363, or 503(b)(4) of the Bankruptcy Code (collectively, the "**Debtors' Professionals**") and any persons or firms retained by ~~any~~**the** Creditors' Committee (the "**Committee Professionals**" and, together with the Debtor Professionals, the "**Professional Persons**") (collectively, the "**Allowed Professional Fees**;" *provided*, that to the extent that any amount of the foregoing compensation or reimbursement is denied or reduced by a final order by the Bankruptcy Court or any other court of competent jurisdiction, such amount shall no longer constitute Allowed Professional Fees) incurred or earned at any time before delivery by any DIP Agent of a Carve-Out Trigger Notice (as defined below) (the "**Carve-Out Trigger Date**"), whether allowed by the Bankruptcy Court prior to or after delivery of a Carve-Out Trigger Notice; and (iv) Allowed Professional Fees incurred after the delivery by any DIP Agent, acting at the direction of the applicable Required DIP Lenders, of a Carve-Out Trigger Notice in an aggregate amount not to exceed $4.5 million with respect to Professional Persons (the amounts set forth in clause (iv) being the "**Post-Carve-Out Trigger Notice Cap**").  For purposes of the foregoing, "**Carve-Out Trigger Notice**" shall mean a written notice delivered by email (or other electronic means) by any DIP

Agent, acting at the direction of the applicable Required DIP Lenders (or, following the indefeasible payment in cash in full of the obligations under each of the DIP Facilities (a "**DIP Repayment**"), the Prepetition Agents) to the DIP Loan Parties, their lead restructuring counsel, the U.S. Trustee, and lead counsel to the **Creditors'** Committee (if any), which notice may be delivered following the occurrence and during the continuation of an Event of Default stating that the Post-Carve-Out Trigger Notice Cap has been invoked.

(b)       None of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties shall be responsible for the direct payment or reimbursement of any fees or disbursements of any Professional Persons incurred in connection with these chapter 11 cases or any Successor Cases under any chapter of the Bankruptcy Code, and nothing in the DIP Documents or DIP Orders shall obligate any of the DIP Agents, the DIP Lenders, or the Prepetition Secured Parties to directly pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(c)       For the avoidance of doubt, if a DIP Repayment occurs with respect to the Junior DIP Facility or the Junior DIP Facility is otherwise terminated, the DIP Orders shall remain in full force and effect, including with respect to the Debtors' use of Cash Collateral, the Carve-Out, and all related provisions in respect thereof, and the Prepetition First Lien Agent and Prepetition Incremental Superpriority Agent shall assume any rights and obligations that the Junior DIP Agent previously had with respect to the Carve-Out.

(d)       <u>Payment of Allowed Professional Fees Prior to the Carve-Out Trigger Date</u>.  Any payment or reimbursement made prior to the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees shall not reduce the Carve-Out.

(e)   <u>Professional Fee Escrow</u>.  Prior to the delivery of a Carve-Out Trigger Notice, starting with the first full calendar month following the Petition Date, each Professional Person shall deliver to the Debtors a monthly statement (each, a "**Monthly Statement**") setting forth a good-faith estimate of the amount of accrued but unpaid fees and expenses incurred by such Professional Person during the preceding month (the "**Monthly Estimated Fees and Expenses**").  The Debtors shall, from time to time, transfer available cash, including proceeds from the DIP Facilities, in an amount equal to the total budgeted monthly fees of the Professional Persons (plus any true-up necessary for prior periods) into a segregated account not subject to the control of the DIP Agents, the DIP Lenders or the Prepetition Secured Parties (the "**Professional Fee Escrow**").  The Debtors shall use funds held in the Professional Fee Escrow exclusively to pay fees of Professional Persons as they become allowed and payable pursuant to the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim or final orders of the Court; *provided*, that the Debtors' obligations to pay allowed fees of Professional Persons shall not be limited or be deemed limited to funds held in the Professional Fee Escrow.  Upon the delivery of a Carve-Out Trigger Notice, the Carve-Out Trigger Notice shall constitute a demand that the Debtors utilize all cash on hand and any cash available thereafter, including proceeds of the DIP Facilities, to transfer to the Professional Fee Escrow cash in an amount equal to all accrued but unpaid Allowed Professional Fees as of the first business day following delivery of the Carve-Out Trigger Notice plus an amount equal to the Post-Carve-Out Trigger Notice Cap (collectively, the "**Estate Professionals Carve-Out Amount**").  Funds in the Professional Fee Escrow shall be held in trust and available solely to pay Allowed Professional Fees.  Notwithstanding anything to the contrary in the DIP Documents, the Prepetition Loan Documents, or this ~~Interim~~**Final** Order, following delivery of a Carve-Out Trigger Notice, the

DIP Secured Parties and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fee Escrow has been fully funded, but the DIP Secured Parties and the Prepetition Secured Parties shall retain a lien on, and security interest in, any residual interest in the Professional Fee Escrow, with any excess paid to the DIP Agents and the Prepetition Agents, as applicable, for application in accordance with this ~~Interim~~**Final** Order.   Further, notwithstanding anything to the contrary in this ~~Interim~~**Final** Order, (a) disbursements by the Debtors from the Professional Fee Escrow shall not increase or reduce the Prepetition Secured Obligations, (b) the failure of the Professional Fee Escrow to satisfy in full the Allowed Professional Fees shall not affect the priority of the Carve-Out, and (c) in no way shall the Initial DIP Budget, Approved Budget, Carve-Out, Post-Carve-Out Trigger Notice Cap, Professional Fee Escrow, or any of the foregoing be construed as a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.   For the avoidance of doubt and notwithstanding anything to the contrary in ~~this~~**the** DIP Documents, **the** Prepetition Loan Documents, or this ~~Interim~~**Final** Order, the Carve-Out shall be senior to all liens and claims that are secured by the Prepetition Collateral or the DIP Collateral, including the DIP Obligations, the DIP Liens, the Adequate Protection Obligations, the Adequate Protection Liens, the Prepetition Obligations, and the Prepetition Liens.

(f)     <u>Payment of Carve-Out On or After the Carve-Out Trigger Date</u>.  Any payment or reimbursement made on or after the occurrence of the Carve-Out Trigger Date in respect of any Allowed Professional Fees shall permanently reduce the Carve-Out on a dollar-for-dollar basis.  Any funding of the Carve-Out from proceeds of the DIP Facilities shall be added to, and made a part of, the applicable DIP Obligations secured by the DIP Collateral

and shall be otherwise entitled to the protections granted under this ~~Interim~~**Final** Order, the DIP Documents, the Bankruptcy Code, and applicable law.

5.      *DIP Superpriority Claims*.  Pursuant to section 364(c)(1) of the Bankruptcy Code, **as approved upon entry of the Interim Order and reaffirmed pursuant to this Final Order,** (i) all of the Senior DIP Obligations shall constitute allowed superpriority administrative expense claims of the Senior DIP Agent, for the benefit of the Senior DIP Secured Parties (the "**Senior DIP Superpriority Claims**") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, of the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve-Out and (ii) all of the Junior DIP Obligations shall constitute allowed superpriority administrative expense claims of the Junior DIP Agent, for the benefit of the Junior DIP Secured Parties (the "**Junior DIP Superpriority Claims**" and, together with the Senior DIP Superpriority Claims, the "**DIP Superpriority Claims**") against the DIP Loan Parties on a joint and several basis (without the need to file any proof of claim) with priority over any and all claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code and any and all administrative expenses or other claims arising under sections 105, 326, 327, 328, 330, 331, 365, 503(b), 506(c), 507(a), 507(b), 726, of

the Bankruptcy Code (including the Adequate Protection Obligations), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for the Carve-Out and the Senior DIP Superpriority Claims.  The DIP Superpriority Claims shall be payable from, and have recourse to, all prepetition and postpetition property of the DIP Loan Parties and all proceeds thereof (excluding claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, the "**Avoidance Actions**") ~~but, subject to~~ entry of the ~~Final Order,~~ including any proceeds or property recovered as a result of any Avoidance Actions, whether by judgment, settlement or otherwise (the "**Avoidance Proceeds**"); *provided* however, that, in the event of an enforcement of remedies in accordance with the terms of this ~~Interim~~**Final** Order, the ~~Avoidance Proceeds~~**Unencumbered Property (as defined below)** shall only be used to satisfy the DIP Superpriority Claims in ~~the event that that all other sources of recovery are first exhausted~~**accordance with paragraph 8 hereof** and the DIP Superpriority Claims have not been indefeasibly paid in full), subject only to (i) the Carve-Out and (ii) in the case of the Junior DIP Superpriority Claims, the Senior DIP Superpriority Claims.  For the avoidance of doubt, the DIP Superpriority Claims shall be senior in all respects to any claims under any secured Hedging Agreement.  The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~**Final** Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

6.     *DIP Liens*.  As security for the DIP Obligations, ~~effective and automatically properly~~**as approved upon entry of the Interim Order,** perfected on the ~~date this Interim~~ **Closing Date (as defined in the DIP Credit Agreement), as reaffirmed pursuant to this**

**Final** Order ~~is entered~~, without the necessity of execution, recordation or filing of any perfection document or instrument, or the possession or control by any DIP Agent of, or over, any DIP Collateral (*provided* that, to the extent the Junior DIP Secured Parties, in their capacities as Prepetition Secured Parties, are party to control agreements over bank accounts that constitute DIP Collateral, (i) such control agreements are deemed to apply to each of the DIP Facilities and (ii) the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders or, if the Senior DIP Facility has been indefeasibly repaid in full in cash, the Junior DIP Agent, acting at the direction of the Required Junior DIP Lenders, is authorized to issue cash sweep instructions under such control agreements)~~,~~, and without any further action by the DIP Secured Parties, the following valid, binding, continuing, fully perfected, enforceable and non-avoidable security interests and liens (such security interests and liens with respect to the Senior DIP Facility, the "**Senior DIP Liens**," such security interests and liens with respect to the Junior DIP Facility, the "**Junior DIP Liens**," and, together, the "**DIP Liens**") are hereby granted to (i) the Senior DIP Agent for the benefit of the Senior DIP Secured Parties and (ii) the Junior DIP Agent for the benefit of the Junior DIP Secured Parties (all property identified in clauses (a) through (c) below being collectively referred to as the "**DIP Collateral**"):

(a)     *Liens on Unencumbered Property*.  Pursuant to section 364(c)(2) of the Bankruptcy Code, **as approved upon entry of the Interim Order and reaffirmed pursuant to this Final Order,** a first priority lien on and security interest in (subject only to the Carve-Out and, in the case of the Junior DIP Liens, to the Senior DIP Liens) all tangible and intangible prepetition and postpetition property (including, for the avoidance of doubt, the DIP Account and any funds therein) of the DIP Loan Parties, whether existing on the Petition Date or thereafter acquired, and the proceeds, products, rents, and profits thereof, that, on or as of the Petition Date,

is not subject to (i) a valid, perfected and non-avoidable lien or (ii) a valid and non-avoidable lien in existence as of the Petition Date that is perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, other than the Avoidance Actions, but including, upon and subject to entry of the Final Order, the Avoidance Proceeds; *provided* however, that the ~~Avoidance Proceeds~~**Unencumbered Property** shall only be used to satisfy the DIP Superpriority Claims in ~~the event that that all other sources of recovery are first exhausted~~**accordance with paragraph 8 hereof** and the DIP Superpriority Claims have not been indefeasibly paid in full~~)~~ (collectively, the "**Unencumbered Property**").

(b)      *Liens Priming Certain Prepetition Secured Parties' Liens*.  Pursuant to section 364(d)(1) of the Bankruptcy Code, **as approved upon entry of the Interim Order and reaffirmed pursuant to this Final Order,** a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in, and lien upon, all tangible and intangible prepetition and postpetition property of the DIP Loan Parties, regardless of where located, that constitutes Prepetition Collateral (such security interests and liens with respect to the Senior DIP Facility, the "**Senior DIP Priming Liens**," such security interests and liens with respect to the Junior DIP Facility, the "**Junior DIP Priming Liens**," and, together, the "**DIP Priming Liens**").  Notwithstanding anything herein to the contrary, (i) the Senior DIP Priming Liens shall be (A) subject and subordinate to (x) the Carve-Out and (y) any Prepetition Superpriority Permitted Senior Liens, (B) senior in all respects to the Junior DIP Liens, the Prepetition Liens, the Adequate Protection Liens, and any liens granted in connection with any secured Hedging Agreement, and (C) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, and (ii) the Junior DIP Priming Liens shall be (A) subject and subordinate

to (x) the Carve-Out, (y) the Senior DIP Priming Liens, and (z) any Prepetition Incremental Superpriority Permitted Senior Liens, (B) senior in all respects to the Prepetition Liens and Adequate Protection Liens, and (C) not subordinate to any lien, security interest or mortgage that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code.

(c)      *No Senior Liens.*  The DIP Liens shall not be (i) subject or subordinate to or made *pari passu* with (A) any lien or security interest that is avoided and preserved for the benefit of the Debtors or their estates under section 551 of the Bankruptcy Code, (B) unless otherwise provided for in the DIP Documents or in this ~~Interim~~**Final** Order, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties, or (C) any intercompany liens; or (ii) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(d)      *JBIH Credit Agreement.*  Notwithstanding anything to the contrary in this ~~Interim~~**Final** Order, (i) the DIP Obligations and Adequate Protection Obligations shall be senior in all respects to any obligation of Hornblower Group HoldCo LLC ("**HG HoldCo**") or Hornblower Group LLC ("**HG LLC**") under that certain revolving credit agreement dated November 18, 2022, among non-debtor Journey Beyond Intermediate Holdings, LLC, as borrower, and non-debtor Journey Beyond Holdings, Ltd., as holdings, UBS AG, Stamford Branch, as administrative agent and collateral agent (as amended on February 13, 2023 by that certain *Amendment Agreement No. 1*, on September 28, 2023 by that certain *Amendment Agreement No. 2*, and as may be further amended, restated, supplemented, waived, or otherwise

modified from time to time, the "**JBIH Credit Agreement**"), and (ii) the DIP Liens and Adequate Protection Liens shall be senior in all respect to any liens granted by HG HoldCo or HG LLC in connection with the JBIH Credit Agreement.

7.     *Protection of DIP Lenders' and Prepetition Secured Parties' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding DIP Commitments, the Prepetition Secured Parties shall: (A) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Loan Documents or this ~~Interim~~**Final** Order or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral (including without limitation, in connection with the Adequate Protection Liens or settling any insurance policy with respect thereto) or take any action to frustrate the lawful exercise of remedies by the Senior DIP Secured Parties with respect to the Senior DIP Obligations; (B) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral (but not any proceeds of such transfer, disposition, sale or release) to the extent such transfer, disposition, sale or release is authorized under the DIP Documents or consented to thereunder; (C) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than solely as to this clause (C), (x) to perfect the liens granted pursuant to this ~~Interim~~**Final** Order, (y) as may be required or advisable and as reasonably requested by the DIP Secured Parties in order to effect or evidence the payoff, termination and/or release of the liens under the Prepetition Superpriority Obligations and Prepetition Incremental Superpriority Obligations in connection with the refinancing thereof, or (z) as may be required by applicable state or foreign law to complete a previously commenced process of perfection or to continue the

perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; and (D) deliver or cause to be delivered, at the DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the DIP Documents and this ~~Interim~~**Final** Order.~~.~~

(b)     So long as there are any Senior DIP Obligations outstanding or the Senior DIP Lenders have any outstanding DIP Commitments, the Junior DIP Secured Parties shall (subject to paragraphs 7(h)-(i) and ~~17~~**18** hereof): (A) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Junior DIP Documents or this ~~Interim~~**Final** Order or otherwise seek to exercise or enforce any rights or remedies against the DIP Collateral (including without limitation, settling any insurance policy with respect thereto), including in connection with the Junior DIP Liens, or take any action to frustrate the lawful exercise of remedies by the Senior DIP Secured Parties with respect to the Senior DIP Obligations; (B) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, any DIP Collateral to the extent such transfer, disposition, sale or release is authorized under the Senior DIP Documents or consented to thereunder; (C) not file any financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in the DIP Collateral other than (x) to perfect the liens granted pursuant to this ~~Interim~~**Final** Order or (y) as may be required by applicable state or foreign law to complete a previously commenced process of perfection or to continue the perfection of valid and non-avoidable liens or security interests existing as of the Petition Date; or (D) deliver or cause to be delivered, at the Junior DIP Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the Senior DIP Secured Parties or other documents necessary to effectuate and/or evidence the release, termination and/or assignment of liens on any portion of the DIP Collateral subject to any sale or disposition permitted by the Senior DIP Documents and this ~~Interim~~**Final** Order.

(c)     Except as set forth herein, to the extent any Prepetition Secured Party has possession of, or control over, any Prepetition Collateral or DIP Collateral, or has been listed as a

secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, such Prepetition Secured Party shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the DIP Secured Parties (subject to the terms set forth in this ~~Interim~~**Final** Order, the DIP Documents, and the Intercreditor Agreements), and such Prepetition Secured Party shall comply with the instructions of the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders or, if the Senior DIP Facility has been indefeasibly repaid in full in cash, the Junior DIP Agent, acting at the direction of the Required Junior DIP Lenders, with respect to any of the foregoing.  Each applicable DIP Agent is hereby authorized to take any of the actions described in this paragraph (c) on behalf of the Prepetition Secured Parties and/or the Junior DIP Secured Parties (as applicable), and such authorization is coupled with an interest and is irrevocable.

(d)     Except as set forth herein, to the extent any Junior DIP Secured Party or has possession of, or control over, any DIP Collateral, or has been listed as a secured party on any certificate of title for a titled good constituting DIP Collateral, such Junior DIP Secured Party shall be deemed to have such possession or be so listed or have such possession or control as a gratuitous bailee and/or gratuitous agent for the benefit of the Senior DIP Secured Parties (subject to the terms set forth in this ~~Interim~~**Final** Order and the DIP Documents), and such Junior DIP Secured Party shall comply with the instructions of the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders, with respect to any of the foregoing, unless and until the Senior DIP Facility has been indefeasibly repaid in full in cash.

(e)     Except as set forth herein, unless and until the Senior DIP Facility has been indefeasibly repaid in full in cash, any proceeds of DIP Collateral received by any Junior

DIP Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the DIP Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the Senior DIP Agent for the benefit of the Senior DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The Senior DIP Agent is hereby authorized to make any such endorsements as agent for the Junior DIP Agent. This authorization is coupled with an interest and is irrevocable.

(f)      Except as set forth herein, and other than adequate protection payments expressly permitted hereunder, any proceeds of Prepetition Collateral received by any Prepetition Secured Party, whether in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise, shall be segregated and held in trust for the benefit of, and forthwith paid over to, the Senior DIP Agent for the benefit of the Senior DIP Secured Parties or, if the Senior DIP Facility has been indefeasibly repaid in full in cash, the Junior DIP Agent for the benefit of the Junior DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct. The applicable DIP Agent is hereby authorized to make any such endorsements as agent for the applicable Prepetition Secured Parties. This authorization is coupled with an interest and is irrevocable.

(g)      The DIP Loan Parties shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral, except as otherwise permitted by the DIP Documents or an order of the Court.

(h)      Upon the occurrence and during the continuation of an Event of Default that has not been waived by the Required Senior DIP Lenders or the Required Junior DIP

Lenders, as applicable, and following delivery of written notice by any of the applicable DIP Agents, acting at the direction of the applicable Required DIP Lenders, (a "**Termination Notice**") (including by ~~email~~**e-mail**) to lead restructuring counsel to the Debtors, lead restructuring counsel to each of the Prepetition Agents, lead counsel to the Creditors' Committee, and the U.S. Trustee, (the "**Remedies Notice Parties**"), the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders (or, upon the earlier of (A) the indefeasible repayment of the Senior DIP Facility in full in cash and (B) 90 days following the delivery of the Termination Notice if the Senior DIP Agent has not initiated any enforcement action, the Junior DIP Agent, acting at the direction of the Required Junior DIP Lenders) may (and any automatic stay otherwise applicable to the applicable DIP Agent, whether arising under sections 105 or 362 of the Bankruptcy Code or otherwise, but subject to the terms of this ~~Interim~~**Final** Order (including this paragraph) is hereby modified), without further notice to, hearing of, or order from this Court (i) immediately (x) terminate the Debtors' rights under the applicable DIP Facility and any applicable DIP Document to require the applicable DIP Secured Parties to provide any DIP Loans, other financial accommodations, or any other future liability or obligation of the applicable DIP Secured Parties but without affecting any of the DIP Obligations or the DIP Liens securing such DIP Obligations; and (y) invoke the right to charge interest at the default rate under the applicable DIP Documents, and (ii) on not less than five (5) calendar days' notice, declare all applicable DIP Obligations to be immediately due and payable.  As soon as reasonably practicable following receipt of a Termination Notice, the Debtors shall file a copy of same on the docket.

        (i)       Following an Event of Default and the delivery of the Termination Notice, but prior to exercising the remedies set forth in the sentence below or any other remedies (other

than those set forth in paragraph 7(h)), the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders (or, upon the earlier of (A) the indefeasible repayment of the Senior DIP Facility in full in cash and (B) 90 days following the delivery of the Termination Notice if the Senior DIP Agent has not initiated any enforcement action, the Junior DIP Agent, acting at the direction of the Required Junior DIP Lenders) shall be required to file a motion with the Court seeking emergency relief (the "**Stay Relief Motion**") on not less than five (5) business days' notice to the Remedies Notice Parties for an order of the Court modifying the automatic stay in these chapter 11 cases to permit the Senior DIP Agent, acting at the direction of the Required Senior DIP Lenders (or, upon the earlier of (i) the indefeasible repayment of the Senior DIP Facility in full in cash and (ii) 90 days following the delivery of the Termination Notice if the Senior DIP Agent has not initiated any enforcement action, the Junior DIP Agent, acting at the direction of the Required Junior DIP Lenders) to, subject to the funding of the Carve-Out: (a) terminate and/or revoke the Debtors' right under this ~~Interim~~**Final** Order and any other applicable DIP Documents to use any Cash Collateral (subject to the Carve-Out); (b) freeze monies or balances in the Debtors' accounts; (c) immediately set-off any and all amounts in accounts maintained by the Debtors with the applicable DIP Agent or the other applicable DIP Secured Parties against the applicable DIP Obligations; (d) enforce any and all rights against the DIP Collateral, including, without limitation, foreclosure on all or any portion of the DIP Collateral, occupying the Debtors' premises, sale or disposition of the DIP Collateral; and (e) take any other actions or exercise any other rights or remedies permitted under this ~~Interim~~**Final** Order, the applicable DIP Documents or applicable law, subject in each case to paragraph 7(e) hereof.  If the applicable DIP Agent is permitted by the Court to take any enforcement action with respect to the DIP Collateral following the hearing on the Stay Relief Motion, the Debtors

shall cooperate with such DIP Agent in its efforts to enforce its security interest in the DIP Collateral, and shall not take or direct any entity to take any action designed or intended to hinder or restrict in any respect such DIP Agent from enforcing its security interests in the DIP Collateral.  Until such time that the Stay Relief Motion has been adjudicated by the Court, and subject to the other terms of this ~~Interim~~**Final** Order, and subject further to any remedy, terms and conditions that the Court may impose, the Debtors may use Cash Collateral and the proceeds of the DIP Facilities to the extent drawn prior to the occurrence of an Event of Default to fund the Estate Professionals Carve-Out Amount or meet payroll obligations, and to pay necessary expenses to avoid ~~immediate and~~ irreparable harm to the Debtors' estates set forth in the Approved Budget in accordance with the applicable DIP Documents.  At the remedies hearing, the Court may grant any greater or lesser relief than contemplated above based on the evidence and arguments made at the remedies hearing.

(j)     No rights, protections or remedies of the DIP Secured Parties or the Prepetition Secured Parties granted by this ~~Interim~~**Final** Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent to the Debtors' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Debtors' authority to continue to use Cash Collateral; or (iii) the terms of any other order or stipulation related to the Debtors' continued use of Cash Collateral or the provision of adequate protection to any party.

**8.     *Limitations on DIP Superpriority Claims, DIP Liens, Adequate Protection 507(b) Claims and Adequate Protection Liens.*  Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Loan Documents, in the event of an enforcement of remedies in accordance with the terms of this Final Order, the DIP**

**Secured Parties and the Prepetition Secured Parties shall use commercially reasonable efforts to satisfy any DIP Superpriority Claim, DIP Lien, Adequate Protection 507(b) Claim or Adequate Protection Lien of such party from applicable Collateral, in the following order: (i) Prepetition Collateral and DIP Collateral other than Unencumbered Property, (ii) Unencumbered Property other than Avoidance Proceeds and commercial tort claims, (iii) commercial tort claims and the proceeds thereof, and lastly (iv) Avoidance Proceeds.**

89.      *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out, no costs or expenses of administration of these chapter 11 cases or any Successor Case or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceeding under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or Prepetition Collateral (in each case, including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of each DIP Agent, acting at the direction of the applicable Required DIP Lenders, and each Prepetition Agent, respectively, and no consent shall be implied from any action, inaction or acquiescence by any of the DIP Secured Parties or Prepetition Secured Parties, and nothing contained in this ~~Interim~~**Final** Order shall be deemed to be a consent by the DIP Secured Parties or Prepetition Secured Parties to any charge, lien, assessment or claims against the Collateral under section 506(c) of the Bankruptcy Code or otherwise~~; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order with respect to costs or expenses incurred following the entry of the Final Order~~.

910.      *No Marshaling*. ~~In~~ **Except as set forth in paragraph 8 hereof, in** no event shall the DIP Secured Parties or the Prepetition Secured Parties be subject to the equitable doctrine of

"marshaling" or any similar doctrine with respect to the DIP Collateral, the DIP Obligations, the Prepetition Secured Obligations, or the Prepetition Collateral, as applicable. Further, the Prepetition Secured Parties are entitled to all rights and benefits of section 552 of the Bankruptcy Code and in no event shall the ″equities of the case″ exception in section 552(b) of the Bankruptcy Code apply to the Prepetition Secured Parties; *provided* that the foregoing waiver shall be without prejudice to any provisions of the Final Order. No DIP Secured Party or Prepetition Secured Party shall assert any rights as an unsecured creditor that it is otherwise prohibited from asserting under this Interim**Final** Order.

1011. *Payments Free and Clear.* Any and all payments or proceeds remitted to the DIP Secured Parties or Prepetition Secured Parties (without limiting paragraph 17**19** hereof with respect to the Prepetition Secured Parties), pursuant to the provisions of this**the** Interim **Order, this Final** Order, the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by through or on behalf of the Debtors.

11**12**. *Use of Cash Collateral.* The Debtors are hereby authorized, solely on the terms and conditions of this Interim**Final** Order, to use Cash Collateral in accordance with the DIP Documents and Approved Budget (subject to permitted variances).

12**13**. *Adequate Protection of Prepetition Secured Parties.* Pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy Code, as adequate protection of their respective interests in the Prepetition Collateral (including Cash Collateral) against any diminution in value of their interests in the Prepetition Collateral, from and after the Petition

Date, calculated in accordance with section 506(a) of the Bankruptcy Code, resulting from any reason arising under the Bankruptcy Code, including, among other things, the use, sale, or lease by the Debtors of the Prepetition Collateral (including the Cash Collateral), the granting of the DIP Liens, and the subordination of the applicable Prepetition Liens to the Carve-Out, and the imposition or enforcement of the automatic stay under section 362(a) of the Bankruptcy Code (collectively, a "**Diminution in Value**") and as an inducement to the Prepetition Secured Parties whose obligations are not repaid in full in cash by the DIP Facilities (collectively, the "**Adequate Protection Parties**") to consent to the priming of the Prepetition Liens and the use of their Cash Collateral, ~~the~~**as approved upon entry of the Interim Order and reaffirmed pursuant to this Final Order, the** Adequate Protection Parties are granted the following adequate protection (collectively, the "**Adequate Protection Obligations**"):

(a)     *Prepetition First Lien Adequate Protection Liens.*  The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted, effective and perfected upon the date of ~~this~~**entry of the** Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, on account of the Prepetition First Lien Secured Parties' Diminution in Value, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "**First Lien Adequate Protection Liens**"), which First Lien Adequate Protection Liens shall be junior, subject, and subordinate to the Carve-Out, the DIP Liens, the Prepetition Permitted Senior Liens and *pari passu* with the Revolving Adequate Protection Liens.

(b)     *Prepetition First Lien Secured Parties' 507(b) Claim.*  The Prepetition First Lien Agent, for the benefit of the Prepetition First Lien Secured Parties, is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint

and several basis (without the need to file any proof of claim) on account of the Prepetition First Lien Secured Parties' Diminution in Value as provided for under section 507(b) of the Bankruptcy Code (the "**First Lien 507(b) Claim**"), which First Lien 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but ~~subject to entry of the Final Order,~~ including any Avoidance Proceeds**)**; *provided* however, that, in the event of an enforcement of remedies in accordance with the terms of this ~~Interim~~**Final** Order, the ~~Avoidance Proceeds~~**Unencumbered Property** shall only be used to satisfy the ~~DIP Superpriority Claims in the event~~ that ~~that all other sources of recovery are first exhausted and the DIP Superpriority Claims have~~**First Lien 507(b) Claim in accordance with paragraph 8 hereof and the First Lien 507(b) Claim has** not been indefeasibly paid in full~~)~~. The First Lien 507(b) Claim shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for **(i)** the Carve-Out and (ii) the DIP Superpriority Claims.

(c)     *Prepetition First Lien Secured Parties Fees and Expenses*. As further adequate protection, the DIP Loan Parties shall currently pay in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of the Prepetition First Lien Lenders, including: Milbank LLP; Davis Polk & Wardwell LLP (subject to the proviso set forth in the definition of "Crestview Fees and Expenses" in the Restructuring Support Agreement); Perella Weinberg Partners L.P.; FTI Consulting, Inc.; Haynes & Boone, LLP; Vinson & Elkins LLP (subject to the proviso set forth in the definition of "Crestview Fees and

Expenses" in the Restructuring Support Agreement); Seward & Kissel LLP (in its capacity as Jones Act counsel to the Ad Hoc Group); ArentFox Schiff LLP (in its capacity as counsel to the Prepetition First Lien Agent), one legal counsel to address any conflicts issues; one government concessions contracts counsel; one legal counsel in any other foreign jurisdiction that the Ad Hoc Group determines is necessary; any other Crestview Fees and Expenses (as defined in the Restructuring Support Agreement and subject to the limitations set forth therein); Cahill Gordon & Reindel LLP (and, to the extent reasonably necessary, any local counsel) as counsel to the Prepetition Revolving Agent and predecessor to the Prepetition First Lien Agent; UBS AG, Stamford Branch as Prepetition Revolving Agent and predecessor to the Prepetition First Lien Agent; and UBS Securities LLC, for any remaining actions needed to be completed in connection with their aforementioned roles as Prepetition Revolving Agent and predecessor to the Prepetition First Lien Agent and for any unpaid fees and expenses related to such roles (collectively, the "**First Lien Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph ~~16~~**17** of this ~~Interim~~**Final** Order.

(d)     *Prepetition Revolving Adequate Protection Liens*.   The Prepetition Revolving Agent, for the benefit of the Prepetition Revolving Secured Parties, is hereby granted, effective and perfected upon the date of ~~this~~**entry of the** Interim Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements, on account of the Prepetition Revolving Secured Parties' Diminution in Value, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral (the "**Revolving Adequate Protection Liens**" and, together with the First Lien Adequate Protection Liens, the "**Adequate Protection Liens**"), which Revolving Adequate Protection

Liens shall be junior, subject, and subordinate to the Carve-Out, the DIP Liens, and the Prepetition Permitted Senior Liens.

(e)     *Prepetition Revolving Secured Parties' 507(b) Claim*.   The Prepetition Revolving Agent, for the benefit of the Prepetition Revolving Secured Parties, is hereby granted an allowed superpriority administrative expense claim against the DIP Loan Parties on a joint and several basis (without the need to file a proof of claim) on account of the Prepetition Revolving Secured Parties' Diminution in Value as provided for under section 507(b) of the Bankruptcy Code (the "**Revolving 507(b) Claim**" and, together with the First Lien 507(b) Claim, the "**Adequate Protection 507(b) Claims**"), which Revolving 507(b) Claim shall be payable from and have recourse to all DIP Collateral and all proceeds thereof (excluding Avoidance Actions but, subject to entry of the Final Order, including any Avoidance Proceeds); *provided* however, that, in the event of an enforcement of remedies in accordance with the terms of this Interim**Final** Order, the Avoidance Proceeds**Unencumbered Property** shall only be used to satisfy the DIP Superpriority Claims in the event that that all other sources of recovery are first exhausted and the DIP Superpriority**Adequate Protection 507(b) Claims in accordance with paragraph 8 hereof and the Adequate Protection 507(b)** Claims have not been indefeasibly paid in full).   The Revolving 507(b) Claim shall be senior to all other claims against the DIP Loan Parties, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, whether or not such claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, except for (i) the Carve-Out, and (ii) the DIP Superpriority Claim..

(f)      *Prepetition Revolving Secured Parties Fees and Expenses.* As further adequate protection, the DIP Loan Parties shall currently pay in cash, all reasonable and documented prepetition and postpetition fees and out-of-pocket expenses of Davis Polk & Wardwell LLP, Vinson & Elkins LLP, one local counsel in each applicable jurisdiction that the Prepetition Revolving Lenders reasonably determine is necessary and any other Crestview Fees and Expenses (as defined in the Restructuring Support Agreement), subject to the proviso set forth in the definition of "Crestview Fees and Expenses" in the Restructuring Support Agreement (the "**Revolving Adequate Protection Fees and Expenses**" and, together with the First Lien Adequate Protection Fees and Expenses, the "**Adequate Protection Fees and Expenses**"), subject to the review procedures set forth in paragraph ~~16~~**17** of this ~~Interim~~**Final** Order and the limitations set forth in the Restructuring Support Agreement.

(g)      To the extent that the Prepetition Superpriority Obligations and/or Prepetition Incremental Superpriority Obligations are not refinanced as a result of a successful Challenge timely brought in accordance with the terms of this ~~Interim~~**Final** Order, the Adequate Protection Obligations shall include, effective as of the Petition Date (i) valid, perfected replacement security interests in and liens upon all of the DIP Collateral and (ii) allowed superpriority administrative expense claims against the DIP Loan Parties under section 507(b) of the Bankruptcy Code, in each case on account of any Diminution in Value of the Prepetition Superpriority Secured Parties and/or Prepetition Incremental Superpriority Secured Parties' interests in their respective Prepetition Collateral.

(h)      *Reporting.*  The Debtors shall provide the Adequate Protection Parties **and the Creditors Committee** with the financial reporting required under each DIP Credit Agreement, which shall include~~,~~ for the avoidance of doubt, any Approved Budget.

(i)      *Access to Records and Collateral*.  In addition to, and without limiting, whatever rights to access the Adequate Protection Parties have under their respective Prepetition Loan Documents, upon reasonable notice, at reasonable times during normal business hours, the Debtors shall permit representatives, agents, and employees of the Adequate Protection Parties **and the Creditors' Committee** (i) to have access to and inspect the Debtors' properties and other Collateral of any Debtor, (ii) to examine the Debtors' books and records, and (iii) to discuss the Debtors' affairs, finances, and condition with the Debtors' officers and applicable advisors, whom the Debtors shall make reasonably available; *provided* the foregoing shall not be construed to create any obligation on any of the Debtors' advisors to take or refrain from taking any action, absent an express contractual requirement to do so, nor shall any of the foregoing be construed to override existing confidentiality and other obligations owed by any of the Debtors' advisors or other person to such representatives.

13**14**.   *Maintenance of Collateral*.  The DIP Loan Parties shall continue to maintain and insure the Prepetition Collateral and DIP Collateral in amounts and for the risks, and by the entities, as required under the Prepetition Loan Documents and DIP Documents, as applicable.

14**15**.   *Perfection of DIP Liens and Adequate Protection Liens.*

(a)      Without in any way limiting the validity of the automatic perfection of the DIP Liens and the Adequate Protection Liens under the terms of this**the** Interim **Order and this Final** Order, the DIP Secured Parties and the Adequate Protection Parties are hereby authorized, but not required, to execute in the name of the DIP Loan Parties or the Prepetition Loan Parties (as applicable), as their true and lawful attorneys (with full power of substitution, to the maximum extent permitted by law) and to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar perfection instruments in any jurisdiction,

or take possession of certificated securities, or take any other similar action in a manner not inconsistent herewith to document, validate or perfect the liens and security interests granted to them hereunder (the "**Perfection Actions**").  All such Perfection Actions shall be deemed to have been taken on the **Closing Date with respect to any DIP Obligations and the** date of entry of ~~this~~**the** Interim Order **with respect to any Adequate Protection Obligations and shall be deemed to come first in time or otherwise have priority over any perfection actions taken with respect to liens that are primed hereunder**.  The automatic stay shall be modified to the extent necessary to permit the DIP Secured Parties and each Prepetition Secured Party to take any Perfection Action.  For the avoidance of doubt, the DIP Liens and the Adequate Protection Liens shall be deemed valid, perfected, allowed, enforceable, non-avoidable, and not subject to challenge, dispute or subordination, ~~at the time and on the~~**on the Closing Date with respect to any DIP Obligations and the** date of entry of ~~this~~**the** Interim Order **with respect to any Adequate Protection Obligations**, whether or not the DIP Secured Parties or the Prepetition Secured Parties take such Perfection Actions.

(b)     A certified copy of this ~~Interim~~**Final** Order may, in the discretion of each DIP Agent, each Prepetition Agent, be filed or recorded in the filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing and recording offices are hereby authorized and directed to accept a certified copy of this ~~Interim~~**Final** Order for filing and/or recording, as applicable.

~~15~~**16**.  *Preservation of Rights Granted Under this ~~Interim~~**Final** Order.*

(a)     Other than the claims and liens expressly granted or permitted by this ~~Interim~~**Final** Order, including the Carve-Out, no claim or lien against the DIP Loan Parties or the property of their estates having a priority superior to or *pari passu* with those granted by this

~~Interim~~**Final** Order shall be granted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding, and, except as otherwise expressly provided in or permitted under this ~~Interim~~**Final** Order, the DIP Liens and the Adequate Protection Liens shall not be: (i) junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code; (ii) except as set forth in the DIP Order or the DIP Documents, subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise; (iii) except as set forth in the DIP Orders and the DIP Documents, subordinated to or made *pari passu* with any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other domestic or foreign governmental unit (including any regulatory body), commission, board or court for any liability of the DIP Loan Parties; or (iv) junior to any intercompany liens or security interests of the DIP Loan Parties.

(b)    The occurrence and continuance of any Event of Default (i) under (and as defined in) the Senior DIP Facility, after written notice by the Senior DIP Agent (acting at the direction of the Required Senior DIP Lenders) to the Borrowers, counsel to the Borrowers, the U.S. Trustee, and lead counsel to the Creditors' Committee ~~(if any)~~ or (ii) under (and as defined in) the Junior DIP Facility, after written notice by the Junior DIP Agent (acting at the direction of the Required Junior DIP Lenders) to the Borrowers, counsel to the Borrowers, the U.S. Trustee, and lead counsel to the Creditors' Committee ~~(if any)~~, shall constitute an event of default under this ~~Interim~~**Final** Order with respect to the applicable DIP Facility (each an "**Event of Default**") and, upon such notice, interest, including, where applicable, default interest, shall accrue and be payable as set forth in the applicable DIP Credit Agreement.  Notwithstanding any order that may be entered dismissing any of these chapter 11 cases under section 1112 of the Bankruptcy

Code or converting these cases to a Successor Case: (A) the DIP Superpriority Claims, the Adequate Protection 507(b) Claims, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect, shall maintain their priorities as provided in this ~~Interim~~**Final** Order, and shall remain binding as provided for herein on all parties in interest until all DIP Obligations and Adequate Protection Obligations shall have been indefeasibly paid in full; (B) the other rights granted by this ~~Interim~~**Final** Order as of such dismissal or conversion, including with respect to the Carve-Out, shall not be affected; and (C) this Court shall retain jurisdiction, notwithstanding such dismissal or conversion, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this ~~Interim~~**Final** Order.

(c)　　If any or all of the provisions of this ~~Interim~~**Final** Order are hereafter reversed, modified, vacated or stayed, such reversal, modification, vacatur or stay shall not affect (i) the validity, priority or enforceability of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the DIP Agents, Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay; or (ii) the validity, priority and enforceability of the DIP Liens, the Adequate Protection Liens, and the Carve-Out.　Notwithstanding any such reversal, modification, vacatur or stay, the DIP Obligations, DIP Liens, Adequate Protection Obligations, Adequate Protection Liens, DIP Superpriority Claims, or the Adequate Protection 507(b) Claims incurred prior to the actual receipt of written notice by the DIP Agents, the Prepetition Agents, as applicable, of the effective date of such reversal, modification, vacatur or stay shall be governed in all respects by the original provisions of this ~~Interim~~**Final** Order, and the DIP Secured Parties and the Prepetition Secured Parties shall be entitled to, and are hereby granted, all the rights, remedies, privileges and benefits arising under sections 364(e) and 363(m) of the Bankruptcy Code, as applicable.

(d)     Except as expressly provided in this ~~Interim~~**Final** Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection 507(b) Claims and all other rights and remedies of the DIP Secured Parties and the Prepetition Secured Parties granted by this ~~Interim~~**Final** Order and the DIP Documents, as well as the Carve-Out, shall survive, and shall not be modified, impaired or discharged by the entry of an order (i) converting or dismissing any of these cases, or terminating the joint administration of these cases; (ii) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) confirming a chapter 11 plan in any of these chapter 11 cases (except to the extent permitted by the DIP Documents and this ~~Interim~~**Final** Order).  The terms and provisions of this ~~Interim~~**Final** Order and the DIP Documents shall continue in in full force and effect in these cases and in any Successor Cases until all Senior DIP Obligations and Adequate Protection Obligations are indefeasibly paid in full in cash, all Junior DIP Obligations are indefeasibly paid in full in cash in accordance with the Junior DIP Credit Agreement, and the DIP Commitments have been terminated.

(e)     Except to the extent that, subject to the terms of the Senior DIP Documents, any Senior DIP Secured Party agrees to less favorable treatment, in full and final satisfaction, compromise, settlement, release and discharge of, and in exchange for the Senior DIP Obligations, on the effective date of the confirmed plan of reorganization in these Chapter 11 Cases (the "**Effective Date**"), (x) all Senior DIP Obligations shall be paid indefeasibly in cash in full or (y) at the Debtors' sole discretion, subject to the Exit Conversion Conditions (as defined in the Senior DIP Credit Agreement), without further notice to or order or other approval of the Court, act or action under applicable law, regulation, order or rule or the vote, consent,

authorization or approval of any person or entity: (i) the Senior DIP Facility shall convert into and become an exit financing facility on terms consistent with the Exit Facilities Commitment Letter (as defined in the Senior DIP Credit Agreement) (such facility, the "**Exit Facility**"); (ii) the Senior DIP Obligations outstanding on the Effective Date shall become obligations under the Exit Facility Documents (as defined below) (such obligations, upon conversion, the "**Exit Facility Obligations**" and the agents and lenders under the Exit Facility, the "**Exit Secured Parties**") on a dollar-for-dollar basis; (iii) the Senior DIP Lenders shall become lenders under the Exit Facility; (iv) the Debtors or the reorganized Debtors will be authorized to and shall execute and deliver, file, record, and/or issue, as applicable, all agreements, filings, documents, and instruments delivered or entered into in connection with the Exit Facility, including any guarantee agreements, pledge and collateral agreements, vessel mortgages, debentures, control agreements, escrow agreements, UCC and PPSA financing statements or other perfection documents, intercreditor agreements, subordination agreements, fee letters and other security documents (such documents, the "**Exit Facility Documents**") which, for the avoidance of doubt, may include the Senior DIP Documents; (v) contemporaneously with such conversion, all liens and security interests granted to secure the Senior DIP Obligations shall continue, remain in effect, and be deemed to secure the Exit Facility Obligations; and (vi) all findings regarding the application of section 364(e) of the Bankruptcy Code to the Senior DIP Obligations shall be deemed to apply to the Exit Facility Obligations and the Exit Secured Parties shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this ~~Interim~~**Final** Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  Except as provided in this paragraph ~~15~~**16**(e), any confirmation order entered in these cases shall not discharge or otherwise affect in any way the joint and several obligations of the DIP Loan Parties

to the DIP Secured Parties under the Senior DIP Facility and the Senior DIP Documents, other than after (i) the indefeasible payment in full and in cash or conversion to Exit Facility Obligations of all Senior DIP Obligations, (ii) the indefeasible payment in full and in cash of all Junior DIP Obligations, and (iii) the termination of the DIP Commitments (unless otherwise consented to by the DIP Lenders).

(f)     Notwithstanding anything to the contrary in this ~~Interim~~**Final** Order or any other order of the Court, (i) any indemnities and other obligations which by the express terms of the relevant Senior DIP Documents shall survive the repayment of the Senior DIP Loans (the "**Contingent Senior DIP Obligations**"), shall survive the Effective Date, not be discharged or released pursuant to the plan or order of this Court confirming the plan, and continue to be secured by all liens and security interests granted to secure the Senior DIP Obligations and (ii) the Senior DIP Documents shall continue in full force and effect after the Effective Date with respect to any obligations thereunder governing the Contingent Senior DIP Obligations.

~~16~~**17**.   *Payment of Fees and Expenses*.  The DIP Loan Parties are authorized and directed to pay the DIP Fees and Expenses and the Adequate Protection Fees and Expenses.  Subject to the review procedures set forth in this paragraph ~~16~~**17**, payment of the DIP Fees and Expenses and the Adequate Protection Fees and Expenses shall not be subject to allowance or review by the Court.  Professionals for the DIP Secured Parties and the Adequate Protection Parties shall not be required to comply with the U.S. Trustee fee guidelines with respect to such fees and expenses, however, any time that such professionals seek payment of fees and expenses from the Debtors prior to confirmation of a chapter 11 plan, each such professional shall provide summary copies of its invoices (including aggregate amounts of fees and expenses and total amount of time on a per-professional basis), which are not required to contain individual time entries or

detail and which may be redacted, summarized or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, to the DIP Loan Parties, counsel to any statutory committee, the U.S. Trustee, and counsel to the Ad Hoc Group (together, the "**Review Parties**"); *provided, however*, that (i) the provision of such invoices shall not constitute a waiver of the attorney client privilege or of any benefits of the attorney work product doctrine or any other evidentiary privilege or protection recognized under applicable law; and *provided further that*, the U.S. Trustee and ~~any~~**the** Creditors' Committee shall have the right to request additional details regarding the services rendered and expenses incurred by such professionals (each an "**Information Request**"). Any objections raised by any Review Party with respect to such invoices must be in writing and state with particularity the grounds therefor and must be submitted to the applicable professional within ten (10) calendar days after receipt (the "**Review Period**"), which shall not be extended by the delivery of an Information Request. If no written objection is received by 12:00 p.m., prevailing Eastern Time, on the last date of the Review Period (any written objection may be grounded in the failure of the applicable party to respond to an Information Request), the Debtors shall pay such invoices within five (5) business days of the end of the Review Period. If an objection to a professional's invoice is received within the Review Period, the Debtors shall promptly pay the undisputed amount of the invoice without the necessity of filing formal fee applications, regardless of whether the invoiced amount arose or was incurred before or after the Petition Date, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually. Notwithstanding the foregoing, the Debtors ~~are~~**were** authorized and directed **under the Interim Order** to pay, on or prior to the Closing Date ~~(as defined in the DIP Credit Agreement)~~ any DIP

Fees and Expenses and Adequate Protection Fees and Expenses incurred on or prior to such date without the need for any professional engaged by, or on behalf of, the Prepetition Secured Parties to first deliver a copy of its invoice or other supporting documentation to the Review Parties (other than the Debtors).  No attorney or advisor to any DIP Secured Party or any Adequate Protection Party shall be required to file an application seeking compensation for services or reimbursement of expenses with the Court.  Any and all fees, costs, and expenses paid prior to the Petition Date by any of the Debtors to (i) the DIP Secured Parties in connection with the DIP Facilities and (ii) the Adequate Protection Parties in connection with these chapter 11 cases, are hereby approved in full and shall not be subject to recharacterization, avoidance, subordination, disgorgement or any similar form of recovery by the Debtors or any other person.

　　　　1718.  *Effect of Stipulations on Third Parties*.  The Debtors' stipulations, admissions, agreements and releases contained in ~~this~~**the** Interim Order~~,~~ **and this Final Order** shall be binding upon the Debtors in all circumstances and for all purposes **as of the date of entry of the applicable DIP Order**.   The Debtors' stipulations, admissions, agreements and releases contained in ~~this~~**the** Interim **Order and this Final** Order shall be binding upon all other parties in interest, including, without limitation, any statutory or non-statutory committees appointed or formed in these cases and any other person or entity acting or seeking to act on behalf of the Debtors' estates, including any chapter 7 or chapter 11 trustee or examiner appointed or elected for any of the Debtors, in all circumstances and for all purposes unless except as otherwise provided under any order confirming a chapter 11 plan or any confirmed chapter 11 plan in these chapter 11 cases: (a) such committee or other party in interest with requisite standing has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein) by no later than (x) as to the Creditors' Committee only, ~~60 calendar days after the appointment of~~

the Creditors' Committee**May 24, 2024**, (y) if a chapter 7 or a chapter 11 trustee is appointed or elected prior to the end of the Challenge Period (as defined below), the Challenge Period solely for any such chapter 7 trustee or chapter 11 trustee shall be extended to the date that is the later of (1) 60 calendar days after entry of this**the** Interim Order, or (2) the date that is 30 calendar days after their appointment, and (z) for all other parties in interest, 60 calendar days after entry of this**the** Interim Order; and (ii) any such later date as (v) has been agreed to by the Prepetition Superpriority Agent with respect to the Prepetition Superpriority Obligations or the Prepetition Superpriority Liens, (w) has been agreed to by the Prepetition Incremental Superpriority Agent with respect to the Prepetition Incremental Superpriority Obligations or the Prepetition Incremental Superpriority Liens, (x) has been agreed to by the Prepetition First Lien Agent with respect to the Prepetition First Lien Obligations or the Prepetition First Lien Liens, (y) has been agreed to by the Prepetition Revolving Agent with respect to the Prepetition Revolving Obligations or the Prepetition Revolving Liens or (z) has been ordered by the Court for cause upon a motion filed and served within any applicable period (the time period established by the foregoing clauses (i)-(ii), the "**Challenge Period**")., ; *provided*, **that upon the filing of a standing motion that attaches a draft complaint asserting a Challenge by any party, the Challenge Period shall be tolled, solely with respect to such party and with respect to the Challenge asserted in such draft complaint, until one (1) business day after such motion is resolved,** (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of the Prepetition Secured Obligations or the Prepetition Liens, as applicable, or (B) asserting or prosecuting any Avoidance Action or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any Prepetition Secured Parties, or their respective subsidiaries, affiliates, officers, directors, managers,

principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (collectively, the "**Representatives**") in connection with or related to the Prepetition Loan Documents, the Prepetition Secured Obligations, the Prepetition Liens, and/or the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge; *provided*, *however*, that any pleadings filed in connection with a Challenge shall set forth with specificity the basis for such Challenge and any Challenges not so specified prior to the expiration of the Challenge Period shall be deemed forever waived, released and barred.  If no Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such Challenge then: (1) the Debtors' stipulations, including the Debtors' Stipulations, admissions, agreements and releases contained in ~~this~~**the** Interim Order **and this Final Order** shall be binding on all parties in interest; (2) the Prepetition Secured Obligations shall constitute allowed claims not subject to defense avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise, except as provided in the Intercreditor Agreements), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any person or entity for all purposes in these cases and any Successor Case(s); (3) the Prepetition Liens shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens, not subject to defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual (other than as provided in the Intercreditor Agreements), or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any

person or entity, including any statutory or non-statutory committees appointed or formed in these cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, and any defense, avoidance, reduction, setoff, recoupment, recharacterization, subordination (whether equitable, contractual, or otherwise), disallowance, impairment, counterclaim, cross-claim, or any other challenge under the Bankruptcy Code or any applicable law or regulation by any statutory or non-statutory committees appointed or formed in these cases or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any chapter 7 or chapter 11 trustee or examiner, whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties  and their Representatives, in such capacities, shall be deemed forever waived, released and barred.  If any Challenge is timely filed during the Challenge Period, the stipulations, admissions, agreements and releases contained in ~~this~~**the** Interim Order **and this Final Order** shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on each person or entity, except to the extent that such stipulations, admissions, agreements and releases were expressly and successfully challenged in such Challenge as set forth in a final, non-appealable order of a court of competent jurisdiction. Nothing in this ~~Interim~~**Final** Order vests or confers on any person or entity (each as defined in the Bankruptcy Code), including any statutory or non-statutory committees appointed or formed in these cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, any Challenges with respect to the Prepetition Loan Documents, Prepetition Secured Obligations, or Prepetition Liens, and any ruling on standing, if appealed, shall not stay or otherwise delay confirmation of any plan of reorganization in these chapter 11 cases**; *provided* that the Debtors and the Prepetition Secured**

**Parties shall not object to a motion filed by the Creditors' Committee seeking standing to pursue any Challenge solely on the basis that standing is precluded by any applicable non-bankruptcy law relating to limited liability companies or limited partnerships (as applied to any applicable Debtor entity)**.   If there is a successful Challenge with respect to the Prepetition Superpriority Obligations, Prepetition Incremental Superpriority Obligations, the Prepetition Superpriority Liens, or the Prepetition Incremental Superpriority Liens, the Court shall fashion any appropriate remedy with respect to the Prepetition Superpriority Secured Parties or Prepetition Incremental Superpriority Secured Parties, as applicable, including (if appropriate) the clawing back of funds received in connection with the (i) refinancing of the Prepetition Superpriority Obligations with proceeds of the Senior DIP Facility and (ii) refinancing of the Prepetition Incremental Superpriority Obligations with proceeds of the Junior DIP Facility; *provided* that no such remedy shall affect the validity, priority or any other aspect of the DIP Obligations or the DIP Liens.

~~18~~**19**.   *Limitation on Use of DIP Financing Proceeds and Collateral.*   Notwithstanding any other provision of this ~~Interim~~**Final** Order or any other order entered by the Court, no DIP Loans, DIP Collateral, Prepetition Collateral (including Cash Collateral) or any portion of the Carve-Out, may be used directly or indirectly, including without limitation through reimbursement of professional fees of any non-Debtor party, in connection with (a) the investigation, threatened initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (i) against any of the DIP Secured Parties, the Prepetition Secured Parties, or their respective Representatives, or any action purporting to do the foregoing in respect of the DIP Obligations, DIP Liens, DIP Superpriority Claims, Prepetition Secured Obligations, Prepetition Liens, Adequate Protection Liens, Adequate Protection 507(b) Claims or other Adequate Protection Obligations or (ii) challenging the amount, validity, perfection,

priority or enforceability of or asserting any defense, counterclaim or offset with respect to the DIP Obligations, the Prepetition Secured Obligations and/or liens, claims, rights, or security interests securing or supporting the DIP Obligations granted under the DIP Orders, the DIP Documents or the Prepetition Loan Documents in respect of the Prepetition Secured Obligations, including, in the case of each (i) and (ii), without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550 or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise (*provided* that, notwithstanding anything to the contrary herein, the proceeds of the DIP Loans and DIP Collateral (including Cash Collateral) may be used by the Creditors' Committee to investigate, but not to prosecute, (A) the claims and liens of the Prepetition Secured Parties and (B) potential claims, counterclaims, causes of action or defenses against the Prepetition Secured Parties, up to an aggregate cap of no more than $~~50,000~~**250,000**, (b) other than expressly permitted hereunder, attempts to prevent, hinder, or otherwise delay or interfere with the Prepetition Secured Parties' or the DIP Secured Parties', as applicable, enforcement or realization on the Prepetition Secured Obligations, Prepetition Collateral, DIP Obligations, DIP Collateral, and the liens, claims and rights granted to such parties under the DIP Orders; (c) attempts to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties or the DIP Secured Parties under this ~~Interim~~**Final** Order, the Prepetition Loan Documents, or the DIP Documents, as applicable, other than in accordance with this ~~Interim~~**Final** Order; (d) to apply to the Court for authority to approve superpriority claims or grant liens (other than the liens and claims permitted hereunder or by the DIP Documents) or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, DIP Superpriority Claims, Adequate Protection Liens and Adequate Protection 507(b) Claims; or (e) to pay or to seek to pay any amount on account of any claims arising prior

to the Petition Date unless such payments are authorized by the Court, agreed to in writing by the DIP Lenders, expressly permitted under this ~~Interim~~**Final** Order or under the DIP Documents (including the Approved Budget, subject to permitted variances), unless otherwise agreed to in writing by the DIP Secured Parties, in each case unless all Senior DIP Obligations and claims granted to the Senior DIP Secured Parties under this ~~Interim~~**Final** Order have been indefeasibly paid in full in cash or converted into Exit Facility Obligations, all Junior DIP Obligations and claims granted to the Junior DIP Secured Parties under this ~~Interim~~**Final** Order have been indefeasibly paid in full in cash in accordance with the Junior DIP Credit Agreement, and all Prepetition Secured Obligations, Adequate Protection Obligations, and claims granted to the Prepetition Secured Parties under this ~~Interim~~**Final** Order have been paid in full in cash.

~~19.~~    *~~Interim~~***20.**    ***Final*** *Order Governs*.  In the event of any inconsistency between the provisions of this ~~Interim~~**Final** Order, the DIP Documents or Prepetition Loan Documents, the provisions of this ~~Interim~~**Final** Order shall govern.  Any authorization contained in any other order entered by this Court shall be consistent with and subject to the requirements set forth in this ~~Interim~~**Final** Order and the DIP Documents, including, without limitation, the Approved Budget (subject to permitted variances).

~~20~~**21**.    *Binding Effect; Successors and Assigns*.  The DIP Documents and the provisions of this ~~Interim~~**Final** Order, including all findings herein, shall be binding upon all parties in interest in these cases, including, without limitation, the DIP Secured Parties, the Prepetition Secured Parties, any statutory or non-statutory committees appointed or formed in these cases, the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a

legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Secured Parties, the Prepetition Secured Parties, the Debtors, and their respective successors and assigns; *provided* that the DIP Secured Parties and the Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee or chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

21**22**.  Nothing in this ~~Interim~~**Final** Order, the DIP Documents, the Prepetition Loan Documents or any other documents related to the transactions contemplated hereby shall in any way be construed or interpreted to impose or allow the imposition upon any DIP Secured Party or Prepetition Secured Party any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The DIP Secured Parties and Prepetition Secured Parties shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral or Prepetition Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral or Prepetition Collateral shall be borne by the Debtors.

22**23**.  *Release; Limitation of Liability*.  Upon entry of this ~~Interim~~**Final** Order, each of the Debtors and their estates, on its own behalf and on behalf of its and their respective predecessors, successors, heirs, and past, present and future subsidiaries and assigns, hereby absolutely, unconditionally and irrevocably releases and forever discharges and acquits the DIP

Secured Parties and their respective Representatives (in their capacity as such), from any and all liability to the Debtors (and their successors and assigns) and from any and all claims, counterclaims, demands, defenses, offsets, debts, accounts, contracts, liabilities, actions and causes of action of any kind, nature and description, whether matured or unmatured, known or unknown, asserted or unasserted, foreseen or unforeseen, accrued or unaccrued, suspected or unsuspected, liquidated or unliquidated, pending or threatened, arising in law or equity, in contract or tort, in each case arising out of or related to, as applicable, the DIP Facilities, the DIP Documents, the DIP Loans, the negotiation thereof and the transactions and agreements reflected thereby, that the Debtors at any time had, now have or may have, or that their predecessors, successors or assigns at any time had or may have against any of the DIP Secured Parties for or by reason of any act, omission, matter, or cause arising at any time on or prior to the date of this ~~Interim~~**Final** Order; *provided* that the release set forth in this section shall not release any claims against or liabilities of a DIP Secured Party that a court of competent jurisdiction determines has resulted from such DIP Secured Party's actual fraud, gross negligence or willful misconduct.  In determining to make any loan or other extension of credit under the DIP Documents, to permit the use of the DIP Collateral or Prepetition Collateral (including Cash Collateral) or in exercising any rights or remedies as and when permitted pursuant to this ~~Interim~~**Final** Order or the DIP Documents or Prepetition Loan Documents, as applicable, none of the DIP Secured Parties or Prepetition Secured Parties shall (a) have any liability to any third party or be deemed to be in "control" of the operations of the Debtors; (b) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; or (c) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" or "managing agent" with respect to the operation or management of any of the Debtors (as such terms or similar terms are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601, *et seq.*, as amended, or any other federal or state statute, including the Internal Revenue Code). Furthermore, nothing in this ~~Interim~~**Final** Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Secured Parties or Prepetition Secured Parties (or their respective Representatives) of any liability for any claims arising from the prepetition or postpetition activities of any of the Debtors or their respective Representatives.

~~23~~**24**.   *Master Proofs of Claim.*  Neither the Prepetition Agents, nor any other Prepetition Secured Parties shall be required to file proofs of claim in these cases or any Successor Cases in order to assert claims for payment of any of the Prepetition Secured Obligations, including, without limitation, any principal, unpaid interest, fees, expenses and other amounts payable under the Prepetition Loan Documents.  The description of claims and liens in respect of the Prepetition Secured Obligations set forth in this ~~Interim~~**Final** Order is deemed to constitute proofs of claim in respect of such indebtedness and its secured status.  However, in order to facilitate the processing of claims, each Prepetition Agent is authorized, but not directed or required, to file a master proof of claim in the Debtors' lead case on behalf of the applicable Prepetition Secured Parties (each, a "**Master Proof of Claim**"), which shall be deemed to have been filed against each applicable Debtor.  The provisions of this paragraph ~~23~~**24** and the filing of Master Proofs of Claim, if any, are intended solely for the purpose of administrative convenience and shall not affect the right of each Prepetition Secured Party (or its successors in interest) to vote separately on any plan filed in these cases.  The Master Proofs of Claim shall not be required to include any instruments, agreements or other documents evidencing the obligations owing by each of the Debtors to the applicable Prepetition Secured Parties, which instruments, agreements or other documents will be provided upon written request to counsel to

the applicable Prepetition Agent.  The DIP Secured Parties shall not be required to file proofs of claim with respect to the DIP Obligations.

24**25**.  *Insurance*.  (a) To the extent that any Prepetition Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, each of the DIP Agents shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the applicable DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the applicable DIP Commitment and shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies, (b) to the extent that the Junior DIP Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, the Senior DIP Agent shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the Senior DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) or conversion into Exit Facility Obligations and termination of the applicable DIP Commitment and shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies, and (c) to the extent that the Senior DIP Agent is listed as a loss payee under the insurance policies of any of the DIP Loan Parties, the Junior DIP Agent shall also be deemed to be a loss payee under such insurance policies until the indefeasible payment in full of the Junior DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and termination of the applicable DIP Commitment and shall act in that capacity and distribute any proceeds recovered or received in respect of such insurance policies.

25**26**.  *Credit Bidding*.  Subject to **section 363(k) of the Bankruptcy Code and** the lien priorities set forth herein and in the Intercreditor Agreements**,** and unless the Court for cause orders otherwise, (a) each DIP Agent, acting at the direction of the applicable Required DIP

Lenders, shall have the right to credit bid (directly or via one or more acquisition vehicles) any or all of the applicable DIP Obligations in any sale of the DIP Collateral, *provided* that the Junior DIP Agent shall not have the right to credit bid unless such bid includes the indefeasible repayment in cash of all Senior DIP Obligations, (b) each Prepetition Agent shall have the right, consistent with the provisions of the applicable Prepetition Loan Documents, as applicable (and providing for the DIP Obligations to be indefeasibly repaid in full in cash and the termination of the DIP Commitments), to credit bid, up to the full amount of the applicable Prepetition Secured Obligations, in the sale of the applicable Prepetition Collateral, in each case, without the need for further Court order authorizing the same, whether any such sale is effectuated through section 363(k), 1123 or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the Bankruptcy Code or otherwise.

~~26~~**27**.  *Proceeds of Subsequent Financing.*  If at any time prior to payment in full of all DIP Obligations (subject to their relative priorities as set forth in this ~~Interim~~**Final** Order and in the other DIP Documents), including subsequent to the confirmation of any chapter 11 plan in any of these chapter 11 cases, the Debtors, the Debtors' estates, any trustee, any examiner with enlarged powers or any responsible officer subsequently appointed, shall obtain credit or incur debt in violation of this ~~Interim~~**Final** Order or the DIP Documents, then all of the cash proceeds derived from such credit or debt that was invalidly incurred shall immediately be turned over to the DIP Agents for application in accordance with the priorities set forth in this ~~Interim~~**Final** Order and the other DIP Documents.

~~27~~**28**.  *Amendment*. The Debtors and the DIP Agents (with the express written consent of the requisite Senior DIP Lenders or the requisite Junior DIP Lenders, as applicable, and consistent with their respective rights under the applicable DIP Documents) may amend, modify,

74

supplement or waive any provision of the applicable DIP Documents without further notice to or approval of the Court, unless such amendment, modification, supplement or waiver (w) increases the interest rate (other than as a result of the imposition of the default rate) or fees charged in connection with the applicable DIP Facilities, (x) converts the form of interest or the Closing Fee charged in connection with the Junior DIP Facility from payment-in-kind to cash, (y) increases the commitments of the DIP Lenders to make DIP Extensions of Credit under the applicable DIP Documents, or (z) changes the maturity date of any of the applicable DIP Facilities.  Any such amendments, modifications and supplements described in clauses (w) through (z) of this paragraph 2728 shall be filed with the Court.  Except as otherwise provided herein, no waiver, modification, or amendment of any of the provisions hereof shall be effective unless set forth in writing, signed by, or on behalf of, all the Debtors and the applicable DIP Agents (after having obtained the consent of the requisite Senior DIP Lenders or the requisite Junior DIP Lenders, as applicable) and approved by the Court after notice to parties in interest.  **Notwithstanding anything to the contrary in this Final Order or the DIP Documents, the Debtors and DIP Parties shall notify the Creditors' Committee of any proposed material amendment, waiver, or other modification to the DIP Documents (other than modifications to the Approved Budget that are not subject to paragraph 2(c)(ii) above) as soon as reasonably practicable, and the Creditors' Committee shall have the opportunity to object to any such proposed amendment, waiver, or other modification.**

2829.  *Effectiveness*.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this InterimFinal Order shall be immediately effective and

enforceable upon its entry and there shall be no stay of execution or effectiveness of this ~~Interim~~**Final** Order.

29**30**.  *Governing Order*.  Notwithstanding the relief granted in any other order by this Court, (i) all payments and actions by any of the Debtors pursuant to the authority granted therein shall be subject to this ~~Interim~~**Final** Order, including compliance with the Approved Budget and all other terms and conditions hereof, and (ii) to the extent there is any inconsistency between the terms of such other order and this ~~Interim~~**Final** Order, this ~~Interim~~**Final** Order shall control, in each case, except to the extent expressly provided otherwise in the other order.

30**31**.  *Headings*.  Paragraph headings used herein are for convenience only and shall not affect the construction of, or to be taken into consideration in interpreting, this ~~Interim~~**Final** Order.

31**32**.  *Payments Held in Trust*.  Except as expressly permitted in this ~~Interim~~**Final** Order, any "first" day order, or the DIP Documents, and except with respect to the DIP Loan Parties, in the event that any person or entity receives any payment on account of a security interest in the DIP Collateral, receives any DIP Collateral or any proceeds of the DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations and termination of all DIP Commitments, such person or entity shall be deemed to have received, and shall hold, any such DIP Collateral or any payment on account or proceeds thereof in trust for the benefit of the Senior DIP Secured Parties and, upon the indefeasible payment in full in cash of the Senior DIP Obligations, the Junior DIP Secured Party and shall immediately turn over such collateral or its proceeds to the Senior DIP Agent or, upon the indefeasible payment in full in cash of the Senior DIP Obligations, the Junior

DIP Agent, or as otherwise instructed by this Court, for application in accordance with the applicable DIP Documents and this ~~Interim~~**Final** Order.

~~32~~**33**.   *Bankruptcy Rules*.  The requirements of Bankruptcy Rules ~~4001,~~ 6003 and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

~~33~~**34**.   *No Third Party Rights*.  Except as explicitly provided for herein, this ~~Interim~~**Final** Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect or incidental beneficiary.

~~34~~**35**.   *Necessary Action*.  The Debtors, the DIP Secured Parties, and the Prepetition Secured Parties are authorized to take all reasonable actions as are necessary or appropriate to implement the terms of this ~~Interim~~**Final** Order.  The automatic stay is modified to permit affiliates of the Debtors who are not debtors in these cases to take all actions as are necessary or appropriate to implement the terms of this ~~Interim~~**Final** Order.

~~35~~**36**.   *Retention of Jurisdiction*.  This Court shall retain jurisdiction to enforce the provisions of this ~~Interim~~**Final** Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

**37.     JPMorgan Chase Bank, N.A., a national banking association ("Chase"), Paymentech, LLC (also known as Chase Merchant Services) ("CMS"), and certain of the Debtors are parties to that certain U.S. Select Merchant Processing Agreement, dated on or about March 9, 2019 (as amended, supplemented or modified from time to time, the "MPA").  Notwithstanding anything to the contrary in the Interim Order and this Final Order, and without limitation, any and all rights of Chase or CMS, if any, to offset, setoff, recoup or exercise other rights and remedies against any Debtors under the MPA and applicable law, and the Debtors' and other parties in interests' rights to challenge same, are reserved and preserved and shall not be affected by the relief granted in the Interim Order and this Final Order.**

36.     *Final Hearing.* A final hearing to consider the relief requested in the DIP Motion on a final basis shall be held on March 18, 2024 at 11:00 a.m.

37.     *Objections.* Any objections or responses to the DIP Motion shall be filed on or prior to March 14, 2024 at 4:00 p.m. (Prevailing Central Time).

38.     Nothing in ~~this~~**the** Interim **Order or this Final** Order shall prime, modify, limit, alter, or expand any perfected security interest that Argonaut Insurance Company may have in respect of any of their bonds, any related indemnity agreements, and/or in any of their **cash** collateral.  **Notwithstanding anything to the contrary in the Interim Order or this Final Order, (i) all parties' rights to assert, and the Debtors' and other parties in interests' right to oppose, that the Debtors hold or held customer deposits in trust on behalf of passengers are fully preserved, and (ii) to the extent that the Court determines that the Debtors hold or held any customer deposits in trust on behalf of passengers, nothing in this Final Order shall prime, modify, limit, or alter such passengers' interests or rights in such trust funds.**

**39.     Notwithstanding any other language in this Final Order, nothing herein shall be read to prime or otherwise alter any existing statutory liens for taxes**

~~39~~**40**.  The Debtors shall promptly serve copies of this ~~Interim Order (which shall constitute adequate notice of the Final Hearing)~~**Final Order**  on the parties having been given notice of the ~~Interim~~**Final** Hearing and to any party that has filed with this Court a request for notices in these cases.


Signed: ~~February 22~~ _____, 2024


_____


_____
                    Marvin Isgur
                    United States Bankruptcy Judge


79

| Summary report: Litera Compare for Word 11.2.0.54 Document comparison done on 3/22/2024 9:37:34 AM | |
|---|---|
| **Style name:** PW Basic | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Hornblower - Interim Order(19282663.1).docx | |
| **Modified DMS:** iw://us.internal.paulweiss.com/US1/19246353/6 | |
| **Changes:** | |
| **Add** | 301 |
| Delete | 289 |
| Move From | 16 |
| **Move To** | 16 |
| **Table Insert** | 0 |
| Table Delete | 0 |
| **Table moves to** | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 0 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 622 |