UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re:<br><br>**HORNBLOWER HOLDINGS, LLC** *et al.* [1]<br><br><br><br>**Debtor.** | **Chapter 11**<br>**Case No. 24-90061 (MI)**<br>**(jointly administered)** |

**LIMITED OBJECTION AND RESERVATION OF RIGHTS
OF THERESA VANBUREN, MONICA MILLER, CAPTAIN BERTRAND M. SUAREZ,
AND CAPTAIN JOHN COOK,
ON BEHALF OF THEMSELVES AND OTHERS SIMILARLY SITUATED,
TO ADEQUACY OF DEBTORS'
AMENDED COMBINED DISCLOSURE STATEMENT AND CHAPTER 11 PLAN,
AND NOTICE OF ELECTION BY THE WARN CLAIMANTS TO
OPT-OUT OF THIRD- PARTY RELEASES CONTAINED IN THE PLAN[2]**

Theresa Vanburen, Monica Miller, Captain Bertrand M. Suarez, and Captain John Cook, on behalf of themselves and all others similarly situated (the "WARN Claimants"), submit this Limited Objection and Reservation of Rights (the "Objection") to the adequacy of Debtors' Amended Combined Disclosure Statement ("Disclosure Statement") and the proposed Chapter 11 Plan contained therein (D.I., 378 and 379 the "Plan").[3] Further, WARN Claimants hereby provide notice of their election not to grant (i.e., to opt out of) the releases set forth in Article IX of the

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] WARN Claimants note that the Debtors and their counsel have been engaged with Plaintiffs in a good faith attempt to quantify the size of the WARN Act claim which will presumably lead to expedited settlement discussions of the WARN Act claim. Nevertheless, WARN Claimants file this objection so that if the parties are unable to reach an agreement on the size of the WARN claim or its resolution, the WARN Claimants' rights are protected.

[3] The Plan comprises a combined plan and disclosure statement but is referred to herein as the "Plan."

3854665v3

Plan.

## INTRODUCTION

The WARN Claimants object to the Disclosure Statement solely on the basis that the Disclosure Statement fails to address or even acknowledge their WARN claims, and the Plan likewise does not establish an adequate claims reserve for the WARN Claimants' priority wage claims, which upon initial investigation are at least $6 million.[4]

## FACTUAL BACKGROUND

The Debtors were a global leader in world class experiences, tourism, and transportation. Debtors employed more than 500 employees who worked at, reported to, or received assignments from facilities in Fort Lauderdale, Florida and other facilities (collectively, the "Facilities") and who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States.

On February 20, 2024, Debtors ceased operations and simultaneously fired hundreds of their employees with no prior notice. The termination notice referenced "unforeseen business circumstances and an inability to obtain sufficient capital at a commercially reasonable rate to continue operations" but did not explain why prior notice was not practicable. On February 21, 2024, Debtors each filed a Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code. On July 1, 2022, the Debtors' cases were consolidated for joint administration. (Bankr. No. 24-90061 (MI), D.I. 20).

---

[4] The WARN Claimants will supplement this Objection to confirm the WARN priority wage claim amounts promptly upon receipt of requested payroll documentation from the Debtors, which the Debtors have assured the WARN Claimants are forthcoming.

**LAW & ARGUMENT**

**I.      The WARN Claimants Assert Valid WARN Act Claims.**

As a brief overview, the WARN Act, enacted in 1988, requires generally that an employer provide sixty days' advance written notice to each affected employee before ordering a plant closing or mass layoff.  *See* 29 U.S.C. § 2102.

Specifically, and in pertinent part, the WARN Act provides:

> (1) [T]he term "employer" means any business enterprise that employs—
> (A) 100 or more employees, excluding part-time employees; or
> (B) 100 or more employees who in the aggregate work at least 4,000 hours per week (exclusive of hours of overtime)[.]
>
> (2) [T]he term "plant closing" means the permanent or temporary shutdown of a single site of employment, or one or more facilities or operating units within a single site of employment, if the shutdown results in an employment loss at the single site of employment during any 30-day period for 50 or more employees excluding any part-time employees[.]
>
> (3) [T]he term "mass layoff" means a reduction in force which—
> (A) is not the result of a plant closing; and
> (B) results in an employment loss at the single site of employment during any 30-day period for—
>     (i) (I) at least 33 percent of the employees excluding any part-time employees); and
>         (II) at least 50 employees (excluding any part-time employees); or
>     (ii) at least 500 employees (excluding any part-time employees)[.]
>
> \* \* \* \*
>
> (5) [T]he term "affected employees" means employees who may reasonably be expected to experience an employment loss as a consequence of a proposed plant closing or mass layoff by their employer[.]
>
> (6) . . . [T]he term "employment loss" means
> (A) an employment termination, other than a discharge for cause, voluntary departure, or retirement,

3

> (B) a layoff exceeding 6 months, or
> (C) a reduction in hours of work of more than 50 percent during each month of any 6-month period[.]

29 U.S.C. § 2101(a).

And:

> An employer shall not order a plant closing or mass layoff until the end of a 60-day period after the employer serves written notice of such an order—
> (1) to each [union] representative of the affected employees as of the time of the notice or, if there is no such representative at that time, to each affected employee; and
> (2) to the State or entity designated by the State to carry out rapid response activities under section 3174(a)(2)(A) of this title, and the chief elected official of the unit of local government within which such closing or layoff is to occur.

29 U.S.C. § 2102(a).

And finally:

> (1) Any employer who orders a plant closing or mass layoff in violation of section 2102 of this title shall be liable to each aggrieved employee who suffers an employment loss as a result of such closing or layoff for—
>    (A) back pay for each day of violation at a rate of compensation not less than the higher of—
>       (i)  the average regulate rate received by such employee during the last 3 years of the employee's employment; or
>       (ii) the final regular rate received by such employee; and
>    (B) benefits under an employee benefit plan described in section 1002(3) of this title, including the cost of medical expenses incurred during the employment loss which would have been covered under an employee benefit plan if the employment had not occurred.
>
> \* \* \* \*
>
> (7) For purposes of this subsection, the term, "aggrieved employee" means an employee who has worked for the employer ordering the plant closing or mass layoff and who, as a result of the failure by the employer to comply with section 2102 of this title, did not

> receive timely notice either directly or through his or her representative as required by section 2102 of this title.

29 U.S.C. § 2104(a).

Here, Debtors employed at least 500 employees who worked at, reported to, or received assignments from facilities in Fort Lauderdale, Florida and other facilities (collectively, the "Facilities") and who, in the aggregate, worked at least 4,000 hours per week, exclusive of hours of overtime, within the United States. Debtors were an "employer," as that term is defined in section 2101(a)(1) of the Worker Adjustment and Retraining Notification Act, 29 U.S.C. §§ 2101–09 (the "WARN Act") and pursuant to the Department of Labor test set forth in 20 C.F.R. § 639.3(a)(2) and discussed in more detail below. Debtors continued to operate as a business until they decided to order mass layoffs or plant closings, as those terms are defined by 29 U.S.C. § 2101(a)(2) and 20 C.F.R. § 639.3(i), at the Facilities on February 20, 2024. The mass layoffs or plant closings ordered by Debtors resulted in the termination of at least 500 employees, and for those employees, "employment losses" as that term is defined by 29 U.S.C. §2101(a)(6). *See* First Day Declaration, p. 40 of 46 (noting that in conjunction with the bankruptcy filing, Debtors "terminated the employment of a substantially all of their employees on February 20, 2024"). The WARN Claimants were terminated without cause on their part, as part of the mass layoffs or plant closings ordered at the Facilities, and the WARN Claimants are "affected employees" within the meaning of 29 U.S.C. § 2101 (a)(5). They are also "aggrieved employees" as that term is defined in 29 U.S.C. § 2104(a)(7).

Furthermore, the notice must be given by a method that is reasonably designed to ensure "receipt of notice at least 60 days before separation." 20 C.F.R. § 639.8 (emphasis added). Failure to give the required notice renders the employer liable to each affected employee for sixty days' pay and benefits. If the employer gives less than sixty days' advance written notice, the employer

5

is liable for pay and benefits for the number of days' notice that was not given. 29 U.S.C. § 2104. An employer who fails to provide any notice, as happened here, is liable to each employee for sixty days' pay and benefits. 29 U.S.C. § 2104; *see also Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F. 4th 278, 288 (5th Cir. 2023) ("Offending employers are liable to each affected employee for back pay, benefits, and attorney's fees. Liability is calculated for the period of the violation, up to a maximum of 60 days.") (citing 29 U.S.C. § 2104(a) (cleaned up).

Here, Debtors notified the WARN Claimants of their termination on the day such termination became effective. Specifically, the termination notice delivered on February 20, 2024 provided:

> We are writing to inform you that American Queen Steamboat Operating Company, LLC will **cease all business operations effective February 20, 2024**. This will affect all employees located at or who report to 500 Port of New Orleans Pl., New Orleans, Louisiana, 70130, 100 14th St. Clarkston, Washington 99403, 110 Columbia St., Vancouver, Washington, and 2400 E. Commercial Blvd., Suite 1200, Ft. Lauderdale, Florida 33308. **Your termination date is February 20, 2024, effective at 5:00 p.m. local time.**

Accordingly, Debtors did not comply with the requirements of the WARN Act and are liable to the WARN Claimants for sixty days' wages, and for those employees who did not receive sixty days' benefits after their termination, the Debtors are also liable to them for such benefits.

**II.     The Debtors Cannot Raise the Statutory Defenses to the WARN Act.**

WARN contains two narrow affirmative defenses—the "faltering company" and the "unforeseen business circumstances" defenses—neither of which are applicable here. The "faltering company" and "unforeseen business circumstances" defenses allow for reduced notice only where, <u>as a prerequisite</u>, the employer gives affected employees as much notice as is practicable, <u>and</u> the notice includes a brief written statement explaining the reason why less than

6

sixty (60) days' notice was given. 29 U.S.C. § 2102(b)(3); *see also*, 20 C.F.R. § 639.9 ("[T]he employer must give as much notice as is practicable to . . . non-represented employees" and, "at the time notice is given, provide a brief statement of the reason for reducing the notice period, in addition to the other elements set out in [20 C.F.R.] § 639.7.") (emphasis added). The "brief statement" must "set forth the underlying factual events which led to the shortened [notice] period." *See, e.g.*, *Fleming v. Bayou Steel BD Holdings II LLC*, No. 20-cv-1476, 2022 WL 266942, at *2 (E.D. La. Jan. 28, 2022) (quoting *Alarcon v. Keller Indus.*, 27 F. 3d 386, 389 (9th Cir. 1994)). Merely stating that the notice period was shortened because the employer was a faltering company or faced unforeseen business circumstances is insufficient. *Id.* at *2–3 (collecting cases). "[T]he WARN Act requires the brief statement to explain the reason for reducing the notice period, not the reason why the employer was closing." *Id.* at *3 (citing *Carroll v. World Mktg. Holdings, LLC*, 418 F. Supp. 3d 299, 312 (E.D. Wisc. 2019)).The failure of an employer to comply with either of these prerequisites precludes the defenses and results in liability for sixty days' pay and benefits.

Furthermore, Debtors' First Day Declaration indicates that the necessity of these Chapter 11 cases was attributable to "a trough in operating liquidity caused by a prolonged recovery from the COVID-19 pandemic and its aftermath resulting in the need for a substantial increase in leverage, coupled with inflationary pressures and an unprecedented increase in interest rates," and not the "sudden, dramatic, and unexpected action or condition outside the employer's control" that may give rise to unforeseen business circumstances the defense. *Compare* First Day Declaration, ¶ 3 *with* 20 C.F.R. § 639.9(b)(1); *see also* First Day Declaration, ¶ 90 (noting that cruises were being canceled as early as January 2024 in anticipation of the Chapter 11 filing).

Here, Debtors did not provide notice to the WARN Claimants as soon as practicable, nor did they provide a brief statement of why prior notice was not practicable. The termination notice merely referenced "unforeseen business circumstances and an inability to obtain sufficient capital at a commercially reasonable rate to continue operations" but did not explain why <u>prior</u> notice was not practicable. Additionally, even if they had provided a brief statement, the condition giving rise to the plant closing or mass termination was not the sort of sudden and unexpected condition that permits an employer to rely on the business circumstances defense. The affirmative "faltering business" and "unforeseen business expenses" defenses are therefore not available to Debtors.

## III. WARN Claimants' Claims Are Entitled to Priority Wage Status.

Courts have unanimously held that damages under the WARN Act are entitled to section 507(a)(4) wage priority status. *See, e.g.*, *In re Kitty Hawk, Inc.*, 255 B.R. 428 (Bankr. N.D. Tex. 2000) ("[T]he WARN Claims constitute wages earned by the Union Employees within 90 days of the cessation of the Debtor's business and are entitled to priority status under section 507(a)(3)," except to the extent the claims "exceed the priority limitation of section 507(a)(3), [in which case] the WARN Claims are general unsecured claims against the debtor"); *Czyzewski v. Jevic Holding Corp.*, 580 U.S. 451, 459 (U.S. 2017 (treating terminated employees' WARN Act claims as priority wage claims where the employer halted operations and terminated employees just before entering bankruptcy: "Some $8.3 million of that [WARN Act] judgment counts as a priority wage claim under 11 U.S.C. § 507(a)(4), and is therefore entitled to payment ahead of general unsecured claims."); *In re Sher-Del Foods*, 186 B.R. 358, 362 (Bankr. W.D.N.Y. 1995) ("Bankruptcy courts have accorded wage priority status to damages resulting from a violation of this statute.") (citing *In re Riker Industries, Inc.*, 151 Bankr. 823 (Bankr. N.D. Ohio 1993)); *Oil, Chem. & Atomic Workers v. Hanlin Group* (*In re Hanlin Group*), 176 B.R. 329, 334 (Bankr. D.N.J. 1995) ("Given its

8

compensatory nature as statutory severance pay, back pay under WARN constitutes wages for the purposes of the Bankruptcy Code.); *Saxion v. Titan-C-Manufacturing,* 86 F.3d 553, 561 (6th Cir. 1996)( "[B]ankruptcy courts … have consistently held that where a WARN Act violator seeks bankruptcy protection, the statutory liability for 'back pay' is a liability for wages; WARN Act claims for back pay are given priority accordingly."). In short, there is no contrary holding in any bankruptcy case concerning "priority" status for the WARN damages asserted here. Accordingly, the WARN Claimants' damage claims asserted against Debtors are entitled to priority wage status.

## IV. Single-Employer Liability

Nominally separate entities such as the Debtors named in Plaintiffs' Complaints can be held jointly and severally liable for a WARN Act violation under the "single employer" doctrine. *See e.g., Fleming v. Bayou Steel BD Holdings II L.L.C.*, 83 F. 4th 278 (5th Cir. 2023). To apply the doctrine, courts have used the five-factor balancing test set forth in a U.S. Department of Labor regulation, 20 C.F.R. § 639.3(a)(2), promulgated pursuant to 29 U.S.C. § 2107(a). The five-factor DOL test considers: (1) common ownership, (2) common directors and/or officers, (3) the *de facto* exercise of control, (4) unity of personnel policies emanating from a common source, and (5) the dependence of operations between the entities. *Id.* (citing 20 C.F.R. § 639.3(a)(2); *Administaff Cos. v. N.Y. Joint Bd., Shirt & Leisurewear Div.*, 337 F. 3d 454, 457–58 (5th Cir. 2008)." "[N]o one factor set out by the DOL is controlling, and all factors need not be present for liability to attach." *Vogt v. Greenmarine Holding, LLC*, 318 F. Supp. 2d 136, 142 (S.D.N.Y. 2004). Accordingly, the proposed class members' direct employer may not be the only entity liable for WARN Act violations alleged in the WARN Claimants' Complaints.

For example, Hornblower was the ultimate owner of all of the Debtor Defendants (*see* organizational chart attached hereto as **Exhibit 1**) and had the sole board of managers that

9

controlled its subsidiaries and ordered the shutdown of all operations. *Compare with Chaney v. Vermont Bread Co.*, No. 2:21-cv-120, 2023 WL 5589113, at *20-21 (D. Vt. Aug. 24, 2023) ("[T]he decision to shut down the bakeries came from a single source and impacted all employees. This latter fact weighs heavily in favor of finding *de facto* control by a single employer, since '[i]n the context of the WARN Act, the decision to effect a mass layoff is the single most important personnel policy.") None of the other Defendants even had their own board of Directors. Instead, all employment decisions relating to the Defendants' operations were controlled and/or made by the Board of Hornblower. In October 2023, Adam Peakes, President of Hornblower, sent a companywide email ("October 2023 email") in which he implemented "a strategic decision to realign our focus and further integrate American Queen with Hornblower Group into <u>one unified entity</u>. The goal of this business decision is to build our world-class capabilities <u>under a single group</u>." (emphasis added).

In an October 2023 email, Adam Peakes, President of Hornblower with no official role with other Defendants stated that he would "be stepping in and more directly involved in the day-to-day operations of the business" of American Queen Voyages." The complete control held and exercised by Hornblower over all Defendants is further evidenced by the resolutions it adopted authorizing Defendants' simultaneous bankruptcy filings and retention of bankruptcy counsel for all of its subsidiaries. *See* R. Doc. 1. Accordingly, the first three factors of the DOL test—(1) common ownership, (2) common directors or officers, and (3) the *de facto* exercise of control—are all satisfied.

Further, there was a unity of personnel policies among Defendants—demonstrated most clearly by Hornblower's order to shut down all operations. Other evidence of the unity of personnel policies can be found in the universal employee handbook with the "Hornblower" logo

10

on the cover, as well as the Hornblower onboarding email provided to all employees upon hiring. Additionally, the Defendants maintained identical insurance coverage for all of the Class Members regardless of where they worked. In addition, Adam Peakes, President of Hornblower, sent a companywide email removing the President of American Queen Voyages-Cindy D'Aoust and replacing her with Phil Anzai as the new President of American Queen Voyages.

Finally, there was a dependency of operations among Defendants. For example, Defendants were dependent on Hornblower for daily operating funds which were provided either directly by Hornblower or through financing arranged by Hornblower. Accordingly, all five factors of the single employer test are met. Each of the nominal employers was a constituent of a single employer, making Defendants jointly and severally liable for the WARN Act claim.

## V.     The Disclosure Statement is Inadequate Because It Does Not Acknowledge Priority WARN Act Claims.

A Disclosure Statement must provide adequate information in order to be approved. 11 U.S.C. § 1125(a). The Bankruptcy Code defines adequate information as "information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, that would enable a hypothetical reasonable investor typical of holders of claims or interests of the relevant class to make an informed judgment about the plan." 11 U.S.C. § 1125(a). Courts consider the following non-exhaustive list of factors when determining whether a disclosure statement contains adequate information:

      (a)    the circumstances that led to the filing of the bankruptcy petition;

      (b)    a complete description of the available assets and their value;

      (c)    the anticipated future of the debtor;

      (d)    the source of the information provided in the disclosure statement;

  (e)  a disclaimer, which typically indicates that no statement or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

  (f)  the condition and performance of the debtor while in chapter 11;

  (g)  the claims against the estate;

  (h)  a liquidation analysis setting forth the estimated return that the creditors would receive under chapter 7;

  (i)  the accounting and calculation methods used to produce the financial information and the name of the accountants responsible for such information;

  (j)  the future management of the debtor;

  (k)  a summary of the chapter 11 reorganization;

  (l)  an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

  (m)  the collectability of any accounts receivables;

  (n)  any financial information, valuations, or projections relevant to the creditor's decision to accept or reject the plan;

  (o)  information relevant to the risks posed to the creditors under the plan;

  (p)  the actual or projected value from the recovery of preferential or otherwise voidable transfers;

  (q)  the existence, likelihood, and possible success of non-bankruptcy litigation;

  (r)  the plan's tax consequences; and

  (s)  the relationship of the debtor with affiliates.

*See, e.g.*, *In re U.S. Brass Corp.*, 194 B.R. 420, 425 (Bankr. E.D. Tex. 1996) citing *In re Metrocraft Pub. Services, Inc.*, 39 B.R. 567, 568 (Bankr. N.D. Ga. 1984).

  Whether a disclosure statement contains adequate information is generally determined on a "case specific basis" with great discretion left to the bankruptcy court. *In re Applegate Prop.,*

*Ltd.*, 133 B.R. 827, 829 (Bankr. W.D. Tex. 1991); *In re Tex. Extrusion Corp.,* 844 F. 2d 1142, 1157 (5th Cir. 1988). Furthermore, the disclosure statement must provide sufficient financial data to explain how the Debtors will effectuate the plan. Without that information, the creditors and the Court are left to guess whether the plan will work in the real world as it is proposed on paper. *See In re Lakeside Global II, Ltd.*, 116 B.R. 499, 507 (Bankr. S.D. Tex. 1989) ("[T]he court must be reasonably satisfied that the business is likely to perform in the real world as well as the proponent projects it will in the courtroom.").

Here, the Disclosure Statement is inadequate because it fails to even acknowledge the WARN Act claims asserted by the WARN Claimants. The Disclosure Statement ought to not only acknowledge these claims, but also disclose the related financial implications, including by quantifying the potential amount of the WARN Act Claims, which here, upon information and belief, is at least $6 million. Without disclosures acknowledging the WARN Act Claims and the financial implications related thereto, creditors are incapable of understanding their potential recoveries under the Plan and are therefore unable to make an informed judgment about the Plan.

**VI. The Disclosure Statement Is Also Inadequate Because the Plan Contained Therein Is Facially Unconfirmable.**

Where an "underlying plan is patently unconfirmable, the disclosure statement may not be approved." *In re Beyond.com Corp.*, 289 B.R. 138, 140 (Bankr. N.D. Cal. 2003) (citing *In re Phoenix Petroleum Co.*, 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001); *In re U.S. Brass Corp.*, 194 B.R. 420, 422 (Bankr. E.D. Tex. 1996); *In re E. Maine Electric Coop., Inc.*, 125 B.R. 329, 333 (Bankr. D. Me. 1992); *In re Filex, Inc.*, 116 B.R. 37, 41 (Bankr. S.D.N.Y. 1990)). Here, the Plan is patently unconfirmable because it does not provide evidence of a disputed claims reserve sufficient to pay the WARN Act Claims in full.

As it stands, the Plan provides that "Other Priority Claims" (defined as claims "entitled to priority in right of payment under section 507(a) of the Bankruptcy Code") are unimpaired (D.I. 378, pp. 32 of 91). It further provides that, based upon the Debtors' current projections, holders of Allowed Administrative Claims, Priority Claims (defined in the Plan as "a Priority Non-Tax Claim or a Priority Tax Claim"), and Other Secured Claims will be paid in full under the Plan, while holders of Allowed General Unsecured Claims will receive its Pro Rata share of the GUC Pool. *Id*. at 26, 31 and 35 of 98. The Plan does not provide an estimate of the total amount of those claims.

However, the Plan as it stands is unconfirmable because it is not feasible. 11 U.S.C. § 1129(a)(11). Section 2219(a)(9) of the Bankruptcy Code requires that priority claims be paid in full. While the current proposed Plan provides for Priority Claims to be paid in full, it does not contain sufficient means to accomplish this. Where a plan does not contain sufficient means to pay priority claims in full, it is not feasible. *See, e.g.*, *In re Harbin*, 486 F. 3d 510, 518 (9th Cir. 2007) (bankruptcy court erred in confirming plan where it did not consider impact of appeal of conditionally disallowed claim on plan feasibility); *In re Holmes*, 301 B.R. 911, 915 (Bankr. M.D. Ga. 2003) (chapter 11 plan not feasible where debtor merely hoped to compromise IRS claim and "[d]ebtor does not have the ability to pay the IRS's priority tax claim of $9,372,245 over a term of sixty months as proposed in his Chapter 11"); *In re Thornhill*, 268 B.R. 570, 573 (Bankr. E.D. Cal. 2001) (chapter 13 plan not feasible where it did not provide for payment of priority and secured claims in full). Although the Debtors state in the Plan that the Debtors believe that the Plan satisfies the feasibility requirements of the Bankruptcy Code, (D.I. 379, p. 158 of 723), Debtors have not provided evidence of this. There is certainly no guaranty that Debtors will be able to fund the estimated $6 million in Priority WARN Act Claims.

The proper method of addressing priority claims is to establish a disputed claims reserve sufficient to pay all disputed priority claims in full. While the Plan says it will pay in full all Allowed Administrative Claims, Priority Claims, and Other Secured Claims, it provides no estimate of the total of these claim amounts or other information on which to predicate an assumption that the Priority WARN Act Claims will, in fact, be paid in full. If Debtors have no uncertainty as to the ability to pay such claims in full, then Debtors should have no objection to calculating the amount and reserving the estimated $6 million as the Priority WARN Act Claim reserve as part of the Plan.

However, as it stands, the Plan is patently unconfirmable. Accordingly, the Disclosure Statement must likewise be denied unless both the Disclosure Statement and the Plan are revised to acknowledge and account for the Priority WARN Act Claims.

## **CONCLUSION**

Accordingly, for all of these reasons, this Court should require that Debtors amend their Disclosure Statement to acknowledge the Priority WARN Act Claims, and further require that, in their Plan, Debtors expressly reserve for the full value of all Priority Claims, including the Priority WARN Act Claims. Further, WARN Claimants should be deemed to have opted-out of the Third-Party Releases included in the Plan (i.e., the releases set forth in Article IX of the Plan) based on their opt-out election, noted herein.

[signature on following page]

DATED:  April 8, 2024 Respectfully submitted,

*/s/ Jason W. Burge*
Brent B. Barriere (Tex. Bar No. 24034091)
Jason W. Burge (Tex. Bar No. 24112316)
Julie S. Meaders (La. Bar No. 39984)
   *pro hac vice*
FISHMAN HAYGOOD, L.L.P.
201 St. Charles Avenue, Suite 4600
New Orleans, Louisiana 70170
Telephone: (504) 586-5252
Facsimile: (504) 586-2520
bbarriere@fishmanhaygood.com
jburge@fishmanhaygood.com
jmeaders@fishmanhaygood.com

- and -

LANKENAU & MILLER, LLP
Stuart J. Miller (SJM 4276)
100 Church Street
8th Floor
New York, NY 10007
O: (212) 581-5005

THE GARDNER FIRM, P.C.
Mary E. Olsen (OLSEM 4818)
M. Vance McCrary (MCCRM 4402)
The Gardner Firm, P.C.
182 St. Francis Street, Suite 103
Mobile, AL 36602
Telephone: (251) 433-8100
Facsimile: (251) 433-8181

*Attorneys for Plaintiffs and
the putative class*

## CERTIFICATE OF SERVICE

I do hereby certify that I caused the above and foregoing to be served on April 8, 2024, via the Court's ECF Notification System as follows:

- **Omar Jesus Alaniz**    oalaniz@reedsmith.com, omar-alaniz-2648@ecf.pacerpro.com;rstanbery@reedsmith.com;ahinson@reedsmith.com
- **Andrea Amulic**    andrea.amulic@whitecase.com, mco@whitecase.com
- **Scott Andron**    sandron@broward.org, swulfekuhle@broward.org
- **John R Ashmead**    ashmead@sewkis.com, managingclerkoffice@sewkis.com
- **Todd Allan Atkinson**    todd.atkinson@wbd-us.com, Heidi.Sasso@wbd-us.com;cindy.giobbe@wbd-us.com;morgan.patterson@wbd-us.com
- **Eric J. Brickenstein**    ebrickenstein@hk-law.com, jbenson@hk-law.com
- **Jason W. Burge**    jburge@fishmanhaygood.com, rhamilton@fishmanhaygood.com
- **Stephen R. Butler**    agbanktexas@ag.tn.gov
- **Carolyn V Carollo**    ccarollo@hchlawyers.com
- **Michael Edward Collins**    mcollins@manierherod.com, rmiller@manierherod.com
- **Benjamin Fisher Deford**    bdeford@hk-law.com, atodd@hk-law.com
- **Patrick Mason Dennis**    pdennis@doylelawfirm.com, service@doylelawfirm.com
- **John Eiband**    jeiband@porterhedges.com
- **J. Brian Fletcher**    jbfletcher@ofjlaw.com
- **Jeffrey Richard Gleit**    jeffrey.gleit@afslaw.com, nkoslof@sandw.com,aweiss@sandw.com,tkethro@sandw.com
- **Kristian W. Gluck**    kristian.gluck@nortonrosefulbright.com
- **Brett D Goodman**    brett.goodman@afslaw.com, edocket@afslaw.com
- **Paul E Heath**    pheath@velaw.com
- **John F Higgins**    jhiggins@porterhedges.com, emoreland@porterhedges.com;eliana-garfias-8561@ecf.pacerpro.com;mwebb@porterhedges.com
- **Erin Hoskins**    ehoskins@bergersingerman.com
- **Gregory J Hudalla**    ghudalla@hudallalaw.com
- **Patrick L Hughes**    hughesp@haynesboone.com, kenneth.rusinko@haynesboone.com;patrick.hughes@haynesboone.com;jodi.valencia@haynesboone.com
- **Taylre Janak**    tjanak@reedsmith.com, anixon@reedsmith.com;ahinson@reedsmith.com
- **Michael Shane Johnson**    sjohnson@porterhedges.com, emoreland@porterhedges.com;egarfias@porterhedges.com;mwebb@porterhedges.com
- **Benjamin W Kadden**    bkadden@lawla.com, mnguyen@lawla.com
- **Brian I. Kantar**    bkantar@csglaw.com
- **James A. Keefe**    jkeefe@porterhedges.com, mwebb@porterhedges.com
- **Brian A Kilmer**    brian.kilmer@phelps.com, Elizabeth.Grant@KLGates.com
- **Matthew R. Korn**    mkorn@fisherphillips.com
- **Charles R. Koster**    ckoster@whitecase.com, mco@whitecase.com;jdisanti@whitecase.com

- **Jeffrey Kurtzman**   kurtzman@kurtzmansteady.com
- **Ignacio Javier Labarca**   ilabarca@mpmlawpr.com
- **Barrett Lingle**   barrett.lingle@whitecase.com, mco@whitecase.com
- **Luis C Marini**   lmarini@mpmlawpr.com
- **Julie Schwartzwald Meaders**   jmeaders@fishmanhaygood.com
- **John P Melko**   jmelko@foley.com, john-melko-2781@ecf.pacerpro.com;docketflow@foley.com;rdiep@foley.com
- **James Mondl**   jim@mondl.law
- **Cherie Dessauer Nobles**   cnobles@fishmanhaygood.com, kfritscher@fishmanhaygood.com;dbush@fishmanhaygood.com
- **Omni Agent Solutions**   ecf@omniagnt.com, 3606531420@filings.docketbird.com;ecf@omnimgt.com;ecf-txsb-5715976304852992@inbound.docketalarm.com
- **Lisa Luz Parker**   lisa.luz.parker@usdoj.gov, nicole.robbins@usdoj.gov;isabell.hinojosa@usdoj.gov;USATXS.Bankruptcy-ECF@usdoj.gov;caseview.ecf@usdoj.gov
- **Bryan Rochelle**   brochelle@porterhedges.com
- **Jayson B. Ruff**   jayson.b.ruff@usdoj.gov
- **Richard Mark Seltzer**   rseltzer@cwsny.com
- **Michelle Sexton**   michelle.sexton@sfcityatty.org
- **Martin A Sosland**   martin.sosland@butlersnow.com, velvet.johnson@butlersnow.com,ECF.Notices@butlersnow.com
- **Timothy Uptegrove Stanford**   tstanford@downsstanford.com
- **Matthew Edward Stolz**   mstolz@cwsny.com
- **J. Hagood Tighe**   htighe@fisherphillips.com
- **Christopher Ross Travis**   C.Ross.Travis@usdoj.gov
- **Quynh-Nhu Truong**   qtruong@foley.com
- **US Trustee**   USTPRegion07.HU.ECF@USDOJ.GOV
- **Kiran K Vakamudi**   kvakamudi@velaw.com
- **James W Walker**   jwalker@pszjlaw.com, ahickey@coleschotz.com;amacias@coleschotz.com
- **Michael D Warner**   mwarner@pszjlaw.com, klabrada@pszjlaw.com
- **Jason C Webster**   filing@wvmlaw.com, makhtar@thewebsterlawfirm.com;hvicknair@thewebsterlawfirm.com;dgarcia@thewebsterlawfirm.com;ochawdhary@thewebsterlawfirm.com
- **Michael L Weems**   mlw@hwa.com
- **Douglas M Werman**   dwerman@flsalaw.com, ecf@flsalaw.com
- **Samuel C Wisotzkey**   swisotzkey@kmksc.com
- **Megan Young-John**   myoung-john@porterhedges.com
- **Andrew Zatz**   azatz@whitecase.com, jdisanti@whitecase.com;mco@whitecase.com
- **Scott A Zuber**   szuber@csglaw.com

*/s/ Jason W. Burge*
Jason W. Burge