United States Bankruptcy Court
Southern District of Texas

**ENTERED**

April 12, 2024

Nathan Ochsner, Clerk

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) Case No. 24-90061 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

**ORDER (I) APPROVING (A) THE DEBTORS'
ENTRY INTO THE LAKE VESSEL SALE TRANSACTION DOCUMENTS AND
(B) THE SALE TO THE BUYER OF THE ACQUIRED ASSETS FREE AND
CLEAR OF ALL LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES;
(II) AUTHORIZING THE DEBTORS TO CONSUMMATE TRANSACTIONS
IN CONNECTION THEREWITH; AND (III) GRANTING RELATED RELIEF**

[Related to Docket Nos. 21, 166, 317, 420, 457]

Upon the motion (the "Motion") of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an order (this "Order") authorizing the Debtors to enter into definitive purchase agreements for the sale of certain of their assets free and clear of all liens, claims, and encumbrances, in each case at the conclusion of the sale and marketing process approved by this Court pursuant to the *Modified Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates With Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter Into Agreements for the Sale of Their Assets Free and Clear of All Liens, Claims, and Encumbrances* [Docket No.

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is Pier 3 on The Embarcadero, San Francisco, CA 94111.

317] (the "<u>Bidding Procedures Order</u>"),[2] all as more fully set forth in the Motion; and upon the First Day Declaration and the Scheidemann Declaration,[3] and this Court having reviewed the Motion and conducted a hearing (the "<u>Hearing</u>") to consider the relief requested therein with respect to the Debtors' entry into definitive purchase agreements for the sale of certain of their assets free and clear of all liens, claims, and encumbrances; and this Court having heard the statements in support of such relief at the Hearing; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, this Court hereby makes the following FINDINGS OF FACT AND CONCLUSIONS OF LAW:

     A.    **Findings of Fact and Conclusions of Law**.  The findings and conclusions set forth herein and on the record at the Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

     B.    **Jurisdiction and Venue**.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. § 1408.

     C.    **Notice and Opportunity to Object**.  As evidenced by the affidavits and certificates of service [Docket Nos. 111, 204, 238, 276, 239, 324, 344, 369, 396], the notice provided by the

---

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

[3]    *Declaration of Matthew Scheidemann in Support of Entry of Order (I) Approving (A) the Debtors' Entry into the Lake Vessel Sale Transaction Documents and (B) the Sale to the Buyer of the Acquired Assets Free and Clear of All Liens, Claims, Interests, and Encumbrances; (II) Authorizing the Debtors to Consummate Transactions in Connection Therewith; and (III) Granting Related Relief* [Docket No.459].

Debtors in the form of the *Notice of Hearing on Bidding Procedures Motion* [Docket No. 73], the *Notice of Amended Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates with Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter into Agreements for the Sale of their Assets Free and Clear of All Liens, Claims, and Encumbrances* [Docket No. 162], the *Notice of Auction for the Sale of the Debtors' AQV Assets Free and Clear of Any and All Liens, Claims, and Encumbrances* [Docket No. 177], the *Notice of Extension of Deadline to Designate Stalking Horse Bidder Pursuant to Bidding Procedures* [Docket No. 256], the *Notice of Filing and Request for Entry of Proposed Modified Order (A) Approving (I) Bidding Procedures for the Sale of the AQV Debtors' Assets, (II) Procedures Regarding Bid Protections, (III) the Scheduling of Certain Dates With Respect Thereto, (IV) the Form and Manner of Notice Thereof, (V) Contract Assumption, Assignment, and Rejection Procedures, and (VI) Certain Procedures to Otherwise Dispose of the AQV Assets, and (B) Authorizing the Debtors to Enter Into Agreements for the Sale of Their Assets Free and Clear of All Liens, Claims, and Encumbrances* [Docket No. 291], the *Notice of Adjournment of Auction* [Docket No. 354], the *Notice of Adjournment of Auction* [Docket No. 358], the *Notice of Lake Vessel Auction* [Docket No. 366],  the *Notice of Successful Bidder and Backup Bidder with Respect to Lake Vessel Assets* [Docket No. 420], the *Notice of Filing of Lake Vessel Auction Transcript* [Docket No. 446], the *Notice of Filing of Forms of Lake Vessel Sale Transaction Documents* [Docket No. 457], and the other documents required by the Bidding Procedures Order was adequate and sufficient under the circumstances, and all parties required to be given notice of the Sale, including the deadline for filing objections to approval of the Sale,

have been given due, proper, timely, and adequate notice in accordance with the Bidding Procedures Order and in compliance with the Bankruptcy Code, the Bankruptcy Rules, and the Bankruptcy Local Rules, and such parties have had an opportunity to appear, object, and be heard with respect thereto. No other or further notice is required.

D. **Final Order**. This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).

E. **Certain Definitions**. "Buyer," as used in this Order, shall mean Mr. John W. Waggoner, in his capacity as the Successful Bidder for the Acquired Assets (as defined below). "Lake Vessel Sale Transaction Documents," as used in this Order, shall mean the master transaction agreement and vessel purchase agreements between certain Debtors and the Buyer, substantially in the form annexed hereto as **Exhibit A** (together with any ancillary documents related thereto, the "Lake Vessel Sale Transaction Documents"), pursuant to which the Debtors will consummate the Sale with the Buyer (the "Lake Vessel Sale Transaction"). "Acquired Assets," as used in this Order, shall mean all assets to be acquired by the Buyer pursuant to the Lake Vessel Sale Transaction Documents, including but not limited to (i) the vessel OCEAN VOYAGER [IMO # 9213129] owned by Victory Holdings I, LLC and (ii) the vessel OCEAN NAVIGATOR [IMO # 9213131] owned by Victory Holdings II, LLC (the foregoing herein the "Acquired Vessels").

F. **Title to the Acquired Assets**. The Acquired Assets constitute property of the Debtors' estates, and good title is presently vested in the Debtors within the meaning of section 541(a) of the Bankruptcy Code. The Debtors are the sole and rightful owner of the Acquired Assets with all rights, title, and interests to the Acquired Assets, and no other person or entity has or has asserted any ownership right, title, or interests therein.

G.      For the avoidance of doubt, the Acquired Assets shall not include any equipment leased to the Debtors by FMC GlobalSat, Inc. pursuant to that certain *Subscription and Data Plan* or any equipment leased to the Debtors by Ecolab, Inc. pursuant to that certain *Product and Services Supply Agreement*, dated as of May 1, 2021, but shall include the Embedded Assets (as defined below).

H.      **Sound Business Purposes and Justifications**.  The Debtors have demonstrated good, sufficient, and sound business purposes and justifications for approval of the Lake Vessel Sale Transaction, the Debtors' entry into and performance under the Lake Vessel Sale Transaction Documents, and the Sale of the Acquired Assets to the Buyer.  The Debtors' entry into and performance under the Lake Vessel Sale Transaction Documents (i) constitutes a sound and reasonable exercise of the Debtors' business judgment, (ii) provides value to and is beneficial to the Debtors' estates and is in the best interests of the Debtors and their stakeholders, and (iii) is reasonable and appropriate under the circumstances.

I.      **Compliance with Bidding Procedures**.  The Debtors complied with the Bidding Procedures Order and the Bidding Procedures in all respects.  On April 1, 2024, and continuing on April 2, 2024, the Debtors conducted an Auction with respect to the Acquired Assets (the "Lake Vessel Auction") in accordance with the Bidding Procedures, and at the conclusion of the Auction, the Debtors, in a valid and sound exercise of their business judgment and in consultation with the Consultation Parties, identified the Buyer as the Successful Bidder for the Acquired Assets and Ship Management Group LLC (the "SMG") as the Backup Bidder for the Acquired Assets.  The Buyer is the Successful Bidder for the Acquired Assets in accordance with the Bidding Procedures Order and Bidding Procedures; *provided*, that if the Debtors are for any reason unable to consummate the Lake Vessel Sale Transaction with the Buyer, then the Debtors may subsequently

identify SMG as the Successful Bidder for the Acquired Assets and seek further order of the Court to consummate a transaction with respect to the Acquired Assets with SMG, which confirmed on the record at the Lake Vessel Auction that its Qualified Bid shall remain binding through the closing of the Lake Vessel Sale Transaction.

J.      **Highest or Otherwise Best Offer**.  The Debtors and their advisors (i) engaged in a robust and extensive marketing and sale process pursuant to the Bidding Procedures Order and Bidding Procedures that was designed to obtain the highest or otherwise best value for the Acquired Assets for the Debtors and their estates and (ii) conducted a fair and open sale process and, at the conclusion of such sale process, a competitive Lake Vessel Auction.  The sale process, the Bidding Procedures, and the Lake Vessel Auction were non-collusive, duly noticed, and provided a full, fair, and reasonable opportunity for any entity to make an offer to purchase the Acquired Assets.

K.      The transaction contemplated by the Lake Vessel Sale Transaction Documents constitutes the highest or otherwise best offer for the Acquired Assets.  Taking into consideration all relevant factors and circumstances, consummation of the Sale Transaction pursuant to the Lake Vessel Sale Transaction Documents will provide a greater recovery for the Debtors' creditors than would be provided by any other practically available alternative, including liquidation under chapter 7 or 11 of the Bankruptcy Code.  The Debtors' determination that the transaction contemplated by the Lake Vessel Sale Transaction Documents is the highest or otherwise best offer for Acquired Assets constitutes a valid and sound exercise of the Debtors' business judgment.

L.      The sale of the Acquired Assets outside of a plan of reorganization pursuant to the Lake Vessel Sale Transaction Documents neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of any chapter 11 plan of the Debtors.

Neither the Lake Vessel Sale Transaction nor the Lake Vessel Sale Transaction Documents constitute a *sub rosa* chapter 11 plan.

M.    **Good Faith; No Collusion**.  The Lake Vessel Sale Transaction Documents and all aspects of the Lake Vessel Sale Transaction were negotiated, proposed, and entered into by the Debtors and the Buyer and each of their management, board of directors or equivalent governing body, officers, directors, employees, agents, members, managers, and representatives without collusion or fraud, from arms'-length bargaining positions, and in good faith within the meaning of section 363(m) of the Bankruptcy Code.  The Buyer has proceeded in good faith in all respects in that, among other things, (i) the Buyer has recognized that the Debtors were free to deal with any person or entity in connection with the marketing and sale of the Debtors' assets, including the Acquired Assets; (ii) the Buyer has complied with the applicable provisions of the Bidding Procedures Order in all respects; and (iii) the Buyer's bid was subjected to competitive Bidding Procedures, including a competitive Lake Vessel Auction, as set forth in the Bidding Procedures Order.  Neither the Debtors nor the Buyer, nor any affiliate of the Buyer, have engaged in collusion or fraud.  Specifically, the Buyer has not acted in a collusive manner with any person or entity. All payments to be made by the Buyer and all agreements and arrangements entered into by the Debtors and the Buyer in connection with the Lake Vessel Sale Transaction have been disclosed. The Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction on its part.  The Buyer has not engaged in any conduct that would cause or permit the Lake Vessel Sale Transaction Documents or the consummation of the Lake Vessel Sale Transaction to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code or under any other law of the United States or any state, territory, possession thereof, including the District of Columbia, or any other applicable law.  As a result of the foregoing, the Buyer is a good-faith

7

purchaser entitled to the protections of section 363(m) of the Bankruptcy Code, including in the event this Order or any portion thereof is reversed or modified on appeal, and otherwise has proceeded in good faith in all respects in connection with these chapter 11 cases.

N.     **Fair Consideration**.  The consideration provided by the Buyer for the Acquired Assets pursuant to the Lake Vessel Sale Transaction Documents constitutes reasonably equivalent value and fair consideration under the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, the Bankruptcy Code, and any other applicable laws and may not be avoided under the Bankruptcy Code or under any other laws of the United States and any state, territory, or possession thereof, including the District of Columbia, or any other applicable laws.  The Lake Vessel Sale Transaction Documents were not entered into for the purpose of hindering, delaying, or defrauding creditors of the Debtors, and neither the Debtors nor the Buyer entered into the Lake Vessel Sale Transaction Documents fraudulently or otherwise improperly for the purposes of statutory and common law fraudulent conveyance and fraudulent transfer claims under the Bankruptcy Code, the laws of the United States and any state, territory, or possession thereof, including the District of Columbia, or any other applicable laws.  The Lake Vessel Sale Transaction Documents represent a fair and reasonable offer to purchase the Acquired Assets under the circumstances of these chapter 11 cases.  No person or entity or group of persons or entities has offered to purchase the Acquired Assets for an amount that would provide greater economic value to the Debtors' estates than the Buyer.

O.     **Buyer Not Mere Continuation of Debtors**.  The Buyer is not, and will not (i) be a mere continuation, substantial continuation, or alter ego of any of the Debtors, their respective estates, businesses, or operations, or any enterprise of the Debtors, (ii) be the successor of any of the Debtors, or (iii) have, de facto or otherwise, merged with or into the Debtors.  Without limiting

the generality of the foregoing, and except as otherwise provided in the Lake Vessel Sale Transaction Documents, the parties intend and this Court hereby finds that the Buyer shall not be liable for any Encumbrance against any Debtor, or any of its predecessors, and the Buyer shall have no successor or vicarious liability of any kind or character, whether known or unknown, as of the Closing (as defined below), whether now existing or hereafter arising, or whether fixed or contingent, with respect to the Acquired Assets or any Encumbrances of any Debtor arising or attributable to periods prior to the Closing.  The Buyer would not have acquired the Acquired Assets but for the foregoing protections against potential claims based upon "successor liability," de facto merger, or theories of similar effect.

P.      **Sale in Best Interests**.  The actions represented to have been taken, or to be taken, by the Debtors and the Buyer are appropriate under the circumstances of these chapter 11 cases and are in the best interests of the Debtors, their estates, creditors, and other parties in interest. Approval of the Lake Vessel Sale Transaction at this time is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

Q.      **Free and Clear**.  The Debtors may sell the Acquired Assets, including but not limited to the Acquired Vessels, free and clear of all Encumbrances because, with respect to each entity asserting an Encumbrance, one or more of the standards set forth in section 363(f)(1)–(5) of the Bankruptcy Code has been satisfied.  Any holder of an Encumbrance that did not timely file an objection to the Sale of the Acquired Assets or the Motion are deemed to have consented to the Motion and the Lake Vessel Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code, and all holders of Encumbrances who are not deemed to have provided such consent could be compelled in a legal or equitable proceeding to accept money satisfaction of such Claim pursuant to section 363(f)(5) or fall within one or more of the other subsections of section 363(f)

of the Bankruptcy Code.  If the Sale were not free and clear of all Encumbrances, or if the Buyer would, or in the future could, be liable for any Encumbrances, the Buyer would not have entered into the Lake Vessel Sale Transaction Documents and would not consummate the Lake Vessel Sale Transaction, thus adversely affecting the Debtors, their estates, and creditors.  A sale of the Acquired Assets other than one free and clear of all Encumbrances would yield substantially less value for the Debtors' estates, with less certainty, than the Lake Vessel Sale Transaction as contemplated.  In sum, the Lake Vessel Sale Transaction is in the best interests of the Debtors, their estates, and creditors.

R.    **Corporate Authority**.  The Debtors have (i) full corporate or other power and authority to execute, deliver, and perform their obligations under the Lake Vessel Sale Transaction Documents and all other transactions contemplated thereby, and entry into the Lake Vessel Sale Transaction Documents has been duly and validly authorized by all necessary corporate or similar action, (ii) all of the corporate or other power and authority necessary to consummate the Lake Vessel Sale Transaction, and (iii) taken all actions necessary to authorize and approve the Lake Vessel Sale Transaction Documents, the Lake Vessel Sale Transaction, and all other actions required to be performed by the Debtors in order to consummate the Lake Vessel Sale Transaction. No consents or approvals, other than those expressly provided for herein or in the Lake Vessel Sale Transaction Documents, are required for the Debtors to consummate the Lake Vessel Sale Transaction.

S.    **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.  The Sale of the Acquired Assets must be approved and consummated promptly in order to preserve the value of the Acquired Assets.  Therefore, time is of the essence in consummating the Lake Vessel Sale Transaction, and the Debtors and Buyer intend to close the Lake Vessel Sale Transaction as soon as reasonably

10

practicable.  The Debtors have demonstrated compelling circumstances and good, sufficient, and sound business purposes and justifications for the immediate approval and consummation of the Lake Vessel Sale Transaction as contemplated by the Lake Vessel Sale Transaction Documents. Accordingly, there is sufficient cause to lift the stay contemplated by Bankruptcy Rules 6004(h) and 6006(d) with regards to the transactions contemplated by this Order, and the Debtors and the Buyer, being a good-faith purchaser under section 363(m) of the Bankruptcy Code, may consummate the Lake Vessel Sale Transaction at any time after entry of this Order.

T. **Approval**.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the purchase price under the Lake Vessel Sale Transaction Documents, the proposed Sale of the Acquired Assets to the Buyer constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

ACCORDINGLY, IT IS HEREBY ORDERED THAT:

1. **Approval of Lake Vessel Sale Transaction**.  The Lake Vessel Sale Transaction and the Debtors' entry into and performance under the Lake Vessel Sale Transaction Documents are hereby approved as set forth herein and the Debtors are authorized to consummate the transactions contemplated thereby.

2. **Objections**.  Any and all objections to entry of this Order and approval of the Lake Vessel Sale Transaction, including any objections to the terms of the Lake Vessel Sale Transaction Documents, in each case that have not been withdrawn, waived, or resolved prior to the Hearing are hereby denied and overruled on the merits with prejudice.

3. **Notice**.  Notice of the Hearing and approval of the Lake Vessel Sale Transaction was fair and equitable under the circumstances and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

11

4.      **Implementation of Lake Vessel Sale Transaction**.  The Debtors, acting by and through their respective officers, employees, and agents, as applicable, are authorized to take all reasonable actions required hereunder and under the Lake Vessel Sale Transaction Documents that are necessary or appropriate to effectuate the Lake Vessel Sale Transaction.

5.      Each federal, state, commonwealth, local, foreign, or other governmental agency is directed and authorized to accept for filing and/or recording any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Lake Vessel Sale Transaction Documents and this Order.

6.      **Effectiveness of Lake Vessel Sale Transaction Documents**.  The terms of the Lake Vessel Sale Transaction Documents shall be effective and binding in accordance with the terms thereof.  The failure to specifically include or reference in this Order any particular provisions of the Lake Vessel Sale Transaction Documents, including any of the documents, agreements, or instruments related thereto and executed in connection therewith, shall not diminish or impair the effectiveness of such provisions, documents, agreements, or instruments, it being the intent of this Court that the Lake Vessel Sale Transaction Documents be authorized and approved hereunder in their entirety.

7.      This Order shall be binding in all respects upon the Debtors, their bankruptcy estates, all creditors of the Debtors, all holders of equity interests in the Debtors, all holders of any Encumbrances against the Debtors, any holders of Encumbrances against or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in these chapter 11 cases or upon a conversion of these

chapter 11 cases to cases under chapter 7 under the Bankruptcy Code.  The terms and provisions of the Lake Vessel Sale Transaction Documents and this Order shall inure to the benefit of the Debtors, their estates, their creditors, the Buyer, and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, notwithstanding any subsequent appointment of any trustee, party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee, party, entity, or other fiduciary such terms and provisions likewise shall be binding.

8.      **Surrender of Possession**.  All persons and entities that are currently in possession of some or all of the Acquired Assets are hereby directed to (a) surrender possession of such Acquired Assets to the Buyer as soon as reasonably practicable on the Closing and (b) cooperate with all reasonable requests of the Buyer for access to the Acquired Assets for purposes of obtaining possession thereof.  All persons and entities are hereby prohibited from taking any action that would interfere with or adversely affect the ability of the Debtors to transfer, or the Buyer to obtain possession of, the Acquired Assets in accordance with the terms of the Lake Vessel Sale Transaction Documents and this Order.  As soon as reasonably practicable following entry of this Order, the Debtors shall serve each person or entity known to the Debtors to be in possession of some or all of the Acquired Assets with a copy of this Order.

9.      **Third-Party Assets**.  With respect to any equipment or other personal property that is leased to the Debtors by a third party pursuant to an executory contract or unexpired lease that is not an Assigned Lease (an "Equipment Lessor") or that is otherwise owned by a third party but, in each case, is located on or in an Acquired Asset (the "Third-Party Assets"), such Equipment Lessor or third party shall contact the Debtors and, after consulting with the Debtors, promptly use reasonable best efforts to remove or cause to be removed such Third-Party Asset(s) from the

applicable Acquired Asset(s) prior to the Closing, in each case excluding any permanent wiring, equipment, or property internal or inherent to the Acquired Assets that cannot be removed without causing damage to the applicable Acquired Asset(s) (the "Embedded Assets").  If any Third-Party Assets remain on or in an Acquired Asset on or after the Closing, in no event shall the transfer of possession of the Third-Party Assets to the Buyer purport to transfer such Equipment Lessor's or other third party's ownership interest in the Third-Party Assets to the Buyer. To the extent that an Equipment Lessor or third party promptly used its reasonable best efforts to remove or cause to be removed its Third-Party Assets pursuant to the foregoing but such Third-Party Assets remain in or on an Acquired Asset after Closing, unless the relevant Equipment Lessor or third party agrees otherwise in writing, such Equipment Lessor or third party shall have up to thirty (30) days after Closing to complete the removal of the Third-Party Assets, subject to further agreement of the parties or order of this Court.  Moreover, notwithstanding anything to the contrary elsewhere in this Order, the rights of Equipment Lessors or other third-party owners of the Third-Party Assets to assert claims against the Debtors with respect to the Third-Party Assets shall be preserved.

10.     **Insurance Policies**.  Notwithstanding anything contained in this Order or the Lake Vessel Sale Transaction Documents to the contrary, the Buyer shall not acquire, and the Acquired Assets shall not include, any insurance policies covering any of the Acquired Assets, including, without limitation, the Acquired Vessels (collectively, the "Insurance Policies"), any of the Debtors' rights under or arising from the Insurance Policies, or any rights to the proceeds of the Insurance Polices whatsoever, and the Debtors shall retain all Insurance Policies, any and all rights under or arising from the Insurance Policies, and any and all rights to the proceeds of the Insurance Policies.

11.      **Direction to Release Encumbrances**.  As of the Closing, each of the Debtors'

creditors and any holder of an Encumbrance on or against the Acquired Assets is authorized and

directed to execute such documents and take all other actions as may be necessary to release its

Encumbrance on or against the Acquired Assets  and every federal, state, local or other

governmental agency, department, filing agent, filing officer, title agent, recording agency,

secretary of state, official, and any other persons or entities who may be required by operation of

law, the duties of their office or contract, to accept, file, register or otherwise record or release any

documents or instruments or who may be required to report or insure any title in or to the Acquired

Assets, is hereby directed to accept any and all documents and instruments necessary or

appropriate to consummate the transactions contemplated by the Lake Vessel Sale Transaction

Documents.  If any person or entity that has filed financing statements, mortgages, notices of claim

of lien, maritime liens, mechanic's liens, *lis pendens*, or other documents or agreements evidencing

Encumbrances on or against the Acquired Assets has not delivered to the Debtors prior to the

Closing in proper form for filing and executed by the appropriate parties, termination statements,

instruments of satisfaction, or, as appropriate, releases of all such Encumbrances (collectively, the

"Release Documents"), the Buyer (a) is hereby authorized to execute and file the Release

Documents on behalf of such person or entity, (b) is hereby authorized to file, register, or otherwise

record a certified copy of this Order, which, once filed, registered, or otherwise recorded, shall

constitute conclusive evidence of the release of such Encumbrances, including, without limitation,

pursuant to 46 CFR § 67.261(a) and 46 CFR § 67.263(a), and (c) may seek, in this Court or any

other court of competent jurisdiction, to compel appropriate persons or entities to execute the

appropriate Release Documents; *provided* that notwithstanding anything in this Order or the Lake

Vessel Sale Transaction Documents to the contrary, the provisions of this Order shall be self-

executing, and the Buyer shall not be required to execute or file any Release Documents in order to effectuate, consummate, and implement the provisions of this Order.  This Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, county, or local government agency, department, or office, including, without limitation, the United States Coast Guard National Vessel Documentation Center.

12.     **Direction to Government Agencies**.  This Order is and shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, documentation officers, recorders of mortgages, recorders of deeds, registrars of deeds, registrars of patents, trademarks, or other intellectual property, administrative agencies, governmental departments, secretaries of state, federal, state, county, and local officials, and all other persons or entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets (collectively, "Recording Officers").  Each Recording Officer is authorized, from and after the Closing, to strike all recorded Encumbrances on or against the Acquired Assets from their records, official or otherwise, without further order of the Court or act of any person or entity, in accordance with the Lake Vessel Sale Transaction Documents and this Order, including, without limitation, pursuant to 46 CFR § 67.261(a) and 46 CFR § 67.263(a).  Each Recording Officer is authorized and directed to file, record, and/or register any and all documents and instruments presented to consummate or memorialize the Lake Vessel Sale Transaction, including redocumentation of each of the Acquired Vessels in the name of the Buyer.

13.     **Free and Clear**.  On the Closing, to the fullest extent permitted by section 363(f) of the Bankruptcy Code, all Acquired Assets shall be transferred to or vest in the Buyer free and

clear of all liens (as defined in section 101(37) Bankruptcy Code), claims (including those that constitute a "claim" as defined in section 101(5) of the Bankruptcy Code), charges, interests, or other encumbrances of any kind or nature whatsoever, including, without limitation, (i) mortgages, deeds of trust, pledges, charges, maritime liens and rights of arrest *in rem*, security interests of whatever kind or nature, rights of first refusal, rights of offset or recoupment, royalties, conditional sales or title retention agreements, hypothecations, preferences, debts, easements, suits, licenses, options, rights of recovery, judgments, orders and decrees of any court or foreign or domestic governmental entity, taxes (including foreign, state, and local taxes), covenants, restrictions, indentures, instruments, leases, options, off-sets, recoupments, claims for reimbursement or subrogation, contribution, indemnity, or exoneration, and other interests of any kind or nature whatsoever against the Debtors or any of the Acquired Assets; (ii) any debts arising under or out of, in connection with, or in any way relating to, the Debtors' business operations or the cessation thereof, any acts or omissions, obligations, demands, guaranties, rights, contractual commitments, restrictions, product liability claims, antitrust claims, environmental liabilities, employment or labor law claims or liabilities, claims under any employment or labor agreements or the termination thereof relating to the Debtors, multiemployer benefit plan claims, retiree healthcare or life insurance claims, claims under any pension, welfare, compensation or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of or related to any of the Debtors or any Debtor's affiliates or predecessors or any current or former employees of any of the foregoing, or the termination of any of the foregoing, and claims related to litigation involving one or more of the Debtors or claims for taxes of or against any of the Debtors; (iii) any debts arising under or out of, in connection with, or in any way relating to any employee, workers' compensation, occupational disease, or unemployment or temporary disability

related law, including, without limitation, claims that might otherwise arise under or pursuant to (A) the Employee Retirement Income Security Act of 1974, as amended, (B) the Fair Labor Standards Act, (C) Title VII of the Civil Rights Act of 1964, (D) the Federal Rehabilitation Act of 1973, (E) the National Labor Relations Act, (F) the Worker Adjustment and Retraining Notification Act of 1988, (G) the Age Discrimination and Employee Act of 1967 and Age Discrimination in Employment Act, as amended, (H) the Americans with Disabilities Act of 1990, (I) the Consolidated Omnibus Budget Reconciliation Act of 1985, (J) the Multiemployer Pension Plan Amendments Act of 1980, (K) state and local discrimination laws, (L) state and local unemployment compensation laws or any other similar state and local laws, (M) state workers' compensation laws, or (N) any other state, local, or federal employee benefit laws, regulations, or rules or other state, local, or federal laws, regulations, or rules relating to wages, benefits, employment, or termination of employment with any or all Debtors or any predecessors; (iv) any debts arising under or out of, in connection with, or in any way relating to any federal, state, or local statutes, regulations, or ordinances, including, without limitation (A) any environmental laws, rules, or regulations, (B) any bulk sales or similar laws, (C) the Internal Revenue Code of 1986, as amended, (D) product liability or similar laws, whether state or federal or otherwise, or (E) any antitrust laws, whether state or federal or otherwise; (v) any indemnification claims or liabilities relating to any act or omission of the Debtors or any other person or entity prior to the Closing; or (vi) any derivative, vicarious, transferee, or successor liability claims, alter ego claims, de facto merger claims, rights, or causes of action (whether in law or in equity, under any theory of liability, including any law, statute, rule, or regulation of the United States or any state, territory, or possession thereof, including the District of Columbia) or any foreign country or territory, and any other theory of assignee or transferee liability, labor, product liability, employment, substantial

continuity, or other law, rule, regulation, or doctrine, in each case, whether arising prior to or subsequent to the commencement of these chapter 11 cases, whether known or unknown, now existing or hereinafter arising, contingent or matured, liquidated or unliquidated, choate or inchoate, filed or unfiled, scheduled or unscheduled, perfected or unperfected, noticed or unnoticed, recorded or unrecorded, material or non-material, statutory or non-statutory, legal or equitable, and whether imposed by agreement, understanding, law, equity, or otherwise arising under or out of, in connection with, or in any way related to any of the Debtors, any of the Debtors' interests in the Acquired Assets, or the operation of any of the Debtors' businesses before the Closing (collectively, the "Encumbrances"), with such Encumbrances attaching solely to the proceeds of the Lake Vessel Sale Transaction with the same priority, validity, extent, nature, perfection, force, and effect that such Encumbrances had in, on, or against the Acquired Assets immediately prior to the consummation of the Lake Vessel Sale Transaction, in each case subject to any rights, claims, and defenses that the Debtors, the Debtors' estates, or any trustee for any Debtor, as applicable, may possess with respect thereto.

14.     **No Liability for Encumbrances**.  Except as otherwise expressly set forth in the Lake Vessel Sale Transaction Documents, the Buyer and its respective successors, affiliates, and assigns shall have no liability for or obligations with respect to any Encumbrance, and all persons and entities holding Encumbrances are hereby forever barred, estopped, and permanently enjoined from (a) asserting such Encumbrances against the Buyer and its respective successors, affiliates, and assigns and/or any of their property or the Acquired Assets and (b) interfering with the Buyer's and its respective successors', affiliates', and assigns' title to or use and enjoyment of the Acquired Assets based on or related to any Encumbrance.

15. **No Bulk Sales Laws**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Lake Vessel Sale Transaction.

16. **No Avoidance of Lake Vessel Sale Transaction; Valid and Binding**.  The Lake Vessel Sale Transaction Documents, and the consummation of the Lake Vessel Sale Transaction, shall not be avoidable under chapter 5 of the Bankruptcy Code or any other applicable non-bankruptcy law, and no person or entity shall be entitled to any damages or other recovery under the Bankruptcy Code or any other applicable non-bankruptcy law in respect of the Lake Vessel Sale Transaction Documents or the Lake Vessel Sale Transaction other than as expressly set forth in the Lake Vessel Sale Transaction Documents.  The Lake Vessel Sale Transaction Documents are valid and binding upon and shall be enforceable in accordance with their respective terms against the signatories thereto and against any trustee appointed in these chapter 11 cases, any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these chapter 11 cases, or any other proceedings superseding or related to any of the foregoing, including upon the dismissal of these chapter 11 cases.

17. **Mutual Releases**.  In each case except for (x) the rights and obligations of the Debtors and the Buyer hereunder and under the Lake Vessel Sale Transaction Documents and (y) claims or causes of action arising from an act or omission that is judicially determined by a final order of a court of competent jurisdiction to have constituted actual fraud, for good and valuable consideration, the adequacy of which is hereby confirmed, including, without limitation, the Buyer's payment of the purchase price under the Lake Vessel Sale Transaction Documents:

      (a)     the Debtors, on behalf of themselves and their Related Parties (as defined below) (collectively, the "Debtor Releasing Parties"), each in their capacities as such, shall and shall be deemed to fully, finally, and completely remise, release, acquit,

and forever discharge the Buyer, its Related Parties, and their respective property (collectively, the "Buyer Released Parties"), each in their capacities as such, of and from any and all claims, causes of action, obligations, rights, suits, judgments, remedies, interests, actions, liabilities, demands, duties, injuries, damages, expenses, fees, or costs of whatever kind or nature (including attorney's fees and expenses), whether liquidated or unliquidated, foreseen or unforeseen, actual or alleged, known or unknown, asserted or unasserted, fixed or contingent, matured or unmatured, or existing or having arisen up to and including the signing of the Lake Vessel Sale Transaction Documents, whether in contract, tort, or otherwise, whether statutory, at common law, or in equity, arising out of, based upon, or relating in any way, in whole or in part, whether through a direct claim, derivative claim, cross-claim, third-party claim, subrogation claim, class action, or otherwise, to the pursuit, negotiation, documentation, execution, or implementation of the Lake Vessel Sale Transaction Documents (collectively, the "Debtor Released Claims");

(b)    the Buyer, on behalf of itself and its Related Parties (collectively, the "Buyer Releasing Parties"), each in their capacities as such, shall and shall be deemed to fully, finally, and completely remise, release, acquit, and forever discharge the Debtors, their Related Parties, and their respective property (collectively, the "Debtor Released Parties"), each in their capacities as such, of and from any and all claims, causes of action, obligations, rights, suits, judgments, remedies, interests, actions, liabilities, demands, duties, injuries, damages, expenses, fees, or costs of whatever kind or nature (including attorney's fees and expenses), whether liquidated or unliquidated, foreseen or unforeseen, actual or alleged, known or unknown, asserted or unasserted, fixed or contingent, matured or unmatured, or existing or having arisen up to and including the signing of the Lake

21

Vessel Sale Transaction Documents, whether in contract, tort, or otherwise, whether statutory, at common law, or in equity, arising out of, based upon, or relating in any way, in whole or in part, whether through a direct claim, derivative claim, cross-claim, third-party claim, subrogation claim, class action, or otherwise, to the pursuit, negotiation, documentation, execution, or implementation of the Lake Vessel Sale Transaction Documents (collectively, the "Buyer Released Claims");

(c)     the Debtor Releasing Parties shall be, and shall be deemed to be, permanently and forever barred, estopped, stayed, and enjoined from (i) pursuing any Debtor Released Claim against the Buyer Released Parties; (ii) continuing or commencing any action or other proceeding with respect to any Debtor Released Claim against the Buyer Released Parties; (iii) seeking the enforcement, attachment, collection, or recovery of any judgment, award, decree, or order against the Buyer Released Parties with respect to any Debtor Released Claim; (iv) creating, perfecting, or enforcing any encumbrance of any kind against the Buyer Released Parties with respect to any Debtor Released Claim; and (v) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due to the Buyer Released Parties with respect to any Debtor Released Claim; and

(d)     the Buyer Releasing Parties shall be, and shall be deemed to be, permanently and forever barred, estopped, stayed, and enjoined from (i) pursuing any Buyer Released Claim against the Debtor Released Parties; (ii) continuing or commencing any action or other proceeding with respect to any Buyer Released Claim against the Debtor Released Parties; (iii) seeking the enforcement, attachment, collection, or recovery of any judgment, award, decree, or order against the Debtor Released Parties with respect

to any Buyer Released Claim; (iv) creating, perfecting, or enforcing any encumbrance of any kind against the Debtor Released Parties with respect to any Buyer Released Claim; and (v) asserting any right of setoff, subrogation, or recoupment of any kind against any obligations due to the Debtor Released Parties with respect to any Buyer Released Claim. For purposes of this paragraph 17, "<u>Related Party</u>" means, with respect to (w) any person or entity, (x) such person's or entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, affiliated investment funds or investment vehicles, managed or advised accounts, funds, or other entities, lenders, financing sources, and investment advisors, sub-advisors, or managers, (y) with respect to each of the foregoing in clauses (w) and (x), such person's or entity's respective current and former officers, directors, principals, equity holders (regardless of whether such interests are held directly or indirectly), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors, and other professionals, and (z) with respect to each of the foregoing in clauses (w)–(y), such person's or entity's respective heirs, executors, estates, and nominees.

18.    **<u>Exculpation</u>**.  Except with respect to (x) the rights and obligations of the Debtors and the Buyer hereunder and under the Lake Vessel Sale Transaction Documents and (y) claims or causes of action arising from an act or omission that is judicially determined by a final order of a court of competent jurisdiction to have constituted actual fraud, none of the Buyer or its affiliates, successors, assigns, equity holders, officers, directors, employees, lenders, financing sources, or professionals shall have or incur any liability to, or be subject to any action by any of, the Debtors or any of their estates, predecessors, successors, or assigns arising out of the negotiation, investigation, preparation, execution, or delivery of the Lake Vessel Sale Transaction Documents

and the entry into and consummation of the Lake Vessel Sale Transaction, except as expressly provided in the Lake Vessel Sale Transaction Documents and this Order.

19. **Conditions Precedent**. Notwithstanding anything to the contrary herein, the Lake Vessel Sale Transaction shall not be consummated unless and until all conditions precedent to such consummation set forth in each of the Lake Vessel Sale Transaction Documents have been satisfied or waived in accordance with the terms thereof (the time of such occurrence, the "Closing").

20. **Modification of Lake Vessel Sale Transaction Documents**. The Lake Vessel Sale Transaction Documents may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof; *provided*, that any modification, amendment, or supplement that materially alters the terms of the Lake Vessel Sale Transaction Documents shall be subject to further approval of this Court.

21. **No Successor or Other Derivative Liability**. By virtue of the Lake Vessel Sale Transaction Documents, the Buyer and its affiliates, successors, and assigns shall not be deemed or considered to (a) be a legal successor, or otherwise be deemed a successor to any of the Debtors; (b) have, de facto or otherwise, merged with or into any or all Debtors; (c) be consolidated with the Debtors or their estates; or (d) be an alter ego, continuation, or substantial continuation or be holding itself out as a mere continuation of any of the Debtors, their respective estates, businesses, or operations, or any enterprise of the Debtors, in each case by any law or equity, and the Buyer and its affiliates, successors, and assigns has not assumed nor is in any way responsible for any liability or obligation of the Debtors or the Debtors' estates. Neither the Buyer nor any of its affiliates, successors, or assigns shall have successor or vicarious liability of any kind or character, whether known or unknown, as of the Closing, whether now existing or hereafter arising, or

24

whether fixed or contingent, with respect to the Debtors' businesses, the Acquired Assets, or any liabilities of any Debtor arising or attributable to periods prior to the Closing.

22.    **Statutory Mootness**.  The Lake Vessel Sale Transaction is undertaken by the Buyer in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided herein of the Lake Vessel Sale Transaction shall neither affect the validity of the Lake Vessel Sale Transaction nor the transfer of the Acquired Assets to the Buyer as set forth herein unless such authorization is duly stayed prior to the Closing pending such appeal.  The Buyer is entitled to all of the protections afforded by section 363(m) of the Bankruptcy Code.

23.    **Sale Transaction Fee**.  Any Sale Transaction Fee[4] due to Guggenheim Securities as a result of the consummation of the Lake Vessel Sale Transaction shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) from the proceeds of the Lake Vessel Sale Transaction, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders, prior to any other use or distribution of such proceeds.  To the extent the Lake Vessel Sale Transaction does not result in cash proceeds sufficient to pay the corresponding Sale Transaction Fee due to Guggenheim Securities in full, then any resulting unpaid portion of the Sale Transaction Fee due to Guggenheim Securities shall be segregated and escrowed (for the exclusive benefit of Guggenheim Securities) as of the Closing from the available cash of the Debtors, as an express carve-out from the collateral of the Debtors' pre- and post-petition secured lenders; *provided*, that, in no event shall Buyer or any of its affiliates have any obligation to make

---

[4]    Capitalized terms used in this paragraph and not otherwise defined herein shall have the meanings ascribed to such terms in that certain engagement letter between Guggenheim Securities and the Debtors, dated as of October 1, 2023, as amended by that certain amendment to the engagement letter between Guggenheim Securities and the Debtors, dated as of February 13, 2024, copies of which are attached as Exhibit 1 to the *Notice of Amended Exhibit A to Debtors' Application for Entry of an Order Authorizing the Debtors to Retain and Employ Guggenheim Securities, LLC as Investment Banker Effective as of the Petition Date* [Docket No. 295].

any payment to Guggenheim Securities in respect of the Lake Vessel Sale Transaction.  For the avoidance of doubt, nothing in this Order shall prohibit or be construed to prohibit the use of any unencumbered assets of the Debtors or the proceeds thereof to pay any fees and expenses of Guggenheim Securities or the assertion or allowance of an administrative priority claim under sections 503(b)(2) and 507(a)(2) of the Bankruptcy Code, if applicable, on account of any fees or expenses of Guggenheim Securities.

24.    **No Interference**. All Persons are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyer or the ability of the Buyer to receive the Acquired Assets, in each case in accordance with the terms of the Lake Vessel Sale Transaction Documents and this Order. Without limiting the foregoing, all Persons are hereby forever prohibited and permanently enjoined from asserting against the Buyer, its affiliates, successors and assigns, or the Acquired Assets, any Encumbrances of any Debtor that Purchaser has not assumed under the Lake Vessel Sale Transaction Documents and to which the Buyer or the Acquired Assets are not subject by virtue of the provisions of this Order.

25.    **Backup Bidder**.  If the Debtors are for any reason unable to consummate the Lake Vessel Sale Transaction with the Buyer, then the Debtors may subsequently identify SMG as the Successful Bidder for the Acquired Assets and seek further order of the Court to consummate a transaction with respect to the Acquired Assets with SMG.  In accordance with its statements on the record at the Lake Vessel Auction, SMG's Qualified Bid shall remain binding through the closing of the Lake Vessel Sale Transaction.

26.    **Chapter 11 Plan, Dismissal, or Conversion**.  Nothing contained in any chapter 11 plan confirmed in these chapter 11 cases or any order confirming any such plan or in any other

order in these chapter 11 cases (including any order dismissing these Chapter 11 Cases or any order entered after any conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from the provisions of the Lake Vessel Sale Transaction Documents or this Order unless otherwise agreed to by the Debtors and the Buyer, and none of the payments authorized hereunder shall be subject to avoidance, disallowance, disgorgement, recharacterization, or subordination under any chapter 11 plan confirmed in these chapter 11 cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order dismissing these chapter 11 cases or any order entered after any conversion of any of these chapter 11 cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order.

27.     **Inconsistency**.  In the event of a conflict between this Order, on the one hand, and the Lake Vessel Sale Transaction Documents, on the other hand, this Order shall govern and control in all respects.  To the extent this Order is inconsistent with any prior order filed in these chapter 11 cases, the terms of this Order shall govern.  This Order shall not be modified by any chapter 11 plan of any of the Debtors confirmed in these chapter 11 cases.  This Order and the Lake Vessel Sale Transaction Documents shall be binding in all respects upon all holders of claims against and interests in the Debtors, all Counterparties, all successors and assigns of the Debtors and their affiliates and subsidiaries, and any trustees, examiners, "responsible persons," or other fiduciaries appointed in these chapter 11 cases or upon a conversion of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code, including a chapter 7 trustee, and the Lake Vessel Sale Transaction Documents shall not be subject to rejection or avoidance under any circumstances.  If any order under section 1112 of the Bankruptcy Code is entered, such order

27

shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that this Order and the rights granted to the Buyer hereby shall remain effective and, notwithstanding such dismissal or conversion, shall remain binding on parties in interest.

28.   **Waiver of Bankruptcy Rules 6004(h) and 6006(d)**.   Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d) or any applicable provisions of the Bankruptcy Local Rules, this Order shall not be stayed after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14)-day stay provided in Bankruptcy Rules 6004(h) and 6006(d) is hereby expressly waived and shall not apply.  Time is of the essence in closing the Lake Vessel Sale Transaction, and the Debtors and the Buyer intend to close the Lake Vessel Sale Transaction as soon as practicable.

29.   **Computation of Time**.  All time periods set forth in this Order shall be computed in accordance with Bankruptcy Rule 9006(a).

30.   **Retention of Jurisdiction**.  This Court shall retain jurisdiction to, among other things, (a) interpret, enforce, and implement the terms and provisions of this Order and the Lake Vessel Sale Transaction Documents (including all modifications, amendments, or supplements thereto) and (b) adjudicate disputes related to this Order and the Lake Vessel Sale Transaction Documents (including all modifications, amendments, or supplements thereto).

Signed: April 12, 2024

Marvin Isgur
United States Bankruptcy Judge

**<u>Exhibit A</u>**

**Lake Vessel Sale Transaction Documents**

**[as filed at Docket No. 457]**