**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | Case No. 24-90061 (MI) |
| Debtors. | (Jointly Administered) |
| AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC and VICTORY OPERATING COMPANY, LLC, | |
| Plaintiffs, | Adversary No: _____ |
| v. | |
| ARGONAUT INSURANCE COMPANY, | |
| Defendant. | |

## ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT

American Queen Steamboat Operating Company, LLC (dba American Queen Voyages) and Victory Operating Company, LLC (dba American Queen Voyages) (together, "Plaintiffs") hereby file this complaint against Argonaut Insurance Company ("Argonaut," or "Defendant"). In support, Plaintiffs allege the following:

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases which are being jointly administered, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3, The Embarcadero, San Francisco, CA 94111.

## Introduction

1.      In this adversary proceeding, Plaintiffs seek a declaratory judgment that, under the terms of two undisputedly valid and enforceable surety bonds, Argonaut is required to pay refunds to Plaintiffs' eligible cruise line customers whose trips were canceled as a result of Plaintiffs' financial difficulties and bankruptcy filing.

2.      Pursuant to legislation enacted in 1966, Federal Maritime Commission regulations provide certain protections for customers whose trips are canceled by cruise operators. The regulations require a cruise operator to demonstrate adequate financial ability to satisfy passenger refund demands; one means of satisfying this requirement is for the  cruise operator to buy surety bonds ensuring that customer refunds will be paid in the event that the operator cancels a trip and is unable or otherwise fails to pay such refunds itself.

3.      Argonaut is the surety on two such surety bonds that Plaintiffs purchased pursuant to these regulations, with combined penal limits totaling $39 million.

4.      Under the terms of the bonds and Federal Maritime Commission regulations, Argonaut's payment obligation to passengers under the bonds is triggered when:  (i) a passenger has made a request for a refund from the applicable Plaintiff (the cruise operator); (ii) the applicable Plaintiff has denied the request; and (iii) all required documentation relating to the claim has been submitted to Argonaut.  After these conditions are satisfied, Argonaut is required to pay the refund claims within 90 days.

5.      Argonaut, however, is refusing to comply with that obligation despite the undisputed fulfillment of all three preconditions to payment.  Instead, it erroneously insists that Plaintiffs have the primary obligation to pay such refunds and that Argonaut's obligations are triggered only after, and solely to the extent that, Plaintiffs fail to satisfy such refund claims pursuant to a chapter 11 plan.

6.      Argonaut's refusal to pay is contrary to the express terms of the surety bonds and the Federal Maritime Commission regulations, which are meant to ensure the full payment of refunds to customers in exactly this type of situation, where vessel owners deny or delay payment—which, in most cases, is due to bankruptcy, as the Commission has expressly stated.

7.      Argonaut's refusal also threatens to disrupt Plaintiff's ability to confirm a chapter 11 plan and expeditiously emerge from bankruptcy, given the resulting uncertainty over whether Plaintiffs must satisfy customers' refund claims, including portions of those claims that would otherwise be entitled to priority under section 507 of the Bankruptcy Code, which total, in the aggregate, nearly $10 million.  Resolution of this issue is therefore critical to assessing the feasibility of Plaintiffs' chapter 11 plan and sizing the Debtors' need for exit financing.

8.      Accordingly, Plaintiffs seek entry of a judgment declaring that Argonaut is required to pay all verified refund claims that have been submitted to Argonaut, as set forth in the Surety Bonds.[2]

**The Parties**

9.      Plaintiffs American Queen Steamboat Operating Company, LLC and Victory Operating Company, LLC are the operating units of American Queen Voyages ("AQV"), which operated the overnight cruise division of Hornblower Holdings LLC ("Hornblower," or the "Company").  American Queen Voyages operated a seven-vessel fleet that provided all-inclusive luxury voyages along the Ohio, Mississippi, Tennessee, Illinois, Cumberland, Columbia and Snake rivers, the Great Lakes, as well as along New England, the Southeast U.S., and Alaska.

---

[2]  Plaintiffs do not seek a judgement that Argonaut is required to pay refunds for cruises that embarked outside the United States.

10.     Defendant Argonaut Insurance Company ("Argonaut") is a specialty insurance company authorized to do business in the United States as a surety.  On information and belief, it was created under the laws of Illinois and has its domiciliary address in Chicago, Illinois, and its administrative office in San Antonio, Texas.  Counsel for Argonaut—Scott C. Williams, of Manier & Herod, P.C.—represented that he is authorized to accept service of this Complaint by email, without waiving any defenses.

## Jurisdiction and Venue

11.     The Court has jurisdiction to consider this matter under 28 U.S.C. §§ 157 and 1334.

12.     This is a core proceeding under 28 U.S.C. § 157(b).

13.     "[T]he bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy estate."  *In re Rollings*, 451 F. App'x 340, 345, 2011 WL 4825872, at *3 (5th Cir. 2011).

14.     Under Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 7008-1 of the Bankruptcy Local Rules for the Southern District of Texas (the "Local Rules"), Plaintiffs consent to the entry of final orders or judgment by this Court in connection with this adversary proceeding if it is determined that, absent consent of the parties, the Court cannot enter final orders or judgments consistent with Article III of the United States Constitution.

15.     Venue is proper under 28 U.S.C. §1409.  This proceeding arises in or relates to the Chapter 11 case pending in this District.

16.     As noted above, counsel for Argonaut agreed to accept service of this Complaint, without waiving any defenses.

## Factual Background

### Statutory and Regulatory Background

17.     In 1966, Congress enacted legislation requiring vessel owners and operators to establish "financial responsibility" to indemnify passengers if a trip is canceled. 46 U.S.C. § 44102.

18.     The Federal Maritime Commission ("FMC" or the "Commission") published implementing regulations the following year.  46 C.F.R. Part 540.

19.     Under this program, one way to establish financial responsibility is for the passenger vessel operator ("PVO") to obtain a surety bond issued by a bonding company authorized to do business in the United States and acceptable to the Commission to provide such indemnification of passengers.  46 C.F.R. § 540.6(a).  In other words, the surety provides the financial backstop to pay refunds to customers if the PVO itself declines or is unable to pay.

20.     The FMC revised its regulations in 2021 in the wake of turmoil in the cruise industry caused by the COVID-19 epidemic.  As revised, the new regulations define when nonperformance of transportation has occurred and establish uniform procedures regarding how and when passengers may make refund claims when nonperformance occurs.  *See* Notice of Proposed Rulemaking, Passenger Vessel Financial Responsibility, 86 Fed. Reg. 47441 (Aug. 25, 2021) (to be codified at 40 CFR Part 540).

21.     The changes were intended to provide "a clear and consistent policy toward vessel passenger ticket refunds, from the PVOs' financial responsibility instruments filed with the Commission, in the case of nonperformance by the vessel operator."  *Id*. at 47442.

22.     The form of surety bond that a PVO may obtain to demonstrate the requisite financial responsibility is set forth in the FMC regulations as Commission Form FMC-132A.

*The Surety Bonds at Issue*

23.    Plaintiffs here each bought Form FMC-132A surety bonds from Argonaut in October 2022 (the "Surety Bonds").

24.    American Queen Steamboat Operating Company, LLC bought a surety bond from Argonaut (Surety Co. Bond No. SUR0039562) with a penal limit in the amount of $32 million.  A copy of that bond is annexed hereto as **<u>Exhibit A</u>**.  American Queen Steamboat Operating Company, LLC is the "Principal" under the bond, and Argonaut is the "Surety."

25.    Victory Operating Company, LLC bought a surety bond from Argonaut (Surety Co. Bond No. SUR0046973) with a penal limit in the amount of $7 million.  A copy of that bond is annexed hereto as **<u>Exhibit B</u>**.  Victory Operating Company, LLC is the "Principal" under the bond, and Argonaut is the "Surety."

26.    Each of the Surety Bonds provides that it "shall inure to the benefit of any and all passengers to whom the Principal may be held legally liable for any of the damages herein described."  Each bond further provides that "the condition" of the surety's obligation is that "the penalty amount of this bond shall be available to pay damages made pursuant to passenger claims," if:

> (1)  the passenger makes a request for refund from the Principal in accordance with the ticket contract.
>
> (2)  In the event the passenger is unable to resolve the claim within 180 days, or such shorter claim resolution period for which the PVO's claims procedure provides, after nonperformance of transportation occurs or if the claim is denied by the PVO, the passenger may submit a claim against the bond as per instructions on the Commission's website.  The claim may include a copy of the boarding pass, proof and amount of payment, cancellation notice, and dated proof of properly filed claim against the Principal.  All documentation must clearly display the vessel and voyage with scheduled and actual date of sailing.  And, Surety reserves the discretion to require a judgement prior to resolving the claim.

(3)  Valid claims must be paid within 90 days of submission to the Surety.

27.     Thus, under the relevant terms of the Surety Bonds, Argonaut's payment obligation is triggered when:  (i) "the passenger makes a request for refund from the Principal in accordance with the ticket contract"; (ii) "the claim is denied by the PVO"; and (iii) "the passenger . . . submit[s] a claim against the bond," after which Argonaut is required to pay such claim within ninety days of submission.

*Plaintiffs Cancel AQV Cruises and  Take Action to Facilitate Expedited Refunds*

28.     Given the significant costs associated with operating the AQV business and maintaining the AQV vessels—as well as the Debtors' determination that utilizing the chapter 11 process to continue the prepetition marketing process and effectuate the sale of AQV's assets and to otherwise wind-down AQV's business operations was in the best interest of the Debtors' estates and would maximize value for the benefit of all stakeholders—Plaintiffs decided to begin limiting operation of the AQV business prior to the bankruptcy filing and to cancel all future cruises.

29.     Pursuant to the terms of their ticket contracts, passengers are entitled to refunds of any payments made for a cruise that is subsequently cancelled.   A copy of the passenger ticket contract is annexed hereto as **Exhibit C**.   Other than providing contact information that passengers may use to seek a refund, the ticket contract does not contain specific procedures for seeking a refund.

30.     On the petition date (February 21, 2024), the Company established a refund website (AQVrefunds.com) and a process by which AQV cruise passengers could apply for refunds with the goal of ultimately expediting them.  The AQV refund website allows customers to submit a claim form with information about the cruise booked and their method of payment and

to upload supporting documentation such as boarding passes, proof of payment, and cruise confirmation correspondence.

31.     The following day, the Federal Maritime Commission issued a notice to AQV passengers informing them that AQV had shut down, cancelled all future voyages, and filed a petition for relief under chapter 11.  The Commission also advised consumers who had purchased travel on AQV to visit AQV's customer claims portal webpage for information and instructions on how to file a refund claim.  A copy of the FMC's Notice is annexed hereto as **Exhibit D**.

32.     To date, approximately 5,600 refund claims have been filed on the AQV refund website in the aggregate amount of approximately $41.6 million.

33.     In consultation with the Federal Maritime Commission and the Official Committee of Unsecured Creditors, on March 29, 2024, Plaintiffs sent a "denial" letter to all AQV customers (the "Customer Denial Letter"), a copy of which is annexed hereto as **Exhibit E**, thereby permitting customers to file claims against Argonaut under the Surety Bonds and FMC regulations.

34.     Argonaut was initially supportive of sending the Customer Denial Letter and provided several rounds of comments thereto to Plaintiffs on March 20, March 21, March 25, and March 26, 2024.  Plaintiffs believed that the letter was in agreed form until later on March 26, when Argonaut abruptly changed course and advised Plaintiffs that it did not support sending any denial letter.

35.     Plaintiffs have provided Argonaut with access to all claims and supporting documentation AQV customers have submitted on the AQV refund website.  Plaintiffs have also provided Argonaut with access to Plaintiffs' books and records regarding the amount and details of all AQV customer payments.  Finally, although they have no obligation to do so for Argonaut's benefit, Plaintiffs have spent considerable resources reconciling the claims submitted on the AQV

refund website against their own books and records, and provided batches of fully reconciled claims to Argonaut totaling $14.9 million.   In particular, Plaintiffs provided Argonaut: (i) 308 fully reconciled claims totaling $2 million on March 5, 2024, (ii) 1,122 fully reconciled claims totaling $6.7 million on March 26, 2024, (iii) 575 claims totaling $3.2 million on April 9, 2024, and (iv) 516 claims totaling $3 million on April 25, 2024.

36.    On April 19, 2024, Plaintiffs filed their *Schedules of Assets and Liabilities*, which provided that all "AQV Cancelled Cruise Claims"—*i.e.,* passengers' claims for refunds— were neither "contingent," "unliquidated," nor "disputed."   Accordingly, pursuant to sections 1111(a) and 502(a) of the Bankruptcy Code, all such scheduled passenger claims have been deemed allowed against Plaintiffs.

### *Argonaut's Refusal to Accept Its Payment Obligations*

37.    Notwithstanding the clear terms of the surety bonds and FMC regulations, Argonaut has not accepted responsibility for any of these refund claims.  It has also denied that it has any obligation to pay such claims within 90 days of submission, notwithstanding that the Surety Bonds expressly provide that "[v]alid claims must be paid within 90 days of submission to the Surety."  As of the filing of this Complaint, Argonaut has not paid a single passenger claim or conceded that it must pay a single passenger claim at any time in the next 90 days.  In addition, Argonaut has not provided any information to passengers that would enable them to submit claims against the Surety Bonds.

38.    Instead of taking responsibility under the Surety Bonds to AQV's customers, Argonaut has argued that Plaintiffs have the primary obligation to pay such refunds and that Argonaut's obligations are "secondary" and triggered only after, and solely to the extent that, Plaintiffs fail to satisfy such refund claims pursuant to a chapter 11 plan.  *See* Argonaut

Insurance Company's Objection to the Disclosure Statement for the Amended Joint Chapter 11 Plan of Reorganization of Hornblower Holdings LLC and Its Debtor Affiliates (Dkt. No. 437, at 16, 17.)

39.     Argonaut's position is incorrect.  The Surety Bonds and the related Federal Maritime Commission regulations are intended to protect cruise line customers in precisely this type of situation, where a cruise operator denies refunds or delays paying them.  As the Commission itself has said, relying on sureties to pay customer refunds pursuant to surety bonds "usually only occur[s] if the PVO ceases operations and declares bankruptcy."  *See* Notice of Proposed Rulemaking, Passenger Vessel Financial Responsibility, 86 Fed. Reg. 47441, 47442 n.5 (Aug. 25, 2021) (to be codified at 40 CFR Part 540).

40.     The conditions triggering Argonaut's obligations under the Surety Bonds and federal regulations to issue refunds to eligible customers have already taken place: (i) passengers have made requests for refunds from Plaintiffs in accordance with the ticket contracts; (ii) Plaintiffs, the PVOs, have denied those requests pursuant to the Customer Denial Letter; and (iii) claims totaling $14.9 million have been submitted to Argonaut, together with all supporting documentation.  Argonaut is therefore required to pay such claims within 90 days.

***Argonaut's Misconduct Imperils the Bankruptcy Proceedings***

41.     Argonaut's ongoing refusal to honor its obligations under the Surety Bonds undermines Plaintiffs' ability to confirm a chapter 11 plan and emerge from bankruptcy, given the resulting uncertainty with respect to the amount of refund claims—including nearly $10 million of such claims that would otherwise be entitled to priority under section 507 of the Bankruptcy Code—that Plaintiffs must either pay or reserve for as a condition to the plan becoming effective. The expeditious resolution of Argonaut's obligations under the Surety Bonds is critical to Plaintiffs

10

ability to demonstrate that their chapter 11 plan is feasible and for the Debtors to appropriately size the necessary exit financing.

42.     It is therefore imperative that this dispute be resolved promptly.

43.     In light of this urgency and the straightforward nature of the dispute, there is good cause for the Court, pursuant to Bankruptcy Rule 9006(c), to shorten the length of time for Defendant to respond to this complaint to May 24, 2024, and for the Court to expedite the proceedings so that a hearing on Plaintiffs' motion for summary judgment on their declaratory judgment claim may be held at or before the anticipated June 3, 2024 confirmation hearing.

## Cause of Action

### Count 1 – Declaratory Judgment Pursuant to 28 U.S.C. § 2201

44.     Plaintiffs repeat and reallege the allegations set forth in Paragraphs 1-43 above.

45.     Pursuant to the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. §  2201(a).

46.     "[T]he bankruptcy court has the power to issue declaratory judgments when the matter in controversy regards the administration of a pending bankruptcy estate."  *In re Rollings*, 451 F. App'x 340, 345, 2011 WL 4825872, at *3 (5th Cir. 2011) (internal quotation marks omitted); *see also* 28 U.S.C. § 157(b)(1),(2)(a) ("Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11.... Core proceedings include, but are not limited to ... matters concerning the administration of the estate").

47.     Courts possess jurisdiction to issue declaratory relief when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties

having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc.* v. *Genentech, Inc*., 549 U.S. 118, 127 (2007).

48.     There is a substantial controversy between Plaintiffs and Defendant of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.  Argonaut's refusal to pay the required refunds to Plaintiffs' customers harms those customers, and Argonaut's insistence that Plaintiffs must first make distributions under the proposed plan to customers, including nearly $10 million in priority claims under section 507 of the Bankruptcy Code, poses an obstacle to Plaintiffs' ability to confirm a chapter 11 plan and emerge from bankruptcy.

49.     As alleged above, the prerequisites for Argonaut to make the refund payments, as set forth in the Surety Bonds, have already taken place:  (i) passengers have made requests for refunds from Plaintiffs as permitted under the passenger ticket contract; (ii) Plaintiffs, the PVOs, have denied the requests pursuant to the Customer Denial Letter; and (iii) all claims and supporting documentation submitted by passengers through the AQV refund website have been submitted to Argonaut.

50.     Plaintiffs, therefore, are entitled to a declaration that Argonaut is required to pay all valid claims that have been submitted to it within 90 days of (i) such submission or (ii) March 29, 2024, the date of the Customer Denial Letter, if submitted to Argonaut prior to such date.

51.     To the extent Argonaut exercises its discretion under the Surety Bonds to "require a judgment" as a condition to paying valid passenger claims, Plaintiffs seek a declaration that their scheduling of all passenger claims as neither "contingent," nor "unliquidated," nor "disputed" constitutes such a "judgment," because such claims have been deemed allowed pursuant to sections 1111 and 502 of the Bankruptcy Code.  Plaintiffs are therefore entitled to a

declaration that all passengers hold a "judgment" against Plaintiffs for purposes of the Surety Bonds.

## **Prayer for Relief**

WHEREFORE, Plaintiffs respectfully request relief as follows:

a.   Enter judgment in favor of Plaintiffs and against Argonaut declaring that:  (i) all of the conditions required for Argonaut to pay refund requests under the Surety Bonds have been met in full, and that Argonaut is therefore required to pay such refund requests within 90 days of (i) submission of such refund requests to Argonaut or (ii) March 29, 2024, if such refund requests were submitted to Argonaut prior to such date;

b.   To the extent that Argonaut requires a "judgment" as a condition to paying such refunds, enter judgment declaring that Plaintiffs' inclusion of all relevant claims on their schedules of assets and liabilities as neither "contingent," nor "unliquidated," nor "disputed" constitutes such a "judgment" or that the declaratory judgment sought hereby otherwise constitutes such a "judgment"; and

c.   Enter judgment awarding such additional and further relief as this Court deems just and proper under the circumstances.

May 6, 2024

Respectfully submitted,

By: /s/ Eric D. Wade

**PORTER HEDGES LLP**
John F. Higgins (TX Bar No. 09597500)
Eric D. Wade (TX Bar No. 00794802)
M. Shane Johnson (TX Bar No. 24083263)
Megan Young-John (TX Bar No. 24088700)
1000 Main St., 36th Floor
Houston, Texas 77002
Telephone: (713) 226-6000
Facsimile: (713) 226-6248
jhiggins@porterhedges.com
ewade@porterhedges.com
sjohnson@porterhedges.com
myoung-john@porterhedges.com

*Attorneys for Plaintiffs American Queen Steamboat*
*Operating Company, LLC and Victory Operating*
*Company, LLC*

**<u>Certificate of Service</u>**

I certify that on May 6, 2024, I caused a copy of the foregoing document to be served by email on Scott C. Williams, of Manier & Herod, P.C., 1201 Demonbruen Street, Ste. 900, Nashville, TN 37203, swilliams@manierherod.com, who represented that he is authorized to accept service by email on behalf of Argonaut Insurance Company.

<u>/s/ Eric D. Wade</u>
Eric D. Wade

# Exhibit A

OMB No. 3072-0012
Expires 07/31/2025

.m FMC-132A to Subpart A of Part 540

## FORM FMC-132A

## FEDERAL MARITIME COMMISSION

*Passenger Vessel Surety Bond (Performance)*

Surety Co. Bond No. SUR0039562   ***THIS BOND REPLACES BOND #SUR0039562 DATED JANUARY 16, 2016
FMC Certificate No.

Know all persons by these presents, that we American Queen Steamboat Operating
Company, LLC,  dba American Queen Voyages            (Name of applicant), of  Ft. Lauderdale

(City) FL , USA (State and country), as Principal (hereinafter called Principal), and  Argonaut
Insurance Company (Name of surety), a company created and existing under the laws of
IL, USA (State and country) and authorized to do business in the United States as Surety
(hereinafter called Surety) are held and firmly bound unto the United States of America in the
penal sum of $32,000,000.00 , for which payment, well and truly to be made, we bind ourselves
and our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by
these presents. Whereas the Principal intends to become a holder of a Certificate (Performance)
pursuant to the provisions of 46 CFR Part 540, Subpart A, and has elected to file with the Federal
Maritime Commission (Commission) such a bond to insure financial responsibility and the
supplying transportation and other services subject to 46 CFR Part 540, Subpart A.


Whereas this bond is written to assure compliance by the Principal as an authorized holder
of a Certificate (Performance) pursuant to subpart A of part 540 of title 46, Code of Federal
Regulations, and shall inure to the benefit of any and all passengers to whom the Principal may
be held legally liable for any of the damages herein described. Now, therefore, the condition of
this obligation is such that if the Principal shall pay or cause to be paid to passengers any sum or
sums for which the Principal may be held legally liable by reason of the Principal's failure
faithfully to provide such transportation and other accommodations and services 46 CFR 540,
Subpart A made by the Principal and the passenger while this bond is in effect for the supplying
of transportation and other services pursuant to and in accordance with the provisions of subpart
A of part 540 of title 46, Code of Federal Regulations, then this obligation shall be void,
otherwise, to remain in full force and effect. Whereas this bond is written to assure compliance
by the Principal as an authorized holder of a Certificate (Performance) pursuant to 46 CFR Part
540, Subpart A, and shall inure to the benefit of any and all passengers to whom the Principal
may be held legally liable for any of the damages herein described. Now, Therefore, the
condition of this obligation is that the penalty amount of this bond shall be available to pay
damages made pursuant to passenger claims, if:


(1) the passenger makes a request for refund from the Principal in accordance with the
ticket contract.


(2) In the event the passenger is unable to resolve the claim within 180 days, or such shorter
claim resolution period for which the PVO's claims procedure provides, after nonperformance of

transportation occurs or if the claim is denied by the PVO, the passenger may submit a claim against the bond as per instructions on the Commission's website. The claim may include a copy of the boarding pass, proof and amount of payment, cancellation notice, and dated proof of properly filed claim against the Principal.  All documentation must clearly display the vessel and voyage with scheduled and actual date of sailing. And, Surety reserves the discretion to require a judgement prior to resolving the claim.

(3) Valid claims must be paid within 90 days of submission to the Surety.

The liability of the Surety with respect to any passenger shall not exceed the passage price paid by or on behalf of such passenger. The liability of the Surety shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penalty of the bond, but in no event shall the Surety's obligation hereunder exceed the amount of said penalty. The Surety agrees to furnish written notice to the Federal Maritime Commission forthwith of all suits filed, judgments rendered, and payments made by said Surety under this bond.

This bond is effective the 16th day of January 2016 12:01 a.m., standard time at the address of the Principal as stated herein and shall continue in force until terminated as hereinafter provided. The Principal or the Surety may at any time terminate this bond by written notice sent by certified mail, courier service, or other electronic means such as email and fax to the other and to the Federal Maritime Commission at its office in Washington, DC, such termination to become effective thirty (30) days after actual receipt of said notice by the Commission, except that no such termination shall become effective while a voyage is in progress. The Surety shall not be liable hereunder for any refunds due under ticket contracts made by the Principal for the supplying of transportation and other services after the termination of this bond as herein provided, but such termination shall not affect the liability of the Surety hereunder for refunds arising from ticket contracts made by the Principal for the supplying of transportation and other services prior to the date such termination becomes effective.

The underwriting Surety will promptly notify the Director, Bureau of Certification and Licensing, Federal Maritime Commission, Washington, DC 20573, of any claim(s) or disbursements against this bond.

In witness whereof, the said Principal and Surety have executed this instrument on 28th day of October 20 22.

## PRINCIPAL

Name  American Queen Steamboat Operating Company, LLC  dba American Queen Voyages

By _____ *Eric D. Daley* , SECRETARY _____

    (Signature and title)

Witness _____ *Madison Adams* _____

**SURETY**

Name _____ Argonaut Insurance Company _____ [SEAL]

By _____

    Todd P. Loehenrt, Attorney-in-Fact

    (Signature and title)

Witness _____ *Monica A. Kaiser* _____

    Monica A. Kaiser, Witness

Only corporations or associations of individual insurers may qualify to act as surety, and they must establish to the satisfaction of the Federal Maritime Commission legal authority to assume the obligations of surety and financial ability to discharge them.

FMC Form 132A
(Rev. 07/2022)

# Argonaut Insurance Company
## Deliveries Only: 225 W. Washington, 24th Floor
## Chicago, IL 60606
## United States Postal Service: P.O. Box 469011, San Antonio, TX 78246
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the Argonaut Insurance Company, a Corporation duly organized and existing under the laws of the State of Illinois and having its principal office in the County of Cook, Illinois does hereby nominate, constitute and appoint:

John B. Ayres, Monica A. Kaiser, Todd P. Loehnert, Paula J. Teague, Michael W. Baxter, Madison Haller

Their true and lawful agent(s) and attorney(s)-in-fact, each in their separate capacity if more than one is named above, to make, execute, seal and deliver for and on its behalf as surety, and as its act and deed any and all bonds, contracts, agreements of indemnity and other undertakings in suretyship provided, however, that the penal sum of any one such instrument executed hereunder shall not exceed the sum of:

$97,550,000.00

This Power of Attorney is granted and is signed and sealed under and by the authority of the following Resolution adopted by the Board of Directors of Argonaut Insurance Company:

"RESOLVED, That the President, Senior Vice President, Vice President, Assistant Vice President, Secretary, Treasurer and each of them hereby is authorized to execute powers of attorney, and such authority can be executed by use of facsimile signature, which may be attested or acknowledged by any officer or attorney, of the Company, qualifying the officer or attorneys named in the given power of attorney, to execute in behalf of, and acknowledge as the act and deed of the Argonaut Insurance Company, all bond undertakings and contracts of suretyship, and to affix the corporate seal thereto."

IN WITNESS WHEREOF, Argonaut Insurance Company has caused its official seal to be hereunto affixed and these presents to be signed by its duly authorized officer on the 1st day of June, 2021.

Argonaut Insurance Company



by: _____

Joshua C. Betz , Senior Vice President

STATE OF TEXAS
COUNTY OF HARRIS  SS:

On this 1st day of June, 2021 A.D., before me, a Notary Public of the State of Texas, in and for the County of Harris, duly commissioned and qualified, came THE ABOVE OFFICER OF THE COMPANY, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and he acknowledged the execution of same, and being by me duly sworn, deposed and said that he is the officer of the said Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and the said Corporate Seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said corporation, and that Resolution adopted by the Board of Directors of said Company, referred to in the preceding instrument is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand, and affixed my Official Seal at the County of Harris, the day and year first above written.

KATHLEEN M MEEKS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 07/15/25
NOTARY ID 557902-8

_Kathleen M. Meeks_
_____
(Notary Public)

I, the undersigned Officer of the Argonaut Insurance Company, Illinois Corporation, do hereby certify that the original POWER OF ATTORNEY of which the foregoing is a full, true and correct copy is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand, and affixed the Seal of said Company, on the 28th day of October , 2022 .



_____
James Bluzard , Vice President-Surety

**IF YOU HAVE QUESTIONS ON AUTHENTICITY OF THIS DOCUMENT CALL (833) 820 - 9137.**

# Exhibit B

OMB No. 3072-0012
Expires 07/31/2025

**Form FMC-132A to Subpart A of Part 540**

FORM FMC-132A

FEDERAL MARITIME COMMISSION

*Passenger Vessel Surety Bond (Performance)*

Surety Co. Bond No. <u>SUR0046973</u>   **\*\*\*THIS BOND REPLACES BOND #SUR0046973 DATED MAY 13, 2019**
FMC Certificate No. <u>            </u>

Know all persons by these presents, that we <u>Victory Operating Company, LLC dba</u> American Queen
<u>Voyages</u>       (Name of applicant), of  Ft. Lauderdale          

(City) <u>FL, USA</u> (State and country), as Principal (hereinafter called Principal), and <u>Argonaut</u>
<u>Insurance Company</u> (Name of surety), a company created and existing under the laws of
<u>IL, USA</u> (State and country) and authorized to do business in the United States as Surety
(hereinafter called Surety) are held and firmly bound unto the United States of America in the
penal sum of <u>$7,000,000.00 ,</u> for which payment, well and truly to be made, we bind ourselves
and our heirs, executors, administrators, successors, and assigns, jointly and severally, firmly by
these presents. Whereas the Principal intends to become a holder of a Certificate (Performance)
pursuant to the provisions of 46 CFR Part 540, Subpart A, and has elected to file with the Federal
Maritime Commission (Commission) such a bond to insure financial responsibility and the
supplying transportation and other services subject to 46 CFR Part 540, Subpart A.

      Whereas this bond is written to assure compliance by the Principal as an authorized holder
of a Certificate (Performance) pursuant to subpart A of part 540 of title 46, Code of Federal
Regulations, and shall inure to the benefit of any and all passengers to whom the Principal may
be held legally liable for any of the damages herein described. Now, therefore, the condition of
this obligation is such that if the Principal shall pay or cause to be paid to passengers any sum or
sums for which the Principal may be held legally liable by reason of the Principal's failure
faithfully to provide such transportation and other accommodations and services 46 CFR 540,
Subpart A made by the Principal and the passenger while this bond is in effect for the supplying
of transportation and other services pursuant to and in accordance with the provisions of subpart
A of part 540 of title 46, Code of Federal Regulations, then this obligation shall be void,
otherwise, to remain in full force and effect. Whereas this bond is written to assure compliance
by the Principal as an authorized holder of a Certificate (Performance) pursuant to 46 CFR Part
540, Subpart A, and shall inure to the benefit of any and all passengers to whom the Principal
may be held legally liable for any of the damages herein described. Now, Therefore, the
condition of this obligation is that the penalty amount of this bond shall be available to pay
damages made pursuant to passenger claims, if:

      (1) the passenger makes a request for refund from the Principal in accordance with the
ticket contract.

      (2) In the event the passenger is unable to resolve the claim within 180 days, or such shorter
claim resolution period for which the PVO's claims procedure provides, after nonperformance of

transportation occurs or if the claim is denied by the PVO, the passenger may submit a claim against the bond as per instructions on the Commission's website. The claim may include a copy of the boarding pass, proof and amount of payment, cancellation notice, and dated proof of properly filed claim against the Principal.  All documentation must clearly display the vessel and voyage with scheduled and actual date of sailing. And, Surety reserves the discretion to require a judgement prior to resolving the claim.

(3) Valid claims must be paid within 90 days of submission to the Surety.

The liability of the Surety with respect to any passenger shall not exceed the passage price paid by or on behalf of such passenger. The liability of the Surety shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments shall amount in the aggregate to the penalty of the bond, but in no event shall the Surety's obligation hereunder exceed the amount of said penalty. The Surety agrees to furnish written notice to the Federal Maritime Commission forthwith of all suits filed, judgments rendered, and payments made by said Surety under this bond.

This bond is effective the 13th day of  May    201912:01 a.m., standard time at the address of the Principal as stated herein and shall continue in force until terminated as hereinafter provided. The Principal or the Surety may at any time terminate this bond by written notice sent by certified mail, courier service, or other electronic means such as email and fax to the other and to the Federal Maritime Commission at its office in Washington, DC, such termination to become effective thirty (30) days after actual receipt of said notice by the Commission, except that no such termination shall become effective while a voyage is in progress. The Surety shall not be liable hereunder for any refunds due under ticket contracts made by the Principal for the supplying of transportation and other services after the termination of this bond as herein provided, but such termination shall not affect the liability of the Surety hereunder for refunds arising from ticket contracts made by the Principal for the supplying of transportation and other services prior to the date such termination becomes effective.

The underwriting Surety will promptly notify the Director, Bureau of Certification and Licensing, Federal Maritime Commission, Washington, DC 20573, of any claim(s) or disbursements against this bond.

In witness whereof, the said Principal and Surety have executed this instrument on 28th day of October 20 22.

## PRINCIPAL

Name___Victory Operating Company, LLC dba American Queen Voyages_____

By _____ , SECRETARY _____

(Signature and title)

Witness _____

**SURETY**

Name _____Argonaut Insurance Company_____ [SEAL]

By _____

    Todd P. Loehnert, Attorney-in-Fact

    (Signature and title)

Witness _____

Monica A. Kaiser, Witness

Only corporations or associations of individual insurers may qualify to act as surety, and they must establish to the satisfaction of the Federal Maritime Commission legal authority to assume the obligations of surety and financial ability to discharge them.

## Argonaut Insurance Company
### Deliveries Only: 225 W. Washington, 24th Floor
### Chicago,  IL  60606
### United States Postal Service: P.O. Box 469011, San Antonio, TX 78246
## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS:  That the Argonaut Insurance Company, a Corporation duly organized and existing under the laws of the State of Illinois  and having its principal office in the County of Cook, Illinois  does hereby nominate, constitute and appoint:

John B. Ayres, Monica A. Kaiser, Todd P. Loehnert, Paula J. Teague, Michael W. Baxter, Madison Haller

Their true and lawful agent(s) and attorney(s)-in-fact, each in their separate capacity if more than one is named above, to make, execute, seal and deliver for and on its behalf as surety, and as its act and deed any and all bonds, contracts, agreements of indemnity and other undertakings in suretyship provided, however, that the penal sum of any one such instrument executed hereunder shall not exceed the sum of:

$97,550,000.00

This Power of Attorney is granted and is signed and sealed under and by the authority of the following Resolution adopted by the Board of Directors of Argonaut Insurance Company:

"RESOLVED, That the President, Senior Vice President, Vice President, Assistant Vice President, Secretary, Treasurer and each of them hereby is authorized to execute powers of attorney, and such authority can be executed by use of facsimile signature, which may be attested or acknowledged by any officer or attorney, of the Company, qualifying the attorney or attorneys named in the given power of attorney, to execute in behalf of, and acknowledge as the act and deed of the Argonaut Insurance Company, all bond undertakings and contracts of suretyship, and to affix the corporate seal thereto."

IN WITNESS WHEREOF, Argonaut Insurance Company has caused its official seal to be hereunto affixed and these presents to be signed by its duly authorized officer on the 1st day of June, 2021.

Argonaut Insurance Company



by: _____

Joshua C. Betz , Senior Vice President

STATE OF TEXAS
COUNTY OF HARRIS  SS:

On this 1st day of June, 2021 A.D., before me, a Notary Public of the State of  Texas, in and for the County of  Harris, duly commissioned and qualified, came THE ABOVE OFFICER OF THE COMPANY, to me personally known to be the individual and officer described in, and who executed the preceding instrument, and he acknowledged the execution of same, and being by me duly sworn, deposed and said that he is the officer of the said Company aforesaid, and that the seal affixed to the preceding instrument is the Corporate Seal of said Company, and the said Corporate Seal and his signature as officer were duly affixed and subscribed to the said instrument by the authority and direction of the said corporation, and that Resolution adopted by the Board of Directors of said Company, referred to in the preceding instrument is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand, and affixed my Official Seal at the County of Harris, the day and year first above written.

KATHLEEN M MEEKS
NOTARY PUBLIC
STATE OF TEXAS
MY COMM. EXP. 07/15/25
NOTARY ID 557902-8

Kathleen M. Meeks
_____
(Notary Public)

I, the undersigned Officer of the  Argonaut Insurance Company, Illinois Corporation, do hereby certify that the original POWER OF ATTORNEY of which the foregoing is a full, true and correct copy is still in full force and effect and has not been revoked.

IN WITNESS WHEREOF, I have hereunto set my hand, and affixed the Seal of said Company, on the 28th day of  October  2022 .



James Bluzard , Vice President-Surety

**IF YOU HAVE QUESTIONS ON AUTHENTICITY OF THIS DOCUMENT CALL (833) 820 - 9137.**

# Exhibit C

# PASSENGER TICKET CONTRACT

- <u>Terms And Conditions Of Contract Of Carriage</u>
- <u>Addendum To Carrier's Terms And Conditions Of Contract Of Carriage</u>

# TERMS AND CONDITIONS OF CONTRACT OF CARRIAGE

IMPORTANT NOTICE: THESE ARE THE TERMS AND CONDITIONS OF THE LEGALLY BINDING CONTRACT BETWEEN YOU AS OUR GUEST AND AMERICAN QUEEN STEAMBOAT OPERATING COMPANY, LLC, AND VICTORY OPERATING COMPANY, LLC, D/B/A AMERICAN QUEEN VOYAGES. THIS TICKET CONTRACT CONTAINS SUBSTANTIAL PENALTIES FOR CANCELLATION, AS WELL AS CERTAIN LIMITATIONS OF LIABILITY, INCLUDING LIMITATIONS CONCERNING OUR LIABILITY FOR YOUR DEATH, ILLNESS OR INJURY, AS WELL AS LIMITATIONS CONCERNING DAMAGE CLAIMS RELATING TO BAGGAGE AND PERSONAL PROPERTY. PLEASE READ ALL OF THESE TERMS AND CONDITIONS CAREFULLY, PAYING PARTICULAR ATTENTION TO SECTIONS 10, 17 AND 29. BY SENDING PAYMENT TO CARRIER, BOARDING THE VESSEL, OR PARTICIPATING IN A CRUISE TOUR YOU AGREE TO ACCEPT AND TO BE BOUND BY ALL OF THE TERMS AND CONDITIONS WHICH FOLLOW, INCLUDING SPECIFICALLY THOSE REGARDING YOUR RIGHTS TO SUE, GOVERNING LAW, FORUM AND JURISDICTION. VACATION PROTECTION INSURANCE COVERAGE IS STRONGLY RECOMMENDED. THANK YOU FOR TAKING THE TIME TO FAMILIARIZE YOURSELF WITH THESE TERMS AND CONDITIONS.

# 1. DEFINITIONS

a. The words "You," "Your" and "Guest" mean all persons, including minors, traveling under this Ticket Contract and each person's heirs and personal

representatives. Your acceptance of this Ticket Contract represents Your acknowledgment and acceptance of these Terms and Conditions for You and for all other persons traveling under this Ticket Contract, all of whom accept and agree to all the conditions of carriage either written here or which We may separately notify You of in writing.

b. The words "We," "Us," "Our" and "Carrier" mean American Queen Steamboat Operating Company, LLC, and Victory Operating Company, LLC, a limited liability company duly organized and existing under the laws of the State of Delaware, whose principal offices are as shown at the end of this Ticket Contract and which also include its parent, subsidiaries and affiliates (including SEA Operating Company, LLC), as Well as the Charterer, Operator, Manager, Independent Contractors (including caterers, service providers and concessionaires) and their respective Agents, Servants and Employees and the Vessel itself.

c. The word "Vessel" means the vessel chartered, operated, or provided by Us as the Carrier on which You, as Our Guest, will be traveling.

d. The word "Master" means the Captain of the Vessel or any person who acts under his authority.

e. The term "Cruise" means all water transportation aboard the Vessel and the Vessel's tenders which We agree to provide You pursuant to this Ticket Contract. The term "Cruise Fare" means the total amount paid, excluding Prepaid Charges, in exchange for the Cruise.

f. The term "Cruise Tour" means those additional facilities and services added to the Cruise, including but not limited to pre- or post-Cruise packages, shore excursions, Tours, shoreside activities, water transportation, air transportation, hotel accommodations and ground transportation. The term "Cruise Tour Fare" means the total amount paid for the Cruise Tour, excluding Optional Facilities and Services Fees and personal charges.

g. The term "Prepaid Charges" means that separate amount paid by You to cover the cost of all governmental and quasi-governmental fees, taxes and charges, as Well as ground handling fees and transfer costs and other tariffs, air fuel and fuel surcharges, security and handling fees and administrative and other fees and expenses of a similar nature concerning the specific itinerary of Your Cruise or Cruise Tour. Any increase or decrease in any component of Prepaid Charges may be made the subject of adjustment, in Our discretion.

h. The term "Suite Baggage" means all baggage allowed aboard the Vessel and placed in Your suite according to these terms and conditions. "Other Baggage" means any of Your baggage or other personal property which has been stored at Your request in the Vessel's baggage room, holds or safe against a receipt.

i. The term "Optional Facilities and Services Fees" means all fees and charges which You voluntarily incur for items which may include, but are not limited to, vacation protection insurance coverage, shore excursions, spa treatments and prepaid gratuities and other optional purchases of products and/or services aboard the Vessel, which are considered earned as those facilities and services are provided either by Us as the Carrier or by third-party providers.

j. "Nonperformance of Transportation" means cancelling or delaying a voyage by three days as defined by 46 C.F.R. 540.2(m).

# 2. IDENTIFICATION

Your name and the names of all Guests in Your party, the name of the Vessel, the sailing date, Your accommodations, Your total Cruise fare or Cruise Tour Fare and all scheduled ports, including embarkation and final destination are as specified on this Ticket Contract.

# 3. CRUISE FARE AND CRUISE TOUR FARE; TRAVEL AGENT

We acknowledge receipt of payment by You of the total Cruise Fare or Cruise Tour Fare, and We agree to transport You from the scheduled port of embarkation to the scheduled port of final destination according to all of the terms, conditions, limitation and exceptions contained in this Ticket Contract. The Cruise Fare paid by You covers all normal onboard services and meals (except where a cover charge may be imposed in certain restaurants), accommodations and facilities. Optional Facilities and Services provided by independent contractors and third-party providers may be added to the Cruise Fare by agreement in order to constitute a total Cruise Tour Fare, subject to all of the terms and conditions of this Ticket Contract regarding Our liability. Fares listed, quoted, advertised or booked in error, fuel supplements,

government taxes, other surcharges and changes to deposit, payment and cancellation terms/conditions are subject to change without notice. In the event that a Cruise fare listed, quoted or advertised through any Website, the Carrier's sales or reservations person, travel agent or any other source is booked but is incorrect due to an electronic error, typographical error, human error or any other error causing the fare to be listed, quoted or advertised for an amount not intended by Carrier, Carrier reserves the right to correct the erroneous fare by requesting the Guest to pay the correct fare intended, or by canceling the Cruise in exchange for a full refund, but in no event shall Carrier be obligated to honor any such booking resulting from the error or otherwise be liable in such circumstances.

Should You book a Cruise or Cruise Tour through a travel agent, You acknowledge that Your travel agent acts solely as Your agent and not as an agent for Us. We are not responsible for any representation or covenant that Your travel agent makes to You regarding the Cruise, Cruise Tour or any other services offered by Us. Receipt by Your travel agent of this ticket contract or any other communications, notices, or information from Us shall constitute receipt by You. Additionally, We shall not be responsible for the financial condition or integrity of Your travel agent and You remain liable for the monies due to Us should Your travel agent fail to remit them on Your behalf. Should Your travel agent make any payment to Us on Your behalf, any refund of that payment owed in accordance with this ticket contract will be refunded back to the travel agent and Our obligation to You for such refund shall be fully satisfied.

# 4. CARRIER'S DISCRETION

As the Carrier, We reserve the right at any time, without notice, to cancel any Cruise or Cruise Tour, to change or postpone the date or time of sailing or arrival, to change the port of embarkation or final destination, to shorten the Cruise or substitute the Vessel or to change or substitute any component of the Cruise Tour, including but not limited to aircraft, other transportation or any hotel at which You are scheduled to stay. If We are required to do any of those things, We will be responsible to You as follows:

a. If We cancel the Cruise or Cruise Tour before it has started, We will refund the Cruise Fare or Cruise Tour Fare that We have actually received .

b. If We delay a voyage by three days, and You chose not to participate in the Cruise, we will refund the Cruise Fare or Cruise Tour Fare that We have actually received.

c. If the scheduled sailing date or time is delayed and as a result of that delay, You are not otherwise accommodated on board the Vessel, We may arrange hotel accommodations and food at no additional expense to You for the duration of the delay.

d. If the scheduled port of embarkation or final destination is changed, We will arrange transportation to the new port from the originally scheduled port.

e. If the Cruise is shortened or terminated, We will, at Our option, either make a proportionate refund of the Cruise Fare and Cruise Tour Fare or We will transfer You to another vessel or the port of final destination by other4means. If the scheduled length of the Cruise is increased, You will have no responsibility for the cost of the additional Cruise fare, and We will have no responsibility to pay or compensate You in any manner, including any direct or consequential damages. In either of the above circumstances, Our responsibility ends once We return You to the point of destination as booked and ticketed by Us.

f. If any component of Your Cruise Tour, such as the hotel at which You are scheduled to stay, is changed or substituted, We will Use reasonable efforts to obtain a substitute for such component that is substantially equivalent therefore, but shall have no liability to You in connection with such substitution or change.

g. We may satisfy our obligations for Nonperformance of Transportation, under paragraph 4.a. and 4.b above, by entering into an alternative form of compensation in full satisfaction of a required refund, such as a future cruise credit.

# 5. THIS TICKET IS NON-TRANSFERABLE

This Ticket Contract is not transferable or assignable by You, and is valid only on the Vessel and for the Cruise or Cruise Tour booked by You. Please refer to Your Confirmation for payment terms. No reservations will be issued on a

binding basis unless We, as the Carrier, or Our representative receive the required payments. We reserve all rights concerning the pricing and payment of all Cruise Fares and/or Cruise Tour Fares. Travel agents and all other agents are declared to be solely Your agents for the purposes of this Ticket Contract, and all further documents concerning the Cruise and/or Cruise Tour. Cruise Fares and/or Cruise Tour Fares together with Prepaid Charges and Optional Facilities and Service Fees incurred are agreed as fully earned and otherwise paid at the scheduled sailing or departure date, respectively, and will not be refunded in whole or in part except as otherwise noted in this Ticket Contract. Certain changes to Your reservations may constitute a cancellation, and are therefore subject to cancellation charges as outlined in Clause 6 of this Ticket Contract.

# 6. YOUR CANCELLATION POLICY

When We receive a written notice of cancellation from You addressed to Us at Our principal offices (collectively "cancellations"), both parties agree to the following provisions.

a. In the event of cancellations actually received by Us one hundred twenty-one (121) days or more prior to sailing date, a refund of all amounts already paid to Us will be made less a $250-per-person administrative fee.

b. In the event of cancellations actually received by Us on or between ninety-one (91) days and one hundred twenty (120) days prior to sailing date, a refund of all amounts already paid to Us will be made, less a cancellation charge equal to twenty-five percent (25%) of the gross fare.

c. In the event of cancellations actually received by Us on or between sixty-one (61) days and ninety (90) days prior to sailing date, a refund of all amounts already paid to Us will be made, less a cancellation charge equal to fifty percent (50%) of the gross fare.

d. In the event of cancellations actually received by Us on or between thirty-one (31) days and sixty (60) days prior to sailing date, a refund of all amounts already paid to Us will be made, less a cancellation charge equal to seventy-five percent (75%) of the gross fare. If the cancellation charge is more than Your advance payment, You agree to be liable to Us for the difference.

e. In the event of cancellations actually received by Us on or between the sailing date and thirty (30) days prior to sailing date, a cancellation charge equal to one hundred percent (100%) of the gross fare will be imposed. In addition, any Prepaid Charges, Optional Facilities and Services Fees incurred will not be refunded. If the cancellation charge is more than Your advance payment, You agree to be liable to Us for the difference.

f. In the event that no notice is given or cancellation is not received by Us ("no-show") prior to sailing date, no refund of the applicable fare will be made, and a cancellation charge equal to one hundred percent (100%) of the gross fare will be imposed. In addition, any Prepaid Charges, Optional Facilities and Services Fees incurred will not be refunded. If the cancellation charge is more than Your advance payment, You agree to be liable to Us for the difference.

g. All appropriate refunds may be made either to You or to Your travel agent, if You are so represented, in the same form as received. Please note that some agents may, in their discretion, withhold an agency cancellation charge. We shall have no responsibility to You for any such agency cancellation charge.

h. Cancellation charges are imposed regardless of resale of the Cruise, hotel or air components. As noted above, all refunds of the applicable fare and Prepaid Charges will be made less cancellation charges, together with Prepaid Charges, Optional Facilities and Service Fees incurred, which may include prepaid hotel, airline, ground-related or immigration related expenses and administrative fees, among others. We highly recommend that all Our Guests purchase vacation protection insurance.

i. Changes to a reservation after deposit and prior to issuance of travel documents may result in assessment of administrative fees and service charges beyond the control of Carrier. Administrative fees and service charges will vary, and are based on the type of change to Your Cruise departure, itinerary or package. Guests are responsible for any additional costs incurred as a result of these changes. Some changes, including name changes, may also be considered cancellations, and applicable fees will be assessed. Any changes to a reservation that result in imposition of airline or other cancellation fees are the responsibility of the Guest. No refund will be made for unused or partially Used portions of the Cruise, air or land programs, including shore excursions, except as specifically outlined in this Ticket Contract.

For complete details on the terms and conditions governing shore excursions, including Our shore excursions cancellation policy, please review the Shore Excursions Terms and Conditions on Our Website which are incorporated herein by reference.

# 7. GUEST'S WARRANTIES

You warrant that You and all other Guests traveling with You are physically, emotionally and otherwise fit to undertake the Cruise or Cruise Tour; that You and they have received all medical inoculations necessary; that You and they will at all times comply with the Vessel's rules and regulations and orders and directions of the Vessel's Master, officers and medical staff; and that Your conduct will not impair the safety of the Vessel or jeopardize or inconvenience other Guests. We may disembark at any port any Guest who may be suffering from contagious or infectious diseases or whose presence, in the opinion of the Master, may be detrimental to the comfort or safety of other Guests or the crew. In such cases, the Guest shall not be entitled to any refund of the Cruise fare or Cruise Tour fare or any compensation whatsoever.

# 8. EMBARKATION

Upon embarkation, You shall have in Your possession this Ticket Contract and appropriate valid passports, visas, proofs of citizenship and/or public health documents as may be required by governmental authorities or certain ports of call within your itinerary. Each Guest is solely responsible for obtaining such documentation. Without proper documentation, We, as Carrier, may deny boarding, and shall not be responsible for any refund or be otherwise liable for any losses or delays or be other otherwise liable to any Guest for such denial, incurred by Your failure, or that of others, to maintain all of said necessary documents. In the event that Carrier provides courtesy advice to Guest regarding necessary travel documentation, Carrier does warrant or guarantee the accuracy of such advice, and Guest remains solely responsible for independently verifying and obtaining appropriate documents. Passports must be valid six (6) months beyond the conclusion of your voyage. You are required to be at the airport gate at least two (2) hours prior to the scheduled departure of air transportation, and are required to be aboard the Vessel at least one (1) hour before scheduled departure time. Notwithstanding the other provisions of this paragraph, We reserve the right, in Our sole discretion, to deny embarkation to any person for any reason (other than

discrimination on the basis of race, religion, national origin, gender, sexual preference or other legally impermissible classification). Where We deny embarkation to any Guest at Our discretion, We shall refund to You the Cruise Fare or Cruise Tour fare paid by You, and We shall have no further liability to You whatsoever. In addition, Clause 19 below requires You to advise Us in writing of any physical, emotional or mental condition which may require attention during the Cruise and to advise Us if You are physically challenged or require the Use of a wheelchair or other similar permitted equipment. You may be refused embarkation if You, in Our sole opinion, are not physically, mentally, emotionally or otherwise fit to undertake the scheduled voyage, or if You fail to follow the notification requirements of Clause 19 or if You attempt to bring on the Vessel equipment not permitted on board, in which case You shall forfeit the applicable Cruise Fare or Cruise Tour Fare in full, and We shall have no further liability to You whatsoever.

# 9. DISEMBARKATION

Guest acknowledges that on voyages commencing in a United States port, on a round-trip or one-way international voyage via one or more United States ports, Guest must complete the voyage and disembark at the scheduled disembarkation port. Failure to disembark at the scheduled disembarkation port could violate applicable U.S. cabotage requirements and could result in a fine or penalty. You acknowledge that you will reimburse Us for any fines or penalties imposed on Us due to your decision to voluntarily disembark at a port other than the scheduled disembarkation port.

# 10. CARRIER'S RIGHTS

The Vessel, either before embarkation or at any time thereafter and whether or not required by any maritime necessity, may remain in port, proceed by any route and deviate from or change the advertised scheduled or intended route at any stage of the voyage and may proceed to and stay at any places whatsoever, although in a contrary direction to, outside of or beyond the Usual route, one or more times, in any order, for or due to:

a. loading or discharging fuel, stores, laborers, stowaways, Guests or members of the Vessel's company;

b. war, hostilities, blockage, ice, labor conflicts, Weather, fire, surf, shallow waters, high waters, insurrections, congestions, docking difficulties;

c. disturbances on board or ashore;

d. restraint of any Governmental Authority;

e. breakdown of the vessel; or

f. any other reason whatsoever that Carrier or Master may deem advisable for this, or any prior or subsequent voyage. Any such procedure shall be considered not to be a deviation but within the voyage herein intended as fully as if specifically described herein. The above mentioned provisions are not to be considered as restricted by any words of this Ticket Contract whether written, stamped or printed. The Vessel may adjust compass, drydock or go on ways before or after commencement of the voyage, and may sail without pilots, tow or be towed and assist vessels in all situations and deviate for the purposes of saving life or property.

If the performance of the proposed voyage is hindered or prevented (or in the opinion of the Carrier or Master, is likely to be hindered or prevented) by any of the reasons listed in 9.b. through e. above, or if Carrier or the Master of the Vessel consider that for any reason whatsoever, beyond the control of the Carrier, proceeding to, attempting to enter or entering or remaining at any port may expose the Vessel to risk of loss or damage, or be likely to delay the Vessel, We may deviate from the scheduled Cruise by omitting, adding or changing the dates for any port or destination, and may provide alternate transportation to some or all of the ports or the destination, and You and Your baggage may be landed at any port or place at which the Vessel may call, in which event Our responsibility shall cease and this Ticket Contract shall be deemed to have been fully performed subject to the provisions in paragraph 4.

# 11. CARRIER'S LIABILITY

Our responsibility as the Carrier for death, injury, illness, damage, delay or other loss to person or property of any kind suffered by You or any of the other Guests in Your party shall, in the first instance, be governed by the limitations of liability set forth in the statutory maritime and general laws of the United States (including but not limited to the Limitation of Liability Act of 1851 and 46 USC 30501 et. seq.), as the law governing this Ticket Contract, exclusive of conflicts of laws provisions. We shall not be liable for any such death, injury, illness, damage, delay, loss or detriment caused by Act of God, war or warlike operations, civil commotions, labor trouble, interference by Authorities, perils of the sea, lurching of the Vessel or any other cause beyond Our control, fire, thefts or any other crime, errors in the navigation or management of the Vessel or defect in or unseaworthiness of hull, machinery, appurtenances, equipment, furnishing or supplies of the Vessel, fault or neglect of pilot, tugs, agents, independent contractors, including without

limitation the Vessel's medical personnel, You or other persons on board not in Our employ or any other cause of whatsoever nature except and unless it is proven that such death, injury, illness, damage, delay or loss resulted from Our act or omission committed during the course of the carriage and due to Our fault or neglect or any of Our servants or agents acting within the scope of their employment.

Guest agrees that the Carrier shall not be liable under any circumstances for any incident, injury, or property damage arising from events occurring outside of the Guest areas of the Vessel or outside of the Vessel itself, including but not limited to those events occurring ashore or on shore excursions not operated by Us, on tenders not owned or operated by the Carrier, on or resulting from equipment not a part of the Vessel, upon docks and/or piers not owned by Us, or involving persons employed on board the Vessel acting outside the course and scope of employment.

Carrier shall not be liable to the Guest for damages for emotional distress, mental suffering or psychological injury of any kind, under any circumstances, when such damages Were neither the result of a physical injury to the Guest, nor the result of that Guest having been at actual risk of physical injury, nor Were intentionally inflicted by the Carrier. If You Use the Vessel's athletic or recreational equipment or take part in organized or individual activities, whether on or off the Vessel or as part of a shore excursion, You assume the risk of injury, death, illness or other loss, and Carrier shall not be liable in any way whatsoever.

Our liability as Carrier for Suite Baggage and other baggage shall be limited to a maximum of $500-per-bag. Should You desire an extension of Our liability of $500, You should declare the true value of the property and pay to Us an amount of money calculated at 5% of the true value declared, up to $5,000. Liability will then be extended to the amount of the true value declared but in no event exceeding $5,000. NO SUIT SHALL BE MAINTAINABLE AGAINST US UPON ANY CLAIM IN CONNECTION WITH THIS TRANSPORTATION OR TICKET CONTRACT RELATING TO THE SUITE BAGGAGE OR OTHER BAGGAGE OR ANY PROPERTY UNLESS WRITTEN NOTICE OF THE CLAIM WITH FULL PARTICULARS SHALL BE DELIVERED TO US OR OUR AGENT AT OUR OFFICE AT ANY ADDRESS SET FORTH HEREIN WITHIN THIRTY (30) DAYS AFTER TERMINATION OF THE VOYAGE TO WHICH THIS TICKET CONTRACT RELATES, AND IN NO EVENT SHALL ANY SUIT FOR ANY CAUSE AGAINST THE CARRIER WITH RESPECT TO SUITE BAGGAGE OR OTHER BAGGAGE OR PROPERTY BE MAINTAINABLE UNLESS SUIT SHALL BE COMMENCED WITHIN SIX (6) MONTHS AFTER THE TERMINATION OF THE VOYAGE, NOTWITHSTANDING ANY

PROVISION OF APPLICABLE LAW TO THE CONTRARY. NO SUIT SHALL BE MAINTAINED AGAINST US FOR DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF THE GUEST OR FOR ANY OTHER CLAIM UNLESS WRITTEN NOTICE OF THE CLAIM WITH FULL PARTICULARS ARE DELIVERED TO US OR OUR AGENT AT ANY ADDRESS SET FORTH HEREIN WITHIN SIX (6) MONTHS FROM THE DAY WHEN SUCH DELAY, DETENTION, PERSONAL INJURY, ILLNESS OR DEATH OF THE GUEST OR CLAIM OCCURRED; AND IN NO EVENT SHALL ANY SUIT FOR ANY CAUSE AGAINST US WITH RESPECT TO DELAY, DETENTION, PERSONAL INJURY, ILLNESS, DEATH OR ANY OTHER CLAIM BE MAINTAINABLE, UNLESS SUIT SHALL BE COMMENCED WITHIN ONE (1) YEAR FROM THE DAY WHEN THE DELAY, DETENTION, PERSONAL INJURY, ILLNESS, DEATH OF THE GUEST OF CLAIM OCCURRED, NOT WITHSTANDING ANY PROVISION OF APPLICABLE LAW TO THE CONTRARY. GUESTS AGREE THAT ANY CLAIM OR CAUSE OF ACTION BROUGHT AGAINST THE CARRIER SHALL BE LITIGATED SOLELY IN A PERSONAL CAPACITY, AND NOT AS A MEMBER OF A CLASS ACTION OR IN ANY OTHER REPRESENTATIVE CAPACITY.

The requirements of this Clause cannot be waived by any of Our agents or employees; they may be waived only by express written agreement of one of Our directors having authority in the premises.

Notwithstanding the foregoing, We shall in no event be liable to You in respect of any occurrence prior to embarkation or after disembarkation from the Vessel named herein or substitute, or, with respect to any baggage, when the same is in Our custody at any shore side installation. We shall in no event be liable for the loss of or damage to cash, securities, gold, silverware, jewelry, ornaments, works of art or other valuables unless the same have been deposited with Us against receipt for the agreed purpose of safekeeping. In the event of such a deposit, Our liability for loss or damage thereof shall be limited to $100, unless value exceeding that amount is declared in writing. If the declared value exceeds $100, We are entitled to charge 5% of value declared, up to $5,000. Upon payment of this charge, liability will be extended to the true value declared but in no event shall We be liable for an amount exceeding $5,000.

We have made arrangements on Your behalf for the provision of travel facilities and services other than water transportation with various independent contractors and not as an agent of those independent

contractors. No representations or warranties of any kind are made with respect to the suitability, safety, insurance or other aspects of facilities or services offered by independent contractors. We assume no responsibility in whole or in part for any delays, delayed departures or arrivals, missed connections, loss, death, damage or injury to person or property, accident, mechanical defect, failure or negligence of any nature however caused in connection with any independent contractor accommodations, transportation, services or facilities, substitution of hotels, common carriers or equipment or for any additional expenses occasioned thereby. We reserve the right to choose the air carrier, routing and gateway locations, as Well as the right to substitute charter flights for scheduled service and vice versa. If the entire Cruise or Cruise Tour is canceled by Us for any reason, Guests shall have no claim other than for a full refund of the Cruise Fare or the Cruise Tour Fare, whichever is applicable. The airlines and other transportation companies concerned are to be held responsible for any act, omission or event during the time You are on board their conveyances. This Ticket Contract constitutes the sole agreement between Us and You, it being understood that the various independent contractors otherwise participating in the Cruise or Cruise Tour will enter into their own separate contractual arrangements with You, and that You assume the risk of utilizing the services and facilities of those independent contractors. Any penalties, change fees or cancellation fees that result from changes to or cancellation of air arrangements are the sole responsibility of the Guest.

If any claim is brought against Us in a jurisdiction where any of the applicable limitations and exemptions contained in the foregoing subparagraphs are legally unenforceable, then in such event We shall not be liable for death, injury, illness, damage, delay or other loss or detriment to person or property arising out of any cause of whatsoever nature if not shown to have been caused by Our negligence.

# 12. THIRD PARTY AND MEDICAL PROVIDERS

We, as the Carrier, are not responsible for services, treatments and/or attendance provided or supplies given by the medical personnel, beautician, barber, fitness instructor, laundry, photographic and/or any other concessionaire or other persons providing personal services to You. Should You avail Yourself of the medical or other services which the Vessel's medical

personnel may provide, We shall not be liable for the consequences of any examination, advice, diagnosis, medication or treatment thus furnished.

# 13. GUEST DETENTION

If You are detained on board or elsewhere at any time or at final destination because of quarantine, port regulations, illness or other cause, all expenses incurred in connection with such detention shall be Your sole responsibility. If You are carried aboard the Vessel beyond final destination for any reason, without fault of the Carrier, You shall pay for any additional maintenance or extra transportation. Should it become necessary, in the sole judgment of the Master of the Vessel, to transfer You for medical reasons, the cost of such transfer shall be borne by You.

# 14. DANGEROUS ITEMS

Only such personal Wearing apparel, effects and gifts as are necessary and appropriate for the voyage may be brought on board by You. Any piece of baggage must be distinctly labeled with Your name, Vessel's name, suite number and sailing date. You are allowed without extra charge one (1) cubic meter (cbm) of baggage. You shall not be permitted to bring any firearms, explosives, flammable materials or other hazardous goods on board the Vessel. Any attempt to bring such items on board, in Our discretion may be confiscated, destroyed or surrendered to authorities. You shall have no claim for loss or inconvenience thereby incurred. We assume no responsibility for any loss of or damage to Your perishable items, medicines, valuables, financial instruments, electronic equipment and the like, except as specifically provided in this Ticket Contract.

# 15. SMOKING POLICY

Guests are kindly reminded that smoking constitutes a serious health and safety hazard that may result in the combustion of accommodation areas and furnishings, and thus is expressly forbidden in all staterooms, suites and on verandas. For the safety and comfort of Your fellow guests, We request Your cooperation and compliance with this policy. Guests choosing to disregard the policy may be subject to monetary penalties – up to the fare paid for passage – that will be imposed to cover the costs associated with the required cleaning

of stateroom furnishings, verandas and surrounding deck and accommodation areas. Guests are also kindly reminded that the Master of the Vessel reserves the right to disembark any guests, without prior warning, for violation of this policy, and said guest(s) shall be responsible for all costs associated with repairs or replacement of furnishings as a result of combustion of accommodation areas found to be caused by said guest(s). Our vessels are generally non- smoking; however, smoking is permitted in certain designated areas.

# 16. ALCOHOL POLICY

The sale and consumption of alcoholic beverages will be limited to Guests who are 21 years or older. Carrier will refuse and prohibit the sale or service of alcoholic beverages to Guests under the age of 21 years. Guests are kindly reminded to consume alcohol in moderation. CARRIER RESERVES THE RIGHT TO PROHIBIT AND RETAIN ALL LIQUOR BROUGHT ABOARD THE VESSEL.

# 17. PETS

No pets or other animals are allowed on board the Vessel, except for designated service or guide animals, provided that the Guest notifies the Carrier, prior to the Cruise, of the Guest's intention to bring such animal and agrees to accept full responsibility for any expense, damage, losses or injuries associated with or caused by such animal.

# 18. INDEMNIFICATION

You agree to indemnify Us for all penalties, fines, charges, losses, deviation expenses or damages of any nature incurred or imposed upon Us or the Vessel by virtue of any act or violation of law by You or by all Guests named on or traveling under this Ticket Contract.

# 19. CHILDREN

Carrier requires that children under the age of 18 be accompanied by and occupy the same accommodations as a parent or other responsible adult 25

years or older. We do not provide services for the care, entertainment or supervision of children, and We reserve the right to limit the number of children on board under the age of 18 years.

# 20. HEALTH CONDITIONS

Guests must notify Carrier in writing at the time of booking of any physical or mental illness, disability or other conditions for which special accommodations or the Use of a wheelchair is necessary or contemplated. Also, We must be notified of any medical treatment that may render the Guest unfit for travel or constitute a risk or danger to the Guest or anyone else on board. While medical personnel are available on board, acute medical conditions may require You to disembark to be attended to by shoreside emergency and/or medical response, and You are advised that, due to the nature of travel by water, emergency medical evacuation may be delayed or impossible. Guests needing any form of assistance and those who are physically disabled must be accompanied by someone who will take full responsibility for any needed assistance during the Cruise and in the event of an emergency. We reserve the right to refuse passage to anyone who, in Our sole opinion, may affect the health, safety or enjoyment of other guests. Guests requiring a wheelchair must provide their own collapsible wheelchair. Please be aware that some ports of call, shore excursions, docks, gangways and other requirements may preclude a wheelchair guest from leaving the vessel; this decision will be made by the Master of the Vessel, and is binding. Also, there may be certain physical conditions, including raised doorway thresholds from 2 to 16 inches, stairways and narrow passageways within the vessel, that may limit or preclude the accessibility of wheelchair guests to some areas. Any Guest who requires oxygen canisters or oxygen concentrators must independently make all the necessary arrangements, including procuring and moving any oxygen containers while on board. Please be advised that liquid oxygen is not permitted on board the Vessel. Failure to disclose physical, mental or emotional conditions prior to the departure date, or Your attempt to bring on the Vessel equipment not permitted on board, may result in denial of embarkation and forfeiture of the applicable Cruise Fare or Cruise Tour Fare, and in such event We shall have no liability financially or otherwise.

# 21. GENERAL AVERAGE

You will not be liable to pay nor be entitled to receive any general average contribution in respect of property taken with You on the Vessel.

# 22. PAYMENTS

Any and all payments made by You to Us shall be made in currency of the United States of America. All charges for services and products provided on board the Vessel must be settled in cash or charged (via credit card acceptable to Us) before Your final disembarkation from the Vessel. Any other expenses incurred by You or by Us on Your behalf shall be payable by You on demand. Carrier accepts no responsibility for credit card processing fees independently assessed by issuing banks.

We offer the following options for payment: e-check, debit card and physical check.  Additionally, we accept MasterCard, Visa, Discover, Diners Club, and Uplift, however, please note, a credit card surcharge will apply except in CT, ME, MA and OK.

# 23. CARRIER'S RESERVED RIGHTS

Nothing contained in this Ticket Contract shall be construed to limit or deprive Us of the benefit of Subtitles II and III of Title 46, United States Code, (as revised and amended) or of any other Statute or law whatsoever that might be applicable providing for exoneration from or limitation of liability. The provisions of Clause 11 shall extend to each of the independent contractors (including caterers and concessionaires) as Well as Our servants and agents and the Vessel as defined in Clause 1, and for this purpose shall be deemed to constitute a contract entered into between You and Us, as the Carrier, on behalf of all persons who are or may be Our servants or agents from time to time, and all such persons shall to this extent be deemed to be parties to this Ticket/Contract.

If any other person or entity should be held responsible, he, she or it shall be entitled to all of the benefits, limitations and exceptions mentioned in this Ticket Contract otherwise. This Ticket Contract and every term and provision hereof shall be and remain in full force and effect during all periods when We

are under any responsibility to You or Your property for any reason whatsoever.

# 24. GUEST'S COVENANTS

You covenant and warrant that You are duly authorized by or on behalf of all Guests named on or traveling under this Ticket Contract to agree to all terms, conditions, limitations and exceptions herein contained, and by accepting and/or Using this Ticket/Contract, he or she and/or they do agree accordingly and do agree that the same shall be binding on them with the same force and effect as if they and every one of them signed this Ticket Contract.

Guests are required to be on board the Vessel at least one (1) hour prior to the scheduled departure time. Should the actions or inactions of any Guest(s) result in the Vessel not sailing at its scheduled departure time, Carrier shall assess Late Departure Fees, beginning at US $1,000 per Guest, to said Guest(s) directly responsible for any departure that is delayed more than 15 minutes beyond the scheduled and published departure time and liquidated damages.

# 25. TICKET/CONTRACT USAGE

The right is reserved to consider this Ticket Contract as canceled and the applicable fare forfeited if You do not Use this Ticket Contract for the Vessel or other Vessels substituted, or land arrangements for the date mentioned or should this Ticket Contract become lost or mislaid or if You Use this Ticket Contract for only part of the voyage or Tour indicated hereon, for any reason, whether or not due to causes beyond Your control.

# 26. SECURITY PROVISIONS

In the interests of national security and maritime safety and in the interest of the convenience and safety of other Guests, You agree and consent to a reasonable search being made of You, Your baggage or other property, and to the removal and confiscation or destruction of any object that may, in Our opinion or that of the Master, impair the safety of the Vessel or inconvenience other Guests or violate the laws of any applicable authority relative to the

possession and/or transportation of nonprescription narcotics, controlled substances or any other commodity of any nature.

# 27. GUEST BOOKINGS

Specific Guest accommodation assignments are not guaranteed. Carrier reserves the right to move Guest(s) to a comparable accommodation for any reason. As a condition of its business, We retain the right to overbook Guest accommodations. In the event that the Guest accommodation referenced in this Ticket Contract is overbooked, or if We determine that the Vessel is overbooked, We may, at Our discretion, deny boarding to any Guest and, at Our further discretion, refund all monies paid or offer another Cruise or Cruise Tour in substitution.

# 28. NO SOLICITATION

The Guest shall not solicit other Guests, the Carrier's employees, personnel or agents during the voyage with respect to any professional, commercial or business activity, whether for profit or otherwise, without the prior written consent of the Carrier. Solicitation in any form will result in mandatory disembarkation from the Vessel with no refund for any unused portion of the Cruise ticket or other pre-purchased items including Your return airfare.

# 29. USE OF LIKENESS

Carrier has the exclusive right to Use video and other visual/audio portrayals of You or Your likeness taken during Your Cruise in any medium of any nature whatsoever for any purpose, including advertising or promoting the services of Carrier, without any compensation being paid to You. Any such portrayal or likeness shall be the exclusive property of the Carrier.

# 30. CHOICE OF LAW AND FORUM

All questions arising on this Ticket Contract shall be decided according to the statutory and general maritime laws of the United States of America, with

references to which this Ticket Contract is made. YOU AND WE AGREE IRREVOCABLY THAT ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH THIS TICKET CONTRACT SHALL BE DETERMINED AND LITIGATED, IF AT ALL, BEFORE THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA IN FORT LAUDERDALE, OR AS TO THOSE LAWSUITS TO WHICH THE FEDERAL COURTS OF THE UNITED STATES LACK SUBJECT MATTER JURISDICTION, BEFORE A COURT LOCATED IN BROWARD COUNTY, FLORIDA, TO THE EXCLUSION OF THE COURTS OF ANY OTHER COUNTY, STATE OR COUNTRY. EACH PARTY HERETO IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO THIS TICKET CONTRACT.

# 31. AMENDMENTS AND MODIFICATIONS

In the event that amendments or modifications to this Ticket Contract are required, they may be added by means of attached form and will be considered an enforceable part hereof.

# 32. FOR PROFIT ENTITY

Notwithstanding that Carrier, at the Guest's option, arranges transportation, hotel accommodations, ground transfers, shore excursions and other services with independent suppliers of the services, it should be understood that Carrier, being a "for-profit entity," earns a fee on the sale of optional services.

# 33. MISCELLANEOUS

The illegality or invalidity of any paragraph, clause or provision of this Ticket Contract shall not affect or invalidate any other paragraph, clause or provision thereof. All headings set forth in this Ticket Contract are for convenience only, and have no separate meaning or effect.

# ADDENDUM TO CARRIER'S TERMS AND CONDITIONS OF CONTRACT OF CARRIAGE

In keeping with Federal, State and Local guidelines, Carrier has put in place measures aimed at preventing the introduction to and the spread of COVID-19 aboard the Vessel; however, despite Our mitigating efforts, We cannot guarantee that You or Your travel companion will not be exposed to COVID-19 during Your travels.

Therefore, the following provisions are incorporated into and made part of American Queen Steamboat Operating Company, LLC, and Victory Operating Company, LLC's Terms and Conditions of Contract of Carriage ("Ticket Contract") and are effective for all Voyages unless stated otherwise. All capitalized terms Used herein are as defined in the Ticket Contract.

1. SAFECRUISE PROTOCOLS

a. Pre-Embarkation

Prior to embarkation, ALL GUESTS MUST COMPLETE A CONFIDENTIAL HEALTH QUESTIONNAIRE and participate in any additional health screening procedures (including pre-embarkation COVID testing) as may be required by our then-current SAFECRUISE protocols. Participation in the above is considered part of the embarkation process. Any Guest who poses a risk to the health a safety of our guests or crew, or otherwise fails to comply with then-current SAFECRUISE protocols may be denied embarkation, in Carrier's sole discretion.

Where We deny embarkation in accordance with this Section 1.a., We shall not be obligated to refund You the Cruise Fare, Cruise Tour fare or any other travel costs paid by You. We shall provide you with a limited Future Cruise Credit for a future cruise with Carrier in an amount equal to the actual amount of your booking. This shall be your sole remedy and We shall have no further liability to You whatsoever.

b. During the Cruise

EACH GUEST WILL BE REQUIRED TO comply with applicable Federal, State, or Local health guidelines. Any Guest who refuses to comply with applicable health guidelines in accordance with this Section is subject to disembarkation at any port at the sole discretion of the Master.

Where We disembark or deny boarding in accordance with this Section 1.b., We will assist you with your arrangement of transportation to nearby medical facilities, hotel, or your home, however, You shall not be entitled to any refund of the Cruise fare or Cruise Tour fare or any compensation or reimbursement whatsoever. No Guest who is disembarked or denied boarding in accordance with this Section 1.b. will be permitted to re-join the Cruise.

2. GUESTS HEALTH INFORMATION

Pre-embarkation screening and health consultations are an important part of Our on-board health monitoring program during Your Cruise. Resulting information may be considered Personally Identifiable Information (PII) under HIPAA. You expressly consent to Carrier gathering and receiving this information and further transmitting this information to third parties who may require this information in furtherance of your Cruise and Cruise Tour. This could include, but is not limited to, government officials, port representatives or third parties involved in the performance of your Cruise and Cruise Tour, such as Shore Excursions, Transportation Venders or Medical Service Providers.

3. GUEST ASSUMPTION OF RISK

You acknowledge the contagious nature of COVID-19 and that, despite Carrier's effort to mitigate such dangers, You may be exposed to or infected by COVID-19 during Your participation in the Cruise or Cruise Tour and that such exposure or infection may result in personal injury, illness, permanent disability, or death. You understand that the risk of becoming exposed to or infected by COVID-19 may result from the actions, omissions, or negligence of yourself and others. You assume all of the foregoing risks and are solely responsible for any resulting injury (including, but not limited to, personal injury, disability, and death), illness, damage, loss, claim, liability, or expense, related to COVID-19, that You may experience or incur in connection with the Cruise or Cruise Tour, including any claims or expenses related to Your compliance with any federal, state, or local health orders in effect now or in the future ("Claims").

4. GUEST WAIVER OF CARRIER'S LIABILITY

You and on behalf of your heirs, executors, administrators, successors and assigns, release, covenant not to sue, discharge, and hold harmless the Carrier, its employees, agents, and representatives, of and from the Claims, including all liabilities, claims, actions, damages, costs or expenses of any kind arising out of or relating thereto. This release includes any Claims based on the actions, omissions, or negligence of the Carrier, its employees, agents, representatives, vendors, and independent contractors whether a COVID-19 infection occurs before, during, or after participation in the Cruise or Cruise Tour, or other forms of liability that may arise against the Carrier its employees, agents, and representatives, for or on account of any action taken in furtherance of this Addendum Carrier's Terms and Conditions of Contract Of Carriage including but not limited to the collection, receipt, storage and transmission of Guests Health Information.

BY SENDING PAYMENT TO CARRIER, BOARDING THE VESSEL, OR PARTICIPATING IN A CRUISE TOUR YOU AGREE TO BE BOUND BY THIS ADDENDUM. The terms of this Addendum do not supersede or waive any provisions of the Passenger Ticket Contract, but apply only to the protocols, assumption of risk and waiver of liability as described herein. The terms of this Addendum are subject to change at any time for any reason including, upon guidance from the Centers for Disease Control, state or local health officials. The unenforceability of any of the provisions of this Addendum will not affect the enforceability of any other provisions of this Addendum or the Passenger Ticket Contract.

AMERICAN QUEEN STEAMBOAT
OPERATING COMPANY, LLC
2400 E. Commercial Blvd., Suite 1200, Fort Lauderdale, FL 33308
Office: (614) 591-1133
The American Queen®, American Empress®, American Duchess®, and American Countess® are operated by American Queen Steamboat Operating Company, LLC, are regularly inspected by the U.S. Coast Guard, are American-flagged and employ American officers, crew and staff.
VICTORY OPERATING COMPANY, LLC
2400 E. Commercial Blvd., Suite 1200, Fort Lauderdale, FL 33308
Office: (614) 591-1133
The Ocean Voyager™, Ocean Navigator™, Ocean Victory™ and Ocean Discoverer™ are registered in the Bahamas, and are operated in accordance

with the International Maritime Organization's passenger vessel safety requirements as codified in the Safety of Life at Sea (SOLAS) Convention American Queen Voyages is registered with the State of Florida as a Seller of Travel, Registration No. ST44182; CA Seller of Travel Registration No. 2151839-50; WA Seller of Travel Registration No. 603356182

Ticket Contract Version 06.29.2023
Website Update: 07.10. 2023

# Exhibit D



This site is an *official* U.S. Government Website.

Home | Contact          Search      



# FEDERAL MARITIME COMMISSION

## COMPETITION AND INTEGRITY FOR AMERICA'S OCEAN SUPPLY CHAIN

| About the FMC | News & Events | Law & Regulation | Databases & Services | Licensing & Certification | Documents & Proceedings | Industry Oversight |
|---|---|---|---|---|---|---|

# Notice to Passengers Regarding American Queen Voyages

Posted February 22, 2024

The Federal Maritime Commission has been informed that American Queen Voyages has shut down, cancelled all future voyages, and has filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

Consumers who have purchased travel on American Queen Voyages should visit the "Customer Claims Portal" webpage established by the company for information and instructions on how to file a refund claim. Pursuant to FMC regulations, American Queen Voyages was required to maintain a surety bond to refund passengers for nonperformance of transportation.

Consumers should also consider:

- If payment was made by credit card, you may wish to file a claim with the card issuer.
- If third-party travel insurance was obtained, a claim should be placed immediately with the insurer.

Third party insurers and credit card issuers are often able to provide quicker and fuller reimbursement to passengers.

The Commission is not a party to the bankruptcy, nor does it have any role in its proceedings. However individuals with questions may contact the FMC Office of Passenger Vessel Operators (PVO).

---



**Federal Maritime Commission**
800 North Capitol Street, N.W
Washington, D.C. 20573

*Our mission is to **ensure a competitive and reliable international ocean transportation supply system** that supports the U.S. economy and protects the public from unfair and deceptive practices.*

Site Policies | Inspector General | U.S. Office of Special Counsel | FOIA | Open Government at the FMC | USA.gov | Contact Us

---

This site is an *official* U.S. Government Website.

# Exhibit E



Dear American Queen Voyages™ Customer,

**FILING OF BANKRUPTCY**: On February 21, 2024, American Queen Steamboat Operating Company, LLC and Victory Operating Company, LLC, each doing business as American Queen Voyages™ ("**AQV**"), and various affiliated entities filed Chapter 11 Bankruptcy Cases (the "**Bankruptcy**"), in the United States Bankruptcy Court for the Southern District of Texas (the "**Bankruptcy Court**").[1]

**YOUR REFUND CLAIMS**: AQV's books and records indicate that you made a payment for a cruise that was scheduled to be operated by AQV.  Prior to the Bankruptcy filings, AQV canceled all of its future cruises.  The purpose of this letter is to advise you of certain rights you have to seek a refund of payments you made to AQV.

**SURETY BONDS TO PROTECT CUSTOMER DEPOSITS**: As required by the Federal Maritime Commission (the "**FMC**"), AQV was required to purchase surety bonds (the "**Surety Bonds**")[2] to protect deposits of customers, for refunds for non-performance of transportation in circumstances like these.  The Surety Bonds were issued by Argonaut Insurance Company ("**Argonaut**").  The Surety Bonds are in place for the benefit of people and entities that have placed deposits with AQV if AQV canceled its cruises, and thus, you have the option to assert a claim against the Surety Bonds (in addition to claims against AQV in the Bankruptcy, as further described below).  The Surety Bonds do not guarantee that you will be paid in full.  However, although the amount of funds available to pay claims under the Surety Bonds is subject to overall limits, based upon AQV's books and records, AQV anticipates that the total amount of valid claims does not exceed the Surety Bond limits, and therefore customers with valid claims will recover in full.

**ABILITY TO FILE A CLAIM AGAINST THE SURETY BONDS**:  Under the FMC rules and the terms of the Surety Bonds, you are entitled to assert claims for your deposits.  Asserting a claim against the Surety Bonds is in addition to asserting a claim against AQV in the Bankruptcy.  To file a claim against the Surety Bonds, you must first file a claim against AQV, and AQV has established a website where you can do so.

You may begin the process of filing a claim against the Surety Bonds by submitting your claim at **https://www.aqvrefunds.com** (the "**AQV Refund Website**").  If you previously submitted a claim through the AQV Refund Website, you do **not** need to resubmit your claim through the AQV Refund Website.  The AQV Refund Website contains instructions for submitting your claim.  AQV encourages you to quickly file claims on the AQV Refund Website.  You may call (888) 504-8055 (or (747) 263-0163 for calls originating outside the U.S. or Canada) should you have any questions regarding the AQV Refund Website.

**WHAT AQV WILL DO ONCE YOU FILE A CLAIM ON THE AQV REFUND WEBSITE**: Bankruptcy law does not permit AQV to pay claims until the Bankruptcy Court has approved a plan of reorganization (the "**Plan**") (see additional details below).  Therefore, to expedite the payment of your claim under the Surety Bonds, AQV has "*denied*" all Claims submitted on the AQV Refund Website.[3]  AQV will promptly forward all claims and any supporting documentation submitted through the AQV Refund Website to Argonaut.

---

[1]  The chapter 11 cases are being jointly administered by the Bankruptcy Court under Case No. 24-90061.

[2]  Argonaut issued Passenger Vessel Surety Bond No. SUR0039562 for cruises operated by American Queen Steamboat Operating Company, LLC  and Surety Bond No. SUR0039562 for cruises operated by Victory Operating Company, LLC.

[3]  The "denial" of your Claim submitted through the AQV Refund Website does not affect your rights in the Bankruptcy, or the claim that you may file in the Bankruptcy (other than to the extent that you have been paid all or a portion of your claim under the Surety Bonds).



**WHAT ARGONAUT MAY DO UPON RECEIPT OF CLAIMS SUBMITTED THROUGH THE AQV REFUND WEBSITE**: Argonaut has not yet announced the procedures for processing claims and issuing customers a refund.  AQV will continue to work with Argonaut and the FMC to ensure that customers are informed of Argonaut's procedures.  Supplemental details with respect to the submission of your claim may be posted on the AQV Refund Website and the FMC's website at https://www.fmc.gov, and you are encouraged to check these websites for updates.  Under the terms of the Surety Bonds, AQV believes that Argonaut is required to pay valid claims within 90 days of submission to Argonaut.   Argonaut may request further and additional information in connection with its review of your claim in accordance with the Surety Bonds and applicable federal regulations.  AQV will cooperate with Argonaut in connection with any claim.  You can contact Argonaut directly by email at Hornblower.Claims@ArgoSurety.com or via U.S. Mail to:  Argo Group US, ATTN: Hornblower/AQV Claims, 711 Broadway, Suite 400, San Antonio, TX 78215, United States of America.

**FILING A CLAIM WITH THE BANKRUPTCY COURT**: In addition to filing a claim against the Surety Bonds, Bankruptcy law permits you to file a claim against AQV in the Bankruptcy Court.  AQV is seeking an order from the Bankruptcy Court to set a deadline for claims to be filed.  Once the Court establishes the deadline, you will be notified by another written notice, which will include a form for you to complete and return.  You are encouraged to file your claim form timely, as failure to do so could result in a disallowance of your claim.  The claim form will contain instructions for you to follow.  Filing a claim in the Bankruptcy does not ensure you will be paid at all or in full.

Any payments by AQV in the Bankruptcy will be pursuant to any Plan that is approved by the Bankruptcy Court.  However, the timing of approval of the Plan, and then the timing of payment of claims, has not been determined.  Until the Plan has been approved by the Bankruptcy Court, your claim will not be addressed or paid by AQV.

**LEGAL DISCLAIMERS & NOTES**: Submissions of claims in the Bankruptcy and through the AQV Refund Website does not assure your claim will be paid, or paid in full.  AQV reserves all of its rights with respect to claims submitted either in the Bankruptcy or through the AQV Refund Website.  Argonaut reserves all of its rights with respect to claims submitted through the AQV Refund Website and forwarded to it or claims directly submitted to it.

Information regarding the Bankruptcy, including pleadings filed in the Bankruptcy and future information on the submission of claims in the Bankruptcy, can be found on the website maintained by AQV's bankruptcy claims and noticing agent at https://omniagentsolutions.com/Hornblower.

If you have any questions regarding this letter, the chapter 11 process, or your claim, you are advised to consult with an attorney.


Sincerely,

The American Queen Voyages™ Team