**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS' OBJECTION
TO EMERGENCY MOTION OF THE DEBTORS TO COMPEL THE
OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO
PRODUCE DOCUMENTS IN RESPONSE TO THE DEBTORS' FIRST
REQUESTS FOR THE PRODUCTION OF DOCUMENTS**

(Related Docket No. 1042)

The Official Committee of Unsecured Creditors (the "Committee") of Hornblower

Holdings LLC and its related and affiliated debtors and debtors in possession (the "Debtors"), by

and through its undersigned counsel, hereby files this objection (the "Objection") to the *Emergency*

*Motion of the Debtors to Compel the Official Committee of Unsecured Creditors to Produce*

*Documents in Response to the Debtors' First Requests for the Production of Documents* [Docket

No. 1042] (the "Motion").  In support of its Objection, the Committee states as follows:

## I.      PRELIMINARY STATEMENT[2]

1.      The Debtors seek to compel the Committee to search for "valuation documents"

that may be in the possession, custody, and control of individual Committee Members, ***but that***

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035.  Due to the large number of debtor entities in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower.  The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2] All capitalized terms used but not defined in this Preliminary Statement have the meanings given to them below or in the Motion, as applicable.

*were never provided to or disclosed to the Committee*.[3]  The Debtors' strident, hyper-aggressive Motion seeks unprecedented relief, is without merit, and is unnecessary.

2.     The Debtors imply that the Committee is hiding evidence in the form of "valuations" that are solely in the possession of individual Committee Members, and that may undermine the Committee's position at confirmation. This implication is unfounded. The Committee has produced (or will produce as part of expert discovery) all non-privileged documents in its possession, custody, and control responsive to the Debtors' requests. The Committee has only refused to search for documents that it does not possess or control, has never considered, and has never seen (assuming they exist).  Had the Debtors simply followed the Committees' suggestion and served subpoenas in late April, this whole proceeding would have been avoided.  But important issues are at stake not only for the Committee here, but for corporate representatives generally.

3.     The Committee is a statutorily appointed body. Information obtained and considered by the Committee could properly be sought in discovery—subject only to limits imposed by law such as privilege and relevance.  By contrast, the Members of the Committee serve only in a representative capacity.  To the extent they obtain or create information in such a representative capacity, the Committee would have an obligation to search for and produce it (again, subject to limits imposed by law).  But to the extent a party, such as the Debtors, seeks documents from Members in their individual capacities, such information should be sought directly from those members in the form of a subpoena.

---

[3] For the avoidance of doubt, and as explained to the Debtors in telephonic and written communications, no Committee Member ever disclosed or provided any document that would be responsive to the Individual Member Requests.

4.     The distinction between the Committee and its Members is reflected in the Committee's Bylaws—which expressly state that Committee Counsel does not represent Members in their individual capacity—and applicable law.  Indeed, as described below, all parties in these bankruptcy cases have respected the boundaries of people and entities serving in representative capacities—except, regrettably, for the Debtors' as to Committee Members. The Debtors' position, if accepted, has sweeping implications.  If corporate representatives (such as members of statutory or ad hoc committees or officers or directors of corporate entities) are, in their individual capacity, subject to discovery sought from the corporate entity they represent, and regardless of whether the discovery concerns the representative's role as such, people and entities will be reluctant to serve.

5.     There is no need for such a draconian result.  If a party wants discovery from a corporate representative, service on the corporate entity is sufficient.  But if a party wants discovery from corporate representative in its individual capacity, service on the individual party is required so they can consider their own personal interests with their own personal counsel.

6.     The Motion is unsupported and should be denied.

## II.     RELEVANT BACKGROUND

### A.     The Committee Is Appointed and Retains Counsel

7.     The Committee was appointed on March 5, 2024 (*see* Docket No. 208) and subsequently retained Pachulski Stang Ziehl & Jones LLP ("Committee Counsel") as counsel, effective as of March 7, 2024.  The Committee's retention application was signed by Angela Composto, a member of the Committee, "solely in her capacity as Chair" of the Committee, and "not in any other capacity."  [Docket No. 1005].

8.     As the Debtors are aware, Committee Counsel represents "the Committee" as a whole and not any of the individual Members.  The Committee's Bylaws—which were provided to the Debtors in discovery and cited by the Committee during the "meet and confer" process—

expressly state that "the Committee's attorneys represent the Committee with regard to matters relating to the Chapter 11 Cases. *The Committee's attorneys and other professionals do not represent the Members in their individual capacities*." (emphasis added).

9.       Thus, it is indisputable that Committee Counsel (a) does not have an engagement letter with any Member; (b) has never rendered an invoice to any Member; and (c) owes no duty to any Member in their individual capacity.

**B.**     **The Debtors Seek Discovery from the Members in Their Individual Capacities**

10.     The Debtors served document requests in connection with Plan confirmation (the "First RFPs") seeking from the Committee, among other things, "all valuations and appraisals concerning the Debtors *prepared by* . . . *any Committee members* . . ." **Ex. 1** at 5 (*see* Request Nos. 4 and 5) (the "Individual Member Requests") (emphasis added).

11.     During a "meet and confer" call held on April 26, 2024, to discuss the First RFPs, Committee Counsel informed Debtors' counsel that *no documents responsive to the Individual Member Requests were ever shared with the Committee* but that if the Debtors wanted documents from Members acting in their individual capacities, they should subpoena them individually since Committee Counsel did not represent them. The Committee reiterated its position two days later, providing a more expansive explanation. **Ex. 2** ("PSZJ will not ask the Committee members to search for and produce documents *that have never been shared with the Committee* and are possessed by them in their individual capacities.") at 3 (emphasis added).

12.     Further, in its written responses to the First RFPs served on April 29, 2024 (the "R&Os"), the Committee objected to the Individual Member Requests, in part, on the grounds that they seek documents "in the custody, possession, or control of Committee members in their individual capacities" *but expressly agreed to produce any valuations that were presented or disclosed to the Committee* (including as part of expert discovery). **Ex. 3** (*see* R&O No. 4 (agreeing

to produce responsive, non-privileged documents that were provided or disclosed to the Committee); *see also* R&O No.5).

13.     On May 6, the Debtors moved to compel the Committee to search for and produce documents in response to the Individual Member Requests that were never provided to, or considered by, the Committee but that individual Members may possess. For the reasons below, the Motion should be denied.

### III.    <u>ARGUMENT</u>

14.     The Motion is unnecessary, unsupported, and an inappropriate attempt to harass the individual Members of the Committee.  The Debtors know that (a) Committee Counsel does not represent any individual Member; (b) no documents responsive to the Individual Member Requests were ever provided or disclosed to the Committee or they would have been produced; and (c) they could have issued subpoenas directly to the Committee Members if they were sincerely interested in obtaining documents that the Committee never saw or considered but that might be in the possession, custody, and control of Members solely in their individual capacities.  Had the Debtors done so in late April, this issue could have been avoided.

15.     The Debtors cite no authority (because there is none) to support their hyper-aggressive argument that by agreeing to serve on the Committee, the Members also subjected themselves to open file discovery by unwittingly agreeing that documents in their possession, custody, and control—even if never provided or disclosed to the Committee—would be deemed to be documents under the Committee's control. The lack of authority is not surprising; it conflicts with applicable law and would have untenable consequences not just for the Members here, but prospectively for (by way of example only) people and entities considering serving on official or ad hoc committees or as officers or directors of corporate entities.

16.     Committees appointed under section 1102 of the Bankruptcy Code are "entities" separate and distinct from the members that compose it. *See In re Washington Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) ("The WMI Noteholders Group is an 'entity' … because it is an organization that has an identity apart from its individual members."). Thus, while a creditors' committee has a duty to represent all general unsecured creditors, it "is simply not intended to represent individual creditor interests." *In re Garden Ridge Corp.*, No. 04-10324 (DDS), 2005 WL 523129, at *4 (Bankr. D. Del. Mar. 2, 2005).[4]

17.     It is therefore critical that the committee body, on the one hand, and the members that make up the committee, on the other, not be confused and conflated to be one and the same as the Debtors' improperly attempt to do here.  *See Garden Ridge*, 2005 WL 523129, at *4 ("It is important to keep in mind that each member of the Official Committee is free to represent its own interests in an individual capacity apart from membership in the Official Committee.").[5]

18.     The distinction between the Committee and its individual Members extends to Committee Counsel—as expressly reflected in the Bylaws, (*see supra* ¶ 8).  Just as the members

---

[4] *See also Mirant Americas Energy Mktg., L.P. v. Off. Comm. of Unsecured Creditors of Enron Corp.*, No. 02 CIV. 6274 (GBD), 2003 WL 22327118, at *6 (S.D.N.Y. Oct. 10, 2003) ("The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to "strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished.") (internal quotations omitted); *In re Residential Cap.*, LLC, 480 B.R. 550, 558–59 (Bankr. S.D.N.Y. 2012) ("forming a borrowers committee solely to advance individual borrowers' claims is not appropriate, because acting as *de facto* counsel for borrowers would be an impermissible role for an official committee," noting, "a committee cannot advocate on behalf of individual constituents for policy as well as practical reasons—if a borrowers committee was appointed for such a purpose, [n]either the committee nor its lawyers could function if each constituent was a client.") (internal quotations omitted); *In re Kensington Int'l Ltd.*, 368 F.3d 289, 315 (3d Cir. 2004) ("[I]t is established that a Creditors Committee owes a fiduciary duty to the unsecured creditors as a whole, not to the individual members."); *In re Granite Partners, L.P.*, 210 B.R. 508, 516 (Bankr. S.D.N.Y. 1997) ("The committee and its members owe a fiduciary duty to the class of creditors that the committee represents (i.e., its constituency). … They do not, however, owe a fiduciary duty to any particular creditor") (internal citations omitted).

[5] *See also Matter of Am. Fed'n of Television & Radio Artists*, 30 B.R. 772, 776 (Bankr. S.D.N.Y. 1983) ("Tuesday is entitled to be heard on its own behalf in opposition to the Application to Extend the Exclusivity Periods, notwithstanding the Creditors' Committee decision not to oppose said application. Its actions do not amount to misconduct or a breach of the fiduciary duty it owes to the other unsecured creditors.").

of a creditors' committee do not represent the interests of individual creditors, a committee's counsel does not represent the members of the committee in their individual capacities. *See, e.g., Matter of Levy*, 54 B.R. 805, 806 (Bankr. S.D.N.Y. 1985) ("Counsel for the creditors' committee do not represent any individual creditor's interest in this case; they were retained to represent the entire unsecured creditor class."); *In re Washington Mut., Inc.*, 419 B.R. 271, 275 (Bankr. D. Del. 2009) ("[T]he pleadings and appearances by counsel demonstrate that the Group and counsel represent not each individual member in its individual capacity, but rather the Group as a whole. In fact, it is the collective $1.1 billion in holdings of the members of the Group that counsel uses to argue in favor of the Group's position, not each individual's separate holding.").

19.     These distinctions matter in discovery.  Pursuant to Federal Rule of Civil Procedure 34(a), a party may request any other party to produce "relevant documents and other physical items that are in the "possession, custody, or control" of the party upon whom the request is served. Fed. R. Civ. P. 34(a). "The inquiry, then, under Rule 34(a), is whether the responding party has 'control' over the records sought." *United My Funds, LLC v. Perera*, No. 4:19-CV-00373, 2020 WL 1225042, at *8 (E.D. Tex. Mar. 12, 2020) (internal quotations omitted).  "Rule 34's definition of 'possession, custody, or control,' includes more than actual possession or control of the materials; it also contemplates a party's legal right or practical ability to obtain the materials from a nonparty to the action." *Id.*  "The burden, however, is on the party seeking discovery to make a showing that the other party has control over the documents sought." *Id.*; *see also Shell Glob. Sols. (US) Inc. v. RMS Eng'g, Inc.*, No. 4:09-CV-3778, 2011 WL 3418396, at *6 (S.D. Tex. Aug. 3, 2011) ("The party seeking production of documents bears the burden of establishing the opposing party's control over those documents.").

20.     Here, the Debtors have failed to show ***any*** degree of control that the Committee has over hypothetical valuations that may be sitting in the drawer of an individual Member's home and that were never disclosed or shared with the Committee.  For the reasons set forth above, Committee Counsel has no control over Committee Members in their individual capacity. The Debtors' speculative and conclusory assertion that such valuations may exist, (Motion ¶ 19), is insufficient to carry its burden of proving that such documents are in ***the Committee's*** possession, custody and control. *See United My Funds, LLC v. Perera,*, 2020 WL 1225042, at *9 ("Rather, Mubaidin has provided the Court with speculation that the documents may be stored on the same computer that houses the documents owned by United My Funds. Speculation, however, will not help Mubaidin carry his burden," noting that "the Court is not foreclosing Mubaidin's ability to receive the Unitex documents through a more appropriate discovery device. Indeed, a subpoena directed to Unitex may very well rectify this matter. But because Mubaidin failed to carry his burden as to his Requests for Production, the Court must deny the present Motion to Compel.").[6]

21.     Notably—except in this specific instance—the parties in this bankruptcy case have respected the separate nature of the players. Thus, for example, even though M3 and Raymond James have been engaged by the Committee, the Debtors properly asked the Committee if it was authorized to accept service of discovery requests targeted to those entities rather than (as they are attempting to do here) conflating them with the Committee itself.[7]

---

[6] *See also Shell*, 2011 WL 3418396, at *6 ("there is no evidence that Plaintiffs and Shell B.V. ever coordinated or exchanged documents regarding the underlying preparation and prosecution of patent applications, filings, and/or renewals. … At this juncture, Defendant Tesoro has not met its burden of establishing that Plaintiffs have the 'practical ability' to obtain the foreign patent prosecution files from Shell B.V.").

[7] M3 authorized Committee Counsel to accept service of the discovery requests but Raymond James did not; consequently, the Committee introduced the Debtors to Raymond James' counsel who are apparently addressing the discovery requests without complaint or acrimony. For reasons known only to them, the Debtors eschewed this approach when it came to the Members, never bothering to ask whether Committee Counsel was authorized to accept service of subpoenas on the Members' behalf or for contact information for the Members' individual counsel.

22.     The Debtors' unprecedented contention that the Committee has control over documents that may be in the possession of its Members but that have never been disclosed to (let alone relied on) by the Committee is also shortsighted as it would have sweeping ramifications for any person or entity who agrees to serve in a representative capacity. For example, prior to the Petition Date, Milbank represented the Ad Hoc Committee, a group that included SVP.  If, under the Debtors' theory, Committee Counsel has control over the Members' documents (regardless of whether they were shared with or relied on by the Committee), then Milbank has control over documents possessed by the individual members of the Ad Hoc Committee.  Similarly, the Debtor would be deemed to have control over documents possessed by its Board members—regardless of whether the documents were created or obtained in their capacities as Board members.

23.     Such a ruling would deter people and entities from serving on statutory or ad hoc committees or as officers or directors.  The Motion is also unnecessary and inappropriate since the documents could be sought through the service of subpoena where the target would have the ability to retain its own counsel.

24.     The Debtors' unsupported assertion that committee members are somehow subject to the same discovery obligations as named plaintiffs in a class action lawsuit (Motion ¶ 27) is misguided, erroneous, and demonstrates a fundamental misunderstanding of the role of creditors' committees in the chapter 11 process.  As set forth above, creditors' committees are entities separate and distinct from its members.  The individual members may have interests in a chapter 11 case that differ from the committee on which they serve. Consequently, individual members of a committee often retain their own counsel to represent them in connection with their individual

legal interests in that same bankruptcy case.[8]  This is in stark contrast to named plaintiffs in a class action, which requires that "the questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Unlike in a class action, the creditors' committee does not pursue common claims on behalf of the entire constituency.  Rather, the committee serves to help administer and negotiate the chapter 11 case by giving the class of unsecured creditors a voice in the larger bankruptcy proceeding. *See In re Roman Cath. Church of Archdiocese of New Orleans*, No. 20-10846, 2021 WL 454220, at *9 (Bankr. E.D. La. Feb. 8, 2021) (for creditor group to be adequately represented by a committee, the interests of that group must "have a meaningful voice on the committee in relation to their posture in the case.") (internal quotations omitted).[9]

25.     For the reasons set forth herein, the Motion is without merit and should be denied.

## CONCLUSION

For the foregoing reasons, the Committee respectfully requests that the Court deny the Motion and grant any other relief that the Court deems just and proper.

---

[8] This basic principle is highlighted by the fact that numerous Committee Members—including Mr. Row, LLC, Easton Coach Company, and FMC GlobalStat Inc.—have retained their own counsel to represent their interests individually, separate and apart from that of the Committee.  *See* Docket Nos. 74, 163, 212.

[9] Finally, the Debtors rely on inapplicable case law that is almost 100 years old, *see* Woods v. *City Nat l Bank & Trust Co.*, 312 U.S. 262, 268-269 (1941)), or that otherwise does not support the Debtors' position, *see In re First Republic Bank Corp.*, 95 B.R. 58, 61 (Bankr. N.D. Tex. 1988) (standing for the general and unremarkable proposition that "[a] member of a creditors' committee owes a fiduciary duty to all creditors represented by the committee."); *In re Adelphia Commc'ns Corp.*, 544 F.3d 420, 424 n.1 (2d Cir. 2008) (standing for general proposition that "a committee owes a fiduciary duty to the class it represents, but not to the debtor, other classes, or the estate."); *Smart World Techs., LLC* v. *Juno Online Servs. Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 175 n.12 (2d Cir. 2005) (same).  The Debtors' remaining cases also fail to support their position because that stand for the uncontroversial proposition that committees generally owe fiduciary duties to the creditor constituents.

Dated: May 9, 2024                    Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES, LLP**

*/s/ James W. Walker*

James W. Walker (TX Bar No. 20709600)
Benjamin L. Wallen (TX Bar No. 24102623)
Theodore S. Heckel (TX Bar No. 24133488)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone:  (713) 691-9385
Facsimile:  (713) 691-9407
Email:  jwalker@pszjlaw.com
          bwallen@pszjlaw.com
          theckel@pszjlaw.com

 -and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Cia H. Mackle (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email:  jpomerantz@pszjlaw.com
          cmackle@pszjlaw.com

 -and-

Bradford J. Sandler (admitted *pro hac vice*)
John A. Morris (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
Email:      bsandler@pszjlaw.com

*Counsel to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 9, 2024, a true and correct copy of the foregoing document was caused to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ James W. Walker*
James W. Walker

# **EXHIBIT 1**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| HORNBLOWER HOLDINGS LLC, *et al.*[1] | ) Case No. 24-90061 (MI) |
| | ) |
| Debtors. | ) (Jointly Administered) |
| | ) |

## HORNBLOWER HOLDINGS, LLC'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS BY THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Pursuant to Rules 7026 and 7034 of the Federal Rules of Bankruptcy Procedure, Rules 26 and 34 of the Federal Rules of Civil Procedure, and the corresponding Local Rules of the United States Bankruptcy Court for the Southern District of Texas (collectively, the "Rules"), Hornblower Holdings, LLC, *et al.* ("Debtors"), by and through its undersigned counsel, hereby requests that the Official Committee of Unsecured Creditors' (the "Committee") (collectively, the "Parties") produce for inspection and copying, the Documents identified below, on or before May 1, 2024, to Paul, Weiss, Rifkind, Wharton, & Garrison LLP, 1285 Avenue of the Americas, New York, New York 10019-6064, or at such other time and place as may be agreed upon by counsel.

---

[1] The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

## **INSTRUCTIONS**

1.      Any ambiguity as to any Request shall be construed so as to require the production of the greater number of Documents

2.      In responding to these Requests, You shall produce all responsive Documents which are in Your possession, custody, or control or in the possession, custody, or control of Your employees, agents, attorneys, representatives, affiliates, or any other Person acting under Your control or on your behalf.  A Document shall be deemed to be within Your control if You have the right to secure the Document or a copy of the Document from another Person having possession, custody, or control of the Document.

3.      These Requests are continuing in nature under Fed. R. Bank. P. Rule 7026(e). Any Document created or identified after service of any response to these Requests that would have been produced in response had the Document then existed or been identified shall promptly be produced whenever You find, locate, acquire, create, or become aware of such Documents, up until the resolution of this action.

4.      Each Request shall be responded to fully, unless it is in good faith objected to, in which event the reasons for the objection shall be stated with specificity, and the objection must state whether any responsive materials are being withheld on the basis of that objection.  If an objection pertains only to a portion of a Request, or to a word, phrase, or clause contained in a Request, You shall state Your objection to that portion only and respond to the remainder of the Request.

5.      Documents that are produced shall be identified according to which Request they are responsive to, or in the order and in the manner in which they are usually kept or organized.

2

6.      Each requested Document shall be produced in its entirety, along with any attachments, drafts and non-identical copies, including without limitation copies that differ by virtue of handwritten or other notes or markings.  If a Document responsive to these Requests cannot be produced in full, it shall be produced to the extent possible with an explanation stating why production of the remainder is not possible.  Documents contained in file folders, loose-leaf binders and notebooks with tabs or labels identifying such Documents are to be produced intact together with such file folders, loose-leaf binders or notebooks.  All labels identifying such Documents, files, folders, or binders shall be copied.  Documents attached to each other shall not be separated, and all such attached Documents shall be produced.

7.      If any Document responsive to these Requests has been destroyed, discarded, or lost, or is otherwise not capable of being produced, identify each such Document and set forth the following information: (a) the date of the Document; (b) a description of the subject matter of the Document; (c) the name and address of each Person who prepared, received, viewed, or had possession, custody, or control of the Document; (d) the date when the Document was destroyed, discarded, or lost; (e) the identity of the Person who directed that the Document be destroyed, who directed that the Document be discarded, or who lost the Document; and (f) a statement of the reasons for and circumstances under which the Document was destroyed, discarded, or lost.

8.      You are required to produce ESI (as defined below) in Optical Character Recognition (OCR) searchable form via fileshare or other similar medium mutually agreed upon.

3

9.      For documents created by Excel or other spreadsheet programs, PowerPoint or other special presentation programs, database files, or any other file types that reasonably require viewing in their native format for a full understanding of their content and meaning, produce the files in native and TIFF formats. Name the produced native file with the Bates number on the first page of the corresponding TIFF production of the file/document. Group native files within incrementally named "NATIVE" directories, separate from images directories.

10.     All documents produced should be Bates numbered sequentially, with a unique number on each page, and with a prefix identifying the party producing the document.

11.     If any documents are withheld from production on the alleged grounds of privilege or immunity (whether under any common law, statute, or otherwise), You shall identify each such document on the due date of production by stating:

      a.      The identity of each person who prepared and/or signed the document;

      b.      The identity of each person designated as an addressee;

      c.      The identity of each person who received any copy of the document;

      d.      The date of the document;

      e.      The subject matter of the document;

      f.      The type of document; and

      g.      The basis for withholding the document.

Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged, or protected information should be produced, but that portion of the document for which privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

12.     Unless otherwise indicated, the Documents requested include all Documents that have come into existence or been utilized, read, transcribed, copied, placed in or retrieved from any file between February 21, 2024 to the present.

13.     If no Documents or things exist that are responsive to a particular paragraph of these Requests, so state in writing.

14.     Objection will be made at the time of trial to any attempt to introduce evidence which is sought by these Requests and to which no disclosure has been made.

## <u>DEFINITIONS</u>

1.     "Bankruptcy Code" means Chapter 11 of Title 11 of the United States Code.

2.     "Committee" shall mean the Official Committee of Unsecured Creditors, as well as its subsidiaries, affiliates, predecessors- and successors-in-interest, agents, assigns, employees, representatives, officers, directors, advisors, attorneys, consultants, and any other Persons acting for or on its behalf.

3.     "Communications" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise) and includes all oral and written communications of any nature, type or kind including, but not limited to, any ESI (and any attachments thereto), Documents, telephone conversations, discussions, meetings, facsimiles, e-mails,

pagers, memoranda, and any other medium through which any information is conveyed or transmitted.

4.      "Concerning" means and includes relating to, constituting, defining, evidencing, mentioning, containing, describing, discussing, embodying, reflecting, edifying, analyzing, stating, referring to, dealing with, or in any way pertaining to the subject matter.

5.      "Document" means and includes all written, recorded, transcribed or graphic matter of every nature, type and kind, however and by whoever produced, reproduced, disseminated or made. This includes, but is not limited to, Communications, ESI, "writings" as defined by Rule 1001 of the Federal Rules of Evidence, copies or drafts, and any tangible or intangible thing or item that contains any information. Any Document that contains any comment, notation, addition, insertion or marking of any type or kind which is not part of another Document, is to be considered a separate Document. "Documents" always includes Communications, whether so stated or not.

6.      "ESI" has the meaning ascribed to it in Federal Rules of Civil Procedure 16, 26 and 34(a), as well as any additional meaning given to ESI by the Instructions preceding these Definition.

7.      "Request" means an individual request for information included in the Requests.

8.      "Requests" means the Debtors' First Request for Production of Documents by the Committee.

9.      "You" or "Your" means the Committee.

10.      The use of the singular form of any word includes the plural and vice versa.

11.     The use of any verb in any tense shall be construed as the use of that verb in all other tenses.

12.     The above definitions apply to any use of terms described above and their variants, whether capitalized or not, throughout the requests.

## DOCUMENT REQUESTS

1.     Any and all Documents and Communications from the files of the members and/or advisors of the Committee that the Committee may or intends to rely on in connection with any confirmation objection.

2.     All Committee bylaws, charters or other foundational/governing Documents.

3.     All minutes, recordings or other memorialization of any Committee meetings or calls, whether or not all members of the Committee were present.

4.     All presentations made, disclosed or otherwise provided to the Committee or any of its members concerning the Debtors.

5.     All valuations and appraisals concerning the Debtors prepared by, on behalf of or at the direction of the Committee and/or any Committee members or advisors.

Dated: April 22, 2024

Respectfully submitted,

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

By:  /s/ *Gregory F. Laufer*

Gregory Laufer
Jake Adlerstein
Kyle Kimpler
Andrew Ehrlich
1285 Avenue of the Americas
New York, NY 10019
Phone: (212) 373-3000
Fax: (212) 757-3990
glaufer@paulweiss.com
jadlerstein@paulweiss.com
kkimpler@paulweiss.com
aehrlich@paulweiss.com

***Proposed Counsel to the Debtors and the Debtors in Possession.***

## <u>Certificate of Service</u>

I certify that on April 22, 2024, I caused a copy of the foregoing document to be served by email on counsel for the UCC.

*/s/ Gregory F. Laufer*
Gregory F. Laufer

**EXHIBIT 2**



PACHULSKI
STANG
ZIEHL &
JONES

Cia H. Mackle

April 28, 2024

310.772.2328
cmackle@pszjlaw.com

**LOS ANGELES**

10100 SANTA MONICA BLVD. 13TH FL.
LOS ANGELES. CALIFORNIA 90067-4003
310.277.6910

**NEW YORK**

780 THIRD AVENUE. 34TH FL.
NEW YORK, NEW YORK 10017-2024
212.561.7700

**WILMINGTON**

919 NORTH MARKET STREET. 17TH FLOOR.
P.O. BOX 8705
WILMINGTON. DELAWARE 19899-8705
302.652.4100

**HOUSTON**

700 LOUISIANA STREET. STE. 4500
HOUSTON, TEXAS 77002
713.691.9385

**SAN FRANCISCO**

ONE SANSOME STREET. 34TH FL. STE. 3430
SAN FRANCISCO, CALIFORNIA 94104
415.263.7000

<u>**Via E-mail**</u>

Gregory F. Laufer, Esq.
Paul, Weiss, Rifkind, Wharton
& Garrison LLP
1285 Avenue of the Americas
New York, NY 10019-6064
United States
glaufer@paulweiss.com

Re:   **In re Hornblower Holdings, LLC, Case No. 24-
90061 (MI)**

Dear Mr. Laufer:

We write in response to (i) your email of April 26, 2024
regarding the Debtors' first set of requests for production to the
Committee and your demand that Pachulski Stang Ziehl & Jones
LLP ("<u>PSZJ</u>") collect and produce documents of Committee
members acting in their individual capacities; and (ii) our meet and
confer call held on April 26, 2024 regarding the Committee's
outstanding document requests to the Debtors.

<u>**Your April 26, 2024 Email:**</u>

During our call, you stated that the Debtor would withhold
further production efforts until PSZJ provided a written response
concerning our purported obligation to collect and produce
documents of Committee members held in their individual
capacities.  This was plainly improper and we appreciate the quick
retraction of this position in your follow up e-mail.

Substantively, your statements that we "were not remotely
prepared" to discuss the Debtor's first set of requests to the
Committee and that the Committee "made absolutely no
commitments to produce anything" are false:

4856-5243-6410.3 36999.00002

Gregory F. Laufer, Esq.

Page 2



- With respect to Request No. 1, Mr. Walker stated that such request seeks PSZJ's work product and any documents the Committee intends to rely on will be provided in due course in connection with the parties' agreed scheduling order once such decisions are final.

- With respect to Request No. 2, Mr. Walker stated that the Committee would produce the Committee's bylaws (the "<u>Bylaws</u>"), which is the only document responsive to Request No. 2. A copy of the Bylaws is enclosed herewith.

- With respect to Request No. 3, Mr. Walker stated that the Committee intended to produce Committee meeting agendas. Mr. Walker further stated that there are no other documents responsive to the request.

- With respect to Request No. 4, Mr. Walker stated that all presentations provided to the Committee were privileged and would not be produced.

At that point, you demanded to know whether Committee members individually had presentations or valuations and whether we had yet requested such documents from the Committee members. In response, Mr. Morris explained that PSZJ does not represent the Committee members individually such that if the Debtors wanted documents from Committee members acting in their individual capacities, the Debtors would need to subpoena the Committee members individually. Mr. Morris's statement is validated by the Bylaws:

> The Committee's attorneys represent the Committee with regard to matters relating to the Chapter 11 Cases. The Committee's attorneys and other professionals do not represent the Members in their individual capacities.

Bylaws, XIII.B. Contrary to your forceful insistence to the contrary, Mr. Morris's statement is also consistent with applicable law. *See, e.g.*, *In re Roman Cath. Church of the Archdiocese*, 652 B. R. 138, 142 (Bankr. D. La. 2023) (committee counsel represents committee "as a single unit" and distinguishing between committee counsel and counsel who represents individual committee member(s)); *In re FirstPlus Fin., Inc.*, 254 B.R. 888 (Bankr. N.D. Tex. 2000) (committee counsel represents "them as a whole" and efforts of counsel of a single committee member helping that member discharge its duties as a committee member are not compensable by the estate).

Analogously, Paul Weiss does not represent Crestview in connection with these proceedings, even though (unlike in the case of the Committee members) Crestview is a super-majority owner of the Debtors and a Plan proponent under the RSA. In obvious recognition of that, the Committee has never asked the Debtors to produce documents in Crestview's possession, custody or control. Instead, the Committee has made separate document requests of

Gregory F. Laufer, Esq.

Page 3



Crestview, as you could have done to individual Committee members.  PSZJ will not ask Committee members to search for and produce documents that have never been shared with the Committee and are possessed by them *in their individual capacities*.  This applies to Request No. 4 and Request No. 5.

Finally, even if PSZJ did somehow represent Committee members individually, the Debtors' request for Committee members' individual valuations (assuming any such valuations exist) is objectionable.  *See, e.g.*, *In re Legacy Reserves, Inc*., No. 19-33395 (MI), Hrg. Tr. at 8-9 (Bankr. S.D.Tex. Oct. 10, 2019); *In re Washington Prime Group Inc*., No. 21-31948 (MI), Hrg. Tr. at 15-16, 21-22 (Bankr. S.D.Tex. Aug. 3, 2021); *In re Cobalt Int'l Energy Corp*., No. 17-36709 (MI), Hrg. Tr. At 9, 50 (Bankr. S.D. Tex. Apr. 2, 2018); *In re Energy XXI, Ltd*., No. 16-31928 (DRJ), Hr'g Tr., at 77:9-12 (Bankr. S.D. Tex. Aug. 23, 2016).

For the foregoing reasons, we believe the Committee is on firm ground in refusing to solicit and produce documents from Committee members maintained solely in their individual capacities.  Nevertheless, we are prepared to do just that provided that the Debtors solicit and produce Crestview's internal valuations.  Please let us know if the Debtors are amenable to such a reciprocal arrangement.

We otherwise reiterate our intent to serve our responses and objections to the Debtors' requests on Monday and complete our production by the May 1, 2024 deadline.

**Committee's Requests to Debtors:**

*April 22, 2024 Requests (the "Plan Requests"):*

As discussed during the meet and confer call, several requests concerning Plan Requests remain outstanding. To assist the Debtors, we prioritized the following items:

- Business plan in a form that is not hard-coded (Plan Request No. 2)

- Internal or third-party research, documentation, or workbooks that formed the basis of the Business Plan with a specific focus on pricing assumptions and traffic assumptions, and any bridges, analyses or workbooks concerning or evidencing the basis for any sequential change between any forecasts (Plan Request No. 3)

- Documents responsive to Plan Request Nos. 4-6.  You had stated those would be provided in connection with expert discovery; we believe those can be produced consistent with the May 1, 2024 deadline as the request was for documents underlying a report already produced rather than the expert report.

Gregory F. Laufer, Esq.

Page 4



- Communications regarding any perceived or actual conflict of interest between the Debtors and Crestview (not including privileged communications) (Plan Request No. 8).

The remainder of the requests we either deemed satisfied upon your representation that such requests were completed, or agreed to confer with the Committee's other professionals to ensure they are high-priority requests. We will follow up with you as and if necessary.

*March 18, 2024 Requests (the "First Set of Requests"):*

In addition, there are still a few outstanding requests from the Committee's First Set of Requests. Please provide the following prioritized items from the First Set of Requests:

- Communications regarding executive compensation and prepetition bonus program (First Set, Request No. 71).

- The Debtors' proposed search terms related to First Set of Requests No. 36. In Mr. Ehrlich's email on April 19, 2024, the Debtors stated that they "will propose terms for an email search and provide that proposal to the Committee." We have yet to receive any such proposal and you were not prepared to discuss that on the most recent meet and confer. We are ready to meet and confer on your proposed search terms.

*April 4, 2024 Requests (the "Second Set of Requests"):*

We continue to be concerned by the Debtors' ongoing failure to produce emails responsive to the Committee's document requests, especially in light of the agreed May 1, 2024 substantial completion date. During our meet and confer call, you informed us that emails responsive to the Committee's Second Set of Requests (which were served on April 4, 2024) had just been uploaded but upon review, we found only 29 emails. We cannot believe this paltry production constitutes the Debtor's entire email production. To reiterate, the Committee needs the following prioritized items related to the Plan requested in the Second Set of Requests by May 1, 2024:

- Internal and external Communications regarding the enterprise value of the Debtors and Journey Beyond; the Journey Beyond Business Plan; and presentations, valuations, appraisals, solvency analyses, models or reports concerning the enterprise value of the Debtors and Journey Beyond (Second Set of Request Nos. 1-4).

Gregory F. Laufer, Esq.

Page 5



- Internal and external Communications supporting the $50 million of consideration to be provided by Crestview Partners to acquire the Journey Beyond business pursuant to the Plan (Second Set of Requests No. 5).

- External Communications between the Debtors and Crestview Concerning Crestview's debt holdings of Debtor or Journey Beyond debt (Second Set of Requests No. 20).

- Management Services Agreement among Crestview, American Queen Holdings, LLC, HMS Global Maritime, LLC and Hornblower Group, Inc. dated April 27, 2018; any Payment Letters, including that certain amended and restated payment letter, dated as of February 27, 2023 referenced in CV00001945, attached, or any further amended and restated payment letter and any documents or communications related thereto (Second Set of Requests No. 21).

- Internal and external Communications concerning financing transactions since October 1, 2023 including the November 2023 and December 2023 incremental loans (Second Set of Requests No. 22).

- Internal and external Communications with concerning the Debtors' and Journey Beyond's prepetition transactions with Crestview (Second Set of Requests No. 25).

You suggested that our request for email communications (which have always been part of the requests) might require extension of the agreed-upon May 1, 2024 substantial completion schedule.  We are concerned by this belated suggestion given that the Second Set of Requests was served on April 4, 2024 and the parties negotiated the discovery schedule while those requests were outstanding.  Moreover, the Debtors did not formally produce **any** documents last week other than the 29 emails.  While you claim that you are attempting to move "heaven and earth" to comply with the Committee's discovery requests, the Debtors' production speaks for itself.

We hope the Committee will receive all responsive documents listed above by May 1, 2024 as agreed.  If the Debtors will be unable to meet that deadline, please advise us of what actions the Debtors have taken since receiving the Second Set of Requests on April 4, 2024 to comply with the requests—including identifying the custodians and search terms used and the dates of the searches—so the Committee can assess whether it needs to move to compel production or seek an extension of the confirmation schedule.

Gregory F. Laufer, Esq.

Page 6



      The Committee reserves all of its rights.

              Sincerely,

              Cia H. Mackle

CHM
Enclosure: Committee Bylaws
cc:    Andrew Ehrlich, Esq.
        Jonathan Jaroslawicz, Esq.
        James W. Walker, Esq.
        John A. Morris, Esq.

# **EXHIBIT 3**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| HORNBLOWER HOLDINGS LLC, *et al.*,[1] | ) | Case No. 24-90061 (MI) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS'
OBJECTIONS AND RESPONSES TO HORNBLOWER HOLDINGS, LLC'S
<u>FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

The Official Committee of Unsecured Creditors (the "<u>Committee</u>") of the debtors and debtors in possession (the "<u>Debtors</u>") in the above-captioned jointly administered chapter 11 cases hereby responds to *Hornblower Holdings, LLC's First Request for Production of Documents by the Official Committee of Unsecured Creditors* (the "<u>Requests</u>")[2] served by the Debtors.  The Committee's responses and objections the Requests (the "<u>Responses</u>") are made pursuant to Federal Rules of Civil Procedure ("<u>FRCP</u>") 26 and 34, as made applicable in bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure 7026 and 7034.

**<u>GENERAL OBJECTIONS</u>**

Unless otherwise specified, the following general objections and caveats are applicable to each and every Response and are incorporated into each Response as though set forth in full:

---

[1]     The last four digits of Debtor Hornblower Holdings LLC's tax identification number are 6035. Due to the large number of debtor entities in these chapter 11 cases, for which the Debtors have requested joint administration, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at https://omniagentsolutions.com/Hornblower. The location of the Debtors' service address for purposes of these chapter 11 cases is: Pier 3 on The Embarcadero, San Francisco, CA 94111.

[2]     Capitalized terms not defined herein shall have the meanings set forth in the Requests.

1.      The Responses contained herein are based upon information presently known and ascertained by the Committee.

2.      The Committee objects to the Requests to the extent they seek information or documents that are protected from discovery by the attorney-client privilege, the attorney work product doctrine, or any other privilege or immunity.  The inadvertent disclosure or production of any document that is protected from discovery by any privilege or immunity shall not constitute a waiver of any such privilege or immunity.  All references in these objections and responses to the Committee's agreement to produce documents shall be construed to mean non-privileged documents.

3.      The Committee objects to the Requests to the extent they request information that is not in its possession, custody or control, or is more readily available to the Debtor from another source or for which the burden of obtaining such information is not substantially greater for the Debtor than it is for the Committee.

4.      The Committee objects to the Requests to the extent they call for legal conclusions and/or legal analyses.

5.      The Committee objects to the Requests to the extent they seek information that is not relevant to Plan Confirmation or any party's claims or defenses in connection therewith, and are not proportional to the needs of the case.  *See* Fed. R. Civ. P. 26(b)(1).

6.      The Committee objects to the Requests on the ground that the timeframe provided therein, "February 21, 2024 to the present" is overly broad in scope because the Committee was not constituted until March 5, 2024.

7.      All specific responses to the Requests are provided without waiver of, and with express reservation of (a) all objections as to competency, relevancy, materiality, and

2

admissibility of the responses and the subject matter thereof as evidence for any purpose in any further proceedings in this matter; (b) all privileges, including the attorney-client privilege and work product doctrine; (c) the right to object to the use of such responses, or the subject matter thereof, on any ground in any further proceeding in this action; and (d) the right to object on any ground at any time to a demand or request for further responses to these or any other discovery requests or other discovery proceedings.

8.      The Committee objects to the Requests to the extent they seek to expand on or conflict with Federal Rules of Civil Procedure, the Federal Rules of Bankruptcy Procedure and/or the Local Rules of the Bankruptcy Court for the Southern District of Texas.

9.      The Committee's agreement to produce documents with respect to a specific Request shall not be construed as a representation that such documents actually exist or are within the Committee's possession, custody or control.

10.      These General Objections and Responses shall be deemed to be incorporated by reference into the Specific Responses and Objections set forth below.

11.      The Committee will produce non-privileged Documents and Communications responsive to the Request pursuant to a confidentiality agreement acceptable to the Committee and the Debtor.

12.      The Committee reserves the right to supplement or modify these Responses, and any document production made in response thereto, as and when it deems appropriate.

4869-4010-4122.4 36999.00002

## SPECIFIC OBJECTIONS AND RESPONSES TO DOCUMENT REQUESTS

**DOCUMENT REQUEST NO. 1:**

Any and all Documents and Communications from the files of the members and/or advisors of the Committee that the Committee may or intends to rely on in connection with any confirmation objection.

**RESPONSE NO. 1:**

The Committee objects to Request No. 1 on the grounds that it seeks information that is protected by the attorney work product privilege.

Subject to the General Objections and this Specific Objection and Response, the Committee will identify (and produce, if necessary) all Documents and Communications it intends to rely on in connection with its confirmation objection as agreed in the *Order Setting Litigation Schedule* [Docket No. 826] (the "Scheduling Order").

**DOCUMENT REQUEST NO. 2:**

All Committee bylaws, charters or other foundational/governing Documents.

**RESPONSE NO. 2:**

Subject to the General Objections, the Committee avers that it has produced all documents responsive to this Request (*i.e.*, the Committee's bylaws).

**DOCUMENT REQUEST NO. 3:**

All minutes, recordings or other memorialization of any Committee meetings or calls, whether or not all members of the Committee were present.

**RESPONSE NO. 3:**

Subject to the General Objections, the Committee will produce non-privileged documents responsive to this Request.

**DOCUMENT REQUEST NO. 4:**

All presentations made, disclosed or otherwise provided to the Committee or any of its members concerning the Debtors.

**RESPONSE NO. 4:**

The Committee objects to Request No. 4 to the extent it seeks documents (a) protected by the attorney work product privilege, or (b) in the custody, possession, or control of Committee members in their individual capacities.  *See* letter from Cia H. Mackle to Gregory F. Laufer, dated April 28, 2024 and incorporated herein by reference.

Subject to the General Objections and this Specific Objection and Response, the Committee will produce any non-privileged documents responsive to this Request that were made, provided, or otherwise disclosed to the Committee.

**DOCUMENT REQUEST NO. 5:**

All valuations and appraisals concerning the Debtors prepared by, on behalf of or at the direction of the Committee and/or any Committee members or advisors.

**RESPONSE NO. 5:**

The Committee objects to Request No. 5 to the extent it seeks documents (a) protected by the attorney work product privilege, or (b) in the custody, possession, or control of Committee members in their individual capacities.  *See* letter from Cia H. Mackle to Gregory F. Laufer, dated April 28, 2024 and incorporated herein by reference.

Subject to the General Objections and these specific objections, the Committee will produce its valuations concerning the Debtors that were, or will be, provided to the Committee in accordance with the expert discovery provisions set forth in the agreed Scheduling Order.

4869-4010-4122.4 36999.00062

Dated: April 29, 2024     Respectfully submitted,

**PACHULSKI STANG ZIEHL & JONES, LLP**

*/s/ James W. Walker*

Michael D. Warner (TX Bar No. 00792304)
James W. Walker (TX Bar No. 20709600)
Benjamin L Wallen (TX Bar No. 24102623)
700 Louisiana Street, Suite 4500
Houston, TX 77002
Telephone:  (713) 691-9385
Facsimile:  (713) 691-9407
Email:  mwarner@pszjlaw.com
       bwallen@pszjlaw.com
       theckel@pszjlaw.com

-and-

Jeffrey N. Pomerantz (admitted *pro hac vice*)
Cia H. Mackle (admitted *pro hac vice*)
10100 Santa Monica Blvd., 13th Floor
Los Angeles, CA 90067
Telephone: (310) 277-6910
Facsimile: (310) 201-0760
Email: jpomerantz@pszjlaw.com
      cmackle@pszjlaw.com

-and-

Bradford J. Sandler (admitted *pro hac vice*)
780 Third Avenue, 34th Floor
New York, NY 10017
Telephone: (212) 561-7700
Facsimile:  (212) 561-7777
Email:    bsandler@pszjlaw.com

*Proposed Counsel to the Official Committee of Unsecured Creditors*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 29, 2024, I caused a copy of the foregoing document to be served via electronic mail on counsel to the Debtors.


<u>*/s/ James W. Walker*__</u>
James W. Walker