<pre>
                    UNITED STATES BANKRUPTCY COURT
                    SOUTHERN DISTRICT OF TEXAS
                         HOUSTON DIVISION

                                  )   CASE NO: 24-90061
     HORNBLOWER HOLDINGS, LLC,    )
     et al.,                      )   Houston, Texas
                                  )
              Debtors.            )   Monday, May 6, 2024
                                  )
                                  )   5:00 PM to 5:35 PM
     -----------------------------)
                          MOTION HEARING

             BEFORE THE HONORABLE MARVIN ISGUR
             UNITED STATES BANKRUPTCY JUDGE
     APPEARANCES:

     For Debtors:            ANDREW EHRLICH
                             Paul, Weiss
                             1285 Avenue of the Americas
                             New York, NY 10019
                             212-373-3142

     For Official Committee: JAMES W. WALKER
                             BENJAMIN L. WALLEN
                             Pachulski Stang Ziehl & Jones
                             700 Louisiana Street, Suite 4500
                             Houston, TX 77002
                             713-691-9385

     For Crestview Advisors: ELLIOT MOSKOWITZ
                             Davis Polk
                             105 Lexington Avenue
                             New York, NY 10017
                             212-450-4241

     Court Reporter:         UNKNOWN

     Courtroom Deputy:       UNKNOWN

     Transcribed by:         Veritext Legal Solutions
                             330 Old Country Road, Suite 300
                             Mineola, NY 11501
                             Tel: 800-727-6396


     Proceedings recorded by electronic sound recording;
     Transcript produced by transcription service.
</pre>

HOUSTON, TEXAS; MONDAY, MAY 6, 2024; 3:58 PM

(Call to Order)

THE COURT:  (indiscernible) Hornblower Holdings case, 24-90061.  If you wish to speak at today's hearing, please press 5-star one time on your line so that I can get your lines active.  Mr. Ehrlich, good afternoon.

MR. EHRLICH:  Good afternoon, Your Honor.

THE COURT:  Go ahead and make a formal appearance for me.

MR. EHRLICH:  Yes, Your Honor.  Andrew Ehrlich, Paul Weiss firm, on behalf of the Debtors.

THE COURT:  Thank you.  I believe Mr. Moskowitz (indiscernible).

MR. MOSKOWITZ:  Indeed.  Thank you, Your Honor.  For the record, Elliot Moskowitz of Davis Polk representing Advisors.

THE COURT:  Okay.  (indiscernible) but we will get to anyone else in just a second.  Mr. Walker, is that you?

MR. WALKER:  James Walker, Your Honor.

THE COURT:  Mr. Walker, (indiscernible).

MR. WALKER:  Good afternoon, Your Honor.  It's Jim Walker with Pachulski Stang Ziehl & Jones firm appearing for the unsecured Creditors committee.

THE COURT:  Thank you.  And, Mr. Wallen, I should have you on the line as well.

MR. WALLEN:  Good afternoon, Judge.  It's Ben Wallen, Pachulski Stang Ziehl & Jones also on behalf of the committee.  Probably Mr. Morris from our team will also joining, Judge.

THE COURT:  All right.  If anybody else wishes to speak, press 5-star one time on your phone.  If you've already pressed it, please do not do so again.  I'll get this computer to speed up at some point.  I don't know why it's going so slow.  All right.  That's everyone that has pressed 5-star at this point.

So, tell me what we have.

MR. MOSKOWITZ:  Good afternoon, Your Honor. Elliot Moskowitz, Davis Polk, for Crestview.  We are the movant with respect to one the documents that are on file before Your Honor.  If it pleases the Court, I'm happy go first, but of course you take the hearing whatever direction Your Honor wants to take it, obviously.

THE COURT:  Go ahead, Mr. Moskowitz.

MR. MOSKOWITZ:  Thank you, Your Honor.  And let me just begin by thanking the Court for making the time for this hearing on very short notice.  We very much appreciate it.  I know the Court has a very busy week -- a whole variety of areas so we thank the Court.  I know I speak on behalf of both the parties when I express that thanks.

Your Honor, we've worked I think cooperatively

with counsel to narrow the issues that have to be presented for (indiscernible) before Your Honor.  I want to thank counsel, frankly, for working with us cooperatively on that. And when I'm referring to counsel, I'm referring to the counsel for the official committee of unsecured creditors.

At the end of the day, we have one particular document request that we have a dispute with the committee over.  We have also a dispute with respect to deposition topics, but I would anticipate that Your Honor's ruling with respect to documents probably guides what we likely (indiscernible) with respect to depositions so I'm going to focus my remarks on the documents in question.  And this is, I think, an age-old issue that's come before Your Honor before and I argued this issue in front of Your Honor in the Washington Prime case so I know it's a familiar one to the Court, and that is, the question of the extent to which internal creditor documents should be the subject of production in a discovery exercise in a Chapter 11 case leading up to plan confirmation.

Let me just say as a threshold matter that Crestview is not putting on any evidence at the confirmation hearing.  We're going to leave that to the Debtors and their professionals and their witnesses.

Let me just -- before I go into the internal documents issue, let me just review for the Court what it is

that the creditors committee is already getting because I don't want to -- I don't want the Court to be (indiscernible) with the impression that they're not getting a robust record that's appropriate for a case of this nature.  But just very briefly, the creditors committee is already getting all of the communications that are between Crestview on the one hand or its professionals and the Debtors on the other hand and its professionals.  And they're getting that largely in a production that's being made by the Debtors, but they're getting every document -- as far as we understand -- every document that is between Crestview on the one hand and the Debtors on the other hand. They're getting a full record of that so that's not in dispute I don't think with respect to the litigation.

They're also getting all the records of Crestview's pre-petition purchases of debt which I know is been the subject of some attention by the committee in a pleading that was filed before this Court.  They're getting the transaction documents themselves.  They're getting all of Crestview's communications with SVP, the other major party and interest in the case, and they're even in this case getting Crestview's internal investment committee memos so that we are producing to them.  We're redacting those for valuation type material with agreement of the committee, but they're even getting our investment committee memos which is

not something that you see produced in every case.

And so, then that just leaves the sole issue of dispute which is a request also for Crestview's internal strategic emails within Crestview, never shared with another party, with respect to Hornblower.  And so, our view, Your Honor, respectfully, is that, both based on burden and proportionality, that that goes beyond what is appropriate to produce in this case.  And I'll be very brief, Your Honor, expounding on my remarks.  So, let me just -- if I may, just explain the views on burden and proportionality and I'm happy to cede the podium.

On burden, this Court has observed in Washington Prime and in other cases that internal documents of a creditor not shared with anyone else in a case where they're not putting on any evidence at a confirmation hearing is (indiscernible) sensitive documents and would take a lot to make the creditor produce those documents because it's hard to see how those documents go to a debtor's good faith and the issues that are put forward before a Court at a confirmation hearing when deciding whether to approve a plan.  In addition to that, naturally -- I think the Court can understand that if we're talking about years of internal communications within an institution, it could be a lot of documents to produce and it could be costly as well.

In terms of proportionality, we don't know --

we've asked the committee a number of times -- we don't know to what issues these documents would even relate.  We've tried to confer about that.  I'm sure they'll speak for themselves.  I'm sure they'll speak for themselves at this hearing.  We've already produced documents, not only to the committee, but also to the special committee conducting its own investigation.  So, we (indiscernible) overlapping investigations here.

And then I think it's worth noting that, obviously, we believe committee has a job to do for sure and we respect that completely and that's why we're being accommodating to them with respect to production.  But it's still worth noting from a proportionality standpoint, and we cited case law in our brief where courts have considered this, where is UCC likely to recover (indiscernible) in the case.  And at the moment, the UCC is very much out of the money, and even if you were to -- $1.3 billion of debt funded them in the case including the DIP, there's $640 million deficiency claim -- you'd have to hit and utter homerun and run (indiscernible) validate Crestview's piece of this, it would take -- there was just tremendous hurdles that they would need to overcome in order to achieve any kind of recovery with their constituents.  So, we think that comes into the proportionality issue as well.

And so, Your Honor, those are our remarks with

respect to internal documents.  I'll just make one more sentence with respect to depositions.  With respect to the depositions, they served a 30(b)(6) notice on Crestview.  The topics -- we've reached -- we have largely reached agreement with respect to the topics that are appropriate, but here again, there are a few topics that just go to a broad swath of transactions.  The UCC is taking Debtor depositions, multiple Debtor depositions, with respect to the facts of the transactions, and we believe that they can get what they need to know from the Debtor witness with respect to the transactions without also probing a Crestview witness in a 30(b)(6) capacity.  But again, I think the ruling on documents will largely impact where we land on -- in depositions.

Unless Your Honor has any further questions for me, that's my presentation to the Court.

THE COURT:  Thank you, Mr. Moskowitz.  Who wishes to respond.

MR. WALKER:  Your Honor, I would, if it would please the Court.

THE COURT:  All right.  Go ahead, please.

MR. WALKER:  Thank you, Your Honor, and again, we appreciate you taking the time for this.

Your Honor, Crestview's far more than a Creditor.  They're -- as Ms. Flaton testified, and as everyone I think

agrees, they're clearly an insider with respect to all these transactions.  The time doesn't go back to -- the time frame doesn't go back as far as they have indicated.  With respect to these transactions, it goes back to a period of only 18 months prior to the petition date.  And Crestview in its capacity as the Debtor's majority equity holder and its newly acquired capacity as the Debtor's lender will enter under the JBIH term facility, which is -- relates to one of the topics from the deposition, and the beneficiary of the various intercompany transactions involving Journey Beyond.

They negotiated the terms of the SRA directly with SPV.  Ms. Flaton testified that she was effectively on the sidelines so that the sole discussions between Crestview and SPV to secure consensual restructuring.  The plan proposed by the Debtors reflects an agreement reached between Crestview and SPV and allocates substantial value to Crestview.  And its (indiscernible) obligation (indiscernible) fiduciary (indiscernible) to investigate the term and whether or not the value that Crestview is giving is equivalent to substantial value they're receiving under the plan.

We're also in charge of investigating the extent to which Crestview engaged in impermissible insider transactions.  The characterization that the Ad Hoc Groups' counsel appended to the transactions as to their conduct

that actually compelled their favorable treatment under the plan.

The email discovery that we seek with respect to their internal communications -- they're clearly (indiscernible) of that can only relate to the transactions at issue which they were involved so that only goes back 18 months.  They've never indicated in any of their supporting evidence that I've seen as to what type of proportionality or burden that would impose (indiscernible) hold on.

THE COURT:  If it only goes back 18 months, they're telling me that you're requesting items from January 1, 2000 forward.  Where's the mismatch?

MR. WALKER:  Okay, Your Honor.  That was in fact the time frame for all the requests, but with respect to these transactions themselves, they started and were initiated only 18 months prior to petition date.  So, with respect to the specific request (indiscernible) --

THE COURT:  Stop.  Tell me the wording of the request that limits it to 18 months.  I understand you're saying from a practical point of view that maybe what it does, but what if they planned this for another 18 months before that?  Are you only looking for documents for the last 18 months?  Are you looking for (indiscernible)?

MR. WALKER:  No, Your Honor.  We're only looking back to when the transactions started.

THE COURT:  For when it was actually consummated or for when it was first in somebody's head?

MR. WALKER:  Well, Your Honor, we believe that given the dates of the transactions that it would only be a period of 18 months prior to petition date so we -- in our discussions and negotiations with Crestview, we've indicated that that's the period of time that we're looking for.

THE COURT:  But that's not what you said.

MR. WALKER:  I'm sorry, Your Honor?

THE COURT:  Is that what you asked for?

MR. WALKER:  Yes, Your Honor, with respect to these specific requests and these specific transactions. Yes, Your Honor.

THE COURT:  Show me where.

MR. WALKER:  Well, Your Honor, it's just simply the --

THE COURT:  Show me where.

MR. WALKER:  -- the -- it's simply practical nature of the transactions themselves, the 18-month period --

THE COURT:  Show me the documents where it says it.  Just take me there.  What document --

MR. WALKER:  (indiscernible) Your Honor?

THE COURT:  Whatever you (indiscernible) -- but show me in writing where that's done.

MR. WALKER:  Yes, Your Honor.  I can only offer to you as a practical matter, given the information we had about the transactions and how they reviewed the transactional documents themselves, they encompass an 18-month period prior to the petition date.  And that would be the period of time that was the subject of our --

THE COURT:  (indiscernible) how long will it take you to put something in writing that I can read and appreciate and then objections to?

MR. WALKER:  Well, we started our response to the motion, Your Honor, so we can certainly complete that and file it for the Court's benefit.

THE COURT:  No, that's not what I want.  How long will it take you to redo the requests so that on the face of the requests, it's limited to 18 months?

MR. WALKER:  We can get that done within hours, Your Honor.

THE COURT:  Okay.

MR. WALKER:  If that's a suitable time frame for the Court -- we'll work with any time frame you dictate.

THE COURT:  Well, what I want to do is I want to get the actual things you're asking for, not what you're not actually asking for, see if there's still objections, and then we'll come back for a hearing.  In the meantime, I'm going to defer a ruling.

But I really don't like this idea where, you know, in order for me to rule, I have to have underlying knowledge that may be disputed when the documents themselves -- it sounds like from what you're telling me, you could put a date certain.  You could say from January 1 of 2023 through, you know, today.  That might be 17 months not 18.  But I don't know exactly what you're asking for.

MR. WALKER:  Your Honor, we're glad to do that.

THE COURT:  Thank you.

MR. WALKER:  One thing that Mr. (indiscernible) said with respect to how there is a similarity here between the deposition topics and emails themselves of course.  The (indiscernible) term facility relates to topic number 9.  Topic number 76 are effectively subsumed within the (indiscernible) transaction, and topic number 9 so, while we see topics 6 and 7 as being a little bit more specific with respect to the (indiscernible) intercompany notes than topic 7 and the incremental super priority facility than topic 6, those are also all subsumed within topic 9.

And there, we're simply looking at Crestview's direct involvement in that transaction and to the extent that we'd like see their internal communications that (indiscernible) to that, we believe that that's relevant and that's certainly within the pale of discovery which is why we're here.  We've compromised a great deal and, you know,

we believe that the testimony with respect to all of that -- along with the other documents that we have -- is important to our investigation so that we can conduct a (indiscernible) investigation.

THE COURT: (indiscernible) I understand how their internal documents might lead to discoverable information. It doesn't make them not discoverable.  They're arguing a burden question and a proportionality question.  At this stage, tell me why you know that their internal documents must be produced as opposed to letting them produce and be deposed on things that don't include the internal documents and if there are gaps, we come back.

MR. WALKER:  Well, Your Honor, their internal documents -- part of what we're looking at is the extent to which they engaged in these various transactions, effectively to compel the Debtors to give them the rights that they enjoyed and the benefits of their -- that they're securing and value they're getting as a result of the plan.

And so, we'd like to see exactly what they were saying internally as well.  It goes --

THE COURT:  Why do I need to do that?  What do I need to do that now?  I know you want to see it.

MR. WALKER:  Well, because -- yes, Your Honor. Well, because we have yet to take to their deposition and we'd like to have that information to evaluate it prior to

the deposition.  We'd also like to have it to include within the context of, you know, our objection to the plan, and we'd like to be able to include reference to that to the extent that it's relevant, has any bearing on that objection and anything else that we might want to present to the Court with respect to that.

You know, I don't believe it's a proportionality issue.  I mean, it's a short period of time and we certainly address the Court's concerns about the time frame.  They haven't indicated the extent to which, you know, what are the images exactly, right?  I mean, they -- we don't know whether this -- we're talking about 10,000 documents or whether we're talking 1,000 documents.

So, they haven't really established any particular proportionality or burden of evidence to support their objection.  And we don't really know exactly how much -- the one point that was left out that's also important is, while they've given us their communications with SPV, it included any other third parties and we don't know if there are any other third parties.  They've never confirmed or denied that (indiscernible) that include their emails (indiscernible) parties as well.

THE COURT:  As I understand it, though, their objection is not -- they're agreeing that if it's to a third party, they have to produce those.  I'll let Mr. Moskowitz

correct me if I'm wrong.  But if it isn't to a third party and it's totally internal -- totally internal isn't going to create a cause of action.  It might lead to discoverable evidence with third parties, but why wouldn't we start with what occurred with third parties and see if there's a gap?

MR. WALKER:  Well, Your Honor, it could -- the internal communications could shed evidence on (indiscernible) attempt that might exist in one or more of the plans that we're looking at.  So, I (indiscernible) --

THE COURT:  (indiscernible)

MR. WALKER:  Well, the (indiscernible) of the debt as an example, Your Honor.  What was their intent with respect to -- were these to be loans or were they to be purchases of equity.  I think that's an important claim that we're looking that -- where intent is in fact an element as I understand it.  And the internal communications would reflect upon intent to the extent that they do.

But they're --

THE COURT:  (indiscernible) to the intent of the parties, not the intent of one party.  So, you have everything external.  Why isn't that good enough?

MR. WALKER:  Well, Your Honor, it's something we think is an important component of our investigation.  It's something that we wouldn't be here if we didn't feel strongly about.  And (indiscernible) is correct that we have

substantially negotiated as both sides to get here, but one other point I'd like to address too, Your Honor.

You know, to the extent that they want to argue that, well, we're under water so there's no need to engage in any of this is the equivalent of declaring that they're going to win the race so why run it at all.  You know, we retained a valuation expert.  We intend to object at confirmation based on valuation, based upon what we've heard and we think, again, these types of internal communication could also reflect on the issues relevant or germane to confirmation.

So, you know, we've excepted from all discovery any internal valuation of Crestview, whether it's in emails or their internal valuations otherwise.  We've dealt in good faith on all those types of issues, tried to stay within the rails.  But these types of internal communications could shed light on one or more elements that would be important to us, and for that reason, we're here before you.

THE COURT:  Thank you.  I'm going to grant the protective motion but only temporarily.  I'm granting it as to deposition questions.  I'm granting it as to production, as to the matters that set forth in the motion; however, I'm only granting it until the depositions have been completed and if at that point, I determine that additional materials must be provided, then I'm going to require Crestview

provide them on very short order and to reproduce witnesses.

But right now, I think it is premature because this is not going to be direct evidence and, obviously, some transaction this large is going to be extremely difficult to produce all the internal documents and to go through them all.  So, for now, I'm going to grant the motion for production.

What do we have next on today's docket?

MR. EHRLICH:  Good afternoon, Your Honor.  Andrew Ehrlich from Paul Weiss on behalf of the Debtors.

Your Honor, earlier this afternoon, we had filed a motion to compel.  It's ECF 1042.  The Court -- to be fair (indiscernible) the committee and to be fair to the committee, this filed probably about three hours ago, but the court staff advised us the Court had some time today and then not again for some time so we thought we would -- if the Court is amenable -- just raise the motion so the Court is aware of it, and perhaps the Court may have some guidance or thoughts or perhaps the Court may tell us to come back.

THE COURT:  Why don't we do this.  Let's give the committee an opportunity to consider it, to discuss it with you, and respond.  And can we get the committee to respond to it in the next 24 to 48 hours and then I'll just find time to come back at that point.  How long will it take the committee to respond?

MR. WALKER:  We can make that time frame, Your Honor.

THE COURT:  And can you live with a hearing, let's say, on Monday of next week, Mr. Ehrlich, or do you need a hearing this week?  I'll get you what you have to have.  But you're right.  It really isn't fair to make them respond with -- and I'm not putting that burden on you.  I'm the one that said, no, I want to hear it this afternoon.

MR. EHRLICH:  Thank you, Your Honor.

THE COURT:  (indiscernible)

MR. EHRLICH:  Thank you, Your Honor.  I think, all things considered, Monday would be fine.

THE COURT:  Okay.  I will find a time once we get the response unless I can rule on the papers.  And I'm just going to ask Mr. (indiscernible) to put it in my box with a note that I need to decide it quickly, and if so, we will have a hearing on Monday.  Let me -- I'll go ahead and find a time now.  It may be inconvenient but it will be a time on Monday so that we can tentatively have it there. (indiscernible)

MR. WALKER:  Your Honor, just to be clear, so, our response would be due in two days?

THE COURT:  Does that work for you?  Let's say -- how about 9:00 a.m. on the 9th?  Would that work?

MR. WALKER:  Yes, Your Honor.

THE COURT:  Okay.  And then, on the 13th, I'm going to put you on top of something but why don't we come in at 9:00 a.m. on the 13th.  It may take a couple of minutes to call your case while I handle some other matters but we'll do it then.

MR. EHRLICH:  Thank you very much, Your Honor.

THE COURT:  Does that work for --

MR. WALKER:  Thank you, Your Honor.

THE COURT:  All right.  (indiscernible)  Mr. Moskowitz, I'm not intending to issue a written order.  I think the parties can live with the old order, but I do want your clients to know that if they create a place where this information, I think, become important, I'm going to reconsider this in full and I may order everything produced. So, I would encourage your continued cooperation as you've indicated you've already done to try and avoid the necessity of a further hearing on this.  But I will grant a further hearing if it is still necessary.

MR. MOSKOWITZ:  Understood, Your Honor. (indiscernible) if I may is that -- I hope that the committee -- I think this is implicit I think in Your Honor's ruling but just to add it, if I may.

I'll assume that the committee -- it will behoove them to explore whatever they need to explore (indiscernible) but also in all of the Debtor depositions

that they're taking.  It happens to be (indiscernible) before the Crestview deposition anyway, but that's part of I think what's -- I think that's part of the record that the committee's is supposed to consider before it needs to know -- before it will know whether it needs more than that.

I think it's implicit but I just wanted to add it if I can.

THE COURT:  Okay.  I'm going to not say that right now.  I'm going to leave it up to them to decide how to meet their burden but what you say makes a lot of sense and they may have a response to that.  But we're not (indiscernible) to bring it back it up.  I'm just telling your client that's getting a protective order, you better be pretty fulsome on the stuff, certainly, any third-party communications that are coming, things of that nature.

All right.  Thank you all.

MR. MOSKOWITZ:  Thank you, Your Honor.

MR. WALKER:  Thank you, Your Honor.

MR. EHRLICH:  Thank you, Your Honor.

(Proceedings adjourned at 4:25 p.m.)

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Sonya Ledanski Hyde

Veritext Legal Solutions

330 Old Country Road

Suite 300

Mineola, NY 11501

Date:  May 9, 2024